AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☑ INDICTMENT  ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location
**NORTHERN DISTRICT OF CALIFORNIA**

FILED
NOV 15 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

---- OFFENSE CHARGED ----

Cts.1-4: 18 USC 1623(a)-Perjury
Ct.5: 18 USC 1503-Obstruction of Justice

☐ Petty
☐ Minor
☐ Misdemeanor
☑ Felony

**E-filing**

PENALTY:
Cts. 1-4: each count - 5 yrs prison; 3 yrs supervised release; $250,000 fine; and $100 mandatory special assessment.
Ct. 5: 10 years prison; 3 years supervised release; $250,000 fine; and $100 mandatory special assessment.

---- DEFENDANT - U.S. ----

▶ BARRY LAMAR BONDS

DISTRICT COURT NUMBER

**CR 07   0732**

WHA

---- DEFENDANT ----

**IS NOT IN CUSTODY**
1) ☑ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges   ☐ Fed'l   ☐ State

If answer to (6) is "Yes", show name of Institution

---- PROCEEDING ----

Name of Complaintant Agency, or Person (&Title, if any)

INTERNAL REVENUE SERVICE - CRIMINAL INVESTIGATION DIVISION

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Att'y  ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ▶

} SHOW DOCKET NO.

} MAGISTRATE CASE NO.

Has detainer been filed?  ☐ Yes  ☐ No
If "Yes" give date filed

DATE OF ARREST ▶   Month/Day/Year

Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶   Month/Day/Year

Name and Office of Person Furnishing Information on THIS FORM    **SCOTT N. SCHOOLS**
☑ U.S. Att'y   ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)   MATTHEW A. PARRELLA

☐ This report amends AO 257 previously submitted

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:
☑ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment   ☑ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:
Barry Lamar Bonds
44 Beverly Park Circle
Beverly Hills, CA 90210-1565

Date/Time: December 7, 2007 9:30 a.m.

Before Judge: Magistrate Judge James

Comments:

SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

E-filing

FILED
NOV 15 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

WHA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BARRY LAMAR BONDS,<br><br>    Defendant. | No. CR 07 0732<br><br>VIOLATIONS: 18 U.S.C. § 1623(a) – Perjury; 18 U.S.C. § 1503 – Obstruction of Justice<br><br>SAN FRANCISCO VENUE |

INDICTMENT

The Grand Jury charges:

Background

At all times relevant to this Indictment:

1.    The defendant, BARRY LAMAR BONDS ("Bonds"), was a Major League Baseball player for the San Francisco Giants.

2.    Balco Laboratories, Inc. ("Balco"), was a California corporation performing blood-testing, among other functions. Balco was located in Burlingame, California.

3.    Greg Anderson ("Anderson") was a personal athletic trainer whose clients included numerous professional athletes, including Bonds. Anderson was affiliated with Balco

INDICTMENT

1  in that, among other things, he: obtained illegal drugs for later distribution to his clients
2  (including professional athletes); submitted biological specimens from his clients to Balco for
3  testing (including sending the specimens off to outside laboratories for analysis); and obtained
4  the laboratory analysis results of those specimens from Balco.

5      4.    A federal criminal investigation ("the criminal investigation"), led by the Internal
6  Revenue Service-Criminal Investigation Division ("IRS-CID"), commenced in the Northern
7  District of California concerning Balco's distribution of anabolic steroids and other illegal
8  performance-enhancing drugs and the related money laundering of proceeds from the drug
9  distributions. The criminal investigation initially resulted in an indictment and the convictions of
10 four defendants on federal charges, including illegal drug distribution and money laundering
11 offenses.

12     5.    One focus of the criminal investigation, among others, concerned whether Balco,
13 Anderson, and others were engaged in illegal drug distribution and money laundering arising
14 from distributions of illegal drugs to professional athletes and others.

15     6.    As part of the criminal investigation, on or about September 3, 2003, federal
16 search warrants, issued in the Northern District of California, were executed. Among other
17 things, investigators obtained evidence concerning Bonds and his relationship with Anderson and
18 Balco.

19     7.    As part of the criminal investigation, several professional athletes, including but
20 not limited to Bonds, along with other witnesses, were subpoenaed before the Federal Grand Jury
21 to provide, among other things, testimony about their knowledge and involvement with Balco
22 and its employees, including but not limited to Victor Conte and James Valente, as well as any
23 relationship with Anderson.

