1    ALLEN RUBY (SBN 47109)               CRISTINA C. ARGUEDAS (SBN 87787)

RUBY & SCHOFIELD                      TED W. CASSMAN (SBN 98932)

2    125 South Market Street #1001         ARGUEDAS, CASSMAN & HEADLEY, LLP

San Jose, CA 95113                    803 Hearst Avenue

3    Telephone: (408) 998-8500 ext. 204      Berkeley, CA 94710

Facsimile: (408) 998-8503            Telephone: (510) 845-3000

4                                   Facsimile: (510) 845-3003

5    DENNIS P. RIORDAN (SBN 69320)     MICHAEL RAINS (SBN 91013)

DONALD M. HORGAN (SBN 121547)   RAINS, LUCIA & WILKINSON, LLP

6    RIORDAN & HORGAN              2300 Contra Costa Blvd., Suite 230

523 Octavia Street                   Pleasant Hill, CA 94523

7    San Francisco, CA 94102          Telephone: (925) 609-1699

Telephone: (415) 431-3472         Facsimile: (925) 609-1690

8    Facsimile: (415) 552-2703

9    Attorneys for Defendant

BARRY LAMAR BONDS

10

11                    **UNITED STATES DISTRICT COURT**

12                **NORTHERN DISTRICT OF CALIFORNIA**

13                   **SAN FRANCISCO DIVISION**

14

15    UNITED STATES OF AMERICA,       )  Case No. CR 07 0732 SI

                              )

16              Plaintiff,          )  **DEFENDANT'S NOTICE OF MOTION**

                              )  **AND MOTION TO DISMISS OR,**

17                          )  **ALTERNATIVELY, TO STRIKE**

    vs.                       )  **PORTIONS OF THE INDICTMENT;**

18                          )  **AND SUPPORTING MEMORANDUM**

    BARRY LAMAR BONDS,         )

19                          )  Date:  February 29, 2008

           Defendant.      )  Time:  11:00 a.m.

20                           )  Judge: The Honorable Susan Ilston

21    **TO:    JOSEPH RUSSONIELLO, UNITED STATES ATTORNEY; MATTHEW**

           **PARRELLA, JEFFREY NEDROW, AND JEFFREY FINIGAN, ASSISTANT**

22           **UNITED STATES ATTORNEYS; AND THE CLERK OF THE ABOVE-**

           **ENTITLED COURT:**

1

**TABLE OF CONTENTS**

2  NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

3  MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

4  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

5  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

6  I.    EACH OF THE FALSE TESTIMONY COUNTS ALLEGES MULTIPLE FALSE
       STATEMENTS CONCERNING DISTINCT SUBJECTS AND IS THEREFORE
7      DUPLICITOUS, A DEFECT THAT REQUIRES THE GOVERNMENT TO
       IDENTIFY THE SINGLE STATEMENT ON WHICH EACH COUNT IS
8      FOUNDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

9      A.    The Nature of the False Testimony Charges . . . . . . . . . . . . . . . . . . . . . . . . -5-

10     B.    A Duplicitous Indictment Alleges More than One Offense in a Single
             Count and Undermines a Defendant's Rights to Fair Notice and a
11           Unanimous Jury Verdict, as Well as the Protection Against
             Double Jeopardy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
12
       C.    Each of the False Testimony Counts Is Duplicitous and Thus Defective
13           Because Each Complains of Multiple, Factually Distinct Statements . . . . . . . . -7-

14           1.    Count One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

15           2.    Count Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

16           3.    Count Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-

17           4.    Count Four . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

18     D.    The Court Should Require the Prosecution Either to Elect a Single
             Alleged Offense in Each Count Or To Dismiss the Indictment . . . . . . . . . . -13-
19
20  II.   THE OBSTRUCTION OF JUSTICE OFFENSE ALLEGED IN COUNT V IS
       LIKEWISE DUPLICITOUS BECAUSE IT COMPLAINS OF ALL OF THE
21     DUPLICITOUS STATEMENTS ALLEGED IN THE FALSE TESTIMONY
       COUNTS AND OTHERS, LIKEWISE REQUIRING THE GOVERNMENT TO
       ALLEGE THE SINGLE OFFENSE ON WHICH IT IS FOUNDED . . . . . . . . . . . . . -16-
22
23  III.  A HOST OF QUESTIONS AND RELATED ANSWERS IDENTIFIED IN THE
       INDICTMENT ARE FUNDAMENTALLY AMBIGUOUS AND CANNOT
       SUPPORT THE FALSE TESTIMONY CHARGES THAT ARE FOUNDED
24     ON THEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

25     A.    A Question or an Answer that is Fundamentally Ambiguous Cannot
             Support a False Testimony Charge and is Properly Subject to a Motion
26           to Strike or Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

27

28                                          -i-

**Table of Contents continued**

1.  Some Questions Are Fundamentally Ambiguous As a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

2.  Factors Considered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

3.  Defendant's Ambiguous Answers . . . . . . . . . . . . . . . . . . . . . . . . . -19-

B.  Various Questions And/or Answers Set Forth in Counts I-V Are Fundamentally Ambiguous and Are Therefore Insufficient to Support a False Testimony Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

1.  Count One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

2.  Count Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

3.  Count Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

4.  Count Four . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

# TABLE OF AUTHORITIES

## CASES

*Apprendi v. New Jersey,*
530 U.S. 466 (2000) .......... 3

*Bins v. United States,*
331 F.2d 390 (4th Cir. 1964) .......... 7

*Bronston v. United States,*
409 U.S. 352 (1973) .......... 4, 17, 19

*Richardson v. United States,*
526 U.S. 813 (1999) .......... 3

*Stirone v. United States,*
361 U.S. 212 (1960) .......... 3

*United States v. Adesida,*
129 F.3d 846 (6th Cir. 1997) .......... 15

*United States v. Aguilar,*
756 F.2d 1418 (9th Cir. 1985) .......... 6, 14, 15

*United States v. Al Hedaithy,*
392 F.3d 580 (3d Cir. 2004) .......... 14

*United States v. Bruce,*
89 F.3d 886 (D.C. Cir. 1996) .......... 16

*United States v. Caputo,*
288 F. Supp. 2d 912, 922-23 (N.D. Ill. 2003) .......... 18

*United States v. Cobert,*
227 F. Supp. 915 (S.D. Cal. 1964) .......... 20

*United States v. Davis,*
306 F.3d 398 (6th Cir. 2002) .......... 15

*United States v. Diogo,*
320 F.2d 898 (2d Cir. 1963) .......... 17

*United States v. Eddy,*
737 F.2d 564 (6th Cir. 1984) .......... 19

*United States v. Esposito,*
358 F. Supp. 1032 (D. Ill. 1973) .......... 20

*United States v. Farmer,*
137 F.3d 1265 (10th Cir. 1998) .......... 19

-iii-

1 **Table of Authorities continued**

2
3
*United States v. Galvan*,
949 F.2d 777 (5th Cir. 1991)                                              15

4
*United States v. Gordon*,
844 F.2d 1397 (9th Cir. 1988)                                             15

5
6
*United States v. Graham*,
60 F.3d 463 (8th Cir. 1995)                                                7

7
*United States v. Hardy*,
762 F. Supp. 1403 (D. Haw. 1991)                                      14, 16

8
9
*United States v. Klinger*,
128 F.3d 705 (9th Cir. 1997)                                              15

10
*United States v. Lattimore*,
127 F. Supp. 405 (D.D.C. 1955)                                            18

11
12
*United States v. Lighte*,
782 F.2d 367 (2d Cir. 1986)                                               18

13
*United States v. Martellano*,
675 F.2d 940 (7th Cir. 1982)                                              17

14
15
*United States v. Mastrangelo*,
733 F.2d 793 (11th Cir. 1984)                                             15

