JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

MATTHEW A. PARRELLA (NYSBN 2040855)
JEFFREY D. NEDROW (CASBN 161299)
JEFFREY R. FINIGAN (CASBN 168285)
J. DOUGLAS WILSON (DCBN 412811)
Assistant United States Attorneys

    450 Golden Gate Avenue
    San Francisco, California 94102
    Telephone: (415) 436-7232
    Facsimile: (415) 436-7234
    Email: jeffrey.finigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. CR 07-0732 SI |
| | ) | |
| Plaintiff, | ) | |
| | ) | **UNITED STATES' RESPONSE TO** |
| | ) | **DEFENDANT'S MOTION TO** |
| v. | ) | **DISMISS, OR ALTERNATIVELY,** |
| | ) | **TO STRIKE PORTIONS OF THE** |
| | ) | **INDICTMENT** |
| BARRY LAMAR BONDS, | ) | |
| | ) | Date: February 29, 2008 |
| Defendant. | ) | Time: 11:00 a.m. |
| | ) | Judge: Hon. Susan Illston |

U.S. RESPONSE TO MOTION TO DISMISS
CR 07-0732 SI

1

2

## TABLE OF CONTENTS

I.    Counts One through Four are not duplicitous.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Applicable legal principles. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Each count alleges a group of closely related false statements.. . . . . . . . . . 5

        1.    Count One.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.    Count Two. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        3.    Count Three. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.    Count Four. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        5.    Count Five. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.   The perjury counts do not rest on fundamentally ambiguous statements.. . . . . . 11

    A.    Applicable legal principles. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.    The questions asked Bonds were not fundamentally ambiguous.. . . . . . . . 13

        1.    Count One.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.    Count Two. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        3.    Count Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        4.    Count Four. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bronston v. United States*, 409 U.S. 352 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Aguilar*, 756 F.2d 1418 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Boone*, 951 F.2d 1535 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . 13, 16, 17

*United States v. Bussell*, 414 F.3d 1048 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Garcia*, 400 F.3d 816 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Gebhard*, 422 F.2d 281 (9th Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*United States v. Gordon*, 844 F.2d 1397 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Hinton*, 127 F. Supp. 2d 548 (D.N.J. 2000). . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Holley*, 942 F.2d 916 (5th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Mastelotto*, 717 F.2d 1238 (9th Cir.1983). . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. McKenna*, 327 F.3d 830 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Olsowy*, 836 F.2d 439 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Ramirez-Martinez*, 273 F.3d 903 (9th Cir. 2001). . . . . . . . . . . . . . . . . 2-4

*United States v. Robinson*, 651 F.2d 1188 (6th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Ryan*, 828 F.2d 1010 (3d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Tyrone*, 451 F.2d 16 (9th Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. UCO Oil Co.*, 546 F.2d 833 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Vitello*, 425 F.2d 416 (9th Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Yarbrough*, 852 F.2d 1522 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . 4

## FEDERAL STATUTES and FEDERAL RULES

18 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 1503. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1

18 U.S.C. § 1623(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2

Fed. R. Crim. P. 7(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3

4

## MISCELLANEOUS

5

Federal Practice and Procedure: Criminal § 145 at 83-84 (1999). . . . . . . . . . . . . . . . . . . . 4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Bonds moves to dismiss the indictment on the ground that Counts One through Four, which charge Bonds with perjury, and Count Five, which charges Bonds with obstruction of justice, are duplicitous.  He also argues that some of the questions that support the perjury allegations in Counts One through Four are so "fundamentally ambiguous" that they cannot support perjury charges.  Both arguments should be rejected. First, none of the perjury counts is duplicitous; to the contrary, as the evidence at trial will show, each count charges that Bonds repeatedly lied in answering the same question or questions on the same subject matter.  In any event, duplicitous factual allegations may be remedied by instructing the jury that it must be unanimous in determining that one or more of the statements alleged in each count is perjurious, and not by dismissing the indictment.  Second, each count rests on Bonds's answers to unambiguous questions, and Bonds's contrary contention ignores the plain language of the prosecutor's questions, the context in which they were asked, and Bonds's failure to express any confusion when answering them.  Accordingly, the motion should be denied.

## DISCUSSION

### I.    **Counts One through Four are not duplicitous**.

Bonds is charged with four counts of perjury, in violation of 18 U.S.C. § 1623(a), and one count of obstruction of justice, in violation of 18 U.S.C. § 1503.  Each of the perjury counts alleges that Bonds made more than one false statement to the grand jury on a particular subject matter.  Count Five charges Bonds with obstruction of justice based on his repeated false statements and evasive testimony in the grand jury.

### A.    **Applicable legal principles**

Federal Rule of Criminal Procedure 7(c)(1) provides that a count of an indictment "may allege…that the defendant committed [the offense] by one or more specified means."  The advisory committee notes explain that this provision "is intended to eliminate the use of multiple counts for the purpose of alleging the commission of the offense by different means or in different ways."  Fed. R. Crim. P. 7, Advisory Committee Notes; *see also United States v. Hinton*, 127 F. Supp. 2d 548, 553 (D.N.J.

