ALLEN RUBY (SBN 47109)
LAW OFFICES OF ALLEN RUBY
125 South Market Street #1001
San Jose, CA 95113
Telephone: (408) 998-8500 ext. 204
Facsimile: (408) 998-8503

DENNIS P. RIORDAN (SBN 69320)
DONALD M. HORGAN (SBN 121547)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472
Facsimile: (415) 552-2703

CRISTINA C. ARGUEDAS (SBN 87787)
TED W. CASSMAN (SBN 98932)
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

MICHAEL RAINS (SBN 91013)
RAINS, LUCIA & WILKINSON, LLP
2300 Contra Costa Blvd., Suite 230
Pleasant Hill, CA 94523
Telephone: (925) 609-1699
Facsimile: (925) 609-1690

Attorneys for Defendant
BARRY LAMAR BONDS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> BARRY LAMAR BONDS, <br><br> Defendant. | Case No. CR 07 0732 SI <br><br> Date: February 29, 2008 <br> Time: 11:00 a.m. <br> Judge: The Honorable Susan Illston |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TO STRIKE PORTIONS OF THE INDICTMENT**

Defendant's Reply in Support
of Motion to Dismiss Or Strike

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Count One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Count Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      C.    Count Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      D.    Count Four . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

## CASES

*Bins v. United States*,
331 F.2d 390 (4th Cir. 1964) .................................................................. 6

*United States v. Gebhard*,
422 F.2d 281 (9th Cir. 1970) .................................................................. 1, 5, 7

*United States v. Gordon*,
844 F.2d 1397 (9th Cir. 1988) ................................................................ 1, 3

*United States v. Graham*,
60 F.3d 463 (8th Cir. 1995) .................................................................... 6

*United States v. Holley*,
942 F.2d 918 (5th Cir. 1991) .................................................................. 5

*United States v. Karaouni*,
379 F.3d 1139 (9th Cir. 2004) ................................................................ 7

*United States v. Klinger*,
128 F.3d 705 (9th Cir. 1997) .................................................................. 3

*United States v. Savage*,
67 F.3d 1435 (9th Cir. 1993) .................................................................. 3

*United States v. Tyrone*,
451 F.2d 16 (9th Cir. 1971) .................................................................... 1, 2, 5

# INTRODUCTION

The government's Opposition to defendant Bonds' Motion to Dismiss is so riven with contradiction that it appears written by two authors at war with one another. One portion of that Opposition correctly cites the germane legal standards, at least implicitly recognizes the duplicity problems that mar the present indictment, and constructively suggests election, a solution that would permit this prosecution to proceed while respecting Mr. Bonds' constitutional rights. But an evil twin seemingly played a role as well in drafting the Opposition, ignoring, misstating, or violating the very legal standards proposed elsewhere in the government's pleading in an apparent effort to gain a tactical advantage at trial. As a result, the government filed an initial brief that it later was forced to withdraw because it contained a patently false assertion of fact.

The reasoned portion of the Opposition correctly notes that to avoid multiplicity, the federal rules of pleading require the government to charge in a single perjury count multiple answers to what is "the same question for all practical purposes." (Opp., at 4, citing *United States v. Gebhard*, 422 F.2d 281, 289-290 (9th Cir. 1970)). The government continues: "Using this analysis, the [*Gebhard*] court reversed six counts that, it found, rested on the same 'lie' as another count." (*Id*). The government also correctly observes that to avoid duplicity, an indictment must charge in different counts allegedly false answers to questions on "distinct and separate subjects" as to which a "trier of fact could well hold [the defendant] innocent on one and guilty on the other without creating any type of conflict." (Opp., at 4, quoting *United States v. Tyrone*, 451 F.2d 16, 18 (9th Cir. 1971)).

The Opposition rightly asserts that a duplicitous count can be cured by a governmental election of a single factual basis on which that count will go to the jury (Opp., at 4-5), thereby proposing a remedy by which the deficiencies in the present indictment could be cured without recourse to dismissal.

