1  ALLEN RUBY (SBN 47109)
   LAW OFFICES OF ALLEN RUBY
2  125 South Market Street #1001
   San Jose, CA 95113
3  Telephone: (408) 998-8500 ext. 204
   Facsimile: (408) 998-8503
4

5  DENNIS P. RIORDAN (SBN 69320)
   DONALD M. HORGAN (SBN 121547)
6  RIORDAN & HORGAN
   523 Octavia Street
7  San Francisco, CA 94102
   Telephone: (415) 431-3472
8  Facsimile: (415) 552-2703

CRISTINA C. ARGUEDAS (SBN 87787)
TED W. CASSMAN (SBN 98932)
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

MICHAEL RAINS (SBN 91013)
RAINS, LUCIA & WILKINSON, LLP
2300 Contra Costa Blvd., Suite 230
Pleasant Hill, CA 94523
Telephone: (925) 609-1699
Facsimile: (925) 609-1690

9  Attorneys for Defendant
   BARRY LAMAR BONDS
10

11  **UNITED STATES DISTRICT COURT**

12  **NORTHERN DISTRICT OF CALIFORNIA**

13  **SAN FRANCISCO DIVISION**

14

UNITED STATES OF AMERICA,

15

16                    Plaintiff,

17
            vs.
18
    BARRY LAMAR BONDS,
19
                    Defendant.
20

)  Case No. CR 07 0732 SI
)
)
)
)
)
)  Date:  October 24, 2008
)  Time:  11:00 a.m.
)  Judge: The Honorable Susan Ilston
)
)
)

21

22  **MEMORANDUM OF POINTS AND AUTHORITIES**
    **IN SUPPORT OF MOTION TO DISMISS**
23  **COUNTS I, II, V, VII, VIII, IX, XI, XII, XIV, AND XV OF**
    **THE SUPERSEDING INDICTMENT**
24

25

26

27

28

1

# TABLE OF CONTENTS

2    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

3    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

4    I.    THE SUPERSEDING INDICTMENT'S INITIAL FALSE TESTIMONY
            COUNT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE THE
5            CRITICAL ELEMENT OF MATERIALITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

6    II.   THE COURT MUST DISMISS COUNT SEVEN BECAUSE IT IS
            MULTIPLICITOUS AS TO COUNT SIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
7
            A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
8
            B.    Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
9
            C.    Because Count Six Necessarily Encompasses Count Seven, the
10                  Latter Count Must Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-

11   III.  CERTAIN QUESTIONS AND RELATED ANSWERS IN SEVEN COUNTS
            OF THE SUPERSEDING INDICTMENT ARE FUNDAMENTALLY
12           AMBIGUOUS AND MUST THEREFORE BE DISMISSED . . . . . . . . . . . . . . . . . . . -5-

13           A.    A Question or an Answer that is Fundamentally Ambiguous Cannot
                  Support a False Testimony Charge and is Properly Subject to a Motion
14                  to Strike or Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

15                  1.    Some Questions Are Fundamentally Ambiguous As a
                        Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
16
                  2.    Factors Considered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
17
                  3.    Defendant's Ambiguous Answers . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
18
            B.    Various Questions And/or Answers Set Forth in the Superseding
19                  Indictment Are Fundamentally Ambiguous and Are Therefore Insufficient
                  to Support a False Testimony Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
20
                  Count Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
21
                  Count Five . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
22
                  Count Eight . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
23
                  Count Nine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-
24
                  Count Eleven . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -10-
25
                  Count Twelve . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
26
                  Count Fourteen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
27

28

1

**Table of Contents continued**

2  IV.   THE OBSTRUCTION OF JUSTICE OFFENSE ALLEGED IN COUNT FIFTEEN
       MUST BE DISMISSED BECAUSE IT CONTAINS ALL OF THE DEFECTS OF
3      THE FIRST FOURTEEN COUNTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

4  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -14-

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## CASES

3   *Almendarez- Torres v. United States*,
    523 U.S. 224 (1998)                                                    3

4

5   *Apprendi v. New Jersey*,
    530 U.S. 466 (2000)                                                 3, 13

6   *Brandow v. United States*,
    268 F.2d 559 (9th Cir. 1959)                                           2

7

8   *Bronston v. United States*,
    409 U.S. 352 (1973)                                               5, 7, 12

9   *Dear Wing Jung v. United States*,
    312 F.2d 73 (9th Cir. 1962)                                            2

10

11  *Fisher v. United States*,
    231 F.2d 99 (9th Cir. 1956)                                            2

12  *Paritem Singh Poonian v. United States*,
    294 F.2d 74 (9th Cir. 1961)                                            2

13

14  *Stapleton v. United States*,
    260 F.2d 415 (9th Cir. 1958)                                           2

