ALLEN RUBY (SBN 47109)
SKADDEN, ARPS,
  MEAGHER & FLOM, LLP
525 University Avenue, Ste. 1100
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsmile: (650) 470-4570

CRISTINA C. ARGUEDAS (SBN 87787)
TED W. CASSMAN (SBN 98932)
MICHAEL W. ANDERSON (SBN 232525)
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

DENNIS P. RIORDAN (SBN 69320)
DONALD M. HORGAN (SBN 121547)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472

Attorneys for Defendant
BARRY LAMAR BONDS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>BARRY LAMAR BONDS,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CR 07 0732 SI<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CONFORM GOVERNMENT'S EVIDENCE TO THIS COURT'S FEBRUARY 19, 2009 ORDER**<br><br>Date:   February 11, 2011<br>Time:   11 a.m.<br>Judge: The Honorable Susan Illston |

Defendant's Reply in Support of
Motion to Conform Government's Evidence

1

**TABLE OF CONTENTS**

2

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4
I.      THE EVIDENCE EXCLUDED BY THE COURT'S PRIOR ORDER IS
        NEITHER RELEVANT TO, NOR MORE PROBATIVE THAN PREJUDICIAL

5      ON, THE ISSUE OF THE MATERIALITY OF DEFENDANT'S ALLEGEDLY

6      FALSE STATEMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7       A.      The Excluded Evidence Is Not Relevant To the Issue of Materiality. . . . . . . . . . 3

8       B.      Under Rule 403, The Excluded Evidence Cannot Be Admitted On
                The Theory That It Provides "Context" Or "Background," Or That

9              It Bears On The Mental State of Prosecutors or Investigators. . . . . . . . . . . . . . . 6

        C.      If the Excluded Evidence Is Admitted on the Issue of Materiality,
10              the Government Will Violate this Court's Order by Relying on That
                Evidence as Proof of the Defendant's Receipt and Use of Performance

11             Enhancing Drugs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12      D.      The Government's Proffered Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13              1.      Test Result Documents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14              2.      The Calendars. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

15              3.      Ledger Sheets, Handwritten Notes and Other Items. . . . . . . . . . . . . . . . 15

16              4.      Photo Log Sheets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

17              5.      The Envelope with Cash. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18              6.      Documents and Testimony Associated with Other Athletes. . . . . . . . . . . 19

19              7.      Other Witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

20              8.      The Proposed Redactions To The Indictment and the Grand Jury
                        Transcript. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

21

22      CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Devaney v. Chester*,
813 F.2d 566 (2d Cir. 1987)                                      20

4

*Gebhard v. United States*,
5        422 F.2d 281 (9th Cir. 1970)                                    22

6       *Harrell v. United States*,
220 F.2d 516 (5th Cir. 1955)                                     22

7

*Joint Anti-Fascist Refugee Committee v. McGrath*,
8        341 U.S. 123 (1951)                                             19

9       *Kennedy v. Lockyer*,
379 F.3d 1041 (9th Cir. 2004)                                   19

10

*Old Chief v. United States*,
11       519 U.S. 172 (1997)                                             22

12      *Ryan v. Miller*,
303 F.3d 231 (2d Cir. 2002)                                  7, 21

13

*United States v. Avery*,
14       760 F.2d 1219 (11th Cir. 1985)                                  22

15      *United States v. Baker*,
432 F.3d 1189 (11th Cir. 2005)                               7, 8

16

*United States v. Benitez-Avila*,
17       570 F.3d 364 (1st Cir. 2009)                                     7

18      *United States v. Bonds*,
608 F.3d 495 (9th Cir. 2010)                                     1

19

*United States v. Conrad*,
20       507 F.3d 424 (6th Cir. 2007)                                    19

21      *United States v. Dickens*,
775 F.2d 1056 (9th Cir. 1985)                                   19

22

*United States v. Dipp*,
23       581 F.2d 1323 (9th Cir. 1978)                                   22

24      *United States v. Doe*,
149 F.3d 634 (7th Cir. 1998)                                    20

25

*United States v. Echeverry*,
26       759 F.2d 1451 (9th Cir. 1985)                                    7

27

28                                     -ii-

**Table of Authorities continued**

*United States v. Evans*,
216 F.3d 80 (D.C. Cir. 2000)                                           6, 8

*United States v. Fountain*,
2 F.3d 656 (6th Cir. 1993)                                               7

*United States v. Garcia*,
151 F.3d 1243 (9th Cir. 1998)                                           19

*United States v. Gaudin*,
515 U.S. 506 (1995)                                                      1

*United States v. Gibson*,
690 F.2d 697 (9th Cir. 1982)                                             7

*United States v. Leon-Reyes*,
177 F.3d 816 (9th Cir. 1999)                                            21

*United States v. Marshall*,
173 F.3d 1312 (11th Cir. 1999)                                          19

*United States v. McCall*,
553 F.3d 821 (5th Cir. 2008)                                            19

*United States v. McKenna*,
327 F.3d 830 (9th Cir. 2003)                                           2, 4

*United States v. Ofray-Campos*,
534 F.3d 1 (1st Cir. 2008)                                              19

*United States v. Sampson*,
980 F.2d 883 (3rd Cir. 1992)                                            18

*United States v. Street*,
548 F.3d 618 (8th Cir. 2008)                                            19

*United States v. Williams*,
133 F.3d 1048 (7th Cir. 1998)                                            7

*Virk v. INS*,
295 F.3d 1055 (9th Cir. 2002)                                          19

## STATUTES

Fed.R.Crim.P. 12(e)                                                     1

Fed. R. Evid. 401                                                       4

Fed. R. Evid. 404 (b)                                                  18

**Table of Authorities continued**

**MISCELLANEOUS**

3 Michael H. Graham, *Handbook of Federal Evidence* § 801:5
(6th ed. 2006)                                                                     6

4 Mueller & Kirkpatrick, *Federal Evidence* § 8.50 (3d ed. 2007)        6

*McCormick on Evidence* § 249 (6th ed. 2006)                           6

-iv-

1        **INTRODUCTION**

2        At the inception of this prosecution, the government indicated that it intended to

3   introduce a mass of evidence — logs from Balco, test results from different laboratories of

4   multiple urine and blood samples, and notations in the handwriting of Greg Anderson, some on

5   calendars — as proof that defendant Barry Bonds lied to the grand jury in December of 2003

6   when he denied knowingly taking steroids and other performance enhancing drugs.  On February

7   19, 2009, this Court excluded that evidence from admission on the grounds that the government

8   could not prove by competent evidence the fact crucial to establishing its relevancy, i.e., that the

9   test results, blood and urine samples, and notations concerned Mr. Bonds.  Because the test

10  results, samples, and notations concerned a party whose identity was unproven, that evidence as a

11  matter of law could not be probative of Mr. Bonds's use of performance enhancing substances.

