1   ALLEN RUBY (SBN 47109)
SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP
2   525 University Avenue, Suite 1100
Palo Alto, CA. 94301
3   Telephone: (650) 470-4500
Facsimile: (650) 470-4570
4
CRISTINA C. ARGUEDAS (SBN 87787)
5   TED W. CASSMAN (SBN 98932)
ARGUEDAS, CASSMAN & HEADLEY, LLP
6   803 Hearst Avenue
Berkeley, CA 94710
7   Telephone: (510) 845-3000
Facsimile: (510) 845-3003
8
DENNIS P. RIORDAN (SBN 69320)
9   DONALD M. HORGAN (SBN 121547)
RIORDAN & HORGAN
10  523 Octavia Street
San Francisco, CA 94102
11  Telephone: (415) 431-3472
Facsimile: (415) 552-2703
12
Attorneys for Defendant
13  BARRY LAMAR BONDS

14

## UNITED STATES DISTRICT COURT

15

## NORTHERN DISTRICT OF CALIFORNIA

16

## SAN FRANCISCO DIVISION

17

18  UNITED STATES OF AMERICA,           )   Case No. CR 07 0732 SI
                                        )
19              Plaintiff,              )   **DEFENDANT'S REPLY**
                                        )   **MEMORANDUM IN SUPPORT OF**
20      vs.                             )   **MOTION IN LIMINE  FOUR: RE**
                                        )   **OPINION TESTIMONY AS TO THE**
21  BARRY LAMAR BONDS,                  )   **TRUTH OR FALSITY OF**
                                        )   **DEFENDANT'S GRAND JURY**
22              Defendant.              )   **TESTIMONY OR HIS STATE OF MIND**
                                        )
23                                      )   Date: March 1, 2011
                                        )   Time: 1:30 p.m.
24  _____        )   Courtroom of the Honorable Susan Illston

25                              **INTRODUCTION**

26          Defendant Bonds is charged with making four knowingly false statements to the grand

27  jury, and with obstructing the grand jury by making those and other statements. All of those

28  statements concern whether Mr. Bonds received and used performance enhancing drugs from

Reply in Support of Motion Re Opinion
Testimony As To Truth Or Falsity Of
Defendant's Testimony Or His State of Mind          1

1   Greg Anderson.

2       In its Opposition to the "Novitzky" motion, the government correctly asserts that:

3   "Materiality is an element of all five charges the defendant faces at trial." (Opp., at 2). The law

4   defines materiality as a logical connection between the object of a grand jury investigation and

5   the answer to a question put to a grand jury witness. (*See* Opp. at 6, quoting *United States v.*

6   *McKenna*, 327 F.3d 830, 838 (9th Cir. 2003) ("'[A] statement is material if it has a natural

7   tendency to influence, or was capable of influencing, the decision of the decision-making body to

8   which it was addressed.'").)

9       The pleadings of the parties have established that the government will gain admission of a

10  wealth of evidence on the materiality issue. The grand jury transcript establishes that Mr. Bonds

11  was informed that the grand jury was investigating whether Greg Anderson, Bonds's trainer, and

12  Victor Conte distributed illegal substances to athletes. *See* Grand Jury Transcript at 3-4. At trial

13  the government can introduce the Anderson and Conte indictment, which contains the allegation

14  that: "[D]efendant Greg Anderson ... was a personal trainer in the Burlingame area who

15  purchased performance-enhancing drugs from BALCO and distributed them to professional

16  athletes...." The defense has agreed that the government can introduce at trial the plea agreement

17  of Anderson, in which he admitted that he distributed performance enhancing drugs to athletes.

18      It would insult the intelligence of this district's jury pool to suggest that this evidence will

19  be insufficient to permit the trier of fact to fairly assess whether questions and answers

20  concerning Anderson's distribution of PED's to Mr. Bonds logically related to the grand jury's

21  investigation of Anderson's distribution of PED's to athletes. Nonetheless, the government

22  claims that Agent Novitzky must be permitted to testify on the issue of the materiality of the

23  statements that form the basis of the charges against Mr. Bonds. But as its Opposition makes

24  clear, the government's professed interest in Novitzky's testifying on materiality is largely a

25  sham. If proving materiality were the government's real objective, it would seek only to

26  introduce Novitzky's testimony that, given the nature of the questions put to Mr. Bonds

27  concerning Mr. Anderson and PEDs, any answer given by Mr. Bonds, true or false, had the

28  capability of influencing the grand jury's investigation of PEDs. That testimony would be an

**Reply in Support of Motion Re Opinion**
**Testimony As To Truth Or Falsity Of**
**Defendant's Testimony Or His State of Mind**     2

1   exercise in hauling coals to Newcastle.

