MELINDA HAAG (CASBN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Deputy Chief, Criminal Division

MATTHEW A. PARRELLA (NYSBN 2040855)
JEFFREY D. NEDROW (CASBN 161299)
Assistant United States Attorneys

    150 Almaden Boulevard,
    San Jose, California 95113
    Telephone: (408) 535-5045
    Facsimile: (408) 535-5066
    Email: jeff.nedrow@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. CR 07-0732 SI |
|       Plaintiff, | ) | |
| | ) | UNITED STATES' TRIAL |
|   v. | ) | MEMORANDUM |
| | ) | |
| BARRY LAMAR BONDS, | ) | Trial:      March 21, 2011 |
| | ) | Time:     8:30 a.m. |
|       Defendant. | ) | Court:    Hon. Susan Illston |
| | ) | |

## I.    Indictment/Introduction

The defendant is charged in counts one through four of the third superseding indictment with making false declarations before the grand jury in violation of 18 U.S.C. § 1623(a) and in count five with obstructing justice in violation of 18 U.S.C. § 1503.  In short, the defendant testified before the grand jury on December 4, 2003, in connection with the Internal Revenue Service – Criminal Investigation Division's (IRS – CID) investigation into the distribution of

performance enhancing drugs and money laundering of the proceeds therefrom by Balco Laboratories and individuals associated with Balco, including Greg Anderson, the defendant's personal trainer at the time. During the investigation, agents developed evidence showing that the defendant had connections with Balco and Anderson. Those connections included evidence suggesting the defendant's use of performance enhancing substances with the assistance of Balco and Anderson. Accordingly, the defendant was subpoenaed before the grand jury as a relevant witness. The defendant appeared for his testimony on December 4, 2003, with his attorney. The defendant requested and was granted limited immunity for his testimony that excluded any immunity for making false statements. During the testimony, the defendant was asked, among other things, about the extent of his relationship with Balco and Anderson and whether the defendant had ever used steroids or other performance enhancing substances from Balco or Anderson. The defendant provided knowingly false statements before the grand jury in response to the aforementioned lines of inquiry including, but not limited to, that he never knowingly used steroids or human growth hormone, and that neither Anderson nor anyone associated with Anderson ever injected him with any substance. The defendant further provided numerous intentionally evasive, incomplete, and misleading statements in response to questions on these topics.

## II.    Brief Summary of Proof Anticipated at Trial

The evidence at trial will show as follows. On September 3, 2003, as part of its investigation of the illegal steroid distribution activities of Balco Laboratories, the government executed a search warrant at Balco's business premises in Burlingame, California. Federal agents found documents indicating the illegal distribution of anabolic steroids and other performance-enhancing drugs to dozens of athletes in a variety of sports.

Information gathered during the search at Balco, and developed separately in the investigation, indicated that the defendant was a Balco client. At the time of the search, Victor Conte and James Valente, another Balco employee, voluntarily provided statements in which they identified the defendant's trainer, Greg Anderson, as a participant in the scheme. Based on these statements and corroborating documents found during the search, agents requested and

received a separate search warrant for Anderson's residence.  There, agents found approximately

$60,000 in cash and other information indicating that Anderson was involved in the illegal

distribution of anabolic steroids.  Anderson voluntarily provided a statement in which he

confessed to distributing anabolic steroids and other performance-enhancing drugs to several of

the athletes.  When asked about the defendant, Anderson declined to provide any further

statements.

Based on his connections to Balco, the defendant received a grand jury subpoena in

connection with the investigation of the Balco defendants.  Based upon representations by

counsel that the defendant would invoke his Fifth Amendment rights, the government procured

an order from the court, granting the defendant immunity from prosecution pursuant to 18 U.S.C.

§ 6003 and compelling him to testify at the grand jury.  The evidence at trial will show that the

defendant testified before the grand jury on December 4, 2003, in connection with the Balco

investigation.  The defendant was asked about his relationships with Balco and Anderson, and

was specifically asked whether he had obtained steroids, human growth hormone, and other

drugs from Balco and Anderson.  In response to this line of questioning, the defendant provided

numerous false, evasive, and misleading statements as set forth in the third superseding

indictment.  The evidence will show that these false statements were material to the investigation

being conducted in the grand jury.

