1   MELINDA HAAG (CABN 132612)
    United States Attorney

2

3   J. DOUGLAS WILSON (DCBN 412811)
    Deputy Chief, Criminal Division

4   MATTHEW A. PARRELLA  (NYBN 2040855)
    JEFFREY D. NEDROW (CABN 161299)
5   MERRY JEAN CHAN (CABN 229254)
    Assistant United States Attorneys
6
    150 Almaden Boulevard, Suite 900
7   San Jose, CA 95113
    Telephone: (408) 535-5045
8   Facsimile:  (408) 535-5066
    Email: jeff.nedrow@usdoj.gov
9
    Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0732-SI |
| Plaintiff, | ) ) | **UNITED STATES'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* (DOCKET ##234, 219)** |
| v. | ) ) | |
| BARRY BONDS, | ) ) | |
| Defendant. | ) ) ) | Date: March 1, 2011<br>Time: 1:30 p.m.<br>Judge: Honorable Susan Illston |

U.S. REPLY TO DEF. RESPONSE TO U.S. MOT. *IN LIMINE*
[CR 07-0732-SI]

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    This Court should rule that the interview reports and grand jury transcripts on the defendant's exhibit list are inadmissible hearsay. . . . . . . . . . . . 1

    B.    This Court should rule that the defendant may not inject irrelevant questions of law, including allegations of government misconduct, into the trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    This Court should rule that the defendant may not calls Michael Rains or introduce evidence of communications between the government and Rains prior to the defendant's grand jury testimony. . . . . . . . 4

    D.    This Court should rule that the defendant may not encourage jury nullification through its questioning, presentation of evidence, or argument. . . . . 5

    E.    This Court should rule that the defendant may not call government agents to impeach government witnesses unless the statements in issue have been volunteered on direct examination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    F.    This Court should rule that photographs of the defendant are admissible. . . . . . . 6

    G.    This Court should preclude the defendant from engaging in unfairly prejudicial impeachment of Kimberly Bell. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    H.    This Court should rule that evidence of the defendant's angry, threatening, and violent communications and conduct towards Bell is admissible as consistent with defendant's use of steroids, and proper cross examination material. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.    This Court should ask Greg Anderson if he is available to the defense. . . . . . . 11

    J.    This Court should rule that evidence of the defendant's motivation to provide false statements is admissible. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    K.    This Court should rule that Greg Anderson's plea agreement is admissible. . . . 11

    L.    This Court should rule that James Valente's plea agreement is admissible. . . . 12

    M.    This Court should rule that the defendant may not argue that he was confused during his grand jury testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    N.    This Court should rule that the defendant's 2006 positive amphetamine test is admissible. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    O.    This Court should rule that the defendant may not cross-examine Steve Hoskins regarding the defendant's criminal referral. . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir. 1995). . . . . . . . . . . . .  10

*Kyles v. Whitley*, 514 U.S. 419 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Lucero v. Stewart*, 892 F.2d 52 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*United States v. Castillo*, 181 F.3d 1129 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*United States v. Davenport*, 753 F.2d 160 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . .  7

*United States v. Johnson*, 605 F.2d 1025. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*United States v. Oaxaca*, 569 F.2d 518 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

## STATE CASES

*United States v. Mohammad Mahmoud Bachir*, 2002 WL 34453511 (C.D. Cal. 2002). . . . . . . .  4

## FEDERAL STATUTES

Fed. R. Crim. P. 6(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

Fed. R. Evid. 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 7

Fed. R. Evid. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Fed. R. Evid. 608. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

Fed. R. Evid. 613(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Fed. R. Evid. 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Fed. R. Evid. 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Fed. R. Evid. 801 et seq., 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Fed. R. Evid. 806. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Fed. R. Evid. 901(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Deputy Chief, Criminal Division

MATTHEW A. PARRELLA  (NYBN 2040855)
JEFFREY D. NEDROW (CABN 161299)
MERRY JEAN CHAN (CABN 229254)
Assistant United States Attorneys

150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone: (408) 535-5045
Facsimile:  (408) 535-5066
Email: jeff.nedrow@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BARRY BONDS, <br><br> Defendant. | No. CR 07-0732-SI <br><br> **UNITED STATES'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* (DOCKET ##234, 219)** <br><br> Date:   March 1, 2011 <br> Time:  1:30  p.m. <br> Judge: Honorable Susan Illston |

## INTRODUCTION

The defendant's response to the United States's Motions *In Limine* (Docket #219) mischaracterizes many of the government's arguments and then attacks these strawmen.  In this reply, the government clarifies its arguments, and explains why the defendant's oppositions are off the mark.