24     8.    On or about December 4, 2003, Bonds testified before the Grand Jury. Bonds
25 received an Order of Immunity for his Grand Jury testimony, pursuant to 18 U.S.C. § 6003 and
26 28 C.F.R. § 0.175, and was informed that pursuant to that order neither his testimony nor any
27 information directly or indirectly derived from his testimony could be used against him in any
28 criminal case except a prosecution for perjury, false declaration, or otherwise failing to comply

INDICTMENT                     2

1 | with the Court's order.

2 |     9.    During the criminal investigation, evidence was obtained including positive tests for the presence of anabolic steroids and other performance-enhancing substances for Bonds and other professional athletes.

COUNT ONE: (18 U.S.C. § 1623(a) – Perjury)

    10.    The factual allegations contained in paragraphs one through nine above are incorporated herein as if set forth in full.

    11.    On or about December 4, 2003, in the Northern District of California, the defendant,

BARRY LAMAR BONDS,

having taken an oath to testify truthfully in a proceeding before a Grand Jury sitting in the Northern District of California, unlawfully, willfully, knowingly, and contrary to such oath, did make false material declarations, that is, he gave the following underlined false testimony:

    Q:    I know the answer - - let me ask you this again. I know we kind of got the into this. Let me be real clear about this. Did he [Anderson] ever give you anything that you knew to be a steroid? Did he ever give a steroid?

    A:    I don't think Greg would do anything like that to me and jeopardize our friendship. I just don't think he would do that.

    Q:    Well, when you say you don't think he would do that, to your knowledge, I mean, did you ever take any steroids that he gave you?

(a)    A:    <u>Not that I know of.</u>

********************************

    Q:    Okay. So, I got to ask, Mr. Bonds. There's this number associated on a document with your name, and corresponding to Barry B. on the other document, and it does have these two listed anabolic steroids as testing positive in connection with it. Do you follow my question?

    A:    I follow where you're going, yeah.

    Q:    So, I guess I got to ask the question again, I mean, did you take steroids? And

INDICTMENT    3

| | | | |
|---|---|---|---|
| 1 | | | specifically this test the is in November of 2000. So, I'm going to ask you in the weeks |
| 2 | | | and months leading up to November 2000, were you taking steroids - - |
| 3 | (b) | A: | <u>No.</u> |
| 4 | | Q: | - - or anything like that? |
| 5 | (c) | A: | <u>No, I wasn't at all.</u> I've never seen these documents. I've never seen these |
| 6 | | | papers. |
| 7 | | | ******************************** |
| 8 | | Q: | So, starting in December 2001, on this page, again, there's BB here, which |
| 9 | | | obviously are consistent with your initials; correct? |
| 10 | | A: | He could know other BBs. |
| 11 | | Q: | Correct. |
| 12 | | | But BB would also be your initials; is that correct. |
| 13 | | A: | That's correct. |
| 14 | | | ******************************** |
| 15 | | Q: | Okay. Were you obtaining testosterone from Mr. Anderson during this period of |
| 16 | | | time? |
| 17 | (d) | A: | <u>Not at all.</u> |
| 18 | | | ******************************** |
| 19 | | Q: | In January 2001 were you taking either the flax seed oil or the cream? |
| 20 | | A: | No. |
| 21 | | Q: | And were you taking any other steroids? |
| 22 | (e) | A: | <u>No.</u> |

23   All in violation of Title 18, United States Code, Section 1623(a).
24   ///
25   ///
26   ///
27   ///
28   ///

INDICTMENT                                           4

1 | COUNT TWO: (18 U.S.C. § 1623(a) – Perjury)

2    12.    The factual allegations contained in paragraphs one through nine above are incorporated herein as if set forth in full.

    13.    On or about December 4, 2003, in the Northern District of California, the defendant,

BARRY LAMAR BONDS,

having taken an oath to testify truthfully in a proceeding before a Grand Jury sitting in the Northern District of California, unlawfully, willfully, knowingly, and contrary to such oath, did make false material declarations, that is, he gave the following underlined false testimony:

Q:    Did Greg ever give you anything that required a syringe to inject yourself with?