16
*United States v. Naegle*,
341 B.R. 349 (D.D.C. 2006)                                                18

17
18
*United States v. Ramirez-Martinez*,
273 F.3d 903 (9th Cir. 2001)                                              14

19
*United States v. Ryan*,
828 F.2d 1010 (3d Cir. 1987)                                              19

20
21
*United States v. Sainz*,
772 F.2d 559 (9th Cir. 1985)                                    17, 19, 22, 23

22
*United States v. Savage*,
67 F.3d 1435 (9th Cir. 1993)                                              15

23
24
*United States v. Schulman*,
817 F.2d 1355 (9th Cir. 1987)                                             18

25
*United States v. Serafini*,
167 F.3d 812 (3d Cir. 1999)                                               18

26
27
*United States v. Slawik*,
548 F.2d 75 (3d Cir. 1977)                                                18

28                                            -iv-

**Table of Authorities continued**

*United States v. Tonelli*,
577 F.2d 194 (3d Cir. 1978)                                         17, 19

*United States v. UCO Oil Company*,
546 F.2d 833 (9th Cir.1976)                                             6

*United States v. v. Rosenbarger*,
536 F.2d 715 (6th Cir. 1976)                                           15

*United States v. Verrecchia*,
196 F.3d 294 (1st Cir. 1999)                                           15

*United States v. Weathers*,
186 F.3d 948 (D.C. Cir. 1999)                                          16

## STATUTES

18 U.S.C. section 1503                                              5, 16

18 U.S.C. section 1623(a)                                               5

Fed. R. Crim. Pro. 8                                                    6

Fed. R. Crim. Pro. 12(b)                                                6

Fed. R. Crim. Pro. 12(b)(3)                                            14

## MISCELLANEOUS

1A Charles A. Wright, *Federal Practice and Procedure*
§ 142 (3d ed. 2007)                                                    6

1 Wright, *Federal Practice and Procedure* § 142 (2nd ed. 1982)        6

5 Wayne R. LaFave et al., *Criminal Procedure* 19.3(c)
(2d ed. 1999 & 2007 Supp.)                                            14

8 *Moore's Federal Practice* § 8.03 (2nd ed. 1984)                     6

1   ALLEN RUBY (SBN 47109)                CRISTINA C. ARGUEDAS (SBN 87787)
    RUBY & SCHOFIELD                      TED W. CASSMAN (SBN 98932)
2   125 South Market Street #1001         ARGUEDAS, CASSMAN & HEADLEY, LLP
    San Jose, CA 95113                    803 Hearst Avenue
3   Telephone: (408) 998-8500 ext. 204    Berkeley, CA 94710
    Facsimile: (408) 998-8503             Telephone: (510) 845-3000
4                                         Facsimile: (510) 845-3003

5   DENNIS P. RIORDAN (SBN 69320)         MICHAEL RAINS (SBN 91013)
    DONALD M. HORGAN (SBN 121547)         RAINS, LUCIA & WILKINSON, LLP
6   RIORDAN & HORGAN                      2300 Contra Costa Blvd., Suite 230
    523 Octavia Street                    Pleasant Hill, CA 94523
7   San Francisco, CA 94102               Telephone: (925) 609-1699
    Telephone: (415) 431-3472             Facsimile: (925) 609-1690
8   Facsimile: (415) 552-2703

9   Attorneys for Defendant
    BARRY LAMAR BONDS
10

11                        **UNITED STATES DISTRICT COURT**

12                       **NORTHERN DISTRICT OF CALIFORNIA**

13                          **SAN FRANCISCO DIVISION**

14
    UNITED STATES OF AMERICA,          )   Case No. CR 07 0732 SI
15                                      )
                                        )   **DEFENDANT'S NOTICE OF MOTION**
16              Plaintiff,              )   **AND MOTION TO DISMISS OR,**
                                        )   **ALTERNATIVELY, TO STRIKE**
17                                      )   **PORTIONS OF THE INDICTMENT;**
         vs.                            )   **AND SUPPORTING MEMORANDUM**
18                                      )
    BARRY LAMAR BONDS,                  )   Date:  February 29, 2008
19                                      )   Time:  11:00 a.m.
                Defendant.              )   Judge: The Honorable Susan Ilston
20                                      )

21  **TO:    JOSEPH RUSSONIELLO, UNITED STATES ATTORNEY; MATTHEW
            PARRELLA, JEFFREY NEDROW, AND JEFFREY FINIGAN, ASSISTANT
22          UNITED STATES ATTORNEYS; AND THE CLERK OF THE ABOVE-
            ENTITLED COURT:**

23          PLEASE TAKE NOTICE that on February 29, 2008, at 11 a.m. in the Courtroom of the

24  Honorable Susan Ilston, defendant BARRY LAMAR BONDS will move the Court for an order

25  dismissing or, alternatively, striking portions of the indictment filed against him on November

26  15, 2007.

27

28
    Defendant's Notice Of Motion
    And Motion To Dismiss Or Strike
                                        -1-

1    This motion is founded on the present notice of motion; the accompanying memorandum

2  of points and authorities; the papers and records on file in the action; and on such oral and

3  documentary evidence as may be presented at the time of the hearing.

4  Dated: January 23, 2008                    Respectfully submitted,

5                                              RUBY & SCHOFIELD

6                                              ARGUEDAS, CASSMAN & HEADLEY

7                                              RAINS, LUCIA & WILKINSON, LLP

8                                              RIORDAN & HORGAN

9
                                              By   /s/ Dennis P. Riordan
10                                                    Dennis P. Riordan

11                                             Counsel for Defendant
                                              Barry Lamar Bonds
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   Defendant's Notice Of Motion
   And Motion To Dismiss Or Strike
                                        -2-

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3      Barry Bonds is entitled to the constitutional protections afforded every citizen accused of

4   a crime in our federal courts. These include the right to be tried only on a charge properly

5   returned by a grand jury;[1] the right to sufficient notice of the specific crime alleged to permit

6   preparation of a defense;[2] and the right to be found guilty of a given offense only upon the

7   unanimous verdict of twelve petit jurors.[3]

8      Vindication of these rights at trial necessarily begins with an indictment that is properly

9   pled. Unless each and every count of an indictment clearly alleges facts constituting a single

10  offense, there can be no certainty as to what crime the grand jury accused the defendant of

11  committing; nor will the defendant be on notice of the specific charge against which he must

12  defend; nor can there be any assurance that jurors will unanimously agree on the same factual

13  basis for a charge before returning a guilty verdict.

14     The indictment in this case falls woefully short of meeting the pleading requirements the

15  Constitution imposes. For example, of what crime is Mr. Bonds charged in Count One: falsely

16  swearing that he was not taking steroids in November of 2000; or falsely denying that he was

17  obtaining testosterone from Greg Anderson in December of 2001? Is Mr. Bonds accused in

18  Count Two of lying when he denied he was ever injected by Mr. Anderson, or lying when he

19

20   [1] *Stirone v. United States,* 361 U.S. 212 (1960) (Fifth Amendment's Grand Jury Clause
     endows defendants who are charged with felonies with a substantial right to be tried only on the
21   charges set forth in an indictment by a grand jury; defendant charged with interfering with
     commerce entering state cannot be convicted on theory he interfered with commerce exiting
22   state)

23   [2] *Apprendi v. New Jersey,* 530 U.S. 466, 478 (2000) ("[C]riminal proceedings [are]
     submitted to a jury after being initiated by an indictment containing 'all the facts and
24   circumstances which constitute the offence, ...stated with such certainty and precision, that the
     defendant ...may be enabled to determine the species of offence they constitute, so he may
25   prepare his defense accordingly...")