1  2000) ("An indictment is not duplicitous in cases where the indictment does not charge

2  different offenses in the same count, but instead charges different methods of completing

3  the same offense.").  Although a count may allege that a defendant committed an offense

4  in different ways, a single count may be duplicitous when it "joins two or more distinct

5  and separate offenses." *United States v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir.

6  2001).  An indictment may be either legally or factually duplicitous.  For example, in

7  *Ramirez-Martinez*, 273 F.3d at 913-14, a single count charged defendant with two

8  separate statutorily defined offenses: (1) attempting to transport illegal aliens and (2) the

9  completed offense of transporting illegal aliens.  The Ninth Circuit held that including

10  both offenses in the same count was duplicitous.  *See also United States v. Garcia*, 400

11  F.3d 816, 819-20 (9th Cir. 2005) (charging aiding and abetting and principal liability in

12  the same count is not duplicitous); *United States v. Aguilar*, 756 F.2d 1418, (9th Cir.

13  1985) (discussing indictment that alleged in single count that defendant was illegally

14  "acting as" an INS officer and was "obtaining money in such character," each in violation

15  of 18 U.S.C. § 912); *United States v. UCO Oil Co.*, 546 F.2d 833, 837-38 (9th Cir. 1976)

16  (considering whether 18 U.S.C. § 1001 defines a single offense or multiple offenses).  By

17  contrast, in *United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988), the defendant

18  alleged that an indictment was factually duplicitous because a single count charged two

19  separate conspiracies.

20  Bonds contends that the indictment against him is duplicitous because each count

21  alleges that he made more than one perjurious statement.  As the Ninth Circuit noted in

22  *United States v. Vitello*, 425 F.2d 416, 418 (9th Cir. 1970), however, "well settled law"

23  permits "the inclusion of several specifications of falsity in a single count of perjury" and

24  allows "proof of any one of such specifications…to support a verdict of guilty."  In fact,

25  the Ninth Circuit has reversed convictions because, the court concluded, the government

26  improperly charged separate false statements in multiple counts.  As the court explained

27  in *United States v. Gebhard*,

28          [Defendant was charged with thirty-two counts of perjury.  If he in fact told
         separate lies, each of which could have hindered the grand jury in its

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> investigation, then he could properly be separately charged for each lie.  On
> the other hand, we do not think it proper that the government bludgeon a
> witness who is lying by repeating and rephrasing the same question, thus
> creating more possible perjury counts.

422 F.2d 281, 289-90 (9th Cir. 1970).  In that case, the court examined whether separate

counts "involve[d] the same question for all practical purposes."  Using this analysis, the

court reversed six counts that, it found, rested on the same "lie" as another count.  *Id*. at

290.  Similarly, in *United States v. Olsowy*, 836 F.2d 439, 443 (9th Cir. 1988), the court

held that a defendant was improperly charged with three counts of making a false

statement, in violation of 18 U.S.C. § 1001, when he "made exactly the same [false] oral

denial to the same Secret Service agent twice and then signed a document embodying the

very same denial."  *See United States v. Tyrone*, 451 F.2d 16, 18 (9th Cir. 1971)

(indictment properly charges separate counts of perjury where "[e]ach count charges

perjury on a subject entirely separate and distinct from the other" and a "trier of fact could

well hold [the defendant] innocent on one and guilty on the other without creating any

type of conflict"); *see also United States v. Holley*, 942 F.2d 916, 928 (5th Cir. 1991) (test

for determining whether multiple offenses are involved in the same count is "whether

identical evidence will support each of them").

A duplicity claim is directed at the face of the indictment, not at the evidence to be

presented at trial.  *United States v. Gordon*, 844 F.2d at 1400.  For that reason, in

reviewing an indictment for duplicity, this Court's "task is…solely to assess whether the

indictment itself can be read to charge only one violation in each count."  *United States v.

Yarbrough*, 852 F.2d 1522, 1530 (9th Cir. 1988) (citing *United States v. Mastelotto*, 717

F.2d 1238, 1244 (9th Cir.1983)).

Finally, contrary to Bonds's assertion, duplicitous counts of the indictment need

not be dismissed.  The "'rules about…duplicity are pleading rules,'" and the inclusion of

duplicitous allegations in a single count "is not fatal to an indictment."  *United States v.