Finally, and of great importance, the government cites the procedural rule that governs facial challenges to the indictment:

> A duplicity claim is directed at the face of the indictment, not at the evidence to be presented at trial. *United States v. Gordon*, 844

1

> F.2d at 1400. For that reason, in reviewing an indictment for duplicity, this Court's *"task is...solely to assess whether the indictment itself can be read to charge only one violation in each count." United States v. Yarbrough,* 852 F.2d 1522, 1530 (9th Cir. 1988) citing *United States v. Mastelotto,* 717 F.2d 1238, 1244 (9th Cir.1983)).

(Opp., at 4; emphasis added).

Now the contradictions. In summing up the "Applicable Legal Principles," the government states:

> Ninth Circuit decisions make clear that the government must charge multiple specifications of perjury in a single count when, "for all practical purposes," each allegedly perjured statement repeats a single "lie," when each statement is an answer to the same question, or when the jury could reach *inconsistent* conclusions about the falsity of the allegedly perjurious statements.

(Opp., at 5; emphasis added).

Of course, as the reasoned portion of the government's brief makes clear, while the government must indeed charge multiple specifications of falsehood in a single count when, "for all practical purposes," each allegedly perjured statement repeats a single "lie," and when each statement is an answer to the same question, the government *may not do so* when the jury could reach *inconsistent* conclusions about the falsity of the allegedly perjurious statements. That is because the logical possibility of inconsistent conclusions about the falsity of answers to different questions necessarily means that those questions address separate and distinct subjects, which is the controlling test for a duplicitous count. (Opp., at 4, quoting *United States v. Tyrone,* 451 F.2d 16, 18 (9th Cir. 1971)). Page five of the government's brief thumbs its nose at page four.

Nowhere is the struggle between the forces of light and darkness in the government's brief clearer than when the Opposition states that "although Bonds's allegation of duplicity raises a facial challenge to the indictment, *the question whether each of the five alleged false statements [in Count One] is the same lie will depend on the government's evidence at trial."* (Opp., at 6; emphasis added). The government goes on to say:

> ... Bonds's assertion that the allegations of perjury within Count One are "distinct," and therefore duplicitous, asks the Court to ignore the prospect that the evidence at trial will show that all five false statements rest on a common nucleus of fact and involve

2

> essentially the same "lie." Put another way, the government submits that before hearing the evidence at trial the Court cannot conclude that the five specifications in Count One are duplicitous. If after hearing the evidence at trial, the Court concludes that the five statements are duplicitous, then it can address that flaw by giving an appropriate jury instruction on unanimity.

(Opp., at 7).

The government's brief having correctly stated on page four that "in reviewing an indictment for duplicity, this Court's "task is… solely to assess whether *the indictment itself* can be read to charge only one violation in each count" (Opp., at 4; emphasis added), the government sings a different tune on pages six and seven, contending that the Court is powerless to decide a pretrial duplicity challenge because *"before hearing the evidence at trial* the Court cannot conclude" that a count of an indictment is duplicitous. (Opp. at 7; emphasis added).

Assume a single count of an indictment alleged that a defendant committed perjury by denying (a) that he had ever seen a Jackson Pollock painting; (b) that he had ever purchased cocaine; and (c) that he had ever ridden in a horse drawn carriage. Plainly, such a count would be duplicitous on its face, as the questions concern patently different subjects, and a jury finding that one answer is false would not be logically inconsistent with finding another answer to be true. Yet the government's dark side maintains that a court would be powerless to cure the pleading deficiencies pretrial because the trial evidence might conceivably show that the defendant purchased cocaine at a Pollock exhibit at New York's MOMA before making his way across Central Park by hansom cab, thereby establishing a single false narrative based on a "common nucleus of fact."

This is nonsense. It is indisputable that a pretrial challenge to a duplicitous count is authorized by Rule 12; indeed, if such a challenge is not made prior to trial, the defendant forfeits his right to force the government to make an election of the basis for the charge. *See United States v. Klinger*, 128 F.3d 705, 708 (9th Cir. 1997); *United States v. Savage*, 67 F.3d 1435, 1439 (9th Cir. 1993); *United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988). And such a challenge is, under the government's cited authority, made on the face of the pleadings alone. *Yarbrough, supra,* 852 F.2d at 1530; *Mastelotto, supra,* 717 F.2d at 1244.