15  *United States v. Aguilar*,
    515 U.S. 593 (1995)                                                   14

16

17  *United States v. Caputo*,
    288 F. Supp. 2d 912, 922-23 (N.D. Ill. 2003)                           6

18  *United States v. Cobert*,
    227 F. Supp. 915 (S.D. Cal. 1964)                                      7

19

20  *United States v. Diogo*,
    320 F.2d 898 (2d Cir. 1963)                                            5

21  *United States v. Duran*,
    41 F.3d 540 (9th Cir. 1994)                                            2

22

23  *United States v. Eddy*,
    737 F.2d 564 (6th Cir. 1984)                                           6

24  *United States v. Esposito*,
    358 F. Supp. 1032 (D. Ill. 1973)                                       7

25

26  *United States v. Farmer*,
    137 F.3d 1265 (10th Cir. 1998)                                         7

27

28

**Table of Authorities continued**

*United States v. Gaudin*,
515 U.S. 506 (1995)                                          3

*United States v. Karaouni*,
379 F.3d 1139 (9th Cir. 2004)                                9

*United States v. Keen*,
104 F.3d 1111 (9th Cir. 1996)                                4

*United States v. Lattimore*,
127 F. Supp. 405 (D.D.C. 1955)                               5

*United States v. Lighte*,
782 F.2d 367 (2d Cir. 1986)                                  6

*United States v. Martellano*,
675 F.2d 940 (7th Cir. 1982)                                 5

*United States v. Naegle*,
341 B.R. 349 (D.D.C. 2006)                                   6

*United States v. Ryan*,
828 F.2d 1010 (3d Cir. 1987)                                 7

*United States v. Sainz*,
772 F.2d 559 (9th Cir. 1985)                           5, 7, 10, 11

*United States v. Schulman*,
817 F.2d 1355 (9th Cir. 1987)                                6

*United States v. Serafini*,
167 F.3d 812 (3d Cir. 1999)                                  6

*United States v. Slawik*,
548 F.2d 75 (3d Cir. 1977)                                   6

*United States v. Tonelli*,
577 F.2d 194 (3d Cir. 1978)                                 5, 6

*United States v. Zalapa*,
509 F.3d 1060 (9th Cir. 2007)                               4, 5

**STATUTES**

18 U.S.C. section 1503                                       13

18 U.S.C. section 1623(a)                                    2

**MISCELLANEOUS**

LaFave et al., *Criminal Procedure* 19.3(c) (4th ed. 2004)   5

-iv-

1

**INTRODUCTION**

2     The government filed an initial indictment against defendant Bonds that was so flawed by

3    impermissibly duplicitous charges — i.e., two offenses alleged in a single count — that the

4    government was forced to dismiss it and obtain a superseding indictment. A few counts of the

5    present superseding indictment are adequately pleaded, but the remainder have serious defects

6    that require remedial action.

7     To begin, the lead count fails to allege a necessary element of the charged offense;

8    consequently, Count One must be dismissed. Second, while the elimination of the duplicitous

9    charges that marred the original indictment was sure to result in the filing of a greater number of

10    counts in the superseding indictment, the government was still required to avoid the parallel

11    pitfall of multiplicity — i.e., charging the same offense in two different counts. It has breached

12    that ban of multiplicity in Counts Six and Seven, the latter of which must be dismissed.

13     Additionally, in his initial motion to dismiss, defendant challenged many of the original

14    indictment's false testimony counts on the grounds that the questions and answers on which they

15    relied were fundamentally ambiguous as a matter of law. Given the Court's ruling that many of

16    those counts were fatally duplicitous and that the government would be required to elect a

17    particular answer as the basis for each count or seek a superseding indictment, the Court had no

18    occasion to reach defendant's fundamental ambiguity arguments concerning each such question

19    and answer.

20     Like the original indictment, the superseding indictment re-alleges as false nearly all of

21    the answers of which defendant Bonds earlier complained, albeit by breaking those answers out

22    into a total of fourteen counts. The superseding indictment, however, can no more remedy the

23    fundamental defects attaching to the cited questions and answers than could the original

24    indictment. Accordingly, and because the Court's prior ruling did not dispose of these key

25    issues, defendant here renews his fundamental ambiguity arguments as to several of the

26    superseding indictment's false testimony counts.

27     Finally, the obstruction of justice charge in Count Fifteen incorporates the factual and

28    legal allegations in Counts One to Fourteen. Because many, if not most, of those fourteen counts

1  are defective and require dismissal, Count Fifteen is similarly flawed and must be dismissed.