12  That ruling was affirmed on appeal.  *United States v. Bonds*, 608 F.3d 495, 500 (9th Cir. 2010)

13        The defense has moved the Court to confirm its earlier ruling by again barring admission

14  of the test results, blood and urine specimens, and Anderson notations, as well as all other

15  evidence rendered irrelevant by the effect of the February, 2009 order.[1]  In opposing that motion,

16  the government seeks to gain admission of virtually all of the evidence that the Court previously

17  excluded. The government's Opposition [hereafter "Opp."] contends that the excluded evidence,

18  while inadmissible to prove Mr. Bonds's use of illegal substances, is relevant, and more

19  probative then prejudicial, on the issue of whether the allegedly false statements made by Bonds

20  were material to the investigation the grand jury was conducting.

21        Anticipating this tactic in its ruling in February of 2009, the Court cautioned that

22         the government cannot use the broad definition of materiality in
           [*United States v. Gaudin*, 515 U.S. 506 (1995)] to bootstrap
23         otherwise inadmissible evidence into this case. Should the
           government seek to admit the evidence excluded in this order to
24         prove materiality, the Court will expect some showing that the
           particular aspect of materiality cannot be easily proven through
25         another means.

26  _____

27        [1] The government's waiver argument under Fed.R.Crim.P. 12(e) (Opp. at 5) is frivolous.
    Defendant's  "Motion to Conform" is being briefed on a schedule agreed upon by the parties and
28  set by the court.

                                            1

1  February 19, 2009 order (Dkt. 137) at 20-21.

2      The government claims that it "understands and respects the Court's ruling" (Opp. at 8),

3  but the positions it takes mock the Court's directive.

4      First, rather than respecting the Court's ruling that the government has not established

5  that any of the excluded evidence concerns Mr. Bonds, the government repeatedly asserts in the

6  "Facts" section of its Opposition the precise contrary. *See, e.g.*, Opp. at 3 ("ledger and the drug

7  test results found at Balco ... indicated that Bond's urine tested positive for anabolic steroids on

8  three separate occasions in 2000 and 2001"); *id*. at 4 ("[T]he documents from Anderson's

9  residence provide a detailed record of steroid distribution from Anderson to Bonds from 2001 to

10 2003, with entries referring to injectable steroids, human growth hormone, and other drugs.");

11 *see also id*., at 7 (government claims it possesses "voluminous documents reflecting the role of

12 the Balco defendants in distributing drugs to Bonds and monitoring his use of those drugs."). If

13 the name "Bonds" were removed from these assertions, as the Court's prior order effectively

14 requires, the government's argument for admission of the excluded evidence on materiality

15 grounds collapses.

16      Second, the government's claim that the excluded evidence is relevant to the issue of

17 materiality because it provides "context," "background," and the reasons for calling Mr. Bonds

18 before the grand jury is specious.  The law clearly defines materiality in objective terms. It

19 defines the issue as whether there is a logical connection between the object of a grand jury

20 investigation and the answer to a question put to a grand jury witness.  *See* Opp. at 6, quoting

21 *United States v. McKenna*, 327 F.3d 830, 838 (9th Cir. 2003) ("'[A] statement is material if it has

22 a natural tendency to influence, or was capable of influencing, the decision of the decision-

23 making body to which it was addressed.'").  As discussed more fully below, materiality has

24 nothing to do with the subjective state of mind of prosecutors or investigators — *e.g.*, what they

25 have heard or think or their motivations in calling a witness before a grand jury — particularly

26 when that state of mind has been shaped by inadmissible hearsay and speculation.

27      Third and finally, the government simply fails to come to grips with the Court's

28 command that to gain admission of any evidence previously excluded, the government must

2

1   show "that the particular aspect of materiality cannot be easily proven through another means."

2   As the government acknowledges (Opp. at 8), it will be able to introduce at trial portions of the

3   grand jury transcript, and it can introduce the Balco indictment of Anderson, Conte, and Valente

4   as well.  That evidence will establish that the grand jury was investigating Anderson's

5   distribution of performance enhancing drugs, and that Mr. Bonds's answers to questions as to

6   whether Anderson gave him such substances had "a natural tendency to influence, or was capable

7   of influencing, the decision of the decision-making body to which it was addressed" — the grand

8   jury.

9        In sum, the government's claim that it needs the excluded evidence to establish the

10  materiality of the allegedly false statements is disingenuous.  Its objective in seeking admission

11  of the evidence lies elsewhere. Assertions in the Opposition make plain that, were the excluded

12  evidence to be admitted, the government would rely on it as proof of the falsity of Mr. Bonds's

13  denials of knowing drug use, the very purpose this Court's prior exclusionary order proscribed.

14  The Court's order of February 19, 2009 should be reaffirmed and enforced.

15                              **ARGUMENT**

16  **I.   THE EVIDENCE EXCLUDED BY THE COURT'S PRIOR ORDER IS NEITHER
        RELEVANT TO, NOR MORE PROBATIVE THAN PREJUDICIAL ON, THE
17       ISSUE OF THE MATERIALITY OF DEFENDANT'S ALLEGEDLY FALSE
        STATEMENTS**

18

19       Mr. Bonds begins with three broad responses to the government's legal positions before

20  turning to the specific categories of evidence the government seeks to admit, as discussed at

21  pages 9 to 25 of its Opposition.

22       **A.   The Excluded Evidence Is Not Relevant To the Issue of
              Materiality**

23       The Opposition asserts that: "The defense does not seriously contest the relevance of the

24  [excluded evidence] to materiality...." Opp. at 9. To paraphrase Winston Churchill, rarely has the

25  exact opposite of the truth been stated with greater precision. Defendant Bonds most assuredly

26  contends that the excluded evidence is irrelevant to the issue of the materiality of the charged

27  questions and answers.

28       If a question put to a grand jury witness logically relates to the object of that grand jury

                                        3

1    investigation, the answer to that question is material because the answer "has a natural tendency

2    to influence, or was capable of influencing, the decision of the decision-making body to which it

3    was addressed." *McKenna*, 327 F.3d at 838. In this case, the issue of materiality is simply

4    whether the charged questions and answers were reasonably related to the object of the Balco

5    investigation, which was "the illegal drug-trafficking conduct of Victor Conte, Greg Anderson,

6    and others associated with Balco." Opp. at 6.