2        The true objectives of the government's proffer are twofold — one stated, the other

3   unstated but obvious. The first is to gain admission of Novitzky's testimony that in his opinion

4   the grand jury testimony of Mr. Bonds was "untruthful." (Opp., at 4, *see also id*., at 5: Novitsky

5   will testify that "he made particular investigative decisions based on his view that the defendant's

6   grand jury testimony was not truthful;" *id*.: testimony will "reveal[] Agent Novitsky's views on

7   whether the defendant was truthful in his grand jury testimony;" *id*., at 9: Novitsky will testify to

8   his "subjective determination of the falsity of the defendant's statements." ). The second

9   objective is to subvert this Court's exclusionary order concerning certain evidence gathered by

10  Novitzky and the rest of the prosecution team during the course of the Balco investigation. The

11  government intends to have Novitzky testify to his "view that certain of the defendant's grand

12  jury statements were 'inconsistent' with other evidence...." (Opp., at 5), and claims that such

13  testimony is admissible because "Novitsky was the main instrument for the collection of

14  contradictory evidence." (Opp., at 7). Under the guise of "explain[ing] his thoughts" (*id*.), the

15  government will attempt to have Novitzky testify to hearsay that has already been ruled

16  inadmissible by this Court on the issue of materiality (and all other issues).  Absent appropriate

17  bridling by the Court, Agent Novitzky will trigger a mistrial of this action.

18  **I.**    **ANY TESTIMONY BY AGENT NOVITZKY ON THE ISSUE OF**
    **MATERIALITY WILL BE FAR MORE PREJUDICIAL THAN**
19  **PROBATIVE, AND THUS INADMISSIBLE UNDER RULE 403**

20       The government cites to *United States v. Matsumaru*, 244 F.3d 1092, 1102 (9th Cir.

21  2001), a case with which Mr. Bonds has no quarrel.  *Matsumaru* involved charges of visa fraud,

22  and the government called two witnesses to explain why certain statements on a visa application

23  were material to a governmental decision to grant a visa.  The questions and answers dealt with

24  the ceding over of certain corporate interests and the management of several condominium units.

25  It certainly would not be obvious to lay jurors why such technical matters might influence a

26  decision on a visa application. Neither witness in *Matsumaru* in any way suggested a view of

27  whether the answers at issue on the visa application were true or false. The testimony of the two

28  witnesses was highly germane, and it was not challenged at trial or on appeal as being either

**Reply in Support of Motion Re Opinion**
**Testimony As To Truth Or Falsity Of**
**Defendant's Testimony Or His State of Mind**     3

1    irrelevant or more prejudicial than probative.  The Ninth Circuit rejected a foundational

2    challenge to the evidence under Rule 701, and noted that the defense could have called its own

3    witnesses to testify to contrary conclusions. *Id.* at 1102. (*See also* Opp., at 3, citing *United States*

4    *v. Safa*, 484 F.3d 818, 821-22 (6th Cir. 2007) (permitting prosecutor to ask Assistant United

5    States Attorney witness whether defendant's answers, if false, would have influenced, impeded,

6    or dissuaded grand jury's investigation, and if true, would have assisted grand jury's

7    investigation.))

8         Unlike in *Matsumaru*, where Rule 403 was not in issue, the government in this case will

9    place into the record extensive evidence other than that of Novitzky supporting the proposition

10   that questions concerning whether Anderson supplied PEDs to Mr. Bonds, a famous athlete, were

11   logically relevant to an investigation of whether Anderson supplied PEDs to athletes.  While

12   testimony by Mr. Novitzky that the questions and answers were material might in the abstract

13   have probative value under *Matsumaru* and *Safa*, it is utterly unnecessary in this case, and, given

14   the mischief the prosecution is bent on creating with Novitzky, his testimony on materiality

15   should be excluded under Rule 403.

16   **II.    IRRESPECTIVE OF WHETHER NOVITZKY TESTIFIES THAT
            CHARGED QUESTIONS AND ANSWERS WERE MATERIAL, HE MAY
17          NOT TESTIFY TO HIS VIEWS ON THE TRUTHFULNESS OF MR.
            BONDS'S TESTIMONY OR ITS "INCONSISTENCY" WITH OTHER
18          EVIDENCE**

19        The government cannot claim that Agent Novitzky's opinion that he believed defendant

20   Bonds testified falsely before the grand jury is admissible on the central issue in this case — i.e.,

21   whether that testimony was in fact knowingly false. Any such contention would be risible in the

22   light of controlling authority. "Under the Federal Rules, opinion testimony on credibility is

23   limited to character; all other opinions on credibility are for the jurors themselves to form."