The evidence will show that the defendant tested positive in June of 2003 in connection

with Major League Baseball's 2003 drug testing program.  It is also anticipated that several

witnesses, including the defendant's mistress, former personal assistants, and a former teammate,

will testify at trial about witnessing the defendant being injected and about statements the

defendant made admitting his use of steroids.  Another witness will also testify about

incriminating statements by the defendant related to Anderson's steroid dealing.  The defendant

made the statements approximately one month after the execution of the search warrant on

Anderson's residence.

The trial evidence will also show that in early 2003, Steve Hoskins, a former associate of

the defendant's recorded an in-person conversation with Anderson.  Among other things, the

1   recording contains Anderson's discussion of injecting the defendant and other statements

2   consistent with the administration of anabolic steroids to the defendant.

3       Two expert witnesses will also testify.  One of these experts is Dr. Larry Bowers, the

4   medical director for the United States Anti-Doping Agency, who will testify that steroid users

5   develop such symptoms as increased muscle mass, shrunken testicles, acne on the upper back,

6   moodiness, cysts, "puddling," and infections when injections are administered too often in the

7   same part of the body, and an erratic sexual drive.  The government will introduce testimony

8   from several percipient witnesses close to Bonds who will testify that Bonds exhibited some or

9   all of these symptoms between approximately 1998 and 2003.  Dr. Bowers will further regarding

10  the fact that it was illegal to distribute steroids without a prescription and an accepted medical

11  purpose in 2003, and to the means of administering the drugs.  The government will also call Dr.

12  Don Catlin, one of the world's leading drug testing experts and the researcher who discovered

13  "the clear," also known as tetrahydragestrinone or "THG."  Dr. Catlin will testify that he tested

14  the defendant's urine sample submitted to Major League Baseball in 2003 and determined that

15  the sample was positive for THG and Clomid, an anti-estrogen drug typically used by steroid

16  users to "jump-start" the replenishment of natural testosterone following its suppression by the

17  use of anabolic steroids.  In addition, Dr. Catlin will testify that the sample is positive for

18  exogenous, that is, foreign, testosterone, itself an anabolic steroid and controlled substance under

19  federal law.

20  **III.    Evidentiary, Procedural & Legal Issues**

21      Many legal and procedural issues have been addressed in detail in the motions in limine

22  separately filed in this case.  The government herein briefly addresses several additional legal

23  and procedural issues pertinent to this case.

24      1)    The government respectfully requests that the Court reiterate its previously

25  entered order that the defense may not mention or cross-examine any witness with the TIGTA

26  report or the facts underlying it unless a basis for doing so is first established to the Court's

27  satisfaction outside the presence of the jury.

28      2)    The government respectfully requests that the Court order any witnesses the

parties intend or contemplate calling at trial to be excluded from the courtroom during trial, with the exception of Special Agent Novitzky, who will be seated at the government's counsel table.

3)   The government herein confirms that it has communicated with counsel for Greg Anderson, and that Mr. Anderson's counsel has confirmed that Mr. Anderson will attend the March 1, 2011 pretrial conference in this case.  As discussed in its separate filings, the government intends to call Greg Anderson as a witness at trial.  In the event Anderson refuses to comply with the subpoena, the government will respectfully request that the Court immediately conduct contempt proceedings and imprison Anderson until he either cures his contempt or the trial ends, whichever occurs first.

4)   Several government witnesses will be required to travel to San Francisco from out of the area to testify at trial.  At the end of a witness's testimony, it is common for parties to request that the witness remain subject to recall.  In the event the defense wishes to recall a government witness, the government respectfully requests that the Court order that the defense bear the costs of recalling the witness.

5)   The government notes that, because a jury questionnaire will be used, the government is not submitting proposed voir dire questions with this memorandum as normally contemplated under the Court's pretrial order.  If the Court nonetheless requests the submission of voir dire questions, the government will submit such questions forthwith.  The government concurs with the previously-submitted defense request for a reasonable period of time for attorney voir dire.

6)   As the government's pretrial filings in this case are being submitted nearly a month before trial, the government respectfully requests leave of court to amend its witness list, exhibit list, and jury instructions as necessary in advance of trial.

///

///

///

1     The United States stands ready to provide to the Court any other materials it might find

2     helpful.

3

4     DATED:   February 24, 2011                    Respectfully submitted,

5                                                   MELINDA HAAG
                                                    United States Attorney
6

7                                                   _____/s/_____
8                                                   MATTHEW A. PARRELLA
                                                    JEFFREY D. NEDROW
9                                                   Assistant United States Attorneys

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28