## ARGUMENT

**A.   This Court should rule that the interview reports and grand jury transcripts on the defendant's exhibit list are inadmissible hearsay**

The United States has moved for a ruling excluding the numerous interview reports and grand jury transcripts listed on the defendant's exhibit list under Fed. R. Evid. 801 et seq., 402,

U.S. REPLY TO DEF. RESPONSE TO U.S. MOT. *IN LIMINE*
[CR 07-0732-SI]

and 403. Docket #219 at 2.

The defendant lists potential ways that these exhibits may be admissible. Docket #234 at 5. Most of these theories are based on the exhibits being prior statements of trial witnesses. *Id.* But as the United States pointed out in its motion *in limine*, almost none of the interview reports and grand jury transcripts are of individuals on either party's witness lists. And only prior inconsistent statements may be offered as extrinsic evidence under Fed. R. Evid. 613(b).

With respect to prior consistent statements of witnesses, the defendant states that he has listed these as exhibits for "administrative ease." Docket #234 at 5-6. Of course, the United States does not object to the defendant listing exhibits for administrative purposes. But if the defendant does not plan to admit these exhibits into evidence, he cannot object to a ruling by this Court that such exhibits are not admissible evidence.

The defendant states that some of the interview reports and grand jury transcripts may be relevant for non-hearsay purposes, such as showing when an individual was interviewed. Docket #234 at 6. But those non-hearsay purposes are relevant only if the defendant wishes to attack the government's investigation of Balco. As set forth in the government's motion, attacks on the government's investigation are generally inadmissible. Docket #219 at 6-7. While the reliability of an investigation is relevant where it may bear on the reliability of evidence introduced against a defendant, the fact that numerous individuals – who will not even be witnesses in this trial – were interviewed or gave testimony in the grand jury is irrelevant to the defendant's decision to lie to the grand jury. Even if the chronology and scope of the Balco investigation was relevant to issues in this defendant's trial, the entirety of the interview reports and grand jury transcripts do not. This Court should exclude under Rules 402 and 403 until the defendant, as the party seeking to introduce the evidence, shows otherwise by a preponderance of evidence.

The defendant suggests that it could meet its burden, but that for strategic reasons, prefers to do so through *ex parte* communications. The United States requests that the defendant be required to justify the admissibility of the interview reports and grand jury transcripts to the Court, *ex parte* or otherwise, prior to trial. "The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain

U.S. REPLY TO DEF. RESPONSE TO U.S. MOT. *IN LIMINE*
[CR 07-0732-SI]                        2

forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation omitted). Given the vast number of interview reports and grand jury transcripts at issue, there is a high risk that the flow of trial would be unduly interrupted by failure to flesh out the admissibility of these reports and transcripts *in limine*.

**B.     This Court should rule that the defendant may not inject irrelevant questions of law, including allegations of government misconduct, into the trial**

The United States has moved for a ruling prohibiting the defendant from injecting questions of law, which are only properly before this Court and not the jury, into the trial. Docket #219 at 5-9. The defendant opposes this motion, arguing that evidence that tends to exculpate the defendant or impeach the credibility of prosecution witnesses is material. Docket #234 at 7. As the defendant's citation of *Kyles v. Whitley*, 514 U.S. 419 (1995), and other cases demonstrates, the defendant misapprehends the government's motion.

First, *Kyles* is about the government's obligation to disclose information that would help the defendant in his defense. There is no question that the government has complied with its *Brady* and *Giglio* obligations here.

Second, *Kyles* noted that whether an investigation is sloppy is relevant to the probative force of the evidence resulting from that investigation. *Id.* at 446 n.15. This is not controversial. Kyles was charged with murder primarily based on the accusations of an informant who was a self-acknowledged enemy and associate of the defendant and who expressed worry that he himself be suspect in the murder. *Id.* at 423-26. The police's failure to fully corroborate the informant's information was relevant to the reliability of the informant's information, and the question whether the defendant had in fact committed the murder.