A:    I've only had one doctor touch me. And that's my only personal doctor. Greg, like I said, we don't get into each others' personal lives. We're friends, but I don't – we don't sit around and talk baseball, because he knows I don't want – don't come to my house talking baseball. If you want to come to my house and talk about fishing, some other stuff, we'll be good friends. You come around talking about baseball, you go on. I don't talk about his business. You know what I mean?

********************************

Q:    So no one else other than perhaps the team doctor and your personal physician has ever injected anything in to you or taken anything out?

A:    Well, there's other doctors from surgeries. I can answer that question, if you're getting technical like that. Sure, there are other people that have stuck needles in me and have drawn out - - I've had a bunch of surgeries, yes.

Q:    So - -

A:    So sorry.

Q:    - - the team physician, when you've had surgery, and your own personal physician. But no other individuals like Mr. Anderson or any associates of his?

(a)    A:    <u>No, no.</u>

********************************

INDICTMENT                                    5

1 | Q: And, again, I guess we've covered this, but - - and did he [Anderson] ever give
2 | you anything that he told you had to be taken with a needle or syringe?
3 | A: Greg wouldn't do that. He knows I'm against that stuff. So, he would never
4 | come up to me - - he would never jeopardize our friendship like that.
5 | Q: Okay. So, just so I'm clear, the answer is no to that, he never gave you anything
6 | like that?
7 | (b)  A: <u>Right.</u>
8 | All in violation of Title 18, United States Code, Section 1623(a).
9 | <u>COUNT THREE</u>:  (18 U.S.C. § 1623(a) – Perjury)
10 | 14. The factual allegations contained in paragraphs one through nine above are
11 | incorporated herein as if set forth in full.
12 | 15. On or about December 4, 2003, in the Northern District of California, the
13 | defendant,

BARRY LAMAR BONDS,

having taken an oath to testify truthfully in a proceeding before a Grand Jury sitting in the Northern District of California, unlawfully, willfully, knowingly, and contrary to such oath, did make false material declarations, that is, he gave the following underlined false testimony:

Q: All right. Did Greg ever talk to you or give you anything called human growth hormone?
(a)  A: <u>No.</u>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Q: And, again, just to be clear and then I'll leave it, but he [Anderson] never gave you anything that you understood to be human growth hormone? Did he ever give you anything like that?
(b)  A: <u>No.</u>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Q: And were you obtaining growth hormone from Mr. Anderson?
(c)  A: <u>Not at all.</u>

INDICTMENT                                6

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Q:    In January of 2002, then, again, just to be clear, you weren't getting any testosterone or growth hormone from Mr. Anderson during that period of time?

(d)    A:    <u>No.</u>

All in violation of Title 18, United States Code, Section 1623(a).

COUNT FOUR:  (18 U.S.C. § 1623(a) – Perjury)

16.    The factual allegations contained in paragraphs one through nine above are incorporated herein as if set forth in full.

17.    On or about December 4, 2003, in the Northern District of California, the defendant,

BARRY LAMAR BONDS,

having taken an oath to testify truthfully in a proceeding before a Grand Jury sitting in the Northern District of California, unlawfully, willfully, knowingly, and contrary to such oath, did make false material declarations, that is, he gave the following underlined false testimony:

Q:    Let me ask the same question about Greg at this point, we'll go into this in a little bit more detail, but did you ever get anything else from Greg besides advice or tips on your weight lifting and also the vitamins and the proteins that you already referenced?

A:    This year, in 2003 - - at the end of 2002, 2003 season, when I was going through - - my dad died of cancer, you know, and everyone knows that.

Q:    Yes. I'm sorry about that.

A:    And everyone tries to give me everything. You got companies that provide us with more junk to try than anything. And you know that as well.

I was fatigued, tired, just needed recovery, you know. And this guy says: "Try this cream, try this cream." And Greg came to the ballpark and he said, you know: "This will help you recover," and he rubbed some cream on my arm, like, some lotion-type stuff, and, like, gave me some flax seed oil, that's what he called it, called it some flax seed oil, man. It's, like: " Whatever, dude."