26   [3] *Richardson v. United States*, 526 U.S. 813, 815 (1999) (under the continuing criminal
     enterprise statute, which penalizes the commission of a continuing series of at least three drug
27   violations, the jury had to unanimously find that the defendant committed each of three specific
     individual violations necessary to make up that continuing series.)
28

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

1   denied that Mr. Anderson ever gave him anything that Anderson said had to be taken with a
2   needle or syringe? Is the crime charged in Count Three lying about ever receiving human growth
3   hormone from Anderson or lying about receiving testosterone from him in January of 2002?
4   And is the crime charged in Count Four falsely stating that the first time Anderson rubbed a
5   cream on Mr. Bonds was during the 2003 season; or that the first time Anderson gave him flax
6   seed oil was that same season; or stating that the first time Mr. Bonds received those items from
7   Anderson was in either 2002 or 2003? In short, the indictment is riddled with the pleading vice
8   known as duplicity, alleging more than one offense in a single count.

9          Furthermore, this is a prosecution for false testimony, an offense as to which the
10   government bears a particularly high burden of proof. Conviction requires a statement under
11   oath which is a clearly false answer to an unambiguous question; a response which is merely
12   incomplete, misleading, or non-responsive will not suffice to prove the crime. *Bronston v.*
13   *United States*, 409 U.S. 352, 361- 362 (1973). That being so, in preparing his defense defendant
14   Bonds is entitled to clear notice of the unambiguous falsehoods he is accused of telling the grand
15   jury, yet some portions of the indictment are so vague that it is simply impossible to be certain
16   what untruths Mr. Bonds is alleged to have uttered.

17          One of two things is true. The first is that, after the grand jury appearance by Mr. Bonds
18   underlying these charges, the government labored for four years to finally produce a charging
19   document of striking inartfulness. The second is that the scattershot nature of the indictment
20   results not from ignorance of the rules of proper pleading, but rather the fact that objectives other
21   than clarity were the governing consideration in drafting the charges in this much ballyhooed
22   prosecution. In either case, the remedy must be the same. The government must elect a single,
23   clearly stated charge as the basis for each count or suffer dismissal.

24                                                   //
25                                                   //
26                                                   //
27                                                   //
28

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-4-

1

## ARGUMENT

2  **I.    EACH OF THE FALSE TESTIMONY COUNTS ALLEGES MULTIPLE FALSE**
3  **STATEMENTS CONCERNING DISTINCT SUBJECTS AND IS THEREFORE**
   **DUPLICITOUS, A DEFECT THAT REQUIRES THE GOVERNMENT TO**
   **IDENTIFY THE SINGLE STATEMENT ON WHICH EACH COUNT IS**
4  **FOUNDED**

5      **A.    The Nature of the False Testimony Charges**

6          The first four counts of the five-count indictment filed on November 15, 2007 charge Mr.

7  Bonds with the offense of false testimony in violation of 18 U.S.C. section 1623(a), while the

8  fifth and final count charges him with obstruction of justice in violation of 18 U.S.C. section

9  1503.

10         The indictment's preliminary allegations essentially describe the federal government's

11 lengthy investigation into the distribution and use of performance-enhancing drugs in

12 professional sports and the local criminal prosecutions which that investigation engendered.

13 (Ind., par. 1-7)  In this connection, the indictment recites events leading to the criminal

14 convictions of persons associated or involved with Balco Laboratories.  (Ind., par. 4)  The

15 indictment further describes how the government's investigation of Balco focused on Mr.

16 Bonds' personal trainer, Greg Anderson, and on Balco and/or Anderson's relationship with Mr.

17 Bonds and other professional athletes.  (Ind., par. 5-7)  Mr. Bonds' testimony in the context of

18 that investigation before a federal grand jury on December 4, 2003 forms the basis for the four

19 false testimony counts placed in issue here.

20         Each of the false testimony counts expressly reiterates multiple statements made by Mr.

21 Bonds in answer to the questioning of two prosecutors before the grand jury. In a few instances,

22 the responsive statements given by Mr. Bonds address a repeated question and are virtually

23 identical in meaning.  In the remaining instances, however, the responsive statements address

24 different subjects raised by the questioner and are substantively distinct in meaning.  As a result,

25 each of the false testimony counts alleges several purported falsehoods that are of an essentially

26 different character from one another. To that extent, for the reasons set forth, the false testimony

27 counts are fundamentally defective in form.

28

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    A Duplicitous Indictment Alleges More than One Offense in a Single Count and Undermines a Defendant's Rights to Fair Notice and a Unanimous Jury Verdict, as Well as the Protection Against Double Jeopardy**

Federal Rule of Criminal Procedure 12(b) authorizes pre-trial challenges to the form of a criminal indictment, i.e., those that appear on the face of the indictment and are "capable of determination without the trial of the general issue." In *United States v. Aguilar*, 756 F.2d 1418 (9th Cir. 1985), the Ninth Circuit defined the formal defect known as "duplicity" and explained how it undermines a defendant's rights to notice of the charges and a unanimous verdict as well as the fundamental protection against double jeopardy:

> Charging two offenses in one count of an indictment is contrary to Rule 8(a) of the Federal Rules of Criminal Procedure, which provides that an indictment contain "a separate count for each offense." *Id.* The joining in a single count of two or more distinct offenses is termed "duplicity." *See generally* 1 Wright, *Federal Practice and Procedure* § 142 (2nd ed. 1982); 8 *Moore's Federal Practice* § 8.03 (2nd ed. 1984). The vices of duplicity arise from breaches of the defendant's Sixth Amendment right to knowledge of the charges against him, since conviction on a duplicitous count could be obtained without a unanimous verdict as to each of the offenses contained in the count. *See United States v. UCO Oil Company*, 546 F.2d 833, 835 (9th Cir.1976). A duplicitous indictment also could eviscerate the defendant's Fifth Amendment protection against double jeopardy, because of a lack of clarity concerning the offense for which he is charged or convicted. *See id.; Abney v. United States,* 431 U.S. 651, 654 . . . (1977).[4]

*Aguilar*, 756 F.2d at 1420, fn. 2. Furthermore, in addition to the vices described in *Aguilar*, a duplicitous indictment may generate related problems involving the admissibility of evidence, sentencing, and appellate review. 1A Charles A. Wright, *Federal Practice and Procedure* § 142 (3d ed. 2007), and citations contained therein.[5]

The test for determining whether separate statements in a single false testimony count

---

[4]    In 2002, the quoted language from Fed.R.Crim.P. 8 was deleted by amendment. The principle expressed in that language, however, remains in full force and effect given that the Advisory Committee Note to the amendment states that its changes were "intended to be stylistic only."

[5]    The defect of "multiplicity" — the converse of duplicity — is the charging of a single offense in several counts. *Id.*

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-6-

1 constitute but a single offense essentially turns on whether each allegedly false statement in a

2 given count is substantially the same as, or different than, the others. *United States v. Graham*,

3 60 F.3d 463, 467 (8th Cir. 1995) (separate false statements are separate offenses if they require

4 "different factual proof of their falsehood"); *Bins v. United States*, 331 F.2d 390, 393 (4th Cir.

5 1964) (where duplicity is alleged, ". . . it is well settled that the test for determining whether

6 several offenses are involved is whether identical evidence will support each of them, and if any

7 dissimilar facts must be proved, there is more than one offense."); 1A Charles A. Wright,

8 *Federal Practice and Procedure*, supra, § 142 (Test used by courts in deciding whether offenses

9 are in fact separate is whether each requires proof of some fact that the other does not).

10 **C.    Each of the False Testimony Counts Is Duplicitous and Thus**
   **Defective Because Each Complains of Multiple, Factually**
11 **Distinct Statements**

12 In the following summary, defendant identifies the subject matter of each charged

13 statement as alleged, with verbatim recitations of the relevant questions and answers in

14 accompanying notes. As the summary progresses, he then identifies the bases for determining

15 that certain statements within a given count are essentially the same, and thus permissible, or

16 essentially distinct, and thus duplicitous. Some statements that are deemed permissible for

17 purposes of the present analysis, however, may respond to fundamentally ambiguous questions or

18 constitute fundamentally ambiguous answers, for the reasons set forth in Argument III, infra.