Ramirez-Martinez*, 273 F.3d at 915 (quoting *United States v. Robinson*, 651 F.2d 1188,

1194 (6th Cir. 1981)); *see also* 1A Charles A. Wright, *Federal Practice and Procedure:

Criminal* § 145 at 83-84 (1999) (duplicity "is not fatal and does not require dismissal of

the indictment"). Instead, "a defendant indicted pursuant to a duplicitous indictment may be properly prosecuted and convicted if *either* (1) the government elects between the charges in the offending count, *or* (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed." *Ramirez-Martinez*, 273 F.3d at 915 (emphasis added). Moreover, a necessary corollary of a finding that a count charges more than one perjury offense is that each of the duplicitous allegations would support a separate count. It follows that the government may remedy any duplicity in the indictment against Bonds by asking the grand jury to return a superseding indictment charging separate counts for each allegedly perjured statement. Accordingly, rather than electing among the charges in a duplicitous count, the government may elect to obtain a superseding indictment if the defendant is unwilling to remedy any duplicity by agreeing to a jury instruction that requires the jury to be unanimous in finding that at least one of the statements alleged in each count constituted perjury.

In sum, Ninth Circuit decisions make clear that the government must charge multiple specifications of perjury in a single count when, "for all practical purposes," each allegedly perjured statement repeats a single "lie," when each statement is an answer to the same question, or when the jury could reach inconsistent conclusions about the falsity of the allegedly perjurious statements. In fact, as *Gebhard* and *Olsowy* make clear, the government risks a finding that an indictment is multiplicitous if it charges a defendant in separate counts with perjury based on the defendant's repetition of the same false statement. Against that background, the four perjury counts against Bonds are plainly sufficient as charged.

**B.    Each count alleges a group of closely related false statements**.

**1.    Count One**

Count One alleges that Bonds lied in response to five questions intended to determine whether he had used anabolic steroids, and, in particular, whether Greg Anderson had ever given Bonds anabolic steroids. In the first allegedly perjured

statement (statement 1(a)), Bonds denied that he had ever taken any steroids given to him by Anderson.  In the second set of questions, the prosecutor referred to a document showing that "Barry B." tested positive for anabolic steroids in November 2000 and asked whether Bonds was taking steroids in the weeks and months leading up to November 2000.  Bonds answered, "No" (statement 1(b)).  When the prosecutor added "or anything like that?," Bonds said, "Not at all" (statement 1(c)).  In the third set of questions, the prosecutor, referring to a document that contains the initials "BB," asked whether Bonds obtained testosterone, a steroid, from Anderson in December 2001, and Bonds responded, "Not at all" (statement 1(d)).  And in the fourth set of questions, Bonds denied that in January 2001, he was taking "flax seed oil or the cream" or "any other steroids" (statement 1(e)).

All five of these specifications of perjury are properly alleged in a single count.  At the outset, there is no conflict between or among the statements, and the jury can render a single guilty verdict on Count One without making inconsistent findings about the truth or falsity of the five false statements alleged in the count.  In other words, on the face of the indictment, there is no logical inconsistency between any of the five alleged statements, and the jury could therefore find that each alleged statement was false without reaching an inconsistent result.

Moreover, although Bonds's allegation of duplicity raises a facial challenge to the indictment, the question whether each of the five alleged false statements is the same "lie" will depend on the government's evidence at trial.  For example, the first specification (statement 1(a)) alleges that Bonds falsely denied that he "ever" knowingly took steroids that he obtained from Greg Anderson, and the fourth specification (statement 1(d)) alleges that Bonds testified falsely when he said that he did not obtain testosterone from Anderson in December 2001.  Bonds argues (Mot. at 8) that "because testosterone was not defined by the prosecutors or Mr. Bonds to be a steroid," the proof that statement 1(d) is false may be "distinct" from the proof that statement 1(a) is false.  But if the government's evidence at trial (including the grand jury transcript as a whole)

shows that Bonds knew that testosterone was a steroid, then the evidence proving that statement 1(a) is false also would necessarily show that statement 1(d) is false. Similarly, in statement 1(e), Bonds denied that in January 2001 he was taking "the flax seed oil or the cream" or any other steroid. If the evidence shows that Bonds received the so-called "flax seed oil or the cream" or other steroids only from Anderson, then evidence showing that statement 1(a) was false would also prove that statement 1(e) was false.

In short, Bonds's assertion that the allegations of perjury within Count One are "distinct," and therefore duplicitous, asks the Court to ignore the prospect that the evidence at trial will show that all five false statements rest on a common nucleus of fact and involve essentially the same "lie." Put another way, the government submits that before hearing the evidence at trial the Court cannot conclude that the five specifications in Count One are duplicitous. If after hearing the evidence at trial, the Court concludes that the five statements are duplicitous, then it can address that flaw by giving an appropriate jury instruction on unanimity.

Any other approach could lead to the error identified in *Gebhard*. If the Court concludes, without hearing the evidence at trial, that the specifications of Count One are duplicitous, then the government may obtain a superseding indictment that charges each false statement as a separate count. If the evidence at trial shows that each of these four statements essentially repeats the same "lie," then Bonds can allege that the evidence established that the indictment is multiplicitous and that, as in *Gebhard*, the government is seeking to "bludgeon" him with multiple, repetitive counts. For that reason, the government submits, Bonds's allegation that Count One is factually duplicitous should be denied.