The government's violation in its Opposition of the evidentiary ban governing a facial challenge to an indictment enabled it to seek to influence the prospective venire by previewing its "trial evidence." On February 14th, the government filed its initial brief containing the assertion that: "At trial, the government's evidence will show that Bonds received steroids from Anderson in the period before *the November 2001 positive drug test....*" (Opp. at 14). Based on that passage, the media widely reported that the government had proof, previously undisclosed, that Mr. Bonds had failed a steroids test just after his record breaking season in 2001. (*See* http://sports.espn.go.com/espn/wire) The government then withdrew its brief, saying that it meant only to refer to evidence of a previously reported positive test for steroids in 2000. As is always the case, many more prospective jurors will have read the original story than the retraction.

The gaffe should never have happened. The government knew, as the better half of its brief made clear, that any reference to its supposed trial evidence was improper, all the more so because Mr. Bonds vigorously disputes that the government possesses any credible or admissible evidence that he had a positive test for steroid use in either November of 2000 or 2001. Furthermore, counsel for Mr. Bonds faithfully respected the procedural limitations imposed on their facial challenge, resisting the temptation to bring before the Court those portions of Mr. Bonds' grand jury testimony omitted from the government's indictment which are clearly exculpatory as to the accusation that he testified falsely in denying all knowing steroid use.

The government asserts that "the government may remedy any duplicity in the indictment against Bonds by asking the grand jury to return a superceding indictment charging separate counts for each allegedly perjured statement." (Opp., at 5). That may well be the case. Given that the government considered a five count indictment sufficient in this case and can still proceed on that number of charges simply by exercising its power of election, however, talk of an expanded superceding indictment seems like unnecessary saber rattling. Be that as it may, Mr. Bonds will be best served by an indictment whose clarity ensures that he will not be convicted upon less than the unanimous vote of twelve jurors, regardless how many separate charges it contains.

4

Finally, on the state of the present briefing, it seems apparent that some amendment of the charges against Bonds is inevitable. The government has already made suggestions as to how the ambiguities and vagueness of certain cited passages of the grand jury testimony can be eliminated. Because Bonds' challenge on vagueness grounds may soon be mooted, he will not add to the opening brief's discussion of that issue.

## ARGUMENT

### A.   Count One

The government agrees that Count One alleges (at least) four factual bases for a false statement conviction: *i.e.*, (1) Mr. Bonds lied in denying that he had ever taken steroids provided by Greg Anderson; (2) he lied when he denied taking steroids in the weeks and months leading up to November of 2000; (3) he lied when he denied obtaining testosterone from Anderson in December of 2001; and (4) he lied when he denied taking flax seed oil or the cream or any other steroids in January of 2001. (Opp., at 6).

Under the government's properly cited standard, Count One is clearly duplicitous. This is not a situation where the government can and should charge multiple statements in a single count because they are all answers to "the same question for all practical purposes" (*Gebhard, supra*, 422 F.2d at 289-290), and because "identical evidence" will be used to prove each lie. *United States v. Holley*, 942 F.2d 918, 928 (5th Cir. 1991), cited at Opp. at 4. Proving that the defendant took steroids in November of 2000 will require different evidence than proving that he took steroids in January of 2001 or eleven months later in December of 2001. Because that is true, a jury could find that the evidence supported a conclusion that one of the statements alleged as the basis for a Count One conviction was false but yet logically find another to be true. That fact establishes duplicity. (Opp., at 4, quoting *United States v. Tyrone*, 451 F.2d 16, 18 (9th Cir. 1971) (an indictment must charge in different counts allegedly false answers to questions on "distinct and separate subjects" as to which a "trier of fact could well hold [the defendant] innocent on one and guilty on the other without creating any type of conflict.").

In defending Count One as presently pled, the government wholly mangles the legal

5

standard it elsewhere endorses, stating that "there is no logical inconsistency between any of the five alleged statements, and the jury could therefore find each alleged statements false without reaching an inconsistent result." (Opp., at 6). The test for duplicity is not whether a jury could find multiple statements of a defendant "false without reaching an inconsistent result," but whether a jury could reach different verdicts as to different statements without acting illogically .