2  **ARGUMENT**

3  **I.  THE SUPERSEDING INDICTMENT'S INITIAL FALSE TESTIMONY COUNT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE THE CRITICAL ELEMENT OF MATERIALITY**

5  Materiality is an element of an offense alleged under 18 U.S.C. section 1623(a). *Ibid.*

6  The government properly alleged materiality in Counts Two through Fourteen. For reasons

7  unclear, the government failed to allege materiality in Count One. See Superseding Indictment

8  ("SI"), at p. 3:5-22. Because every element of the offense must be pled in the indictment, Count

9  One must be dismissed.

10  In the early 1960s, the Ninth Circuit held that in a false statement prosecution, materiality

11  "need not be alleged in the indictment" so long as there are "sufficient facts from which the

12  inference of materiality may be drawn." *Paritem Singh Poonian v. United States*, 294 F.2d 74, 75

13  (9th Cir. 1961); *accord Dear Wing Jung v. United States*, 312 F.2d 73, 75 (9th Cir. 1962). The

14  Ninth Circuit has repeated that holding occasionally since. *See, e.g., United States v. Duran*, 41

15  F.3d 540, 544 (9th Cir. 1994). But in light of the Supreme Court's recent rulings on both

16  materiality and the need to allege every element, the *Poonian* rule is no longer good law.

17  *Poonian* was rooted in an era when there was doubt about the need to prove materiality in

18  a false statement case. In 1956, the Ninth Circuit had suggested that materiality was not an

19  element. *See Fisher v. United States*, 231 F.2d 99, 102 (9th Cir. 1956). Three years later,

20  bowing to "the greater weight of authority," the court reversed course and affirmed that

21  materiality was an element of false statement crimes. *Brandow v. United States*, 268 F.2d 559,

22  565 (9th Cir. 1959). But it nonetheless held in *Poonian* that even if materiality must be *proven*,

23  it need not be *alleged*, so long as it was sufficiently implied in the indictment.

24  *Poonian* also relied on then-prevailing law that, in general, elements need not be

25  explicitly alleged. It invoked a then-recent case which stated: "An indictment is not required to

26  set out all those elements of the offense which must be found by the jury before they may find the

27  accused guilty. . . . In other words, all the essential elements need not be stated directly if they are

28  necessarily implied." *Stapleton v. United States*, 260 F.2d 415, 418 (9th Cir. 1958) (cited in

1 | *Poonian*, 294 F.2d at 75).

2 | The foundations of the *Poonian* rule have been destroyed by intervening Supreme Court
3 | case law.

4 | *First*, any argument that the materiality element is different from any other element was
5 | put to rest by the Supreme Court in *United States v. Gaudin*, 515 U.S. 506 (1995). Up until
6 | *Gaudin*, the government had continued to argue for some sort of materiality exceptionalism —
7 | for example, that materiality, though an element, was to be decided by judge instead of jury. The
8 | Supreme Court soundly rejected those arguments. *Id.,* 515 U.S. at 512-23. The correct
9 | conclusion was simply stated:

10 | > The Constitution gives a criminal defendant the right to demand that a jury
11 | > find him guilty of all the elements of the crime with which he is charged;
> one of the elements in the present case is materiality; respondent therefore
12 | > had a right to have the jury decide materiality.

13 | *Id.* at 511.

14 | *Second*, the Ninth Circuit's old rule that elements need not be alleged has been overruled.
15 | Once again, the Supreme Court has stated a simpler, more forceful rule: Every element "*must be*
16 | *charged in an indictment*, submitted to a jury, and proven beyond a reasonable doubt." *Apprendi*
17 | *v. New Jersey*, 530 U.S. 466, 475 (2000) (quoting *Jones v. United States*, 526 U.S. 227, 243 n.6
18 | (1999)) (emphasis added); *see also Almendarez- Torres v. United States*, 523 U.S. 224, 228
19 | (1998) ("An indictment must set forth each element of the crime that it charges.").

20 | Under *Apprendi* and *Gaudin*, the *Poonian* rule is no longer good law. Accordingly,
21 | Count One of the Superseding Indictment must be dismissed.

22 | ## II.  THE COURT MUST DISMISS COUNT SEVEN BECAUSE IT IS MULTIPLICITOUS AS TO COUNT SIX

23 | ### A.  Introduction

24 | As this Court found, the first indictment was duplicitous. Allegedly false statements,
25 | although separate and distinct, were lumped together into a few counts. In response to this
26 | Court's previous order, the government properly separated many of the distinct statements into
27 | separate counts. But in the process, the government overcorrected in one respect: it split two
28 | indistinguishable statements and separated them into two counts. Those counts, Six and Seven,

1  are multiplicitous.

2  **B.**    **Statement of Facts**

3  Count Six is based on the following exchange:

4  Q:    And again, just to be clear and then I'll leave it, but he [Anderson] never
       gave you anything that you understood to be human growth hormone?