7        As noted in Mr. Bonds's motion to conform, the second superseding indictment charges

8    Mr. Bonds with making ten specific false statements to the grand jury.[2] The indictment alleges

9    that Mr. Bonds gave nine false answers to questions asking whether Mr. Anderson (or "Greg")

10   gave the defendant a performance enhancing substance, and one false answer to the question of

11   whether Mr. Anderson ever injected Mr. Bonds. The grand jury transcript establishes that Mr.

12   Bonds was informed that the grand jury was investigating whether Greg Anderson, Bond's

13   trainer, and Victor Conte distributed illegal substances to athletes. *See* Grand Jury Transcript at

14   3-4.  At trial the government can introduce the Anderson and Conte indictment, which contains

15   the allegation that: "[D]efendant Greg Anderson ... was a personal trainer in the Burlingame area

16   who purchased performance-enhancing drugs from BALCO and distributed them to professional

17   athletes...." *See* Exhibit A to this motion, the Balco indictment, at par. 5. Given this evidence of

18   the grand jury's focus, the materiality of the charged questions and answers will be obvious to the

19   jury.

20        The evidence which this Court found inadmissible to prove that Mr. Bonds received and

21   used performance enhancing drugs from Anderson cannot make it "more or less probable" that

22   Mr. Bonds's answers were material. Fed. R. Evid. 401. A piece of evidence — be it a document,

23   urine sample, or test result — that, as a matter of law, does not concern Mr. Bonds cannot render

24   the ten charged questions and answers more logically related to the object of the Balco

25

26       [2] At page 6, footnote 1 of the Opposition, the government contends that Mr. Bonds also is
charged with "the series of evasive and misleading statements identified in the government's

27   October 15, 2010 jury instructions."  On January 7, 2011, Mr. Bonds filed a motion challenging

28   the injection of those statements into the charges against him.

1   investigation than "it would be without the evidence." *Id*.

2        Nor does a document become relevant to the issue of materiality because it provided a

3   reason to call Mr. Bonds before the grand jury or ask him a particular question. *See* Opp. at 8

4   ("The provisionally excluded documents represent the best proof of materiality, as they provided

5   the impetus for putting Bonds before the grand jury in the first place.") The reasons why a

6   witness is called or asked a question implicate the subjective mental state of prosecutors and/or

7   investigators, not the objective logical relationship of a witness's answer to the focus of a grand

8   jury investigation. Mr. Bonds may have been called before the Balco grand jury for reasons

9   clearly related to the pending investigation, but that motivation would not render material a

10  question about whether he would sign a new contract or pursue free agency. Conversely,

11  prosecutors might have been impelled to call Mr. Bonds largely in the hopes of obtaining his

12  autograph, but that self-indulgent motivation would not render immaterial questions and answers

13  such as those specifically charged in defendant's indictment.

14       Nor does the fact that the government has the burden of proof on a subjective element of

15  materiality — it must "prove that the defendant knew that his false statements were material to

16  the grand jury" (Opp. at 7) — render the excluded evidence admissible.  That subjective element

17  concerns Mr. Bonds's mental state, has nothing to do with the mental state of prosecutors and

18  investigators, and cannot possibly serve as a basis for the admission of the otherwise

19  inadmissible hearsay and speculation to which those officials may have been exposed.

20       As noted above, the grand jury transcript itself establishes that Mr. Bonds was informed

21  that the grand jury was investigating whether Greg Anderson, Bond's trainer, and Victor Conte

22  distributed illegal substances to athletes.  Mr. Bonds testified that he received the clear and the

23  cream from Anderson, and acknowledged that he now suspected that the clear and the cream

24  might consist of performance enhancing drugs.  Putting before the trial jury documents shown to

25  Mr. Bonds for the first time when he appeared before the grand jury adds nothing relevant on the

26  issue of materiality, particularly given that the government is barred from arguing, and the trial

27  jury is barred from concluding, that the documents concern Mr. Bonds or that they contain any

28

5

truthful information whatsoever.

**B.    Under Rule 403, The Excluded Evidence Cannot Be Admitted On The Theory That It Provides "Context" Or "Background," Or That It Bears On The Mental State of Prosecutors or Investigators**

The government claims that it is entitled to introduce the excluded evidence to put Mr. Bonds's allegedly false statements in their "necessary context" rather than "present[ing] them in a vacuum." (Opp. at 7). The contention is quite similar to ones frequently considered by the federal circuits. Prosecutors have called an officer and asked him to explain why he investigated or arrested the defendant. The officer then relayed to the jury what otherwise would be inadmissible evidence — typically un-tested and un-crossed hearsay or prejudicial character evidence — for the ostensible non-hearsay purpose of explaining the "background" and "context" of the investigation, thereby skirting the force of exclusionary rules such as Rule 404 and Rule 802, as well as the Confrontation Clause itself.

Courts and commentators alike have resoundingly rejected such tactics. Mueller and Kirkpatrick, for example, counsel that the use of "investigative background" evidence to "escape the bar of the hearsay doctrine" must be rejected. *See* 4 Mueller & Kirkpatrick, *Federal Evidence* § 8.50 (3d ed. 2007). The reason is simple: "such proof can pollute trials in just the way that other doctrines seek to prevent." *Id.*; *see also McCormick on Evidence* § 249 (6th ed. 2006) ("The need for [investigative background] evidence is slight, the likelihood of misuse great."); 3 Michael H. Graham, *Handbook of Federal Evidence* § 801:5 (6th ed. 2006) (stating that "absent special circumstances enhancing probative value" such evidence should "be excluded on the grounds that the probative value of the statement admitted for a non-hearsay purpose is substantially outweighed by the danger of unfair prejudice").

Circuit courts have reached the same conclusion. In *United States v. Evans*, 216 F.3d 80 (D.C. Cir. 2000) (Garland, J.), for example, the officer called an undercover narcotics officer and asked him to explain how and why he came to focus on the defendant. The officer then relayed "information" he had received from informants about the defendant. On appeal, the government argued (just as the government argues here) that the testimony was relevant nonhearsay because

6

it was offered "as 'background' – merely for the value of giving the jury a complete picture of the events in question." *Id*. at 87.  The D.C. Circuit rejected that argument.

> Approving the admission of [the officer's] testimony under these circumstances would open a large loophole in the hearsay rule. If we were to accept the government's rationale here, then explaining why government agents "did what they did" through reference to statements of absent informants would be acceptable in almost any case involving an undercover operation, and in many others as well. That is a loophole this circuit has previously refused to open.
> *Id*. at 86.