24   *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir. 1979); *see also Maurer v. Department of*

25   *Corrections*, 32 F.3d 1286, 1289 (8th Cir. 1994) ("[I]t is hornbook law that opinion testimony as

26   to the credibility of a particular statement is inadmissible and invades the jury's exclusive

27   province of determining the credibility and weight of any evidence.").  And indeed the

28   government concedes that a witness may not "testify about the credibility of another witness,

**Reply in Support of Motion Re Opinion
Testimony As To Truth Or Falsity Of
Defendant's Testimony Or His State of Mind**              4

1   whether by giving an opinion on the truthfulness of the witness's trial testimony or in some

2   extra-judicial interview, because it is the jury's 'responsibility to determine credibility by

3   assessing the witnesses and witness testimony in light of their own experience.'" Opp., at 6,

4   citing *United States v. Butler*, 769 F.2d 595, 602 (9th Cir. 1985).

5          Remarkably, despite that concession, the government maintains that "Agent Novitzky

6   may testify [as to] his belief that the defendant's testimony that he did not knowingly receive

7   steroids in exchange for promoting Balco products was false...," on the theory that such

8   testimony will serve as a predicate for further testimony on the "other investigative avenues"

9   developed by Novitzky in response to the Bonds's testimony, and that this evidence, in turn,

10  would serve as proof of materiality. If the government's argument were to be accepted, this Court

11  would be in the position of permitting Novitzky to opine that Mr. Bonds testified falsely, only to

12  turn around and charge the jury that the same opinion testimony could not be considered on the

13  very issue of whether Mr. Bonds testified falsely. That ludicrous scenario will be unnecessary,

14  because the government's argument for admissibility is riddled with illogic.

15         The elements of falsity of a statement and its materiality to a grand jury's decision are

16  separate and independent of one another.  If a question put by the grand jury concerns the object

17  of its investigation, the answer to that question is material, regardless of whether that answer is

18  true or false, because a truthful answer can assist the grand jury and a false answer can impede it.

19  *Safa*, 484 F.3d at 821-22 . For that reason, evidence on the issue of materiality has no necessary

20  or logical connection to the issue of truth or falsity.  Were Novitzky to be permitted to give any

21  testimony on materiality, that testimony logically should not address the truth or falsity of Mr.

22  Bonds' testimony, and is prohibited from doing so by the relevant case law. *United States v.*

23  *Henke*,  222 F.3d 633, 643 (9th Cir. 2000) (per curiam) (holding that lay testimony about whether

24  other witnesses were telling the truth is prohibited); *United States v. Barnard*, 490 F.2d 907, 912

25  (9th Cir. 1973) (upholding exclusion of expert psychiatric testimony that a witness was a

26  sociopath who would lie, because "[c]redibility...is for the jury — the jury is the lie detector in

27  the courtroom.")

28         The government appears to believe that Agent Novitzky's "thoughts," and his *subjective*

**Reply in Support of Motion Re Opinion
Testimony As To Truth Or Falsity Of
Defendant's Testimony Or His State of Mind**          5

1   determination of the falsity of the defendant's statements" are relevant to the materiality inquiry.

2   (Emphasis added). But materiality does not concern the subjective opinion of an investigator

3   regarding the statements of a grand jury witness or his reactions to that testimony. (Opp., at 7:

4   "Agent Novitzky, after learning of the defendant's grand jury testimony, was the main instrument

5   for the collection of contradictory evidence.")  Rather, the materiality inquiry involves an

6   objective assessment of whether a statement, true or false, had a "natural  tendency to influence,

7   or was capable of influencing, the decision of the decision-making body to which it was

8   addressed" — i.e., the grand jury. *McKenna*, 327 F.3d at 838.

9          As to authority cited by the government, in *United States v. Ahmed*, 472 F.3d 427, 433-34

10  (6th Cir. 2006) (Opp., at 4-5), the defendant on appeal raised a foundational challenge under Rule

11  701 to trial testimony concerning materiality, but no appellate claim that (1) the testimony

12  violated the ban on witness testimony concerning the credibility of a defendant's statement, or

13  (2) its probative value of the evidence was outweighed by its prejudicial effect. An appellate

14  opinion cannot stand for a proposition that it does not discuss, and *Ahmed* discusses nothing

15  relevant to the objections raised by Mr. Bonds as to Novitzky's testimony.