Likewise, in this case, the government's investigation with respect to the defendant's false statements to the grand jury and his obstruction of justice may be relevant to the reliability of the prosecution's evidence against the defendant. Moreover, the government's motion explicitly stated that "the bias or improper motive of government witnesses are, of course, appropriate impeachment" and should be admitted in a manner that does not violate Fed. R. Evid.

U.S. REPLY TO DEF. RESPONSE TO U.S. MOT. *IN LIMINE*
[CR 07-0732-SI]                                     3

403.  Docket #219 at 7.  Agent Jeff Novitzky, the lead investigator in the case, will testify. Questions aimed at undercutting his credibility are fair impeachment.

What is certainly not relevant, and more unfairly prejudicial and confusing than probative under Rule 403, are allegations of bias against the prosecutors and the government, writ large. To rebut charges that it improperly exercised its discretion, the government may have to call the prosecutors and their chain of supervisors, past and present, to testify on collateral issues that have nothing to do with whether the defendant knowingly lied to the grand jury and obstructed justice.  This Court should prohibit the defendant from encumbering the trial with such dross. *See United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979 (en banc) (finding district court properly precluded defendant from offering evidence purportedly showing that prosecution was politically-motivated under Rule 403); *United States v. Mohammad Mahmoud Bachir*, 2002 WL 34453511 (C.D. Cal. 2002) (not reported) (precluding evidence and argument relating to alleged misconduct by INS ).

**C.     This Court should rule that the defendant may not calls Michael Rains or introduce evidence of communications between the government and Rains prior to the defendant's grand jury testimony**

The United States has moved to exclude the defendant's defense attorney Rains from testifying about communications between the government's representatives and himself because such testimony would (1) improperly place legal questions before the jury, and (2) require waiver of the attorney-client privilege in order to be relevant.  Docket #219 at 9-11.  The defendant responds that Rains might legitimately testify about whether he had reviewed the defendant's immunity order with him prior to the defendant's testimony in the grand jury.  Docket #234 at 8. He also, perplexingly, asserts that the government's motion does not ask to exclude interactions between the government and the defendant, and interactions between the government and Rains in the defendant's presence.  *Id.*  Neither one of these grounds is a reason to deny the United States's motion.

Rains may not testify about communications with the defendant unless the defendant makes a waiver of the attorney-client privilege, no matter how relevant Rains's testimony might be to an issue at trial.  So, while it is conceivable that Rains's testimony regarding what he

advised the defendant regarding the immunity order could be relevant, this Court should not admit it unless the defendant waives his privilege as to those communications.

The defendant mischaracterizes the government's motion as not encompassing communications between government representatives and Rains that took place in the presence of the defendant. The subject of the government's motion is unmistakable: "communications between the government's representatives and himself." Docket #219 at 9. The government made no exception for communications that were not witnessed or shared by any third parties.

The government is unaware of any promises and communications government representatives made directly to the defendant, to which the defendant refers in his opposition. The defendant has always been represented by counsel, and all communications have been made to or in the presence of the defendant's attorney. This Court can not gauge the relevance and probative value of these alleged communications in the absence of a proffer by the defendant as to what they are.

The government's best guess is that the alleged communications concern prosecutors' initial willingness to allow Rains and the defendant to review documents prior to the defendant's grand jury testimony, and then reconsideration in light of Rains's demonstrated proclivity to engage the media and Fed. R. Crim. P. 6's requirements that grand jury investigations remain secret. If so, Rains's testimony about such communications should be excluded pursuant to Fed. R. Evid. 403 for the reasons set forth in the government's motion *in limine*. *See* Docket #219 at 10-11.

**D.   This Court should rule that the defendant may not encourage jury nullification through its questioning, presentation of evidence, or argument**

The United States has moved to preclude the defendant from improperly encouraging the jury to return a verdict on a basis other than the evidence presented at trial. Docket #219 at 11-13. The defendant opposes this motion. Docket #234 at 9.

The government has articulated reasons why certain species of argument should be precluded as encouraging jury nullification. Arguing that the prosecution should have spent its resources pursuing some other case instead of this one, suggesting that the defendant should be

exempt from laws because of his accomplishments or celebrity status, proposing that the age of the case is a reason to ignore the merits, and adverting to the consequences of this prosecution and conviction on the defendant, are all impermissible. These arguments ask the jury to ignore its duty to assess whether the government has met its burden of proof with respect to the elements of the charged offenses, and to acquit the defendant for extraneous reasons.