And I was at the ballpark, whatever, I don't care. What's lotion going to do to

INDICTMENT                                                                7

|   |   |   |   |
|---|---|---|---|
| 1 |  | | me? How many times have I heard that: "This is going to rub into you and work." Let |
| 2 |  | | him be happy. We're friends. You know? |
| 3 |  | Q: | When did that happen for the first time? |
| 4 | (a) | A: | <u>Not until 2003, this season.</u> |
| 5 |  | | ******************************** |
| 6 |  | Q: | And - - all right. So, how many times approximately do you think you got these |
| 7 |  | | tubes with what Mr. Anderson told you was flax seed oil? |
| 8 |  | A: | Maybe once a home stand or something, if that. Greg didn't travel with me on the |
| 9 |  | | road. So, I was at home, when I came home. |
| 10 |  | Q: | And the first time was the beginning of this year's season, in 2003? |
| 11 | (b) | A: | <u>Yes, 2003</u>, because I was battling with the problems with my father and the - - just |
| 12 |  | | the lack of sleep, lack of everything. |
| 13 |  | | ******************************** |
| 14 |  | Q: | Mr. Anderson had never given you anything or asked you to take anything before |
| 15 |  | | the 2003 season; is that right? |
| 16 |  | A: | We never had those discussions. We don't discuss about his -- you know, part of |
| 17 |  | | his world of business is his business. My business is my business. So, we don't -- |
| 18 |  | Q: | I'm asking -- |
| 19 |  | A: | No. |
| 20 |  | Q: | That's not my question. My question is - - |
| 21 |  | A: | No. |
| 22 |  | Q: | - - prior to the last season, you never took anything that he asked you to take, other |
| 23 |  | | than vitamins? |
| 24 | (c) | A: | <u>Right. We didn't have any other discussions.</u> |
| 25 |  | Q: | No oils like this or anything like this before? |
| 26 | (d) | A: | <u>No, no, no, not at all. Not at all.</u> |
| 27 |  | | ******************************** |
| 28 |  | Q: | Okay. So, first of all, Mr. Bonds, I guess I want to recheck with you or ask you |

INDICTMENT                                                    8

again exactly when you started getting the - - what I'll call the recovery items, what you understood to be flax seed oil and the cream, when you started getting that from Greg Anderson. I think that you said - - but please correct me if I'm wrong - - that you thought it was prior to this current baseball season.

But let me ask, I mean, is it possible it's actually a year before, after the 2000 - - well, actually two years before, after the 2001 season? Because this first calendar is dated December 2001 with "BB" on it and its got a number of entries that I'd like to ask you about.

Were you getting items during that period of time from Greg?

(e) A: <u>No. Like I said, I don't recall having anything like this at all during that time of year.</u> It was toward the end of 2000, after the World Series, you know, when my father was going through cancer.

*******************************

Q: In December 2001.

And what about the - - the clear - - either the clear or the cream, were you getting either of those substances in December of 2001 from Mr. Anderson?

(f) A: <u>No. Like I said, I recall it being toward the end of 2002 - - 2002, after 2002 season.</u>

Q: Okay.

(g) A: <u>And that's what I recall.</u>

*******************************

Q: And you weren't getting this flax seed oil stuff during that period of time [January 2002]?

(h) A: <u>Not that I can recall. Like I say, I could be wrong. But I'm - - I'm - - going from my recollection it was, like, in the 2002 time and 2003 season.</u>

All in violation of Title 18, United States Code, Section 1623(a).

///

///

INDICTMENT                                9

COUNT FIVE: (18 U.S.C. § 1503 – Obstruction of Justice)

18. The factual allegations contained in paragraphs one through nine above are incorporated herein as if set forth in full.

19. On or about December 4, 2003, in the Northern District of California, and elsewhere, the defendant,

BARRY LAMAR BONDS,

unlawfully, willfully, and knowingly, did corruptly endeavor to influence, obstruct, and impede the due administration of justice, by knowingly giving Grand Jury testimony that was intentionally evasive, false, and misleading, that is:

    (a) The false statements made by the defendant as charged in Counts 1-4 of this indictment; and

    (b) Evasive and misleading testimony.

All in violation of Title 18, United States Code, Section 1503.

DATED: Nov 15, 2007

A TRUE BILL.

FOREPERSON

SCOTT N. SCHOOLS
United States Attorney

BRIAN J. STRETCH
Chief, Criminal Division

(Approved as to form: _____ )
AUSA PARRELLA

INDICTMENT                                                                 10