19 **1.    Count One**

20 This count (Ind., par. 10-11, pp. 3-4) complains of five separate and allegedly false

21 statements as follows:

22 **(a) Mr. Bonds did not know of his having taken any steroids given to him by Greg**

23 **Anderson.** (Ind., p. 3)[6]

24

25 [6]   Q.    . . . Well, when you say you don't think [Anderson] would [give you anything you
26          knew to be a steroid], to your knowledge, I mean, did you ever take any steroids
             that he gave you?

27     A.    Not that I know of.  (Count I (a), at p. 3:14 - 21) (Underlining, indicating specific
28          alleged falsehood, in original here and in all subsequent indictment excerpts)

**(b) In the "weeks and months leading up to November 2000," Mr. Bonds was not taking steroids.** (Ind., pp. 3-4)[7]

Statement (a) differs from statement (b) because the former concerns whether Mr. Bonds had knowledge that he had ever taken steroids given him by Anderson, while the latter concerns whether he had taken any steroids at all, i.e., from any source, during a given time period, i.e., leading up to November 2000. The answer to one question thus does not answer the other, and proof of the falsity of one would require evidence irrelevant to the truth or falsity of the other, rendering each statement distinct.

**(c)** Based on the interrupted sequence of question and answer,[8] this allegation can be read to complain of Mr. Bonds' statement **that "in the weeks and months leading up to November 2000," Mr. Bonds was not taking "anything like" steroids.** (Ind. p. 4) Statement (c) is fairly construed as addressing whether Mr. Bonds was taking substances similar to but different from steroids, e.g., human growth hormone (see below), and therefore differs from both statements (a) and (b).

**(d) Mr. Bonds was not obtaining testosterone from Mr. Anderson during "this period of time."** (Ind., p. 4)[9] Statement (d) addresses testosterone and, apparently, December of 2001, a different substance and time period than those addressed in statement (c), rendering the two distinct. Furthermore, because testosterone was not defined by the prosecutors or Mr. Bonds

---

[7] Q.    . . . So, I'm going to ask you in the weeks and months leading up to November 2000, were you taking steroids –

A.    <u>No</u>. (Count I (b), at p. 3:23 - 4:3)

[8] [Continuing from question and answer set forth in footnote 7, supra:]

Q.    – or anything like that?

A.    <u>No, I wasn't at all</u>. I've never seen those documents. I've never seen those papers. (Count I (c), at p. 4: 4-6)

[9] Q.    Okay. Were you obtaining testosterone from Mr. Anderson during this period of time (i.e. starting in December, 2001)?

A.    <u>Not at all</u>. (Count I (d), at p. 4:8 - 17)

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-8-

1  to be a steroid, statement (d) is also distinct from statements (a) and (b), which address steroids.

2  **(e) In January 2001, Mr. Bonds was not taking "any other steroids" (i.e., other**

3  **than, as stated in the preliminary question, ". . . the flax seed oil or the cream").[10]**

4  Statement (e) concerns whether Mr. Bonds was ingesting steroids in certain forms during

5  January of 2001. It is similar to statement (b) as to the substance referred to but distinct as to

6  time period referenced.

7  In view of the above, all of the statements alleged in Count One, or portions of those

8  statements, are duplicitous.

9  **2.    Count Two**

10  This count (Ind., par. 12-13, pp. 5-6) complains of two separate and allegedly false

11  statements, as follows:

12  **(a) Apart from certain physicians, no others "like Greg Anderson or any associates**

13  **of his" had ever injected anything into Mr. Bonds or "taken anything out."[11]**

14  **(b) Anderson never gave Mr. Bonds anything that he told Mr. Bonds had to be**

15  **taken with a needle or a syringe.[12]**

16  Statement (a) plainly concerns whether Anderson or his associates injected or extracted

17  substances from Mr. Bonds' body, while statement (b) concerns what Anderson may have

18

19  [10]  Q.  In January 2001 were you taking either the flax seed oil or the cream?

20      A.  No.

21      Q.  And were you taking any other steroids?

22      A.  No. (Count I (e), at p. 4:19-22)

23  [11]  Q.  . . . But no other individuals [than the team physician, your personal physician, or

24          physicians who performed surgery on you] like Mr. Anderson or any associates of
            his [has ever injected anything in to you or taken anything out]?

25      A.  No, no.  (Count II (a), at p. 5:10 - 27)

26  [12]  Q.  . . . Okay, just so I'm clear, the answer is no to that, [Anderson] never gave you

27          anything [he told you had to be taken with a needle or syringe]?

28      A.  Right.  (Count II (b), at p. 6:1 - 7)

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-9-

1  supplied to him apart from such acts. The two statements are accordingly distinct and
2  duplicitous.

3          **3.     Count Three**

4      This Count (Ind. par. 14-15, pp. 6-7) complains of four separate and allegedly false
5  statements, as follows:

6      **(a) Greg Anderson had never "talked to" (sic) Mr. Bonds [about], or given Mr.**
7  **Bonds anything called, human growth hormone.**[13]

8      **(b) Anderson never gave Mr. Bonds anything that Mr. Bonds understood to be**
9  **human growth hormone "or anything like that."**[14]

10      Statements (a) and (b) are effectively the same to the extent they address whether Mr.
11  Bonds had received human growth hormone from Anderson. Unlike statement (b), however,
12  statement (a) in part addresses discussions with Anderson about human growth hormone, while
13  statement (b), unlike statement (a), addresses ingestion of substances similar to human growth
14  hormone. To this extent, the statements are substantively distinct.

15      **(c) Mr. Bonds was not obtaining growth hormone from Anderson.**[15]

16      This statement is essentially identical to portions of statements (a) and (b), above.

17      **(d) Mr. Bonds was not getting any testosterone or human growth hormone from**
18  **Anderson in January, 2002.**[16]

---

19
20      [13] Q.   All right. Did Greg ever talk to you (sic) or give you anything called human
           growth hormone?

21      A.   <u>No</u>. (Count III (a), at p. 6:18 - 20)

22      [14] Q.   And, again, just to be clear and then I'll leave it, but he [Anderson] never gave
23           you anything that you understood to be human growth hormone? Did he ever give
           you anything like that?

24      A.   <u>No</u>. (Count III (b), at p. 6:22 - 25)

25      [15] Q.   And were you obtaining growth hormone from Mr. Anderson?

26      A.   <u>Not at all</u>. (Count III (c), at p. 6:27-28)

27      [16] Q.   In January of 2002, then, again, just to be clear, you weren't getting any
28           testosterone or growth hormone from Mr. Anderson during that period of time?

To the extent that this statement concerns the issue of receipt of human growth hormone in January 2002, it is subsumed within statements (a), (b), and (c). To the extent statement (d) addresses testosterone, however, it differs from the others.

In light of the above, statements (a), (b), and (d), or portions thereof, are duplicitous.

### 4. Count Four

This Count (Ind. par. 16-17, pp. 7-9) complains of eight separate and allegedly false statements, as follows:

**(a)  The first time that certain events occurred–viz., someone told Mr. Bonds to try a cream; Anderson came to the ballpark; Anderson rubbed Mr. Bonds with some cream; Anderson said this would help Mr. Bonds recover; and Anderson gave Mr. Bonds some flax seed oil-- was during the 2003 season.**[17]

**(b)  The first time Mr. Bonds received tubes with what Anderson called flax seed oil was in 2003 or the beginning of the 2003 season.**[18]

Statement (a) responds to a compound and fatally ambiguous question (see Argument III, infra) but, to the extent that it can be understood, describes the first time a specific series of events occurred, while statement (b) addresses the time Mr. Bonds first received a single item from Anderson.  The content of the two statements is therefore distinct.