### 2.    Count Two

Bonds's duplicity challenge to Count Two suffers from similar flaws. That count rests on Bonds's testimony that Anderson never injected him with anything or gave him anything that had to be injected. In the first statement, the prosecutor asked Bonds, in essence, whether Anderson or any associates of his had ever injected anything into Bonds

or taken anything out of Bonds by a syringe, and Bonds answered, "No, no" (statement 2(a)). In the second statement, the prosecutor asked whether Anderson gave Bonds "anything that [Anderson] told [Bonds] had to be taken with a needle or syringe?," and Bonds confirmed that Anderson "never" gave him "anything like that" (statement 2(b)).

Both allegedly perjured statements turn on whether Anderson injected Bonds with anything or gave him any substance that necessarily had to be injected. Bonds argues (Mot. at 9-10) that the difference between Bonds's denial that Anderson injected him with anything and his statement that Anderson never gave him anything that had to be injected is sufficient to render Count Two "distinct and duplicitous." Plainly, however, the prosecutor's questioning is an effort to ensure that Bonds's answer to the first question is not literally true but misleading. *See Bronston v. United States*, 409 U.S. 352, 362 (1973) (literally true but misleading statement is not perjurious). The point of the prosecutor's first question is to find out whether Anderson had ever injected Bonds with anything. If in fact Anderson had given Bonds an injectable substance, and Bonds had injected himself, Bonds's negative answer to the first question would have been literally true, but misleading. Put another way, the prosecutor had to ask both questions to nail down a single point: Whether Anderson or Bonds himself had ever injected Bonds with anything that Anderson provided. For that reason, the two questions are not duplicitous.

### 3.    Count Three

Bonds's duplicity challenge to Count Three is also without merit. That count rests on four occasions during Bonds's testimony in which he denied that he ever received human growth hormone from Anderson. Bonds concedes (Mot. at 10) that statements 3(a) and 3(b) are "effectively the same to the extent that they address whether Mr. Bonds had received human growth hormone from Anderson." He argues that they are duplicitous because in statement 3(a), Bonds denied both that Anderson ever "talk[ed] to him" about human growth hormone and that Anderson gave him human growth hormone. But statements 3(a) and 3(b) (as well as statement 3(c)) contain the same alleged lie: that Anderson never gave Bonds human growth hormone. Similarly, in statement 3(d), Bonds

denied that Anderson had ever given him testosterone or human growth hormone, but the government could prove that statement 3(d) is false by proving only that Anderson had given Bonds human growth hormone. Accordingly, statements 3(a), 3(b), and 3(d) each allege that Bonds told the same lie, and proof that Anderson gave Bonds a substance that Bonds knew to be human growth hormone would establish that each statement was false. Finally, Bonds concedes (Mot. at 10) that statement 3(c) "is essentially identical to portions of statements" 3(a) and 3(b).

### 4.    Count Four

Count Four arises out of the prosecutor's repeated effort to ascertain when Bonds first received from Anderson substances that Anderson called "flax seed oil," "the clear," and "the cream." In the statements that form the basis for this count, Bonds repeatedly asserted that Anderson had not given him those substances or any substance (other than vitamins) before 2003 or until after the 2002 baseball season. Bonds's repeated assertion that he did not receive any of these substances before 2002 is the "lie" that forms the basis for this count. Each of the eight statements repeats this lie, and therefore each of these statements is appropriately included in a single count.

In the first statement (statement 4(a)), Bonds said that the first time that Anderson rubbed him with a "cream" and gave him "some flax seed oil" was "[n]ot until 2003, this season." The second statement (statement 4(b)) arose directly out of the prosecutor's effort to ensure that Bonds meant to say that the first time Anderson gave him "flax seed oil" was in 2003. In response to that inquiry, Bonds agreed that the "first time" he got flax seed oil from Anderson was in 2003. Similarly, Bonds made statements 4(c) and 4(d) in response to the prosecutor's repeated inquiry into whether Anderson had given Bonds anything "other than vitamins" "before the 2003 season." Bonds agreed that he never took anything that Anderson asked him to take, including any "oils," which in context is plainly a reference to the "flax seed oil" that had already been the subject of extensive questioning. Bonds concedes (Mot. at 12) that these statements "duplicate" each other. Although the colloquy that leads to statements 4(c) and 4(d) does not directly

refer to "cream" or "flax seed oil," it does not discuss any other substance.  Thus, it should not be held to be duplicitous unless the government's evidence at trial shows that the prosecutor was asking about some substance other than "the cream" or the "flax seed oil."

The questioning that led to statement 4(e) arose out of the prosecutor's effort to "recheck" Bonds's memory of when Anderson gave him "flax seed oil" and "the cream." In response to the prosecutor's question whether it was possible that Bonds received those items after the 2001 season in December 2001, Bonds replied, "No.  Like I said, I don't recall having anything like this at all during that time of year."  Statement 4(e) implicitly repeats Bonds's allegedly false statement that he first received "flax seed oil" from Anderson in 2003.  Bonds went on to say, according to the indictment, "It was toward the end of 2000, after the World Series, you know when my father was going through cancer."  The government does not allege that that statement was false.