For example, assume a single count charged a public official with falsely denying that (a) he had a city contractor do work for free on his condominium and (b) he had been given free tickets to the Super Bowl by the same contractor. The alleged lies deal with different subject matters, require different proof, and therefore cannot be charged in a single count. *United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995) (separate false statements are separate offenses if they require "different factual proof of their falsehood"); *Bins v. United States*, 331 F.2d 390, 393 (4th Cir. 1964) (where duplicity is alleged, "it is well settled that the test for determining whether several offenses are involved is whether identical evidence will support each of them, and if any dissimilar facts must be proved, there is more than one offense."). There is no "logical inconsistency between" the alleged falsehoods and a jury could find that the defendant lied concerning both gratuities "without reaching an inconsistent result," but that does not change the fact that the count is plainly duplicitous.

Mr. Bonds does not dispute that the government can avoid dismissal by electing one statement described in Count One as the basis for the charge.

**B.    Count Two**

The parties agree that Count Two charges Mr. Bonds with two false statements: *i.e.*, (a) neither Greg Anderson or any associates of his" had ever injected anything into the defendant or "taken anything out.;" and (b) Anderson never gave Mr. Bonds anything that he told the defendant had to be taken with a needle or a syringe.

Testimony that someone saw Anderson inject the defendant would not prove that Anderson gave Mr. Bonds something that he told the defendant had to be injected, and testimony that Anderson gave the Mr. Bonds something that he told the defendant had to be injected would

not prove Anderson injected the defendant. Plainly, depending on the nature of the proof offered, a jury rationally could find one event happened but not the other, which would not the case if both alleged falsehoods were answers to "the same question for all practical purposes" *Gebhard, supra,* 422 F.2d 281 at 289-290. Count Two is duplicitous.

The government argues that "the prosecutor had to ask both questions to nail down a single point." (Opp., at 8). There is nothing in federal jurisprudence that permits an otherwise duplicitous count to survive on the ground that the multiple statements alleged in that count were responses to prosecutorial questions designed "to nail down a single point." *See United States v. Karaouni,* 379 F.3d 1139, 1146 & n.13 (9th Cir. 2004) (stating that perjury charges cannot be based on compound or disjunctive questions). Again, Mr. Bonds concedes that Count Two can be saved by the government's election of a single statement as the basis for the false statement charge.

### C. Count Three

As defendant has contended (Mtn., at 10), statements (a) and (b) (*id.*, fn. 13, 14), though identical in part, are different in two key respects. First, a portion of statement (a) asks whether Mr. Anderson ever talked to Mr. Bonds about human growth hormone; statement (b) does not. This portion of statement (a) thus requires proof of a discrete fact that statement (b) does not, rendering them substantively distinct. The government does not specifically address this aspect of defendant's analysis. (Opp. at 8-9).

In addition, a portion of statement (a) asks whether Mr. Anderson ever gave Mr. Bonds human growth hormone, while a portion of statement (b) asks whether Anderson had given him anything *like* human growth hormone. Here again, proof that statement (b) is false would require proof of a fact — ingestion of a substances "like" but not identical to human growth hormone — different than that addressed in statement (a). On this specific point, the government again offers no response. (Opp., at 8-9).

A portion of statement (d), meanwhile, asks whether Mr. Anderson had given Mr. Bonds testosterone in January of 2002. (Mtn. at 10-11 and fn. 16). The government argues that (d) is

7

not duplicitous because, like portions of the previous statements, it contains Mr. Bonds' denial that he received human growth hormone from Anderson (Opp., at 8: 28 - 9: 3), but the government cannot deny that proving the allegation concerning testosterone would patently involve different evidence than that required for proof of any and all of the human growth hormone allegations in Count Three.

In any event, the government has essentially elected the "same alleged lie" on which it relies as the basis for Count Three: "that Anderson never gave Bonds human growth hormone." (Opp., at 8: 27-28). Count Three can be saved if the government formally makes that election.