5

6  A:    No.

7  (SI, at p. 7:10-13)

8  Count Seven is based on the following exchange:

9  Q:    So, starting in December 2001, on this page, again, there's BB here, which
       obviously are consistent with your initials?
10       . . .

11       Okay.   Were you obtaining human grown hormone from Mr. Anderson?

12  A:    Not at all.

13  (SI, at p. 7:25 - p. 8:8)

14  **C.**    **Because Count Six Necessarily Encompasses Count Seven, the
           Latter Count Must Be Dismissed**

15

16  Two counts are multiplicitous when the same conduct forms the basis of two counts

17  charged under the same statute. *See United States v. Zalapa*, 509 F.3d 1060, 1063-64 (9th Cir.

    2007); *see also United States v. Keen*, 104 F.3d 1111, 1118 (9th Cir. 1996) (describing one

18  species of multiplicity where "a single act or transaction is alleged to have resulted in multiple

19  violations of the same statutory provision") (footnote omitted).

20  The two statements now charged in Counts Six and Seven of the Superseding Indictment

21  were charged together in Count Three of the initial Indictment. (*See* Indictment at 6, 3(b) and

22  3(c).) But as the defendant argued in his motion to dismiss the first Indictment, statements 3(b)

23  and 3(c) were "essentially identical." (*See* Defendant's Memorandum in Support of Motion to

24  Dismiss, at 8.) Thus, while the defendant argued in his motion that several other joined

25  statements were duplicitous, he made no objection to the joinder of statements 3(b) and 3(c) in a

26  single count.  Those statements remain identical, though now the government, for reasons that

27  are unclear, has split them into two separate counts.

28  Counts Six and Seven are thus multiplicitous.   Count Six addresses procurement of the

1  same substance placed in issue by Count Seven. Count Seven is limited as to time while Count

2  Six is not. Count Six encompasses Count Seven such that if the government were to prove

3  defendant guilty on Count Six, it would necessarily have proven him guilty of Count Seven.

4  Because Count Seven seeks to punish again the same conduct placed in issue by Count Six,

5  Count Seven must be dismissed as multiplicitous. *See Zalapa*, 509 F.3d at 1064; LaFave et al.,

6  *Criminal Procedure* § 19.3(c) (4th ed. 2004).

7  **III.   CERTAIN QUESTIONS AND RELATED ANSWERS IN SEVEN COUNTS OF
8  THE SUPERSEDING INDICTMENT ARE FUNDAMENTALLY AMBIGUOUS
   AND MUST THEREFORE BE DISMISSED**

9        **A.    A Question or an Answer that is Fundamentally Ambiguous
              Cannot Support a False Testimony Charge and is Properly
10             Subject to a Motion to Strike or Dismiss**

11             **1.    Some Questions Are Fundamentally Ambiguous
                      As a Matter of Law**

12      A charge of false testimony cannot rest on a defendant's responses to ambiguous

13  questions. *Bronston v. United States*, 409 U.S. 352, 362 (1973). "Precise questioning is

14  imperative as a predicate for the offense of perjury." *Ibid.* Nor is the jury permitted to guess at

15  what meaning a defendant may have ascribed to such a question. *United States v. Martellano*,

16  675 F.2d 940, 946 (7th Cir. 1982). The responsibility for framing the inquiry rests clearly and

17  directly with the prosecutor. *United States v. Tonelli*, 577 F.2d 194, 198 (3d Cir. 1978).

18      Certain questions may be deemed only arguably ambiguous and it is within the province

19  of the jury to decide whether the responses they evoke constitute false testimony. See, e.g.,

20  *United States v. Diogo*, 320 F.2d 898, 907 (2d Cir. 1963). On the other hand, some questions are

21  so inherently ambiguous that the Court may declare the related response insufficient to support a

22  false testimony conviction as a matter of law. *See, e.g., United States v. Sainz*, 772 F.2d 559, 564

23  (9th Cir. 1985) (holding that question incorporating the word "procedure" was fatally ambiguous

24  when used by prosecutor during investigation of corruption in INS because term could refer to

25  entire procedure of admitting automobiles across border or to some individual step in that

26  procedure); *United States v. Lattimore*, 127 F.Supp. 405, 406 (D.D.C. 1955) (seminal case

27  holding fundamentally ambiguous question during McCarthy hearing asking whether defendant

28  was a "follower of the Communist line."). Furthermore, because a fundamentally vague question

Memorandum in Support of Motion to Dismiss
Counts Alleged in the Superseding Indictment          -5-

1   is legally insufficient to support a false testimony conviction, it is properly subject to challenge

2   by means of a pre-trial motion to dismiss. *United States v. Serafini*, 167 F.3d 812 (3d Cir. 1999);

3   *United States v. Naegle*, 341 B.R. 349 (D.D.C. 2006); *United States v. Caputo*, 288 F. Supp. 2d

4   912, 922-23 (N.D. Ill. 2003). Where such a challenge is sustained, the proper remedy is to

5   dismiss or strike the flawed question and answer from the indictment. *Serafini*, 167 F.3d at 824.