Other circuits have reached the same conclusion in similar circumstances. *See, e.g.*, *United States v. Benitez-Avila*, 570 F.3d 364, 369 (1st Cir. 2009); *United States v. Baker*, 432 F.3d 1189, 1206, 1219 (11th Cir. 2005); *Ryan v. Miller*, 303 F.3d 231, 252-53 (2d Cir. 2002); *United States v. Williams*, 133 F.3d 1048, 1051-52 (7th Cir. 1998); *United States v. Fountain*, 2 F.3d 656, 668-69 (6th Cir. 1993).[3]  Remarkably, the government cites *Ryan v. Miller* (Opp. at 19), although the holding of that case is a dagger to the heart of the prosecution's position. 303 F.3d at 253 ("Because the testimony is only relevant to the very purpose for which the jury cannot consider it, it is not admissible testimony under the background exception")

Here, the government responds to this line of authority primarily by noting that its evidence is relevant to show "context or background," and thus that it is not offered for a hearsay purpose.  Opp. at 18-19.  Once again, Judge Garland's opinion in *Evans* – responding to the very same point – is instructive.  While it may be true that background or context evidence "is technically not hearsay at all," it remains true that such evidence is inadmissible under Rule 403.

---

[3] The Ninth Circuit cases cited by the government (Opp. at 18-19) are not to the contrary. *United States v. Gibson*, 690 F.2d 697 (9th Cir. 1982), dealt with statements made by employees of a fraudulent business to potential investors.  The Ninth Circuit held, uncontroversially, that such statements were not hearsay, and that even if they were, they were admissible under various hearsay exceptions.  *Gibson* has no applicability here.

*United States v. Echeverry*, 759 F.2d 1451 (9th Cir. 1985), dealt with statements by an informant to an investigator.  The court held (in summary fashion) that such statements were not hearsay because they were offered for "necessary background information," and in any event, that any error in admitting the statements was harmless because the disputed statements "did not directly implicate" the defendant.  *Id*. at 1457.

7

1   216 F.3d at 87.

2       Here, because the excluded evidence has no tendency in reason to prove the charged

3   statements more material than do the questions and answers themselves, it cannot survive a bare

4   Rule 401 challenge.  A fortiori, it cannot survive a Rule 403 challenge – because the potential for

5   unfair prejudice is vast.  "Regardless of the reason for which the court and the prosecutor thought

6   the evidence was being offered, the prejudice inquiry asks whether 'the jury [was] likely to

7   consider the statement for the truth of what was stated with significant resultant prejudice.'"

8   *Evans*, 216 F.3d at 87 (quoting *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994)); *see also*

9   *Baker*, 432 F.3d at 1219 n.36 (stating that even though evidence describing the background of the

10  case is "inextricably intertwined" with other evidence, "it must still satisfy Rule 403").

11      In this case, there is an overwhelming likelihood that the jury would consider the disputed

12  evidence for an impermissible purpose; indeed, as discussed below, the government has made

13  clear that it intends that precise result.  It is not realistic to expect the jury to confine itself to the

14  fairly marginal and uninteresting questions of "background" and "context" when the

15  impermissible inferences are so powerfully alluring.[4]

16  **C.    If the Excluded Evidence Is Admitted on the Issue of Materiality, the
        Government Will Violate this Court's Order by Relying on That
17      Evidence as Proof of the Defendant's Receipt and Use of Performance
        Enhancing Drugs**

18      The government is struggling mightily to admit the excluded evidence ostensibly on the

19  issue of materiality when it has no need of additional evidence on that element of the charged

20  offenses.  The reasons for its Herculean labor are transparent: it intends to use the evidence for

21  the purpose proscribed by the Court's February, 2009 order.

22

23      _____

24      [4] Nor in this context is it appropriate to rely on boilerplate arguments that jurors are
    presumed to follow limiting instructions.  *See* Opp. at 24-25. As Judge Leval put it in *Reyes*:
25  "Ordinarily we assume that juries will follow limiting and curative instructions. There are,
    however, occasions where the prejudice is so severe that such instructions are unlikely to be
26  effective.  Given the high potency of these declarations, their determinative significance for the
    only important issue in the trial, and their lack of significance for any other purpose, the limiting
27  instructions given by the court were unlikely to prevent the jury from considering the declarations
    for their truth."  18 F.3d at 71-72.
28

1     The Court ruled that the government could not lay the necessary foundation for admission

2   of the excluded evidence: viz., that the test results, urine and blood specimens, and various

3   calendars and documentation in fact concerned Mr. Bonds. That being so, the government is

4   barred from asking the jury to draw that proscribed inference. Yet the government's materiality

5   arguments explicitly rely on just that forbidden premise.

6     For example, under the rubric of establishing materiality, the government begins by

7   assuming the fact that the Court has ruled it has failed to prove: that the seized documents

8   concerned Mr. Bonds. Opp. at 10 ("The seizure of the test documents from the Balco premises

9   and Anderson's residence linked Bonds to Balco and Anderson, and plainly implicated Bonds as

10  someone with knowledge of the drug trafficking activities of Conte, Anderson and the other

11  Balco defendants.") The government then contends that it should be permitted to present the

12  excluded documentation to the jury so that it can argue that "Bond's false denials of knowing

13  steroid receipt and use of the drugs provided by the Balco defendants cast doubt on the credibility

14  of the calendars and other documents tending to demonstrate the distribution of steroids;" thus,

15  "the calendars and other documents" are material. Opp. at 11. But a jury could not conclude that

16  Bonds's denials cast any doubt whatsoever on the credibility of the seized calendars and other

17  documentation unless it first concluded that those documents concerned Bonds's own "knowing

18  steroid receipt and use of the drugs provided by the Balco defendants." That is precisely the

19  inference that this Court has prohibited the government from urging upon the jury.

20    Likewise, unless the evidence in question remains excluded, the government will also

21  violate the Court's prior order by arguing to the jury that "the documents from Anderson's

22  residence provide a detailed record of steroid distribution from Anderson to Bonds from 2001 to

23  2003, with entries referring to injectable steroids, human growth hormone, and other drugs"

24  (Opp. at 4), and that the "voluminous documents reflect[] the role of the Balco defendants in

25  distributing drugs to Bonds and monitoring his use of those drugs." (Opp. at 7).

26    The Court's order compels the government to prove that Mr. Bonds's denials of receiving

27  and using drugs from Anderson were false by means of evidence other than that covered by the

28

February, 2009 order. If the government succeeds in that task, the jury will have no difficulty finding the charged statements material to the Balco investigation.  The government's effort to gain admission of the excluded in order to use it for an improper purpose must be rejected.