16         The government's citation to the *Thomas* case (*United States v. Thomas*, 612 F.3d 1107

17  (9th Cir. 2010)) and its supplying of transcripts from that case border on the silly. For reasons of

18  tactics or ignorance on the part of defense counsel, there was no objection to Novitzky's

19  materiality testimony at trial in *Thomas*, and, as the government concedes (Opp., at 4, n.1), no

20  discussion whatsoever of the admissibility of that testimony in the Ninth Circuit opinion.

21         The only relevance of *Thomas* to the present matter is the fact that Novitzky used the

22  subject of materiality as an opportunity to discuss drug testing results and their inconsistency

23  with Thomas's grand jury testimony. (Exhibit B to Opp., at pages 8-9) That may not have been

24  particularly prejudicial in the *Thomas* matter, because the test results were in evidence.  But

25  acceptance of the government's contention that "Agent Novitzky's view that certain of the

26  defendant's grand jury statements were 'inconsistent' with other evidence is admissible" (Opp.,

27  at 5) will assuredly lead to Novitsky's shoe horning into his "materiality" testimony his "view" of

28  the very test results and hearsay statements that this Court has already ruled inadmissible.

**Reply in Support of Motion Re Opinion
Testimony As To Truth Or Falsity Of
Defendant's Testimony Or His State of Mind**          6

1   There are two additional reasons opinion testimony by Novitzky on truth or falsity must

2   be excluded under Rule 403. The petit jury's decision on that crucial issue must be based only on

3   the evidence at trial that is admitted on that specific issue.  Novizky's opinions are not based on

4   all of that evidence, because he will not have heard or considered the defense evidence. On the

5   other hand, his opinions will be based on inadmissible hearsay evidence which may not be

6   considered by the jury in deciding guilt and innocence. No set of instructions could inoculate the

7   jury against the prejudicial impact of that conundrum.  Finally, were Novitzky to testify to his

8   opinion as to the truthfulness of Mr. Bonds's grand jury testimony or the "inconsistency" of that

9   testimony with other evidence, the defense would be entitled to call its own witnesses to testify to

10  the precise contrary. *Matsumaru*, 244 F.3d at 1102. All such testimony should be excluded under

11  Rule 403.

12  **III.   THE GOVERNMENT SHOULD BE PROHIBITED FROM OFFERING ANY
       LAY OPINION TESTIMONY AS TO DEFENDANT'S KNOWLEDGE**

13      In *United States v. Henke*,  222 F.3d 633 (9th Cir. 2000) (per curiam), the Ninth Circuit

14  overturned a conviction in which Judge Walker had permitted testimony that a defendant "must

15  have known" about a false reporting scheme, which was essential to prove that the defendant

16  made a knowingly false statement. *Id.* at 639-41.  As the Court explained, under Federal Rule of

17  Evidence 701, a lay witness's opinion is admissible only when it is helpful to understanding the

18  witness's testimony or to the determination of a fact in issue.  Thus, "[i]f the jury already has all

19  the information upon which the witness's opinion is based, the opinion is not admissible." *Id.* at

20  641.

21      The government concedes that *Henke* is good law, but claims that it may offer testimony

22  on the defendant's knowledge that is "fundamentally different than the lay testimony opinion that

23  was at issue in *Henke*, 222 F.3d at 641." (Opp., at 9.)  The government's pleading does not

24  specify the content of that testimony or the specific witnesses who would offer it. Because lay

25  testimony as to the defendant's knowledge is presumptively inadmissible under *Henke*, the

26  government should be ordered to refrain from attempting to introduce such testimony unless it

27  first has tendered it to the defense and the Court outside the presence of the jury.

28

**Reply in Support of Motion Re Opinion
Testimony As To Truth Or Falsity Of
Defendant's Testimony Or His State of Mind**                    7

**CONCLUSION**

The government must be barred from introducing inadmissible opinion testimony on the truth or falsity of Mr. Bonds' statements or the state of his knowledge.

Dated: February 24, 2011                     Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP

ARGUEDAS, CASSMAN & HEADLEY, LLP

RIORDAN & HORGAN


By   /s/  Dennis P. Riordan
          Dennis P. Riordan

By   /s/  Donald M. Horgan
          Donald M. Horgan

Counsel for Defendant
Barry Lamar Bonds