The government's motion does not interfere with the defendant's constitutional right to present a defense. It only asks the Court to ensure that the defendant's defense stays within the limits of the law.

### E. This Court should rule that the defendant may not call government agents to impeach government witnesses unless the statements in issue have been volunteered on direct examination

The United States has moved to preclude the defendant from calling witnesses to provide extrinsic evidence that a witness's testimony is false unless the testimony is issue was provided during direct examination. Docket #219 at 13-14. The government views the use of *in limine* motions as appropriate not only for final disposition of evidentiary issues, but also for previewing potentially contentious issues at trial so that disruptions before the jury may be minimized. To that end, the government apprised the Court of the limitation on the use of extrinsic evidence to impeach by contradiction, which is expressly "not governed by" Rule 608(b), but by Rules 607 and 403. *United States v. Castillo*, 181 F.3d 1129, 1132-33 (9th Cir. 1999). "[I]mpeachment by contradiction permits courts to admit evidence that specific testimony is false, because contradicted by other evidence . . . ." *Id.* at 1132. However, "extrinsic evidence may not be admitted to impeach testimony invited by questions posed during cross-examination." *Id.* at 1133. The defendant's discourse on Fed. R. Evid. 608(b) wrongly states that the government has misunderstood the applicable law and is unresponsive. *See* Docket #234 at 3-5, 10.

### F. This Court should rule that photographs of the defendant are admissible

The United States has moved for the admissibility of a series of photos taken of the defendant over the years. Docket #219 at 14-15. As the Court noted at the status hearing on February 18, 2011, the Court will be unable to dispositively rule on the admissibility of the photos unless it know what photographs are at issue, and how the government intends to lay a

foundation for their admissibility. The government will identify the photographs at issue by March 1, 2011. But at a minimum, to avoid needless interruption at trial, the United States seeks this Court's recognition that photographs of the defendant, which show his physical transformation, are:

(1) relevant to whether the defendant used steroids, since physical transformation is a side effect of and correlated to the use of steroids, *see United States v. Fernandez*, 388 F.3d 1199, 1245-46 (9th Cir. 2004) (finding photographs of defendants' tattoos relevant to proving gang membership, and admissible under Fed. R. Evid. 402 and 403);

(2) not inadmissible hearsay, *see United States v. Oaxaca*, 569 F.2d 518, 525 (9th Cir. 1978) (holding that photographs were not hearsay even though jury could have inferred from them that clothing depicted in them was same as shown in bank surveillance photographs); and

(3) can be authenticated by witnesses who recognize the photographs as accurating reflecting the defendant from a specific time period, *see Lucero v. Stewart*, 892 F.2d 52, 55 (9th Cir. 1989) (finding photographs properly authenticated under provision of Guam Evidence Code analogous to Fed. R. Evid. 901(b)(1) where witness testified that "photographs accurately represented the conditions of the loung as of the time of his visit there").

### G. This Court should preclude the defendant from engaging in unfairly prejudicial impeachment of Kimberly Bell

The United States has moved to limit the defendant's cross-examination of Kimberly Bell to matters relating to her credibility and motive, and to refrain from introducing impermissible extrinsic evidence and lines of cross-examination more unfairly prejudicial than probative. Docket #219 at 15-16. In response, the defendant mischaracterizes the government's argument on Rule 608, and asserts that Bell's nude pictorial in Playboy Magazine and extrinsic evidence of her personal history should be admissible for impeachment. Docket #234 at 3-5, 11-13. This Court should limit the defendant's proposed impeachment under Fed. R. Evid. 608 and 403.

The government's motion noted that Rule 608(b) forbids the defendant from introducing extrinsic evidence of specific instances of conduct "probative of the witness's character for truthfulness or untruthfulness." Docket #219 at 15. The government never made any broader claims for Rule 608(b)'s limitation on the admissibility of extrinsic evidence. The defendant's

characterization of the government's argument is "benighted" and "misinterpret[ing] the scope and meaning of Rule 608(b)" is baseless. Docket #234 at 3.

Under Rule 608(b), to the limited extent that Bell's interviews and personal history are relevant to her character for truthfulness, the defendant may question her on them. However, he may not provide extrinsic evidence of these, unless Bell denies their occurrence during direct examination, and the defendant is permitted to impeach by contradiction. *See supra* Section E.