**(c)  Before the 2003 season, Mr. Bonds had never taken "anything" Anderson asked**

---

A.  No.  (Count III (d), at p. 7:2-4)

[17]  During the relevant questioning, Mr. Bonds described a time when he was experiencing fatigue and needed recovery. (Count IV (a), at p. 7:15-23)  In this connection, Mr. Bonds described how: someone told him to try a cream; Anderson came to the ballpark; Anderson rubbed Mr. Bonds with some cream; Anderson said this would help Mr. Bonds recover; and Anderson gave Mr. Bonds some flax seed oil. (Count IV (a), at p. 7:23-27) Shortly thereafter, the following colloquy ensued:

Q.  When did that (sic) happen for the first time?

A.  Not until 2003, this season. (Count IV (a), at p. 7:28 - 8:4)

[18]  Q.  . . . And the first time [Mr. Bonds thought he received tubes with what Anderson told him was flax seed oil] was the beginning of this year's season, in 2003?

A.  Yes, 2003, because I was battling with the problems with my father and the – just the lack of sleep, lack of everything. (Count IV (b), at p. 8:6 - 12)

**him to take other than vitamins.[19]**

This statement addresses the ingestion of substances proffered by Anderson during a specific time and is therefore substantively distinct from statements (a) and (b).

**(d)  Before the 2003 season Mr. Bonds had never taken any "oils like this or anything like this" that Anderson had asked him to take.[20]**

Putting aside the failure of the indictment to identify the substance (the "this") to which the prosecutor's question had referred (see Ind., at 8:14-26), statement (d) essentially duplicates the substance of statement (c), supra.

**(e)  Mr. Bonds recalled getting from Anderson items including or like flax seed oil or the cream after the 2002 season, but not after the 2001 season.[21]**

Statement (e) differs from statements (a) insofar as (e) is framed in terms of Mr. Bonds' recall and does not address the timing of a specific incident. Statement (e) differs from statement (b) to the extent that (e) addresses flax seed oil in all forms and addresses "the cream." Statement (e) concerns the receipt, as opposed to the use, of substances, and therefore also differs from statements (c) and (d).

**(f)  Mr. Bonds was not getting either the clear or the cream from Anderson in December 2001, and instead recalled getting them toward the end of 2002, after the**

---

[19]  . . .

    Q.  — prior to the last season, you never took anything that [Anderson] asked you to take, other than vitamins?

    A.  <u>Right.  We didn't have any other discussions</u>.  (Count IV (c), at p. 8:14 - 24)

[20]  [Continuing from question and answer set forth in footnote 19, supra:]

    Q.  No oils like this (sic) or anything like this before?

    A.  <u>No, no , no, not at all.  Not at all</u>.  (Count IV (d), at p. 8:25-26)

[21]  Q.  . . . Were you getting [what you understood to be flax seed oil and the cream] during that period of time [after the 2001 season] from Greg?

    A.  <u>No</u>.  Like I said, <u>I don't recall having anything like this at all during that time of year</u>.  It was toward the end of 2000, after the World Series, you know, when my father was going through cancer.  (Count IV (d), at p. 8:28 - 9:12)

1   season.[22]

2       The first portion of this statement is essentially subsumed within statement (e). The

3   second portion of the statement addresses the initial time of receiving certain substances in any

4   form and is therefore distinct from the previous statements.

5       **(g) Mr. Bonds recalled getting the clear or the cream from Greg Anderson after the**

6   **2002 season.[23]**

7       This statement is identical to the second portion of statement (f).

8       **(h) Mr. Bonds did not recall getting flax seed oil during January 2002, but did**

9   **recall getting it "in the 2002 time and 2003 season."[24]**

10      Insofar as it relates to receipt of flax seed oil, statement (h) is similar to statement (e) but

11  is different from (e) to the extent it addresses the specific timing of that event.

12      In light of the above, statements (a), (b), (c), (e), (f), and (h), or portions thereof, are

13  duplicitous.

14      **D.    The Court Should Require the Prosecution Either to Elect a**
        **Single Alleged Offense in Each Count Or To Dismiss the**
15      **Indictment**

16      The foregoing analysis leaves no doubt that each count of the indictment alleges an

17  amalgam of distinct offenses in connection with Mr. Bonds' grand jury testimony. Nor can there

18  be any doubt that this patent defect raises all the fair trial concerns discussed earlier.

19  _____

20  [22]  Q.  . . . And what about the – the clear – either the clear or the cream, were you
            getting either of those substances in December of 2001 from Mr. Anderson?

21      A.  No. Like I said, I recall it being toward the end of 2002 – 2002, after 2002 season.
22          (Count IV (f), at p. 9:14 - 18)

23  [23]  [Continuing from question and answer set forth in footnote 22, supra:]

24      Q.  Okay.

25      A.  And that's what I recall.  (Count IV (g), at p. 9:19 - 20)

26  [24]  Q.  And you weren't getting this flax seed oil stuff during that period of time [January
            2002]?

27      A.  Not that I recall. Like I say, I could be wrong. But I'm – I'm – going from my
28          recollection it was, like, in the 2002 time and 2003 season.  (Count IV (h), at p.
            9:22 - 25)

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike
                                        -13-

1   Specifically, and even apart from raising obvious unanimity and double jeopardy

2   concerns, the indictment deprives Mr. Bonds of fair notice as to which of several offenses in a

3   given count the jury may be asked to entertain as the critical one for purposes of determining

4   guilt or innocence. As a practical matter, moreover, a trial founded on the present allegations

5   will trigger countless issues as to the admissibility of evidence that may have relevance to one

6   offense but not another, despite their inclusion in the identical count. Even Barry Bonds cannot

7   be expected to make contact with a fastball, slider, and knuckler thrown him simultaneously.

8   Permitting the present indictment to stand in its present form will prejudice Mr. Bonds' ability to

9   defend against the government's accusations in this serious matter.

10   There are three primary remedies for a duplicitous indictment. A duplicitous indictment

11   may be cured "if either (1) the government elects between the charges in the offending count, or

12   (2) the court provides an instruction requiring all members of the jury to agree as to which of the

13   distinct charges the defendant actually committed." *United States v. Ramirez-Martinez*, 273 F.3d

14   903, 915 (9th Cir. 2001) (citing *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981)).

15   A court may also dismiss a duplicitous indictment.[25]

16   The choice of remedy depends on the point in the proceedings at which the defendant

17   raises an objection to the duplicity.

18   A valid duplicity objection raised before trial will force the government to
    elect the offense upon which it will proceed, but will not require the

19   dismissal of the indictment. If a pretrial objection is not made, but the
    defect is noted before the case is submitted to the jury, the trial court can

20   still cure the error by making a corrective jury instruction.

21   5 Wayne R. LaFave et al., *Criminal Procedure* § 19.3(c) (2d ed. 1999 & 2007 Supp.) (footnotes

22   citing cases omitted).

23   The distinction in remedies flows from the waiver rule of Fed. R. Crim. Pro. 12(b)(3).[26]

24

25   [25] *United States v. Aguilar, supra,* 756 F.2d at 1420-21 (approving dismissal of count or

26   election of actionable offense as remedy for duplicity); *United States v. Hardy*, 762 F. Supp.
    1403, 1410 (D. Haw. 1991) (dismissing a count for duplicity).

27   [26] Prior to the 2002 stylistic amendment to Rule 12, current Rule 12(b)(3) was numbered

28   12(b)(2). *See United States v. Al Hedaithy*, 392 F.3d 580, 586 n.6 (3d Cir. 2004). Consequently,
    prior cases cited herein refer to 12(b)(2) motions.