In statement 4(f) and 4(g), Bonds repeated his allegedly false assertions that he had not received "the clear" and "the cream" in December 2001 and that he first received those substances "toward the end of 2002," after the 2002 season.  Finally, statement 4(h) rests on the prosecutor's inquiry into whether Bonds received "flax seed oil" in January 2002.  In response to that question, Bonds's said that he recalled that he received it "in the 2002 time and 2003 season."

In sum, each of the false statements alleged in Count Four arises out of Bonds's statements concerning when he first received "flax seed oil," the clear, and the cream. Although some of the questions address only "flax seed oil" and some are phrased more generally to refer to any "substances" that Bonds received from Anderson, the truth or falsity of each statement alleged in Count Four will turn on the evidence showing when Bonds first received any of these substances from Anderson.  In particular, evidence that Anderson gave Bonds these substances before the 2003 season would show that all of the statements alleged in this count are false.  Bonds's duplicity claim distorts the minor distinctions in the manner in which the questions to Bonds were phrased and ignores the

fact that the government can prove that all the statements are false based on the same evidence at trial. Accordingly, his duplicity challenge to this count, as well as his attack on Counts One through Three, should be rejected.

### 5.    Count Five

Bonds summarily asserts (Mot. at 16-17) that Count Five, which charges him with obstruction of justice, is also duplicitous. Although Bonds's argument is not entirely clear, he appears to assert that because Count Five rests in part on the false statements alleged in Counts One through Four, it must be duplicitous for the same reasons that those counts are duplicitous. That argument misapprehends the theory behind Count Five. That count alleges that Bonds's grand jury testimony as a whole was so evasive and perjurious that it constituted obstruction of justice. Accordingly, the essence of that count is Bonds's repetition of false statements, coupled with his evasive testimony in response to other questions posed by the prosecutor. In other words, this count rests on Bonds's grand jury testimony as a whole, not on individual questions and answers. For that reason, this count is not subject to the duplicity challenge that Bonds levels at Counts One through Four.

## II.    The perjury counts do not rest on fundamentally ambiguous statements.

Bonds contends (Mot. at 17-24) that a "host" of questions and answers alleged in the indictment are so fundamentally ambiguous that they cannot support the perjury counts of the indictment. That contention should be rejected, for several reasons. First, Bonds's claim is premature, because questions concerning the meaning of a question and the defendant's interpretation of it are ordinarily left to the jury. For that reason, a court may not ordinarily determine before trial whether questions and answers in a perjury indictment are fundamentally ambiguous. Second, whether a question that elicits an allegedly false answer is ambiguous depends on the context of the question and answer. Bonds makes no effort to situate the questions the prosecutors asked or the answers he gave within the context of his grand jury testimony as a whole. That context includes the fact that the prosecutor specifically told Bonds that if he did not understand a question, he

1
2
3
4
5

could consult with counsel or ask the prosecutor to rephrase it.  Grand Jury Transcript (GJTR) at 5-6.[1]  Bonds never said he was confused or asked the prosecutor to rephrase a question.  Finally, even viewed outside of the context in which they were asked, none of the questions asked Bonds was so fundamentally ambiguous that it cannot support a perjury prosecution.

6

### A.    Applicable legal principles

7
8
9
10
11
12
13
14
15
16
17
18

"Generally speaking, the existence of some ambiguity in a falsely answered question will not shield the respondent from a perjury or false statement prosecution." *United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003); *United States v. McKenna*, 327 F.3d 830, 841 (9th Cir. 2003).  Instead, when a perjury indictment rests on an allegedly ambiguous question, "[i]t is ordinarily for the jury to decide which construction the defendant placed on a question." *McKenna*, 327 F.3d at 841; *see United States v. Camper*, 384 F.3d 1073, 1076 (9th Cir. 2004) ("Ordinarily, the finder of fact decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to.").  Only when "a question is 'excessively vague,' or 'fundamentally ambiguous,' the answer may not, as a matter of law, form the basis for a prosecution for perjury or false statement." *Culliton*, 328 F.3d at 1078 (quoting *United States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir. 1987)).

19
20
21
22
23
24
25
26

A "question is not fundamentally ambiguous simply because the questioner and respondent might have had different interpretations." *Camper*, 384 F.3d at 1076.  Instead, to determine whether a question is "fundamentally ambiguous," a court must examine whether the "context of the question and other extrinsic evidence relevant to the defendant's understanding of the question may allow the finder of fact to conclude that the defendant understood the question as the government did and, so understanding, answered falsely." *Id*.; *accord United States v. Bussell*, 414 F.3d 1048, 1057 (9th Cir. 2005).  After looking at the context and relevant extrinsic evidence, a court may find a

27
28

---

[1]  To provide the relevant context for the Court, the government is filing under seal a copy of the grand jury transcript shown to Bonds during his grand jury testimony.

question fundamentally ambiguous only when "'men of ordinary intelligence' cannot arrive at a mutual understanding of its meaning." *United States v. Culliton*, 328 F.3d at 1078 (quoting *United States v. Boone*, 951 F.2d 1526, 1534 (9th Cir. 1991)). In short, to prevail on his motion, Bonds must show that in light of the context of the questions and any relevant extrinsic evidence, a jury could not find that a reasonable person would have "understood the question[s] as the government did."