### D.  Count Four

As described in his opening motion (Mtn., at 11), the alleged perjury set forth in statement (b) (*id.*, fn. 18) consists of Mr. Bonds' statement that he first received tubes with what Anderson described as flax seed oil in 2003. Statement (a), by contrast, relates to the time that five different events occurred, one of which was Bonds' first receipt of flax seed oil (in any form) from Anderson, and another of which was Anderson's first application of "the cream" to Bonds. (Mtn., at 11 and n. 17). The government now disclaims reliance on the various assertions combined in statement (a) and argues that it essentially concerns Mr. Bonds' assertions as to the first time Anderson rubbed him with "the cream" or the first time he received flax seed oil from Anderson. (Opp., at 9: 17 - 19) Statement (b), the government continues, concerns Bonds' assertion as to his first receipt from Anderson of flax seed oil (apparently in any form, not just "in tubes," the subject which statement (b) actually addresses). (Opp., at 9: 19 - 22).

These contentions, however, do not surmount the duplicity obstacle. Statement (a), even as now limited, concerns two different subjects: the timing of Mr. Anderson's first application of "the cream" to Mr. Bonds[1] and the timing of Mr. Bonds' receipt from Anderson of flax seed oil. Proof as to one subject in statement (a) — the time that Mr. Anderson first rubbed Mr. Bonds

---

[1] Mr. Bonds' actual statement addresses the more limited issue of when Mr. Anderson applied "the cream" to Mr. Bonds *at the ballpark*. (Indictment, at 7: 23-27).

8

with the "the cream" — depends on proof of a fact that statement (b) clearly does not.

Both statement (c) and (d) and the questions preceding them address the *taking* of substances other than vitamins by Mr. Bonds, and Mr. Anderson's *requests* to Mr. Bonds in that regard. (Mtn., at 11-12 and fn. 19). Both statements thus concern matters that are not placed in issue by statements (a) or (b), even as the government's opposition now limits them. Contrary to the government's suggestion (Opp. at 9: 22 - 10: 4), moreover, nothing about the questioning by the prosecutor prior to eliciting statements (c) and (d) can show that, in context, the subject of those statements are fairly subsumed within those addressed in statements (a) or (b).

Statement (e), as alleged, consists of Mr. Bonds' recollection he was not receiving flax seed oil or "the cream" or substances like them from Mr. Anderson after the 2001 season and prior to 2002. (Mtn., at 12 and n. 21). The subjects addressed in statement (e) are partially subsumed within those addressed in the duplicitous statement (a), but statement (e) also addresses the distinct issue of whether Mr. Bonds *received* "the cream" from Anderson, as opposed to the first time Anderson rubbed Mr. Bonds with "the cream" at the ballpark. Statement (e) remains distinct from, and is thus duplicitous as to, statements (b), (c), and (d) for the reasons stated in the opening motion. (*Id.*) Statements (f), (g), and (h) — which the government addresses only in passing — likewise remain duplicitous of others alleged in Count Four for the reasons stated in the motion (at 12-13).

Consistent with its discussion of statement (a), as described above, the government seeks to paper over the differences between the specific factual averments contained in each of the Count Four statements by arguing that Count Four is, in fact, founded on but a single lie, *i.e.*, Bonds' statement that he did not "receive" flax seed oil, "the clear," or "the "cream" "before 2002." (Opp. at 9: 11-16). This argument reflects a recognition that most of the Count Four allegations do indeed depend on proof of different facts and suggests a valid effort at election. That effort fails, however, for two key reasons.

First, even as reconstituted in the government's argument, the factual basis for Count Four concerns different subjects, *i.e.*, the time that Mr. Bonds first received *different* substances.

9

Second, the single purported lie now identified by the government mischaracterizes Mr. Bonds' various statements, as Bonds addressed the timing of his receipt of certain substances specifically from Greg Anderson as opposed as to some other source.

Here again, the government may rectify the pleading deficiency by electing a single purported lie — *i.e.*, one that truly addresses a single subject — as the basis for Count Four.

## CONCLUSION

For the reasons set forth above and in defendant's opening motion, the prosecution should be required to elect the single, unambiguous statement upon which it intends to rely to prove each count; alternatively, each duplicitous count should be dismissed.

Dated: February 21, 2008

Respectfully submitted,

LAW OFFICES OF ALLEN RUBY

ARGUEDAS, CASSMAN & HEADLEY, LLP

RAINS, LUCIA & WILKINSON, LLP

RIORDAN & HORGAN

By   /s/   Dennis P. Riordan
      Dennis P. Riordan

By   /s/   Donald M. Horgan
      Donald M. Horgan

Counsel for Defendant
Barry Lamar Bonds