6                    **2.      Factors Considered**

7          A question is fundamentally ambiguous when "men [sic] of ordinary intelligence" cannot

8   arrive at a mutual understanding of its meaning." *United States v. Boone*, 951 F.2d 1526, 1534

9   (9th Cir. 1991). The courts have applied a number of factors in making this determination.

10  Among them are the following:

11         *First*, some words or phrases are so inherently vague or subject to differing interpretations

12  that this defect alone renders them fundamentally ambiguous. See, e.g., *Sainz, supra*; *Lattimore*

13  *supra*; see also *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986) (reversing conviction

14  based on fundamental ambiguity where prosecutor used the pronoun "you" to refer to defendant

15  in series of questions but did not clarify when he was referring to the defendant in capacity as

16  trustee and when he was referring to the defendant in individual capacity); *United States v.*

17  *Slawik*, 548 F.2d 75, 85 (3d Cir. 1977) (reversing false testimony conviction because, *inter alia*,

18  the questioner's unqualified reference to "it" and "this" throughout a series of questions made the

19  questions fundamentally ambiguous); see also *United States v. Schulman*, 817 F.2d 1355, 1360

20  (9th Cir. 1987) (pre-trial order dismissing false testimony counts affirmed where supporting

21  allegations failed to provide adequate notice of specific purported falsity in defendant's answer).

22         *Second*, a compound question or a question subject to more than one interpretation may

23  be fundamentally ambiguous. *See, e.g., Tonelli, supra*, 577 F.2d at 199-200 (questioning whether

24  defendant "handled" certain pension funds fundamentally ambiguous where handling could have

25  meant touching the check or effecting the transaction, and it was the prosecutor's responsibility to

26  clarify which question he was asking); *United States v. Eddy*, 737 F.2d 564, 571 (6th Cir. 1984)

27  (reversing conviction where question asked incorporated at least four separate lines of inquiry);

28  *see also United States v. Karaouni*, 379 F.3d 1139, 1146 & n.13 (9th Cir. 2004).

1     *Third*, it may be impossible to determine if a witness understood the meaning of a

2 question if it contains serious errors in syntax or grammar. See, e.g., *United States v. Ryan*, 828

3 F.2d 1010, 1016-17 (3d Cir. 1987) (conviction for false testimony reversed where response to a

4 request for "Previous Address (last five years)" on a credit card application was fundamentally

5 ambiguous because singular form of the noun "address" on application could have been variously

6 construed as asking the applicant to supply any previous address he had within last five years, the

7 applicant's most recent address, or all addresses applicant had within the last five years); *United*

8 *States v. Farmer*, 137 F.3d 1265, 1270 (10th Cir. 1998) (court found the question "Have you

9 talked to Mr. McMahan, the defendant, about your testimony here today?" ambiguous because it

10 was unclear whether phrase "here today" was intended to modify the word "talked" or the word

11 "testimony," such that jury could not reasonably determine if prosecutor was asking whether

12 witness had talked to the defendant on the day of her testimony before grand jury or whether she

13 had talked with him on some earlier occasion about the testimony she was going to give on that

14 day).

15     *Fourth*, the context of the question may disclose whether or not it is fundamentally

16 ambiguous regardless of the words or phrases employed. *Saenz*, supra, 772 F.2d at 562 (Court

17 should consider the context of the defendant's statement "to determine whether the defendant and

18 his questioner joined issue on a matter of material fact to which the defendant knowingly uttered

19 a false declaration.")

20               **3.    Defendant's Ambiguous Answers**

21     It has long been established that a false testimony claim cannot be based upon an answer

22 that is literally true, even though the answer is incomplete, misleading, or non-responsive.

23 *Bronston*, supra, 409 U.S. at 361-62. Neither can such a claim be based upon an ambiguous

24 statement, the literal truthfulness of which cannot be ascertained. *United States v. Esposito*, 358

25 F. Supp. 1032, 1033 (D. Ill. 1973); *United States v. Cobert*, 227 F. Supp. 915, 919 (S.D. Cal.

26 1964).