### D.    The Government's Proffered Evidence

The government has grouped the excluded evidence it now seeks to admit in eight categories.  The defense reply to each category of evidence, with some exceptions, largely rests on one or more of the general objections discussed above.

### 1.    Test Result Documents

The government's argument on this critical category of excluded evidence clearly exposes its intention to violate this Court's prior exclusionary order. Having asserted that the test results constitute proof that "Bonds was a knowing recipient of steroids who was knowingly having his blood and urine tested as part of his regimen of steroid use and receipt," the government insists it should be "permitted to offer the above-referenced test result documents not for the truth of the information asserted within them, but to prove the ways in which Bonds's testimony could have materially affected the grand jury, *particularly as that testimony contradicted the test results*. Opp. at 11 (italics added). But there can be no such contradiction unless the jury were to impermissibly find, at the government's urging, that the test results concern Mr. Bonds and that they prove what the government claims is "the truth of the information asserted within them."

The flaws in the government's argument are conspicuously evident in its focus on four exhibits, attached to its Opposition papers, that this Court excluded from evidence, but which the Opposition describes as "important to the government's proof of materiality in this case." Opp. at 9. They are Balco log sheets referencing Mr. Bonds's name (Exhibit 1), Quest Diagnostic test results (Exhibit 2), handwritten notes captioned "Barry" (Exhibit 3), and calendars containing the initials "BB" and "BLB." (Exhibit 4). Without explication, the government urges that this Court's February 19th order may be respected by redacting the excluded documents "to remove references to actual positive test results, in order to address the defense concern of the trial jury

1   considering the inadmissible hearsay contained within the documents." Opp. at 8.[5]

2   Contrary to the government's assertion, positive test results are not the only inadmissible

3   hearsay contained in the documents.  Rather, as this Court expressly and repeatedly found, the

4   documents were excluded because the government failed to establish by competent admissible

5   evidence the factual predicate that the documents actually referred to Mr. Bonds. These

6   documents cannot possibly be relevant to materiality unless the alleged references to Mr. Bonds

7   are proven to be true.   Absent competent admissible evidence at trial to authenticate those

8   references, the exhibits constitute rank hearsay and are not admissible to show materiality or

9   anything else.

10   The admissibility issue might be left at that, but the defense will address the

11   government's arguments for admissibility of the forty-nine exhibits that have been excluded or

12   should be excluded pursuant to the February 19th order.[6]

13   •   Exhibit Two – "2 Balco Letters (5/30/03; 6/6/03) (4 p.)"

14   This Exhibit apparently consists of two transmittal letters of urine samples that the

15   government would attribute to Mr. Bonds, a proposition that it cannot prove with competent,

16   admissible evidence at trial.  The letters are allegedly linked to Mr. Bonds by the Balco logs in

17   Exhibit One that the Court ordered excluded.  Absent competent foundational evidence, the

18   letters are irrelevant.

19   •   Exhibit Three – "BLB Quest Documents (10 reports; 38 p.)"

20   This Exhibit apparently consists of 10 urine test results for urine samples that the

21   government would attribute to Mr. Bonds, a proposition that it cannot prove with competent,

22

23   [5]Actually, the copies of the government's exhibits available from the Court website
    include no redactions, leaving the Court and counsel to guess precisely what deletions the
24   government intends to make.  No matter, as discussed above, deleting references to positive tests
25   will not address the hearsay issues presented by these exhibits.

26   [6] We identify the government's exhibits with the precise language used in the
    government's Exhibit List, in part for the sake of clarity and in part to demonstrate that the
27   government's labeling frequently and prejudicially assumes facts that are not in evidence and that
28   cannot be proved by competent evidence.

admissible evidence at trial.

• <u>Exhibit Six</u> – "Specialty Lab & Fedex Documents (2 p.) (1/19/01)"

This Exhibit apparently consists of one page of a Federal Express address sheet and one page of a Specialty Laboratory transmittal sheet for a blood sample that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial.

• <u>Exhibit Seven</u> – "B, B Specialty Lab Results (20 p.)"

This Exhibit apparently consists of test results for a blood sample that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial.

• <u>Exhibit Eight</u> – "Balco Blood Test Log Books, 2001-2003 (8 pgs.)"

This Exhibit apparently consists of a Balco computerized log that the government contends refers to Mr. Bonds and others, apparently relating to blood test samples, a proposition that it cannot prove with competent, admissible evidence at trial.

• <u>Exhibit Nine</u> – "Balco BLB Blood Tests (1/19/01; 4/12/01; 2/5/03;) (13 p.)"

This Exhibit apparently consists of three test results for blood samples that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial

• <u>Exhibit Ten</u> – "LabOne Blood Test Fedex Documents (4 p.) (1/8/02; 4/12/02)

This Exhibit apparently consists of Federal Express transmittal documents for two blood samples that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial.

• <u>Exhibit Thirteen</u> – "LabOne Tests (1) & BLB Calendars (11) (12 p.)"

This Exhibit apparently includes one test result[7] for a blood sample that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible

---

[7] Exhibits Thirteen and Thirty-Three include both test results and calendars.  The government evaluated those two items of evidence separately.  We will follow suit.

evidence at trial.

• <u>Exhibit Thirty-Three</u> – Calendars, BLB Tests, Quest, & LabOne in folder labeled "B" (37 p. & Folder)"

This Exhibit apparently includes five test results for blood samples (and three pages of correspondence pertaining to one of those blood samples) that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial.

The Exhibit also apparently includes two test results for urine samples that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial.[8]

• <u>Exhibit Thirty-Eight</u> – "Greg Anderson 25" File - LabOne & Quest Documents w/ BLB DOB (4 p. & Folder)

This Exhibit apparently includes three test results for blood samples that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial. The Exhibit also apparently includes one test result for a urine sample that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial.

• <u>Exhibits Forty-Five Through Fifty-Four</u> – "Quest Documents"

Each of these ten Exhibits apparently consists of test results and related documentation for urine samples that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial.

• <u>Exhibit Fifty-Nine</u> – "LabOne Blood Tests Barry Bonds (44 p.)"

This Exhibit apparently consists of four test results for blood samples that the government would attribute to Mr. Bonds, a proposition that it cannot prove with competent, admissible evidence at trial.