Separately, the government argued that extrinsic evidence of Bell's interviews, nude pictorial, and personal history, which may be relevant impeachment on other grounds, should be excluded under Fed. R. Evid. 403. Docket #219 at 16. Bell will testify that she granted interviews on the subject of her relationship with the defendant. This can be used to show that she may have motives for testifying against the defendant that diminish the reliability of her testimony. Delving at length into the substance of all of these interviews, however, involves a time-consuming side-show that adds nothing more to the jury's ability to assess Bell's credibility. Similarly, Bell's willingness to have a nude pictorial published along with her interview is relevant to her motives and credibility. But the actual images of Bell posing in the nude are not legitimate impeachment, and whatever marginal relevance they may have is substantially outweighed by the danger of unfair prejudice and waste of time.

The defendant has confirmed the government's suspicion that it intends to clutter this trial with evidence of what he characterizes as Bell's "rich sexual history" under the banner of impeachment. Docket #234 at 12. The Court should prohibit this. If the defendant wishes to explain the cause for his angry and violent behavior towards Bell, he can do so. But extrinsic evidence on potential causes for his behavior is not relevant unless there is some non-hearsay testimony linking such causes to his behavior. Just as the defendant may not offer extrinsic evidence of the weather and invite the jury to speculate that the defendant was angry because it was rainy, he may not offer extrinsic evidence of aspects of Bell's personal life and invite the jury to speculate that he (a) knew about these aspects, (b) was upset about these aspects, and (c) reacted accordingly. Bell will testify that her personal experience was that the defendant's behavior changed due to his use of steroids, and Dr. Larry Bowers will testify to aggression as a

side effect of the use of steroids.  The defendant offers no similar tether of relevance to the free-floating pieces of extrinsic evidence about Bell's personal life he apparently intends to introduce.

In addition, the defendant's position may place the Court in the position of having to rule on complicated impeachment questions during trial and thereby waste the jury's time and delay trial.  For that reason, if the Court is inclined to allow inquiry into Bell's "rich sexual history," it should ask for a proffer of that evidence before trial, so that the government has the opportunity to argue why this "evidence" should be excluded under Fed. R. Evid. 403 or some other basis.  *Cf. United States v. Davenport*, 753 F.2d 160, 1463-64 (9th Cir. 1985) (requiring that prosecution's good faith belief in misconduct of defendant be established outside of jury's presence before question about misconduct is asked).

The defendant implies that showing naked photographs of Bell and evidence of her sexuality is akin to the government's evidence regarding the physiological effects of the defendant's steroid use on his gonads and sexual functioning.  Docket #234 at 12.  The two are not analogous.  Understandably, the defendant is eager to characterize the opinions of Dr. Larry Bowers, the medical director for the United States Anti-Doping Agency, as "pure quackery."  *Id.*; *see* Docket #222.   He will undoubtedly attempt to persuade the jury of this view.  But, the fact is that based on his extensive training and experience, Dr. Bowers will testify that the use of exogenous testosterone can cause a steroid abuser's testicles to shrink and affect his sexual functioning.  *See* Docket #229.  And, the defendant's own expert, Dr. Ronald Swerdloff, agrees.  Docket #222-1 ("Testicular atrophy.  Several studies have found evidence of this effect on the testicles after several months of the administration of therapeutic doses of testosterone . . . to healthy adult males.").  Hence, the defendant's testicles and sexual functioning are evidence of his use of steroids.  The defendant can not seriously argue that what Bell looks like naked and her sexual life are equally probative of Bell's veracity or bias.  To the extent they are relevant at all, the relevance is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and waste of time.

///

///

The defendant has stated that he "is prepared to consider this trial a prurience[1] free zone and declare the subject of sexuality off-limits," Docket #234 at 12, yet he repeatedly threatens to focus solely on this aspect of the evidence. The government is open to a dialogue with defense counsel about the evidence, impeachment, questions, and argument each side would have to relinquish to accomplish that. The government intends to present the evidence in a professional and straightforward manner and expects the defense to conduct its cross examinations likewise. As reflected by its positions on these motions *in limine*, the government would like to keep this trial from becoming sidetracked by the defendant's stated intention to over-emphasize sexual matters.