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-14-

Challenges to the face of an indictment based on duplicity fall within the provision of Rule 12(b)(3), and are thus considered waived if not raised prior to trial. *See United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997); *United States v. Savage*, 67 F.3d 1435, 1439 (9th Cir. 1993); *United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988).

But a failure to raise a duplicity objection in a 12(b)(3) motion only waives the election remedy — it does not waive the duplicity objection altogether. In *Gordon*, the Ninth Circuit explained why:

> In this case Gordon first raised the duplicity issue in his Rule 29 motion at the close of the government's case-in-chief and he has not made any showing of good cause. We conclude that appellants have waived an objection to the *form* of the indictment and their right to force the government to divide Count I into two separate conspiracy counts. Appellants, however, have a right under Article III, sec. 2 and the sixth amendment to a unanimous jury verdict. This constitutional claim was not waived.

844 F.2d at 1400-01 (emphasis in original, citations omitted). Thus, by failing to object pretrial, Gordon waived his right to the election remedy, and thus was entitled only to the remedy afforded by a unanimity instruction.

Other courts have followed *Gordon* and reached similar conclusions.

> Pursuant to Fed. R. Crim. P. [12(b)(3)], if a defendant wishes to get a duplicitous indictment dismissed, he must raise the issue before trial. In other words, the technical error of the duplicity must be raised before trial. If the technical error is not objected to then, the trial will proceed even though the indictment charges two separate offenses in one count under the presumption that the court's jury instructions can clear up any ambiguity created by the duplicity.

*United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997) (citing *Gordon*); *accord United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002); *United States v. Verrecchia*, 196 F.3d 294, 297 (1st Cir. 1999);[27] *see also United States v. Aguilar*, 756 F.2d at 1418, 1420-21 (9th Cir. 1985) (approving the remedy of dismissal or, alternatively election).

---

[27] Other courts have applied a similar distinction to the related problem of multiplicity. If a defendant wishes to make a multiplicity objection to the form of the indictment, he must do so in a 12(b)(3) pretrial motion, but an objection to multiplicity in sentencing can be made at any time prior to sentencing. *See United States v. Galvan*, 949 F.2d 777 (5th Cir. 1991); *United States v. Mastrangelo*, 733 F.2d 793 (11th Cir. 1984); *United States v. v. Rosenbarger*, 536 F.2d 715 (6th Cir. 1976).

1  The different remedies correspond to the different purposes that the duplicity rule serves.

2  The purposes of the prohibition of duplicity include:

3      (1) the prevention of double jeopardy, (2) an assurance of adequate notice
       to the defendant, (3) the provision of a basis for appropriate sentencing,
4      and (4) the danger that a conviction was produced by a verdict that may
       not have been unanimous as to any one of the crimes charged.

5  *United States v. Bruce*, 89 F.3d 886, 890 (D.C. Cir. 1996) (internal quotation marks omitted). If

6  the defendant seeks to vindicate his right to notice so that he can prepare his defense—and he

7  thus seeks an election — he must do so prior to trial at a time when the government still has a

8  fair opportunity to correct the error. *See United States v. Weathers*, 186 F.3d 948, 954-55 (D.C.

9  Cir. 1999). If, however, the defendant merely seeks to ensure unanimity, he need only raise his

10  objection at the instructional phase. In short, the remedy distinction is a function of the different

11  purposes of the duplicity rule and the different points in criminal proceedings when each interest

12  ripens.

13      In this case, the defendant is raising his duplicity claim and election demand in timely

14  fashion pursuant to a Rule 12(b)(3) motion. He is therefore entitled, at a minimum, to the

15  remedy of election. *See United States v. Hardy*, supra, 762 F.Supp. at 1410 (rejecting unanimity

16  instruction as cure for duplicitous count given the potential infringement of the defendant's Fifth

17  and Sixth Amendment rights should the court "roll the dice and preserve the confusion of the

18  count until a jury instruction at the end of trial. . .")

19  **II.    THE OBSTRUCTION OF JUSTICE OFFENSE ALLEGED IN COUNT V IS
20         LIKEWISE DUPLICITOUS BECAUSE IT COMPLAINS OF ALL OF THE
          DUPLICITOUS STATEMENTS ALLEGED IN THE FALSE TESTIMONY
21         COUNTS AND OTHERS, LIKEWISE REQUIRING THE GOVERNMENT TO
          ALLEGE THE SINGLE OFFENSE ON WHICH IT IS FOUNDED**

22      For purposes of this argument, defendant incorporates the authority concerning the defect

23  of duplicity and related remedies set forth in Argument I, supra.

24      As noted, Count V of the Indictment charges Mr. Bonds with obstruction of justice in

25  violation of 18 U.S.C. section 1503. Specifically, Count V alleges that on December 4, 2003 —

26  the same date placed at issue in the preceding false testimony counts — Mr. Bonds

27      . . . corruptly endeavor[ed] to influence, obstruct, and impede the due
        administration of justice, by knowingly giving Grand Jury testimony that was
28      intentionally evasive, false and misleading, that is:

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-16-

(a)    The false statements made by the defendant as charged in
Counts 1-4 of this indictment; and

(b)    Evasive and misleading testimony.

Count V, at p. 10:7-12.

Subsection (a) of Count V on its face complains of all four of the "offenses" alleged in Counts I through IV of the indictment. As defendant has demonstrated, moreover, each of those purported offenses incorporates multiple offenses that have been improperly combined within those previous counts. This is nothing less than layering one level of duplicitous allegations on top of another, finished by adding unspecified additional falsehoods as alleged in subsection (b), all in violation of the authority discussed in Argument I, supra. Pursuant to that authority, the Court should require the government to elect the specific false statement that forms the basis for Count V so that defendant can fairly prepare a defense.

## III.    A HOST OF QUESTIONS AND RELATED ANSWERS IDENTIFIED IN THE INDICTMENT ARE FUNDAMENTALLY AMBIGUOUS AND CANNOT SUPPORT THE FALSE TESTIMONY CHARGES THAT ARE FOUNDED ON THEM

### A.    A Question or an Answer that is Fundamentally Ambiguous Cannot Support a False Testimony Charge and is Properly Subject to a Motion to Strike or Dismiss

#### 1.    Some Questions Are Fundamentally Ambiguous As a Matter of Law

A charge of false testimony cannot rest on a defendant's responses to ambiguous questions. *Bronston v. United States*, 409 U.S. 352, 362 (1973). "Precise questioning is imperative as a predicate for the offense of perjury." *Id.* Nor is the jury permitted to guess at what meaning a defendant may have ascribed to such a question. *United States v. Martellano*, 675 F.2d 940, 946 (7th Cir. 1982). The responsibility for framing the inquiry rests clearly and directly with the prosecutor. *United States v. Tonelli*, 577 F.2d 194, 198 (3d Cir. 1978).

Certain questions may be deemed only arguably ambiguous and it is within the province of the jury to decide whether the responses they evoke constitute false testimony. See, e.g., *United States v. Diogo*, 320 F.2d 898, 907 (2d Cir. 1963). On the other hand, some questions are so inherently ambiguous that the Court may declare the related response insufficient to support a false testimony conviction as a matter of law. *See, e.g., United States v. Sainz*, 772 F.2d 559, 564

1    (9th Cir. 1985) (holding that question incorporating the word "procedure" was fatally ambiguous

2    when used by prosecutor during investigation of corruption in INS because term could refer to

3    entire procedure of admitting automobiles across border or to some individual step in that

4    procedure); *United States v. Lattimore*, 127 F.Supp. 405, 406 (D.D.C. 1955) (seminal case

5    holding fundamentally ambiguous question during McCarthy hearing asking whether defendant

6    was a "follower of the Communist line."). Furthermore, because a fundamentally vague question

7    is legally insufficient to support a false testimony conviction, it is properly subject to challenge

8    by means of a pre-trial motion to dismiss. *United States v. Serafini*, 167 F.3d 812 (3d Cir. 1999);

9    *United States v. Naegle*, 341 B.R. 349 (D.D.C. 2006); *United States v. Caputo*, 288 F. Supp.