> **B.     The questions asked Bonds were not fundamentally ambiguous.**

> **1.     Count One**

Bonds argues that three of the five specifications of perjury in Count One are "fundamentally ambiguous." He raises no challenge to statements 1(a) or 1(e).

*Statements 1(b) and 1(c):* In the questioning leading up to statements 1(b) and 1(c), the prosecutor confronted Bonds with a document showing that "Barry B." tested positive for two anabolic steroids in November 2000. The prosecutor then asked, "So I'm going to ask you in the weeks and months leading up to November 2000, were you taking steroids?" Bonds's answer, "No" is statement 1(b). The prosecutor continued, "or anything like that?," and Bonds answered, "No, I wasn't at all. I've never seen these documents. I've never seen these papers." The underlined portion of the answer is statement 1(c).

Bonds argues (Mot. at 20) that the question, "in the weeks and months leading up to November 2000, were you taking steroids?" is "fundamentally ambiguous as to time period at issue." He contends that "a truthful answer to the 'weeks' question could be different than a truthful answer to the 'months' question." Bonds argues that statement 1(c) is fundamentally ambiguous because the prosecutor failed "to reasonably identify what substances can be deemed 'anything like' steroids."

These contentions ignore the context of the questions and answers alleged in Count One and the grand jury examination as a whole. First, as the indictment itself makes clear, the questions that led to statements 1(b) and 1(c) arose out of the prosecutor's effort to examine Bonds about the meaning of two documents that, taken

together, show that Bonds tested positive for steroids.  At trial, the government will seek to introduce those documents and present testimony to explain their meaning.  Until the jury sees those documents and hears the explanatory testimony – that is, until the jury understands the context of the questions – any inquiry into whether the questions were ambiguous is premature.  Second, the additional context supplied by Bonds's grand jury testimony as a whole shows that the questions are not ambiguous.  Throughout his testimony, Bonds denied that he ever knowingly took steroids.  For that reason, he could not have perceived the prosecutor's question about the "weeks and months leading up to November 2000" as ambiguous; as Bonds's answer shows, he did not distinguish between "weeks" and "months," because his answer would have been the same for any time period.  Third, in statement 1(a), Bonds denied that he ever knowingly took steroids provided by Anderson.  At trial, the government's evidence will show that Bonds received steroids from Anderson in the period before the November 2001 positive drug test, and that evidence raises the inference that Anderson gave Bonds the steroids that caused him to test positive in November 2001.  Thus, the questions that led to statements 1(b) and 1(c) simply sought to narrow the focus of the questions that led to statement 1(a).

Even divorced from their context, however, the questions that led to statements 1(b) and 1(c) are not fundamentally ambiguous.  The prosecutor's question plainly sought to determine why Bonds apparently tested positive for anabolic steroids in November 2000, and the phrase "weeks and months" must be interpreted in that context.  Thus, the question is reasonably interpreted to ask Bonds whether he took steroids in the period before the test that resulted in the positive test.  Likewise, the phrase "anything like that" asks whether Bonds took anything like steroids that could have led to a positive test.  Bonds's straightforward answers ("no," "not at all") show that he understood the questions and did not believe they were ambiguous.

*Statement 1(d)*: In the question that led to statement 1(d), the prosecutor asked, "Were you obtaining testosterone from Mr. Anderson during this period of time?"  Bonds replied, "Not at all."  Bonds argues (Mot. at 21) that the phrase "this period of time" is

ambiguous. Although the prior section of Count One references December 2001, Bonds asserts that the indictment does not make clear that this question refers to December 2001 because it is separated from statement 1(d) by asterisks. That hypertechnical reading ignores the plain meaning and structure of the indictment. The portion of Count One that includes the prosecutor's questions relating to December 2001 does not end in a question, and thus the reasonable inference is that the question leading to statement 1(d) builds on the prior question relating to December 2001. In any event, the full transcript of Bonds's grand jury testimony shows that in these questions the prosecutor was asking about a calendar that showed that "BB" received steroids in December 2001. *See* GJTR at 97-98. Also, immediately following Bonds's statement, "Not at all," the prosecutor said, "In December 2001," and then asked another question about that time period. GJTR at 98. Thus, the context of the prosecutor's questions shows that "this period of time" refers to December 2001.