27                                //

28                                //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Various Questions And/Or Answers Set Forth in the Superseding Indictment Are Fundamentally Ambiguous and Are Therefore Insufficient to Support a False Testimony Charge**

As noted in defendant's initial motion to dismiss, the questions posed to Mr. Bonds by two different prosecutors at his grand jury appearance were imprecise, redundant, overlapping, and frequently compound.  Following are the questions and/or answers, identified by count, which, considered alone and in context, are fundamentally ambiguous and therefore insufficient as a matter of law to support the instant false testimony charges:

**Count Two**

In this question, the prosecutor asked Mr. Bonds whether he had been taking "anything like" steroids "in the weeks and months leading up to November 2000 . . .," and Mr. Bonds said that he had not.[1]  This question is fundamentally ambiguous because it utterly fails to reasonably identify what substances can be deemed "anything like" steroids and what cannot.  Here there is simply no basis on which to determine the scope of the category at issue, and thus no basis to reasonably ascertain what government proof would establish the presence of a false response.

Furthermore, the question is equally ambiguous as to the time period at issue because there is no reasonable basis on which to identify the starting point of the period and thus no basis for determining whether the response was a knowing falsehood.  Thus, a truthful answer to the "weeks" question could be different than a truthful answer to the "months" question. For the same reason, it is impossible to determine from the question the time period the government will seek to "prove" as one during which Mr. Bonds purportedly took steroids.

---

[1] Q.      . . . So, I'm going to ask you in the weeks and months leading up to November 2000, were you taking steroids –

A.      No.

Q.      – or anything like that?

A.      No, I wasn't at all. I've never seen those documents.  I've never seen those papers.

(SI, at p. 4:4-6)

1

**Count Five**

2    The prosecutor here asked whether, apart from certain physicians, "other individuals like

3 Mr. Anderson or any associates of his" had ever injected anything into Mr. Bonds or taken

4 anything out, to which Mr. Bonds said no.[2] Here it is impossible to determine the identity of the

5 individuals the prosecutor's question reasonably placed in issue. Is Mr. Anderson himself alone

6 at issue? If not, who is included as an "associate" of Mr. Anderson? Is a personal trainer

7 unknown to Mr. Anderson someone "like" Mr. Anderson or his "associates"? The parameters of

8 the referenced class is utterly undefined and the question fundamentally vague.

9

**Count Eight**

10    Count Eight charges Mr. Bonds with falsely stating that he was not getting any

11 testosterone *or* any human growth hormone from Anderson in January, 2002.[3] The compound

12 question and answer on which the charge was based was included with a number of other

13 questions and answers in Count Three of the original indictment. Obviously, by placing this

14 question and answer in its own count in the superseding indictment, the government has framed a

15 charge that is *less* duplicitous than the former Count Three, but the compound nature of the

16 question count renders it sufficiently duplicitous and misleading to require dismissal. *See United*

17 *States v. Karaouni, supra,* 379 F.3d at 1146 & n.13 ("[T]he government is not generally

18 permitted to obtain convictions or waivers of rights on the basis of imprecise, compound

19 questions....") Furthermore, to the extent that the prosecutor's question concerns human growth

20

21        [2] Q.   . . . But no other individuals [than the team physician, your personal physician, or

22              physicians who performed surgery on you] like Mr. Anderson or any associates of
              his [has ever injected anything in to you or taken anything out]?

23          A.   No, no.

24 (SI, at p. 6:10-27)

25        [3] Q.   In January of 2002, then, again, just to be clear, you weren't getting any
              testosterone or growth hormone from Mr. Anderson during that period of time?

26
          A.   No.
27

28 (SI, at p. 8:21-23)

1 hormone, Count Eight is multiplicitous for the same reasons set forth in Argument II, *supra*.

2 **Count Nine**

3     In this colloquy with the prosecutor, Mr. Bonds described a number of events that had
4 occurred at the ballpark on one occasion, including the following: someone told him to try a
5 cream; Anderson came to the ballpark; Anderson rubbed him with some cream; Anderson said
6 this would help him recover; and Anderson gave him some flax seed oil. In the wake of hearing
7 that description, the prosecutor then asked Mr. Bonds, "When did *that* happen for the first
8 time?", to which Mr. Bonds responded, "Not until 2003, this season." (SI, at p. 9:7-24)

9     This exchange does not and cannot establish that the prosecutor and Mr. Bonds were
10 addressing a single matter of material fact concerning which Mr. Bonds knowingly made a false
11 declaration. *Sainz*, 772 F.2d at 564. That is because there is no reliable means for determining
12 the event to which the prosecutor referred when he inquired about "that" having happened for the
13 first time. The question thus irremediably compound and fatally ambiguous: based on the
14 relevant exchange, the prosecutor might have been referring to the first time Anderson came to
15 the ballpark; the first time he rubbed Mr. Bonds with some cream; the first time he gave Mr.
16 Bonds some flax seed oil; or the first time he did one or some or all of these things together.