_____

[8] In addition to test results and calendars, Exhibit Thirty-Three also includes one page of handwritten notes that do not purport to refer to Mr. Bonds and eight pages that appear to prescribe a workout regimen for an unidentified person.  The government did not address these items in its papers.  Absent a foundational witness for the proposition that these items pertain to Mr. Bonds, they are irrelevant.

13

1    •    <u>Exhibit Sixty</u> – "Specialty Lab Tests"

2        This Exhibit apparently consists of at least one test result and related documentation for

3    one or more blood samples that the government would attribute to Mr. Bonds, a proposition that

4    it cannot prove with competent, admissible evidence at trial.

5                    **2.    The Calendars**

6        The government seeks to admit portions of Exhibits Thirty-Three and Thirty-Eight,

7    consisting of calendars with handwritten notations that purportedly refer to Mr. Bonds's use of

8    steroids and other performance enhancing drugs, to demonstrate the materiality of his grand jury

9    testimony.  Opp. at 11.  As with the test result documents, the government acknowledges its view

10   that the calendars "suggested Bonds's knowing receipt of anabolic steroids . . ."  Opp. at 12.

11   Nevertheless, disclaiming that purpose in seeking their admission into evidence, the government

12   advances three supposedly non-hearsay theories of admissibility to demonstrate the materiality of

13   his grand jury testimony together with a fourth theory that is seemingly divorced from the issue

14   of materiality and virtually any other theory of admissibility.

15       First, as with the test result documents, the government argues that the calendars were

16   substantive evidence of Anderson's steroid trafficking that Mr. Bonds could either corroborate or

17   cast doubt upon, thereby showing the materiality of his testimony as reflected in Counts One,

18   Two and Three.  Opp. at 12.  Second, because the calendars allegedly indicate that Mr. Bonds

19   received injections and/or human growth hormone, his testimony that he was not injected by

20   Anderson and did not receive human growth hormone was similarly material to his testimony in

21   Counts Four and Five because that testimony also cast doubt upon the accuracy of the calendars.

22   *Id*. at 12-13.   Third, because the calendars allegedly indicate that Mr. Bonds received steroids

23   during specific periods of time, his testimony concerning the timing of his receipt of the clear and

24   cream from Anderson, as reflected in Counts Six through Ten, also cast doubt upon the

25   calendars' accuracy.  And finally, in a point unrelated to Mr. Bonds's grand jury testimony, the

26   government argues that the calendars are admissible essentially "to demonstrate the materiality of

27   Bonds's false, evasive, and misleading statements with respsect [sic] to the calendars." Opp. at

28

                                    14

13.

Given the preceding discussion of the test result documents, the government's first three arguments are readily dispatched. Each assumes precisely the central fact that the government cannot prove — i.e., that the calendars do indeed refer to Mr. Bonds and illustrate his use of anabolic steroids and human growth hormone. Unless the calendars are authenticated by competent evidence, they are no more probative to the materiality of Mr. Bonds's testimony than calendars for other athletes or for an unknown person. And unless the government establishes at trial that the calendars refer to Mr. Bonds and his drug use, then his testimony cannot logically be said to have corroborated or cast doubt upon them. Thus, the government's theories of admissibility of the calendars for materiality stand or fall on the truth of the matters asserted and are not proffered for a non-hearsay purpose.

Finally, the government's attempt to justify the admissibility of the calendars "to demonstrate the materiality of Bonds's false, evasive, and misleading statements with respect [sic] to the calendars" is confusing and unpersuasive. Opp. at 13. What false statement concerning the calendars did Mr. Bonds make? The indictment charges none. The government claims that Stan Conte will testify that "Bonds told Conte that Anderson put Bonds's initials on calendars to protect other athletes." *Id*. But at no point in his lengthy testimony was Mr. Bonds asked whether he knew that Anderson kept calendars, whether Anderson told him that he kept calendars, or whether Mr. Bonds told Stan Conte that Anderson put Mr. Bonds's initials on calendars. Thus, Stan Conte's anticipated testimony is not relevant or admissible to show a purpose of evasion by Mr. Bonds, and his testimony cannot be used to bootstrap the admission of calendars that are hearsay and otherwise inadmissible.

### 3. Ledger Sheets, Handwritten Notes and Other Items

This category of evidence proffered by the government consists of the following:

- Exhibit One – Balco Log Sheets (26 pages)

This Exhibit apparently consists of 26 pages of internal Balco documents, primarily handwritten notes and ledgers. The Court's February 19th order excluded them.

15

- Exhibit Eleven – BLB Nutritional Program (2 p.)

This Exhibit apparently consists of a nutritional program supposedly developed by Victor Conte for Mr. Bonds.

- Exhibit Fourteen – Brown Portfolio

This Exhibit apparently consists of an unidentified portfolio.

- Exhibit Twenty-Eight – "Envelopes located with cash (13 p.)"

This Exhibit apparently consists of envelopes and documents with handwritten notations including references to money or cash, allegedly seized from Greg Anderson's residence.

- Exhibit Twenty-Nine – Handwritten Note

This Exhibit appears to consist of one page of handwritten notes that the government contends refers to Mr. Bonds and apparently others. The Court's February 19th order excluded them.

- Exhibit Thirty-Two – BLB Handwritten Note

This Exhibit appears to consist of one page of handwritten notes that the government contends refers to Mr. Bonds. The Court excluded this Exhibit in its February 19th order.

The government argues that this category of evidence is material because "[t]hese documents demonstrate that Bonds had a relationship with Balco and Anderson in which Bonds received drugs from Balco and Anderson, and was tested in connection with his use of them." Opp. at 14. Because the government is barred by the court's prior order from urging the jury to draw these inferences from the documentation, its materiality argument fails on that ground alone. This category of evidence is obviously barred by Rule 403 as well.

### 4. Photo Log Sheets

The government has proffered the following exhibits in this category:

- Exhibit Sixty-Two – Photo Log Sheets - Balco

This Exhibit appears to be a photograph of documents seized at Balco, including the handwritten logs included in Exhibit One and various urine test results from Quest Diagnostics. The Court excluded Exhibit One and the Quest Diagnostic urine test results in its February 19th

16

order.

•     Exhibit Sixty-Four – "Photo Athlete Folders From Closet- Anderson Residence"

This Exhibit appears to be a photograph of documents and other items seized from Greg Anderson's residence.  The government apparently will contend that the folders in the picture refer to specific clients, possibly including Mr. Bonds.

•     Exhibit Sixty-Five – "Photos-drawer w/Barry notes & drugs-Anderson Residence"

This Exhibit appears to be a photograph of Exhibits Twenty-Nine and Thirty-One.