**H.   This Court should rule that evidence of the defendant's angry, threatening, and violent communications and conduct towards Bell is admissible as consistent with defendant's use of steroids, and proper cross examination material**

The United States has moved for the admissibility of the defendant's angry, threatening, and violent communications and conduct towards Bell. Docket #219 at 17. The defendant opposes this, arguing that his behavior is explained by "the break up of their decade-long personal relationship" and not steroid use. Docket #234 at 13. As this Court is aware, the government's expert witness will testify that increased aggression is a side effect of the abuse of steroids. Bell's testimony that the defendant's aggresiveness towards her increased as he began taking steroids is clearly relevant. The defendant's citation of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1320 (9th Cir. 1995), is inapt. Docket #234 at 14. In that case, the issue was whether expert testimony was properly excluded under Fed. R. Evid. 702 for failing to assist the trier of fact to understand the evidence or to determine a fact in issue, where the testimony would not show that Bendectin increased the incidence of birth defects more than the background rate of limb reduction defects. *Id.* This Court has already ruled that Dr. Bowers's expert testimony is admissible under Rule 702 so long as there is evidence that the defendant exhibited some of the symptoms of steroid use about which Dr. Bowers will testify.

---

[1] Prurience is defined as the quality or state of being prurient. *See* http://www.merriam-webster.com/dictionary/prurience. Prurient is defined as "marked by or arousing an immoderate or unwholesome interest or desire; *especially*: marked by, arousing, appealing to sexual desire." *See* http://www.merriam-webster.com/dictionary/prurient.

Ms. Bell will provide testimony regarding some of those symptoms, the decision of whether the defendant's abusive behavior arose from his steroid use or relationship issues is for the jury.

### I. This Court should ask Greg Anderson if he is available to the defense

The defendant does not object to the United States's request that Greg Anderson be asked if he would be willing to testify for the defendant. Docket #219 at 17; Docket #234 at 15.

### J. This Court should rule that evidence of the defendant's motivation to provide false statements is admissible

The United States has moved for the admissibility of evidence of the defendant's "professional baseball accomplishments, remuneration, and expected future earnings" as evidence of his motivation to provide false testimony to the grand jury. Docket #219 at 18. The defendant responds that it does not know what evidence this motion refers to. Docket #234 at 16. In response to this Court's statement at the status hearing on February 18, 2011, that it will be unable to dispositively rule on the admissibility of specific evidence unless it know what evidence is at issue, the government represents that by the defendant's professional baseball accomplishments, it is referring to testimony about the defendant's baseball statistics, including the number of homeruns he was able to hit. The defendant's teammates have personal knowledge of this. The defendant's remuneration refers to testimony regarding how much money the defendant made as a result of his records, including his salary and earnings from memorabilia sales, endorsements, and appearances. The defendant's teammates and Steve Hoskins have personal knowledge of this. The defendant's expected future earnings refers to earnings based on his homerun record. Based on his role in running the defendant's memorabilia business and other affairs, Steve Hoskins has knowledge of this and can offer opinion testimony under Fed. R. Evid. 701. Even if the Court does not feel comfortable making a dispositive ruling on the admissibility of such evidence until trial, the United States asks for a provisional recognition that evidence of the defendant's motives for lying to the grand jury about his steroid use are relevant to the trial.

### K. This Court should rule that Greg Anderson's plea agreement is admissible

The defendant does not object to the United States's motion for the admissibility of Anderson's plea agreement. Docket #219 at 18-19; Docket #234 at 16.

U.S. REPLY TO DEF. RESPONSE TO U.S. MOT. *IN LIMINE*
[CR 07-0732-SI]                              11

**L.     This Court should rule that James Valente's plea agreement is admissible**

The defendant does not object to the United States's motion that James Valente's plea agreement be admitted. Docket #219 at 19-20; Docket #234 at 16. The United States notes, however, that Valente's plea agreement would be admitted for the non-hearsay purpose of establishing his relationship with the government. As such, Fed. R. Evid. 806 does not apply.