10   2d 912, 922-23 (N.D. Ill. 2003). Where such a challenge is sustained, the proper remedy is to

11   dismiss or strike the flawed question and answer from the indictment. *Serafini*, 167 F.3d at 824.

12                           **2.    Factors Considered**

13           A question is fundamentally ambiguous when "men [sic] of ordinary intelligence" cannot

14   arrive at a mutual understanding of its meaning." *United States v. Boone*, 951 F.2d 1526, 1534

15   (9th Cir. 1991). The courts have applied a number of factors in making this determination.

16   Among them are the following:

17           *First*, some words or phrases are so inherently vague or subject to differing interpretations

18   that this defect alone renders them fundamentally ambiguous. See, e.g., *Sainz, supra*; *Lattimore*

19   *supra*; see also *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986) (reversing conviction

20   based on fundamental ambiguity where prosecutor used the pronoun "you" to refer to defendant

21   in series of questions but did not clarify when he was referring to the defendant in capacity as

22   trustee and when he was referring to the defendant in individual capacity); *United States v.*

23   *Slawik*, 548 F.2d 75, 85 (3d Cir. 1977) (reversing false testimony conviction because, inter alia,

24   the questioner's unqualified reference to "it" and "this" throughout a series of questions made the

25   questions fundamentally ambiguous); see also *United States v. Schulman*, 817 F.2d 1355, 1360

26   (9th Cir. 1987) (pre-trial order dismissing false testimony counts affirmed where supporting

27   allegations failed to provide adequate notice of specific purported falsity in defendant's answer).

28           *Second*, a compound question or a question subject to more than one interpretation may

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-18-

be fundamentally ambiguous. *See, e.g., Tonelli, supra,* 577 F.2d at 199-200 (questioning whether defendant "handled" certain pension funds fundamentally ambiguous where handling could have meant touching the check or effecting the transaction, and it was the prosecutor's responsibility to clarify which question he was asking); *United States v. Eddy,* 737 F.2d 564, 571 (6th Cir. 1984) (reversing conviction where question asked incorporated at least four separate lines of inquiry).

*Third*, it may be impossible to determine if a witness understood the meaning of a question if it contains serious errors in syntax or grammar. See, e.g., *United States v. Ryan,* 828 F.2d 1010, 1016-17 (3d Cir. 1987) (conviction for false testimony reversed where response to a request for "Previous Address (last five years)" on a credit card application was fundamentally ambiguous because singular form of the noun "address" on application could have been variously construed as asking the applicant to supply any previous address he had within last five years, the applicant's most recent address, or all addresses applicant had within the last five years); *United States v. Farmer,* 137 F.3d 1265, 1270 (10th Cir. 1998) (court found the question "Have you talked to Mr. McMahan, the defendant, about your testimony here today?" ambiguous because it was unclear whether phrase "here today" was intended to modify the word "talked" or the word "testimony," such that jury could not reasonably determine if prosecutor was asking whether witness had talked to the defendant on the day of her testimony before grand jury or whether she had talked with him on some earlier occasion about the testimony she was going to give on that day).

*Fourth*, the context of the question may disclose whether or not it is fundamentally ambiguous regardless of the words or phrases employed. *Saenz,* supra, 772 F.2d at 562 (Court should consider the context of the defendant's statement "to determine whether the defendant and his questioner joined issue on a matter of material fact to which the defendant knowingly uttered a false declaration.")

### 3.     Defendant's Ambiguous Answers

It has long been established that false testimony cannot be based upon an answer that is literally true, even though the answer is incomplete, misleading, or non-responsive. *Bronston,* supra, 409 U.S. at 361-62. Neither, however, can false testimony be based upon a non-

1   responsive answer, and therefore ambiguous, statement, the literal truthfulness of which cannot

2   be ascertained. *United States v. Esposito*, 358 F. Supp. 1032, 1033 (D. Ill. 1973); *United States v.*

3   *Cobert*, 227 F. Supp. 915, 919 (S.D. Cal. 1964).

4       **B.    Various Questions And/or Answers Set Forth in Counts I-V**
            **Are Fundamentally Ambiguous and Are Therefore Insufficient**
5           **to Support a False Testimony Charge**

6       Confronting Mr. Bonds with documents and papers he had never before had an

7   opportunity to see, the prosecutors pressed him to answer numerous questions about them.

8   Furthermore, the questions posed to him by two different prosecutors were frequently imprecise,

9   redundant, overlapping, and frequently compound. Following are the questions and answers,

10  identified by the count and letter employed in the indictment, which, considered alone and in

11  context, are fundamentally ambiguous and therefore insufficient as a matter of law to support the

12  instant false testimony charges:

13              **1.    Count One**

14      **(b)** As quoted in note 7, supra, in this question the prosecutor asked Mr. Bonds whether

15  he had been taking steroids "in the weeks and months leading up to November 2000 . . .," and

16  Mr. Bonds said that he had not. The question is fundamentally ambiguous as to time period at

17  issue because there is simply no reasonable basis on which to identify the starting point of the

18  period and thus no basis for determining whether the response was a knowing falsehood.

19  Furthermore, a truthful answer to the "weeks" question could be different than a truthful answer

20  to the "months" question. For the same reasons, it is impossible to determine from the question

21  the time period the government will seek to "prove" as one during which Mr. Bonds purportedly

22  took steroids.

23      **(c)** As quoted in note 8, supra, the prosecutor here asked whether Mr. Bonds had been

24  taking "anything like" steroids "in the weeks and months leading up to November 2000 . . ." In

25  addition to suffering from the same ambiguity affecting question I (b), supra, this question utterly

26  fails to reasonably identify what substances can be deemed "anything like" steroids and what

27  cannot. Here again, there is simply no basis on which to determine the scope of the category at

28  issue, and thus no basis to reasonably ascertain what government proof would establish the

1   presence of a false response.

2   **(d)** As quoted in note 9, supra, in this question Mr. Bonds was asked whether he was
3   obtaining testosterone from Anderson during "this period of time." (Ind., Count I, at p. 4:15-17)
4   "This period of time," however, is not specified in question (d). In the immediately preceding
5   section of the indictment separated from question (d) by asterisks (id., at p. 4:8-13), the
6   prosecutor made reference to a time period ". . . starting in December 2001. . ." (id., at p. 4:8).
7   In the section preceding that on the same page (id., at p. 3:23 - 4:6), again set off by asterisks,
8   reference is made to "the weeks and months leading up to November 2000." (Id., at p. 4:1). The
9   different time periods cited prevent a reliable determination of which was placed in issue by the
10  prosecutor's question. Each of the cited time periods, moreover, is ambiguously described for
11  the reasons stated in connection with question (b), *supra*.

12              **2.    Count Two**

13  **(a)** As quoted in note 11, supra, the prosecutor here asked whether, apart from certain
14  physicians, "other individuals like Mr. Anderson or any associates of his" had ever injected
15  anything into Mr. Bonds or taken anything out, to which Mr. Bonds said no. Here again, it is
16  impossible to determine the identity of the individuals the prosecutor's question reasonably
17  placed in issue. Is Mr. Anderson himself alone at issue? If not, who is included as an
18  "associate" of Mr. Anderson? Is a personal trainer unknown to Mr. Anderson someone "like"
19  Mr. Anderson or his "associates"? The parameters of the referenced class is utterly undefined
20  and the question fundamentally vague.