### 2.    Count Two

In the questions that led to false statement 2(a) in Count Two, the prosecutor sought to ascertain whether Anderson ever injected Bonds with anything. The prosecutor first directly asked Bonds, "Did Greg [Anderson] ever give you anything that required a syringe to inject yourself with?" Bonds evaded this question by referring to his "personal doctor" and his friendship with Anderson. In an effort to obtain an answer to his question, the prosecutor made clear that he was not referring to the Giants team physician, anyone involved in the surgeries that Bonds had undergone, or Bonds's personal physician. After excluding these individuals from the scope of his question, the prosecutor asked whether "other individuals like Mr. Anderson or any associates of his" had ever injected Bonds with anything. Bonds argues (Mot. at 21) that this question is fundamentally ambiguous because "it is impossible to determine the identity of the individuals the prosecutor's question reasonably placed in issue."

This contention should be rejected, for at least two reasons. First, taken as a whole, the portion of the questioning quoted in the indictment makes clear that the

prosecutor sought to inquire whether Anderson had ever injected Bonds with anything. Because Bonds failed to answer that straightforward question, the prosecutor clarified that he was not asking whether any medical personnel of any kind had ever injected Bonds with anything.  The prosecutor then repeated the gist of his original question. Bonds's response ("no, no") shows that he understood the prosecutor's ultimate question to refer to Anderson.  Second, even if the question is insufficiently specific in narrowing the universe of persons to whom it refers, the question clearly asks whether Anderson ever injected Bonds with anything.  Thus, even if Bonds could not have understood who the "individuals" and "associates" were, his answer of "no" means that neither Anderson nor any "associate" ever injected him with anything.  Accordingly, that answer is false if the evidence shows that Anderson injected Bonds.  *See United States v. Boone*, 951 F.2d at 1535 (ambiguous portion of "disjunctive" question does not render entire question ambiguous).

### 3.     Count Three

Of the four statements alleged to be false in Count Three, Bonds challenges only the question that led to statement 3(a).  In that question, the prosecutor asked Bonds, "Did Greg [Anderson] ever talk to you or give you anything called human growth hormone." Bonds flatly answered, "No."  Notwithstanding his unequivocal answer, Bonds contends that question is ambiguous for the following reason: "because the prosecutor did not clarify the question, it cannot be ascertained whether Mr. Bonds can be deemed untruthful if he in fact had *any* discussion about this substance at some time, or whether the question was understood as referencing significant or prolonged discussions between Anderson and Mr. Bonds about the substance as part of the latter's personal training regimen, or anything in between."  Mot. at 22.

Whatever objection Bonds intends to raise by this cryptic assertion, he has not shown that the prosecutor's question is ambiguous.  First, the question itself is unambiguous: did Anderson ever talk to Bonds about human growth hormone or did Anderson ever give Bonds human growth hormone.  Second, as set forth above, the Ninth

1
2
3
4
5
6
7

Circuit has held that a question phrased in the disjunctive that contains an ambiguous phrase is not "fundamentally ambiguous" as long as the remainder of the question is sufficiently precise. *See Boone*, 951 F.2d at 1535. Here, even if Bonds's objection has merit, there is no ambiguity in the question to the extent that the prosecutor asked whether Anderson had ever given Bonds human growth hormone, and the government will show at trial only that Bonds's answer to that portion of the question is knowingly false. Bonds's unambiguous answer shows that he did not believe the question to be unclear.

8

### 4.     Count Four

9
10
11
12
13

As explained above, Count Four charges Bonds with perjury based on statements he made about when he first received "flax seed oil," "the clear," and cream from Anderson. Of the eight alleged specifications of perjury in the count, Bonds challenges five, statements 4(a), 4(c), 4(d), (4(e) and 4(h). None of these statements is fundamentally ambiguous.

14
15
16
17
18
19
20
21

*Statement 4(a)*: In the colloquy leading to statement 4(a), Bonds described how Anderson came to the ballpark and rubbed "some lotion-type stuff" on Bonds's arm and gave him something that Anderson called "flax seed oil." In response, the prosecutor asked, "When did that happen for the first time?" Without expressing any doubt about the meaning of the prosecutor's question, Bonds responded, "Not until 2003, this season." Bonds argues (Mot. at 22) that the word "that" is ambiguous because "there is no reliable means for determining the event to which the prosecutor referred when he inquired about 'that' having happened for the first time."

22
23
24
25
26
27

In fact, the question simply follows up on Bonds's own description of an incident in which Anderson rubbed him with a cream and gave him "flax seed oil." That is how Bonds described the incident, and the prosecutor's question is merely an effort to determine when it occurred. Moreover, even if the question contained some ambiguity, it at most raises a question for the jury to determine based on the full context of the questioning and other evidence presented by the government at trial.

28

*Statements 4(c) and 4(d)*: Statements 4(c) and 4(d) arise out of the prosecutor's

effort to confirm that Anderson never gave Bonds anything other than vitamins before the 2003 season.  After Bonds evaded the prosecutor's first effort to ask that question, the prosecutor asked it again, "prior to last season [*i.e.*, the 2003 season], you never took anything that he asked you to take, other than vitamins."  Bonds answered, "Right.  We didn't have any other discussions."  The prosecutor continued, "No oils like this or anything like this before?"  Bonds answered, "No, no, no, not at all.  Not at all."  These two answers are statements 4(c) and 4(d).