17 **Count Eleven**

18     The prosecutor in this question asked Mr. Bonds whether, before the previous season, he
19 had ever taken "anything" Anderson asked him to take "other than vitamins," and Mr. Bonds said
20 he had not *and* that they had not had "any other discussions."[4] Based on this question, however,
21 it is impossible to say whether the denial would be deemed false if Mr. Bonds had consumed

22

23     [4] . . .

24     Q. — prior to the last season, you never took anything that [Anderson] asked you to take, other than vitamins?

25     A. Right. We didn't have any other discussions.

26     Q. No oils like this or anything like this before?

27     A. No, no, no, not at all. Not at all.

28 (SI, at p. 11:8-12)

1  water on Mr. Anderson's advice, or over the counter supplements not labeled as vitamins per se,

2  or any number of other innocuous substances. Additionally, Mr. Bonds' reference to

3  "discussions" indicates that he was not responding to a question about ingestion at all, thereby

4  establishing that he and the prosecutor again cannot have "joined issue on a matter of material

5  fact to which the defendant knowingly uttered a false declaration." *Saenz*, 772 F.2d at 562.

6  **Count Twelve**

7  In this exchange, Mr. Bonds is first told by the prosecutor that he has previously testified

8  that the first time he received the cream or flaxseed oil from Greg Anderson was prior to the

9  season just completed, i.e., 2003. (SI, at p. 11:24-28)

10  The following exchange ensued:

11  Q.  But let me ask, I mean, is it possible it's actually a year before, after the 2000 —
        well, actually two years before, after the 2001 season? Because this first calendar

12     is dated December 2001 with "BB" on it and its [sic] got a number of entries that
        I'd like to ask you about.

13     Were you getting items during that period of time from Greg?

    A.  No. Like I said, I don't recall having anything like this at all during that time of

14     year. It was toward the end of 2000, after the World Series, you know, when my
        father was going through cancer.

15
(SI, at p. 12:1-12:8)

16
    The question preceding the allegedly false response is, by any measure, unintelligible.

17
Furthermore, given the confused nature of the exchange, it is simply impossible to know what

18
falsehood Mr. Bonds is accused of telling at this juncture in his testimony. The import of the

19
false testimony question is that Mr. Bonds erroneously claimed in a prior response that the first

20
time he received the items in question was in 2003, with the prosecution now strongly implying

21
that the true time frame was late 2001. Mr. Bonds, however, did not reassert in his false

22
testimony response that the first time he received the cream and flax seed oil was 2003, but stated

23
instead that it was "the end of 2000," although he also said that to the best of his recollection he

24
did not receive them in late 2001. The statement concerning the year 2000 is not underlined,

25
suggesting that the government does not allege that claim to have been untruthful.

26
    Given this back and forth, it is unclear what lie the prosecution is alleging that Mr. Bonds

27
told. Is the government claiming that Mr. Bonds here maintained, as he did at other points in his

28
testimony, that the first time he received the cream or the flax seed oil was in 2003? Or has the

Memorandum in Support of Motion to Dismiss
Counts Alleged in the Superseding Indictment           -11-

1  government, while conceding that Mr. Bonds truthfully corrected his testimony by backing the

2  date up to 2000, nevertheless accused him of lying by testifying that, to the best of his

3  recollection, he did not receive these substances in the time frame of late 2001? Each theory of

4  false testimony would no doubt involve the presentation of different evidence by the defense, and

5  Mr. Bonds is thus entitled to know on which one the government will rest its case.

6            **Count Fourteen**

7        This exchange dealt with the issue of whether Mr. Bonds received the flax seed oil in a

8  particular time period, in this instance January of 2002. The relevant exchange is as follows:

9      Q.    And you weren't getting this flax seed oil stuff during that period
             of time [January 2002]?

10

11      A.    <u>Not that I recall. Like I say, I could be wrong. But I'm – I'm –</u>
             <u>going from my recollection it was, like, in the 2002 time and 2003</u>
             <u>season.</u>

12
   (SI, at p. 13:10-13)

13

14        As an initial matter, it appears that if the government is alleging that Mr. Bonds's answer

15  is false because he did, in fact, receive flax seed oil in January, 2002, then his statement that he

   recalled getting it "in the 2002 time" refutes the claim. "[T]he 2002 time" encompasses January,

16  2002, his answer would be literally true, and the claim therefore inactionable as a matter of law.

17  *Bronston*, supra, 409 U.S. at 361-62 (false statement claim cannot be based upon answer that is

18  literally true).

19        Furthermore, even if this patent defect could be disregarded, Mr. Bonds here made no

20  clear assertion of fact as to whether he did or did not receive the flax seed oil in January of 2002,

21  only that he did not recall doing so. The government thus would be required to prove not merely

22  that Mr. Bonds did receive the questioned substance in January of 2002, but that he in fact

23  recalled having done so at the time of his grand jury testimony and nonetheless lied about the

24  state of his recollection.