•     Exhibit Sixty-Seven – "Photo - Safe w/ $ & note-Anderson Residence"

This Exhibit appears to be photograph of items included in Exhibit Twenty-Eight.

•     Exhibit Seventy – "Photo - Brown Portfolio-Anderson Vehicle"

This Exhibit appears to be a photograph of a portfolio, seized from Greg Anderson's car, that allegedly contained client files.

The government contends that it is entitled to gain admission not only of the previously excluded documentation seized in searches of the Balco premises and Anderson's residence, but also of photos taken of that documentation.  Opp. at 15.  Because the documents are inadmissible, the photos are doubly so.

Furthermore, the government claims the right "to summarize the results of the searches and the relationship between those searches and the decision to have Bonds testify." (Opp., at 15). This gambit, a clear assault on the ban on hearsay and speculation, is forbidden by the case law cited above.  The hearsay ban must apply all the more forcefully in a case where the claimed need for added proof of materiality is groundless.

**5. The Envelope with Cash**

Exhibit Twenty-Eight – "Envelopes located with cash(13 p.)"

This Exhibit apparently consists of envelopes and documents with handwritten notations including references to money or cash, allegedly seized from Greg Anderson's residence.   This Exhibit was a subject of the Court's Order of exclusion.  *See* February 19th order at 14.

The government's argument for admissibility of this category of evidence is particularly

1  confused. Initially, the government argues that the $63,000 in cash is "probative evidence

2  tending to establish that Anderson was hoarding cash proceeds garnered from drug trafficking,

3  and thus relevant to the proof in this case by tending to establish that Bond's statements that he

4  never received steroids from Anderson are false." Opp. at 16. Thus the proposed chain of

5  relevancy is (a) Anderson has a large amount of cash; (b) Anderson is therefore a drug dealer;

6  ergo, (c) Bonds obtained drugs from Anderson.

7      *If* the government ultimately rested its claim on this inferential chain, its argument would

8  founder on the bar against use of character evidence to prove conduct on a specific occasion:

9  "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in

10  order to show action in conformity therewith." Fed. R. Evid. 404 (b); *United States v. Sampson*

11  980 F.2d 883, 887 (3rd Cir. 1992) ("If the government offers prior offense evidence, it must

12  clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be

13  the inference that because the defendant committed . . . offenses before, he therefore is more

14  likely to have committed this one"). Were Anderson on trial for distributing illegal substances to

15  Mr. Bonds, the government might well be barred from proving Anderson's guilt by establishing

16  through the act of holding a large amount of cash that Anderson had the character of a drug

17  dealer, and therefore must have sold drugs to Mr. Bonds. In any case, it is simply nonsense to

18  assert that the government can attempt to prove *Mr. Bonds* received drugs from Anderson by the

19  introduction of evidence concerning *Anderson's* character as proven by *Anderson's* prior bad

20  acts. There is no case law that would permit such a tactic.

21      But the government then changes course when it states that it intends to proffer evidence

22  that the cash held by Anderson was *not* the proceeds of drug dealing: to wit, "the government's

23  evidence will include testimony from Stan Conte that Bonds asked Anderson to hold the cash,

24  and that the cash was for Bond's mistresses." Opp. at 16. Here, the government's position is that

25  the cash is admissible to prove Anderson's character not as a drug dealer, but as an *entremetteur*

26  for the defendant's purported *liasons secretes*. Aside from the undoubted hearsay problems with

27  Conte's testimony, what conceivable rationale can there can be for the admission of such

28

18

1   evidence? This trial will provide fodder enough for the tabloids; gossip from the witness stand

2   about paramours would besmirch the dignity of this Court.

3          **6.      Documents and Testimony Associated with Other
                     Athletes**

4

5          The government initially sought to call other athletes to testify that they had received

6   performance enhancing drugs from Anderson, and had maintained calendars as to their use

7   similar to the calendars the government claims Anderson maintained for Mr. Bonds. Having

8   excluded the latter calendars, this Court excluded the calendars of the other athletes as well.

9   February 19th order, at 13-14.

10         The government now moves to reverse the Court's prior ruling as to the calendars, and to

11  also permit the introduction of testimony of the other athletes and related documents. (Exhibits 4,

12  5, 12, 15, to 21, 31, 34, 37, and 39 to 41).  The government claims that such testimony is

13  admissible because "it has a tendency to prove the material fact of Bonds's knowledge that he

14  was in fact receiving steroids from Balco." Opp. at 18. This evidence should be rejected.  The

15  government's proposed strategy "is one of guilt by association -- one of the most odious

16  institutions of history. . . . Guilt under our system of government is personal." *Joint Anti-Fascist*

17  *Refugee Comm. v. McGrath*, 341 U.S. 123, 178 (1951) (Douglas, J., concurring).

18         The Ninth Circuit has long held that "[t]here can be no conviction for guilt by

19  association." *United States v. Garcia*, 151 F.3d 1243, 1246 (9th Cir. 1998) (internal quotation

20  marks omitted); *accord Kennedy v. Lockyer*, 379 F.3d 1041, 1056 (9th Cir. 2004); *United States*

21  *v. Dickens*, 775 F.2d 1056, 1058 (9th Cir. 1985). Even raising such an inference constitutes

22  prosecutorial misconduct.  *Garcia*, 151 F.3d at 1245-46.  In a variety of contexts, the Ninth

23  Circuit has stated that it "strongly disapprove[s]" of evidence of guilt by association.  *Virk v. INS*,

24  295 F.3d 1055, 1060 (9th Cir. 2002).  Other circuits are no less staunch in their rejection of such

25  evidence.[9]

26

27         [9] *See, e.g.*, *United States v. McCall*, 553 F.3d 821, 826 (5th Cir. 2008); *United States v. Street*, 548 F.3d 618, 633 (8th Cir. 2008); *United States v. Ofray-Campos*, 534 F.3d 1, 23 (1st

28  Cir. 2008); *United States v. Conrad*, 507 F.3d 424, 434 (6th Cir. 2007); *United States v.*

1    Evidence of guilt by association violates Rules 401, 403, and 404.  As the Seventh Circuit

2    has explained, evidence of guilt by association violates Rule 404 because it constitutes "group

3    character evidence."  *United States v. Doe*, 149 F.3d 634, 638 (7th Cir. 1998).  Under Rule 404,

4    it is impermissible for juries to conclude "that a particular defendant is guilty simply because the

5    defendant shares some characteristics with a particular group."  *Id*.