**M.     This Court should rule that the defendant may not argue that he was confused during his grand jury testimony**

The United States has moved to prohibit the defendant from taking advantage of this Court's redactions of the defendant's grand jury transcript to mislead the jury as to the clarity of the questions to the defendant in the grand jury proceedings. Docket #219 at 20. For his own reasons, the defendant mischaracterizes the government's motion as "an effort to make an end-run around the present exclusion order." Docket #234 at 17. The government's motion is plainly no such thing. This motion is an effort to ensure that the intention of the Court's redaction order to shield the defendant from references to evidence inadmissible at trial due to Anderson's illegal refusal to testify, is not improperly used as a sword to mislead the jury into thinking that the redacted transcript accurately reflects the proceedings, and that these proceedings were inarticulate and unclear. Nor does the government's motion amount to a directed verdict in favor of the prosecution on any element of the offense. *See id.* The government must still prove beyond a reasonable doubt that the defendant's statements were both false and knowingly so.

**N.     This Court should rule that the defendant's 2006 positive amphetamine test is admissible**

The United States has moved for the admissiblity of the defendant's 2006 positive amphetamine test under Fed. R. Evid. 404(b). Docket #219 at 20-21. The defendant opposes this on the ground that the government has not yet amended its exhibit and witness list to include this test, and that the test is so removed from 2003, that it should be excluded under Fed. R. Evid. 403. Docket #234 at 18.

The United States agrees that this Court cannot dispositively rule on its motion without knowing the particulars of how the government intends to admit the evidence. The government will file its amended exhibit and witness lists on the same day as this reply, and it will contain the

information about the 2006 test.

In any case, the Court can rule on the relevance of the evidence. The defendant claims that at his 2003 grand jury testimony, he was unaware that he was taking performance-enhancing substances, and thus his false statements to the effect that he would never take performance-enhancing drugs were not knowing. This is considerably less likely to be true given that several years after he was clearly put on notice (by the grand jury questioning, if nothing else) about performance-enhancing drugs, he tested positively for amphetamines, a performance-enhancing drug.

**O.    This Court should rule that the defendant may not cross-examine Steve Hoskins regarding the defendant's criminal referral**

The United States has moved to limit the defendant's cross-examination of Steve Hoskins regarding the defendant's allegations to the FBI that Hoskins had committed fraud in connection with the defendant's sports memorabilia under Fed. R. Evid. 403. Docket #219 at 21-22. The defendant takes issue with the government's short-hand reference to this as the defendant's "referral" of Hoskins to law enforcement. Docket #234 at 18. Whatever the defendant's preferred terminology, the substance of the government's motion is clear, and the United States asks that the motion be granted.

Whatever impeachment value that Hoskins's knowledge about the defendant's reporting of him to the FBI, or his beliefs about why he was not prosecuted based on the defendant's report, is substantially outweighed by the danger of unfair prejudice and undue delay of the trial.

There is a great danger of unfair prejudice if the defendant is permitted to cross-examine Hoskins on the defendant's reporting of him and federal prosecutors' eventual decision not to prosecute Hoskins. The facts the government has proffered are the following: Hoskins told the defendant that he would expose the defendant's secret use of steroids and extramarital affairs. The defendant then contacted the FBI and alleged that Hoskins had committed fraud in connection with the defendant's sports memorabilia. The allegation was evaluated by the U.S. Attorney's Office for the Western District of Washington, a completely separate and independent entity from the office prosecuting the defendant, and the decision was made to decline prosecution.

There is no evidence, other than the defendant's word, that Hoskins engaged in misconduct with respect to the defendant's sports memorabilia. Yet permitting the defendant to cross-examine Hoskins on this area would suggest that there is – creating the illusion of fire from smoke that the defendant himself stoked. This is manufactured impeachment and is unfairly prejudicial. At the very least, before the defendant is permitted to impeach Hoskins with what appears to be impeachment that the defendant created expressly to defend against Hoskins' exposure of the defendant's use of steroids, the defendant must make some good faith showing that Hoskins had any basis for believing that the decision by the U.S. Attorney's Office for the Western District of Washington not to prosecute him had anything to do with his past, present, or future cooperation against the defendant. The defendant will be unable to provide such a good faith basis because none exists. As the government clearly stated in court, no benefit was given to Hoskins on the Bonds FBI referral in exchange for his testimony.

## CONCLUSION

The government respectfully requests that its motions *in limine* be granted.

DATED: February 24, 2011                    Respectfully submitted,


                                            MELINDA HAAG
                                            United States Attorney


                                               /s/
                                            MATTHEW A. PARRELLA
                                            JEFFREY D. NEDROW
                                            MERRY JEAN CHAN
                                            Assistant United States Attorneys