21              **3.    Count Three**

22  **(a)** As quoted in note 13, supra, in this exchange, the prosecutor inquired whether
23  Anderson had ever "talk[ed] to" Mr. Bonds (sic) or given him anything called human growth
24  hormone, and Mr. Bonds said no. If Mr. Bonds' denial of having *received* human growth
25  hormone was truthful, does the government intend to prove this charge on the basis of having
26  *talked* about human growth hormone alone? Mr. Bonds is entitled to due process notice of that
27  intent if that is the case.

28  Furthermore, to the extent it refers to discussions, this question plainly meant to ask

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-21-

1  whether Mr. Anderson had talked to Mr. Bonds about human growth hormone (rather than about

2  anything else), but this does not overcome the fundamental ambiguity that appears. Specifically,

3  because the prosecutor did not clarify the question, it cannot be ascertained whether Mr. Bonds

4  can be deemed untruthful if he in fact had *any* discussion about this substance at some time, or

5  whether the question was understood as referencing significant or prolonged discussions between

6  Anderson and Mr. Bonds about the substance as a part of the latter's personal training regimen,

7  or anything in between. Accordingly, Mr. Bonds' statement on the matter is not actionable.

8  ### 4.    Count Four

9  (a) As set forth in note 17, supra, in his colloquy with the prosecutor, Mr. Bonds

10  described a number of events that had occurred at the ballpark on one occasion, including the

11  following: someone told him to try a cream; Anderson came to the ballpark; Anderson rubbed

12  him with some cream; Anderson said this would help him recover; and Anderson gave him some

13  flax seed oil. (Count IV (a), at p. 7:23-27) In the wake of hearing that description, the prosecutor

14  then asked Mr. Bonds, "When did *that* happen for the first time? (Count IV(a), at p. 8:3,

15  emphasis added), to which Mr. Bonds responded, "Not until 2003, this season."

16  This exchange does not and cannot establish that the prosecutor and Mr. Bonds were

17  addressing a single matter of material fact to which Mr. Bonds knowingly made a false

18  declaration. *Sainz*, 772 F.2d at 564. That is because there is no reliable means for determining

19  the event to which the prosecutor referred when he inquired about "that" having happened for the

20  first time. The question was thus irremediably compound; based on the relevant exchange, the

21  prosecutor might have been referring to the first time Anderson came to the ballpark; the first

22  time he rubbed Mr. Bonds with some cream; the first time he gave Mr. Bonds some flax seed oil;

23  or the first time he did one or some or all of these things together for the first time.

24  (c) As quoted in note 19, supra, the prosecutor in this question asked Mr. Bonds whether,

25  before the previous season, he had ever taken "anything" Anderson asked him to take "other than

26  vitamins," and Mr. Bonds said he had not *and* that they had not had "any other discussions."

27  Based on this question, however, it is impossible to say whether the denial would be deemed

28  false if Mr. Bonds had consumed water on Mr. Anderson's advice, or over the counter

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

supplements not labeled as vitamins per se, or any number of other innocuous substances. Additionally, Mr. Bonds' reference to discussions indicates that he was not responding to a question about ingestion at all, thereby establishing that he and prosecutor cannot have "joined issue on a matter of material fact to which the defendant knowingly uttered a false declaration." *Saenz*, 772 F.2d at 562.

(d) As quoted in note 20, supra, Mr. Bonds denied having taken "oils like this" "before." This question is fundamentally ambiguous on at least three grounds. First, the question completely fails to identify the "this" to which reference is made. Second, the question fails to otherwise specify or limit the class of substances which could reasonably be deemed to be like the "this." Finally, the question is inherently ambiguous concerning the time period at issue, since it appears to inquire about any time in the past ("before"), but immediately follows a question (Count IV (c)) which made reference to a limited time period (i.e., "prior to last season"). (See Count IV (c), at p. 8:22)

(e) As to response "e," Mr. Bonds is first told by the prosecutor that he has previously testified that the first time he received the cream or flaxseed oil from Greg Anderson was prior to the season just completed, i.e., 2003. The witness is then asked whether the first time was in fact two years earlier, more specifically in December of 2001. According to the indictment, Mr. Bonds replied:

> A.     No.  Like I said, I don't recall having anything like this at all during that time of year.  It was toward the end of 2000, after the World Series, you know, when my father was going through cancer.  (Count IV (d), at p. 9:12)

Because of the confused nature of this exchange, it is simply impossible to know what falsehood Mr. Bonds is accused of telling at this juncture in his testimony. The import of the false testimony question is that Mr. Bonds erroneously claimed in a prior response that the first time he received the items in question was in 2003, with the prosecution now strongly implying that the true time frame was late 2001. Mr. Bonds, however, did not reassert in his false testimony response that the first time he received the cream and flax seed oil was 2003, but stated instead that it was "the end of 2000," although he also said that to the best of his recollection he

1   did not receive them in late 2001. The statement concerning the year 2000 is not underlined,

2   suggesting that the government does not allege that claim to have been untruthful.

3       Given this back and forth, it is unclear what lie the prosecution is alleging that Mr. Bonds

4   told. Is the government claiming that Mr. Bonds here maintained, as he did at other points in his

5   testimony, that the first time he received the cream or the flax seed oil was in 2003? Or has the

6   government, while conceding that Mr. Bonds truthfully corrected his testimony by backing the

7   date up to 2000, nevertheless accused him of lying by testifying that, to the best of his

8   recollection, he did not receive these substances in the time frame of late 2001? Each theory of

9   false testimony would no doubt involve the presentation of different evidence by the defense, and

10  Mr. Bonds is thus entitled to know on which one the government will rest its case.

11      **(h)** This exchange dealt with the issue of whether Mr. Bonds received the flax seed oil in

12  a particular time period, in this instance January of 2002. Mr. Bonds replied to the prosecutor's

13  question as follows:

14  A.  Not that I recall. Like I say, I could be wrong. But I'm – I'm – going from my

15      recollection it was, like, in the 2002 time and 2003 season. (Count IV (h), at p. 9:24-26)

16      Mr. Bonds here made no clear assertion of fact as to whether he did or did not receive the

17  flax seed oil in January of 2002, only that he did not recall doing so. The government thus would

18  be required to prove not merely that Mr. Bonds did receive the questioned substance in January

19  of 2002, but that he in fact recalled having done so at the time of his grand jury testimony and

20  nonetheless lied about the state of his recollection.

21      The government, however, has confused the nature of its accusation as to this exchange

22  by underlining a second qualification added by Mr. Bonds to his response. He not only stated

23  that he was testifying only as to the best of his recollection but also that his recollection "could be

24  wrong." If, as the government necessarily maintains by having underlined the phrase "I could be

25  wrong," Mr. Bond lied in uttering those words, that would mean that the time frame to which he

26  then testified — "the 2002 time and the 2003 season — false testimony could not be wrong.

27  Viewed in their totality, the allegations in Count IV (h) constitute an oxymoron, and cannot meet

28  the standards of clarity demanded of a federal indictment.

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-24-

## CONCLUSION

The government has accused Mr. Bonds of more than a single offense in every count of the indictment, and many of these duplicitous allegations are simply too vague and confusing to permit the preparation of a defense. For the reasons set forth above, the prosecution should be required to elect the single, clearly defined offense within each duplicitous false testimony count on which it intends to rely at trial, and the remaining offenses alleged within each such count should be stricken. Furthermore, the false testimony counts or portions thereof that defendant has exposed as fundamentally ambiguous should be dismissed and/or stricken.

Dated: January 23, 2008

Respectfully submitted,

RUBY & SCHOFIELD

ARGUEDAS, CASSMAN & HEADLEY, LLP

RAINS, LUCIA & WILKINSON, LLP

RIORDAN & HORGAN

By   /s/  Dennis P. Riordan
        Dennis P. Riordan

Counsel for Defendant
Barry Lamar Bonds

Defendant's Notice Of Motion
And Motion To Dismiss Or Strike

-25-