Bonds argues (Mot. at 22-23) that the prosecutor's first question could refer to water or over-the-counter substances "or any number of innocuous substances" and therefore that Bonds's answer ("Right") is ambiguous.  Put in context, however, the prosecutor's question is part of an effort to determine *when* Anderson first gave specific substances to Bonds, not what substances he gave him.  Thus, all of the questions included in Count Four go to the timing of Anderson's actions, and it is clear from the context that Bonds understood these questions to have to do with when he received specific substances from Anderson.

Bonds argues (Mot. at 23) that the question leading to statement 4(d) is ambiguous because the prosecutor did not identify what the word "this" referred to.  Again, this argument improperly lifts the question from its context.  As Bonds is aware, the grand jury transcript reveals that the prosecutor was showing Bonds a tube containing an oil when he asked that question.  GJTR 25-33.  The question thus sought to ask Bonds when Anderson first gave him an oil like the one in the tube.  Bonds's complaint that the question fails to specify a time period is equally without merit.  The line of questioning that ends in statement 4(d) plainly refers to the period "prior to last season."  Bonds's emphatic answer shows that he had no doubts about the meaning of the question.

*Statement 4(e)*: In statement 4(e) Bonds specifically denied that he received "the flax seed oil and the cream" from Anderson "after the 2001 season."  He then added, according to the transcript and the indictment, "It was toward the end of 2000, after the World Series, you know, when my father was going through cancer."  The indictment

alleges only that Bonds testified falsely in denying that he received the substances "after the 2001 season," not that he falsely said that he received the substances from Anderson "toward the end of 2000." The statement "toward the end of 2000" is not consistent with Bonds's prior testimony that Anderson first gave him flax seed oil and other substances in 2003; Bonds's reference to his father's cancer, however, shows that he meant to refer to the 2003 season. *See* GJTR at 23-24 (Bonds's testimony that his father died of cancer "at the end of 2003, 2003 season"). In addition, by saying "after the World Series," Bonds is referring to the 2002 World Series in which he and the Giants played.

Nevertheless, Bonds argues (Mot. at 23-24) that his apparent mistake in saying "toward the end of 2000" shows that the question was ambiguous. But there is nothing ambiguous about the question, which references a document that was shown to Bonds and asks in a straightforward manner whether Bonds actually received the substances from Anderson after the 2001 season. At trial, Bonds is free to argue that his apparent mistake in saying "toward the end of 2000" shows that he did not understand the question and that his unequivocal denial that he received the substances in 2001 is therefore not knowingly false, but Bonds's misstatement in his explanatory comment does not show that the question is ambiguous.

*Statement 4(h)*: In the question that led to statement 4(h), the indictment alleges that the prosecutor asked, "And you weren't getting this flax seed oil stuff during that period of time [January 2002]?" Bonds answered, "Not that I recall. Like I said, I could be wrong. But I'm – I'm – going from my recollection it was, like, in the 2002 time and 2003 season." Bonds argues (Mot. at 24) that by alleging that the phrase "I could be wrong" is false, the indictment alleges an "oxymoron." In other words, Bonds asserts, his statement that he could not recall getting flax seed oil in January 2002 cannot be false if his statement "I could be wrong" is also false.

Bonds's contention improperly seeks to dissect his answer and obscures its intent. The prosecutor clearly asked Bonds if he was getting the flax seed oil in January 2002, and Bonds answered that he could not recall getting it at that time and that he did recall

1  getting it "in the 2002 time and 2003 season."  To prove that this statement is false, the

2  government must show that Bonds got the flax seed oil in January 2002 and that he lied in

3  saying that he did not recall getting it then.  The fact that Bonds interjected, "I could be

4  wrong" does not make his statement "Not that I recall" any less false.  Indeed, if that were

5  true, a witness could always avoid a perjury charge simply by qualifying every false

6  statement with "I could be wrong."  In any event, Bonds's argument misapprehends the

7  Court's inquiry.  A "fundamental ambiguity" challenge raises the question whether the

8  government's question is ambiguous, not whether the witness's answer is.  If Bonds

9  wishes to argue that his assertion in statement 4(h) is not false because it is inherently

10  confusing, he is free to do so at trial.  But whatever ambiguity resides in his answer is not

11  a ground for finding the question "fundamentally ambiguous" or dismissing statement

12  4(h) from the indictment.

**CONCLUSION**

14        For the foregoing reasons, Bonds's Motion to Dismiss or Alternatively to Strike

15  Portions of the Indictment should be denied.

18  DATED: February 14, 2008          Respectfully submitted,

19                                    JOSEPH P. RUSSONIELLO
                                      United States Attorney

22        _____/s/_____
          MATTHEW A. PARRELLA
23        JEFFREY D. NEDROW
          JEFFREY R. FINIGAN
24        J. DOUGLAS WILSON
          Assistant United States Attorneys