25        The government, however, has confused the nature of its accusation as to this exchange

26  by underlining a second qualification added by Mr. Bonds to his response. He not only stated

27  that he was testifying only as to the best of his recollection but also that his recollection "could be

28  wrong." If, as the government necessarily maintains by having underlined the phrase "I could be

Memorandum in Support of Motion to Dismiss
Counts Alleged in the Superseding Indictment    -12-

1  wrong," Mr. Bond lied in uttering those words, that would mean that the time frame to which he

2  then testified — "the 2002 time and the 2003 season" — could not be false. Viewed in their

3  totality, the allegations in Count Fourteen constitute an oxymoron, and do not meet the standards

4  of clarity demanded of a federal indictment. The Count must therefore be dismissed.

5  **IV. THE OBSTRUCTION OF JUSTICE OFFENSE ALLEGED IN COUNT FIFTEEN MUST BE DISMISSED BECAUSE IT CONTAINS ALL OF THE DEFECTS OF**

6  **THE FIRST FOURTEEN COUNTS**

7  For purposes of this argument, defendant incorporates the authority concerning the

8  defects in Counts One to Fourteen set forth in Arguments I-III, *supra*.

9  Count Fifteen of the superseding indictment charges Mr. Bonds with obstruction of

10  justice in violation of 18 U.S.C. section 1503. Specifically, the Count alleges that on December

11  4, 2003 — the same date placed at issue in the preceding false testimony counts — Mr. Bonds

12  . . . [corruptly influenced and endeavor[ed] to] corruptly influence, obstruct, and impede, the due administration of justice, by

13  knowingly giving Grand Jury testimony that was intentionally evasive, false, and misleading, including but not limited to the false

14  statements made by the defendant as charged in Counts One through Fourteen of this indictment.

15  (SI at p. 13:21-14:3)

16  Count Fifteen complains of all of the "false statements" alleged in Counts One through

17  Fourteen of the superseding indictment. As defendant has demonstrated, most of those charges

18  are defective and must be dismissed. That alone would require the dismissal of Count Fifteen as

19  well.

20  Furthermore, Count Fifteen not only alleges multiple bases for conviction defined

21  elsewhere in the indictment, but seeks to sweep within itself false statements nowhere listed in

22  the indictment, rendering the count both duplicitous and so vague as to deprive the defendant of

23  the due process notice required to prepare a defense. *Apprendi v. New Jersey,* 530 U.S. 466, 478

24  (2000) ("[C]riminal proceedings [are] submitted to a jury after being initiated by an indictment

25  containing 'all the facts and circumstances which constitute the offence, ... stated with such

26  certainty and precision, that the defendant ... may be enabled to determine the species of offence

27  they constitute, so he may prepare his defense accordingly...'").

28  Finally, Count Fifteen does not allege that the purportedly false statements identified

Memorandum in Support of Motion to Dismiss
Counts Alleged in the Superseding Indictment          -13-

1  therein were material, rendering it subject to dismissal for that reason as well. *United States v.*
2  *Aguilar*, 515 U.S. 593 (1995) (in obstruction of justice case, the government was required to
3  prove that the defendant's actions had the "natural and probable effect" of interfering with the
4  due administration of justice).

5  **CONCLUSION**

6  As Mr. Bonds has demonstrated, Count One of the indictment is fatally defective on its
7  face and must be dismissed because it fails to allege an essential element of the offense. Count
8  Seven must be dismissed because it is multiplicitous and seeks to punish Mr. Bonds twice for the
9  same alleged wrong. Furthermore, many of his allegedly "false" answers at his grand jury
10  appearance cannot support a criminal charge because the confounding nature of the government's
11  questions rendered those questions and, in certain respects, Mr. Bonds's answers, fundamentally
12  and fatally ambiguous; for that reason, Counts Two, Five, Eight, Nine, Eleven, Twelve, and
13  Fourteen must likewise be dismissed. Finally, Count Fifteen must be dismissed on the grounds
14  stated as to the other challenged counts and in light of its failure to provide due process notice
15  and to allege materiality as an element.

16  Dated: August 25, 2008                    Respectfully submitted,

17                                            LAW OFFICES OF ALLEN RUBY

18                                            ARGUEDAS, CASSMAN & HEADLEY, LLP

19                                            RAINS, LUCIA & WILKINSON, LLP

20                                            RIORDAN & HORGAN

21
                                             By  /s/  Dennis P. Riordan
22                                                    Dennis P. Riordan

23                                            By  /s/  Donald M. Horgan
                                                      Donald M. Horgan
24
                                             Counsel for Defendant
25                                           Barry Lamar Bonds

26

27

28