6    The government's proposed inference is one of group character and guilt by association.

7    It seeks to prove Mr. Bonds's guilt by reference to the guilt of others in his profession.  It seeks

8    to argue to the jury that because other baseball players knowingly used steroids, Mr. Bonds also

9    knowingly used steroids.  Indeed, it is surprising how boldly the government makes this

10   argument – it does not even attempt to disguise the nature of its theory of relevance.  But that

11   theory of relevance is plainly impermissible, having been rejected by both the Ninth Circuit and

12   other courts for decades.  The government should not be allowed to present any argument of guilt

13   by association, and it should not be allowed to call the other athletes as witnesses at Mr. Bonds's

14   trial.

15   **7.    Other Witnesses**

16   The government's arguments for the admission of testimony by Agent Novitzky and other

17   agents who conducted the searches "regarding their seizure of these documents at Balco and

18   Anderson's residence to explain the background of their investigation, and the subsequent

19   investigative steps taken after finding the documents, including the decision to subpoena Bonds

20   to testify in the grand jury" (Opp. at 19) is dealt with above. The testimony proffered on the

21   ground it provides "background" and "logical context" is not relevant to the issue of objective

22   materiality, and in this case any probative value it might have is far outweighed by the fact that

23   the government intends to use it for a prohibited purpose. That is made evident when the

24   government states its intention to rely on the testimony concerning the excluded documentation

25   to "show[]the connections between Bonds, Balco, and Anderson."  Opp. at 19; *see also id*. at 20

26   

27   *Marshall*, 173 F.3d 1312, 1317-18 (11th Cir. 1999); *Devaney v. Chester*, 813 F.2d 566, 568 (2d

28   Cir. 1987).

(agent would testify "that he found documents linking Bonds to the steroid distributors at

Balco...."). But there can be no linkage unless the jury were to conclude that the excluded

documents concerned Mr. Bonds, which is precisely the use of the evidence that this Court has

declared off limits. *Ryan v. Miller,* 303 F.3d at 253 ("Because the testimony is only relevant to

the very purpose for which the jury cannot consider it, it is not admissible testimony under the

background exception.").

As to James Valente, once the excluded documentary evidence is again ruled

inadmissible, there is simply no relevance of any testimony that Valente might give concerning

his tasks and observations at Balco.

### 8.   The Proposed Redactions To The Indictment and the Grand Jury Transcript

The government appears to argue that it has a categorical right to admit the entire grand

jury transcript. Opp. at 21-23. The argument is nonsense. Contrary to what the government

suggests, the issue is not whether the questions asked and answers given were proper in the grand

jury context, where, as the government notes, the Federal Rules of Evidence do not apply. *Id*. at

23. The question is what evidence is admissible at trial, where the Rules of Evidence most

assuredly control the proceedings. The grand jury transcript is proffered evidence, and it cannot

be admitted unless it is in compliance with the rules. In this case, the admission of certain

portions of the transcript would violate Rule 403 because they would invite the jury to consider

evidence specifically excluded by this Court's prior ruling.

The government relies on *United States v. Leon-Reyes*, 177 F.3d 816, 820 (9th Cir. 1999),

for the proposition that it is allowed to prove materiality by submitting the entire transcript. In

fact, *Leon-Reyes* thoroughly undermines the government's argument. The court in *Leon-Reyes*

first recognized that there are several different types of evidence the government might use to

prove materiality, including transcripts and grand juror testimony. *Id*. In *Leon-Reyes* itself, the

government had admitted written summaries of the testimony rather than the transcripts

themselves. The Ninth Circuit endorsed that procedure precisely because it recognized that in

some cases, summaries might be less prejudicial than transcripts. *See id*. ("[T]he district court is

better able to monitor and exclude unduly prejudicial material from short summaries than the entire transcript.").

Other cases, both in the Ninth Circuit and elsewhere, have recognized that where transcripts contain prejudicial information, they should be redacted. *See Gebhard v. United States*, 422 F.2d 281, 283 (9th Cir. 1970) ("This does not mean that in every case where a witness is charged with perjury, the full transcript of his testimony is to go to the jury. The defendant should object to any portions of the transcript which he feels are prejudicial to his cause."); *see also United States v. Avery*, 760 F.2d 1219, 1223 (11th Cir. 1985) (reversing a conviction where the district court admitted prejudicial portions of a grand jury transcript); *United States v. Dipp*, 581 F.2d 1323, 1328 (9th Cir. 1978) ("This procedure reduces the danger of prejudice to the defendant which could be the result of placing the entire transcript before the jury."); *Harrell v. United States*, 220 F.2d 516, 520 (5th Cir. 1955) (stating that in perjury cases, the admission of prior testimony that reveals other crimes should be excluded).

In its Opposition, the government does not even address these arguments. Instead, it simply repeats the same fallacy that runs throughout its Opposition. It argues that the disputed portions are relevant, and therefore, that they are admissible. But relevance is not the sole criterion of admissibility. In order to be admissible, evidence must comply not only with Rule 401 but also with all of the other Rules of Evidence – including Rules 403, 404, and 802. Even assuming arguendo that the disputed portions are relevant – and would pass the "any tendency" test of Rule 401 – they are nonetheless inadmissible because they contain unfairly prejudicial information.[10] Those portions refer, in explicit detail, to the very evidence that this Court excluded in its February 19, 2009 order. To admit the entire transcript would thoroughly undermine that order.

---

[10] The "discounted" probative value of this evidence is particularly low, moreover, because the government has so many other means of proof available. *See Old Chief v. United States*, 519 U.S. 172, 183 (1997) (stating that district courts conducting Rule 403 inquiries must examine alternate means of proof, and should exclude a proffered piece of evidence "if its discounted probative value [is] substantially outweighed by unfairly prejudicial risk").

1    Like any other piece of evidence with low probative value and a high potential for unfair

2    prejudice, the disputed portions of the indictment and the grand jury transcript should be

3    excluded from trial.

**CONCLUSION**

5    For the reasons set forth in defendant's opening motion and above, the government must

6    be ordered to conform its proof at trial to the Court's previous order of February 19, 2010.

7    Dated: January 14, 2011                    Respectfully submitted,

8                                               LAW OFFICES OF ALLEN RUBY

9                                               ARGUEDAS, CASSMAN & HEADLEY, LLP

10                                              RIORDAN & HORGAN

11

12   By   /s/ Dennis P. Riordan
               Dennis P. Riordan

13   By   /s/  Donald M. Horgan
               Donald M. Horgan

14

15   By   /s/  Ted Sampsell-Jones
               Ted Sampsell-Jones

16                                              Counsel for Defendant
                                                Barry Lamar Bonds

17

18

19

20

21

22

23

24

25

26

27

28