ALLEN RUBY (SBN 47109)
SKADDEN, ARPS, MEAGHER & FLOM, LLP
525 University Avenue, Ste. 1100
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

CRISTINA C. ARGUEDAS (SBN 87787)
TED W. CASSMAN (SBN 98932)
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

DENNIS P. RIORDAN (SBN 69320)
DONALD M. HORGAN (SBN 121547)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472
Facsimile: (415) 552-2703

Attorneys for Defendant
BARRY LAMAR BONDS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BARRY LAMAR BONDS,<br><br>Defendant. | Case No. CR 07 0732 SI<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION IN LIMINE THREE: TO BAR INTRODUCTION OF OTHER-ATHLETE EVIDENCE FOR PURPOSE OF SHOWING GREG ANDERSON'S DEALINGS WITH DEFENDANT BONDS**<br><br>Date: March 1, 2011<br>Time: 1:30 p.m.<br>Judge: The Honorable Susan Illston |

**INTRODUCTION**

In his opening motion ("Mot."), defendant Bonds demonstrated that the government's proffered testimony from other athletes concerning their dealings with Greg Anderson should not be admitted because (1) the evidence is founded on an impermissible "propensity" inference, i.e,

that Mr. Anderson acted in accordance with those dealings when dealing with Mr. Bonds, in violation of Fed. R. Evid. 404, and (2) the evidence did not qualify as "habit" within the meaning of Rule 406.

The government's opposition ("Opp.") does not support a contrary conclusion. The government's argument that the evidence is not controlled by the character evidence provisions of Rule 404 is unsupported by precedent and cannot be reconciled with the government's central and necessary effort to show that Mr. Anderson dealt with Mr. Bonds just as he had with the other athletes. The government's effort to qualify the evidence under Rule 406 is likewise devoid of meaningful precedential support and otherwise fails to make the showing that the lead cases interpreting the Rule have required. Defendant discusses the government's central points in turn, below.[1]

## I. THE GOVERNMENT'S PURPOSE IN PROFFERING THE OTHER-ATHLETE EVIDENCE IS IMPROPER UNDER FED. R. EVID. 404(b)

Fed. R. Evid. 404(b) generally prohibits the admission of a person's "other acts" to prove that person's conduct in conformity therewith. As defendant has noted ("Mot.," at 4-5), to secure the admission of evidence under an exception to 404(b), the proponent must identify a proper purpose for such evidence. *Huddleston v. United States,* 485 U.S. 681, 691 (1988); *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994). The district court, moreover, must carefully assess whether the "other acts" evidence truly qualifies to prove a relevant matter other than propensity under any of the exceptions to 404(b). *Mayans*, 17 F.3d at 1183. As the Third Circuit stated in *United States v. Williams*, 458 F.3d 312 (3d Cir. 2006):

> As we stated in *United States v. Morley*, 199 F.3d 129 (3d Cir.1999), "a proponent's incantation of the proper uses of such

[1] The government goes to great lengths to characterize defendant's motion as seeking "reconsideration" of the Court's previous ruling on January 21, 2011. (Opp., at 2-3) This is not a motion for reconsideration. On January 21st, the Court described its then-current thinking that the other athletes should be permitted to testify concerning certain of their dealings with Mr. Anderson. The Court also indicated, however, that its views were not final and that the admissibility issue could be revisited. Defendant respectfully asks the Court to do so in advance of trial because the objections he asserts bear on the proposed testimony of all the athlete witnesses and disposition of the objections on a categorical basis before trial will expedite the proceedings and clarify key evidentiary issues for both the parties and the Court.

> evidence under the rule does not magically transform inadmissible evidence into admissible evidence." *Id.* at 133. He or she "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." Id. (*quoting United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir.1994)).

458 F.3d at 319. Finally, Rule 404(b) bans the use of propensity evidence to prove the conduct of a third party, such as Mr. Anderson, just as it bans use of propensity evidence to prove that the defendant committed the offense alleged against him. *United States v. McCourt*, 925 F.2d 1229, 1232 (9th Cir. 1991).

**A. Group Character and Profile Inferences**

In an attempt to evade the proscription of Rule 404, the government argues that it is merely "using acts by one person to prove something about an entirely different person." (Opp., at 4.)[2] It argues that such evidence is entirely permissible under the Rules of Evidence. Notably, the government cites no authority whatsoever for its central legal claim. As a matter of evidence law, the government's argument is flatly false. Indeed, it is remarkable that the government forwards such a legal theory directly.

As defendant Mr. Bonds noted in his previous filing, the character ban applies where any party seeks to introduce the "other acts" of any person, to whatever end. (Mot., at 4, citing *McCourt*, 925 F.2d at 1232.) Thus, in *McCourt*, a prosecution for filing false tax returns, the defendant sought to introduce evidence of other acts by McDonald, a third party, to establish McDonald's propensity to engage in the charged offense and thus, by implication, the defendant's innocent conduct. Clearly, this constituted an attempt to "[use] acts by one person to prove something about an entirely different person," but the Court in *McCourt* nonetheless held that the attempt was barred by Rule 404(b). *Id.* at 1232-33. Significantly, the government simply declines to address *McCourt* at all.

---

[2] The government concedes that it may not connect these athletes to Bonds via any inference of Anderson's propensity. It concedes, in other words, that it "could not offer the evidence that Anderson supplied steroids to other athletes for the purpose of showing that Anderson also supplied steroids to the defendant." (Opp., at 4.)

In other cases, prosecutors have similarly tried to "us[e] acts by one person to prove something about an entirely different person." Courts have variously referred to such evidence as "group character evidence" or "criminal profile" evidence. They have analyzed such evidence under Rule 404, Rule 403, or both. But regardless of label, and regardless of provision, courts have consistently held that such evidence is inadmissible as substantive evidence of guilt. The Ninth Circuit has said that evidence of "criminal profiles is highly undesirable as substantive evidence because it is of low probativity and inherently prejudicial." *United States v. Gillespie*, 852 F.2d 475, 480 (9th Cir. 1988). It has repeatedly held, for example, that drug courier profile evidence is inadmissible as substantive evidence of guilt. *United States v. Baron*, 94 F.3d 1312, 1320 (9th Cir. 1996); *United States v. Hernandez-Cuartas*, 717 F.2d 552, 554-55 (9th Cir. 1983). The inference that the government used in those cases is no different than the inference offered here: that because someone else with similar characteristics committed a crime, the accused defendant probably committed a crime as well.

Consider, for example, an airline pilot charged with tax evasion who claims that he did not willfully evade taxes. If the government responded by offering evidence that other pilots had pleaded guilty to tax evasion, such evidence would be inadmissible under Rules 403 and 404. Or worse, consider an African-American man living in Oakland charged with possession with intent to distribute cocaine. If the government offered to show that other African-American men living in Oakland had pleaded guilty to such crimes, the evidence would obviously be inadmissible. Indeed, no prosecutor would dare to suggest such an inference.

And yet that is precisely the inference proffered here. Mr. Bonds denied that he knowingly took illegal steroids. As evidence of Mr. Bonds' guilt, the government seeks to show that other baseball players associated with Mr. Anderson knowingly took illegal steroids. The inference is that because Mr. Bonds shared certain characteristics — an occupation and a personal trainer — with other guilty people, he is guilty too. That inference is an inference of group character and criminal profile. It is impermissible under Rule 403 and Rule 404 because "[e]very defendant has a right to be tried based on the evidence *against him or her*." *United*

*States v. Beltran-Rios*, 878 F.2d 1208, 1210 (9th Cir. 1989) (emphasis added) (quoting *United States v. Hernandez-Cuartas*, 717 F.2d 552, 555 (11th Cir. 1983)). The government's argument must be rejected.

**B. Hidden Propensity**

Furthermore, while the government concedes that it may not rely on any inference from Anderson's propensity, its theory of relevance necessarily relies on a hidden inference to that effect. In order to disguise that link, the government employs a lengthy chain of inferences to "prove" defendant's knowledge — a superficially acceptable purpose under 404(b). But that chain of inferences breaks down without the inference that Anderson did it before and so must have done it again. Specifically, the government seeks to demonstrate that in dealing with the other athletes, Mr. Anderson engaged in certain conduct, i.e., supplying, instructing, and monitoring (Opp., at 4). It is only if Anderson engaged in that same conduct in dealing with Mr. Bonds that a trier of fact could logically conclude that Mr. Bonds "knew" what the other athletes "knew."[3]

Accordingly, the government cannot plausibly contend that, if the proffered testimony does not qualify as "habit" evidence under Fed. R. Evid. 406 — and it does not (*see* discussion in Mot., at 7-11 and below) — the testimony somehow escapes Fed. R. Evid. 404's general ban on evidence of a person's conduct to prove that person's character and his conduct in conformity therewith. Because the government's offer of proof relies on propensity evidence to establish how Mr. Anderson purportedly conducted himself with Mr. Bonds, the Rule's prohibition applies. The other-athlete evidence should be excluded for purposes identified by the government.

---

[3] Indeed, the government acknowledges that is the purpose of the evidence. (See Opp., at 4:16-17 (evidence is offered to show "that Anderson's practices made it likely that clients knew the nature of the substances Anderson provided them."; Opp., at 5:22-24: "[W]hat the government seeks to prove through the other-athlete testimony is that Anderson's habit and practice in his delivery of steroids tends to prove that the defendant knew that Anderson was providing him with steroids.")

## II. EVIDENCE OF MR. ANDERSON'S DEALINGS WITH THE OTHER ATHLETES DOES NOT QUALIFY AS HABIT EVIDENCE UNDER FED. R. EVID. 406

In his opening motion, defendant demonstrated that other-athlete evidence of Mr. Anderson's conduct and statements was not sufficiently reflexive, regular, and specific to qualify as habit evidence, and thereby qualify for admission under Fed. R. Evid. 406, the only available exception to Rule 404. (Mot., at 7-11.)

As a preliminary matter, the government argues in passing that the other-athlete evidence is admissible under Rule 402 because it is "relevant" and *regardless* of whether it qualifies as evidence of habit under Rule 406. (Opp., at 5) This point is spurious; by their terms, Rules 406 and 404 place definite limits on evidence of a person's other acts and Rule 402 itself recognizes that "other provisions of the Rules of Evidence" govern questions of admissibility. Furthermore, were the government's claim correct, the courts in *United States v. Angwin*, 271 F.3d 786, 799 (9th Cir. 2001), *Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989), and other cases cited in defendant's motion (Mot., at 7-11) would not have bothered to determine whether the arguably "relevant" evidence at issue qualified as admissible "habit" evidence or, alternatively, inadmissible propensity evidence, in the first instance. The government's approach would render Rules 406 and 404 superfluous.

The government's substantive arguments also fail. Again, in deciding whether certain conduct constitutes a "habit," a court must consider(1) the degree to which the conduct is reflexive; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct. *Angwin*, 271 F.3d at 799. The government, as proponent of the evidence, bears the burden of establishing that it qualifies under Rule 406. *Id.*

The government has not come close to carrying its burden for a variety of reasons.

*First*, the government's proffer and Opposition do not and cannot identify any other-athlete evidence describing conduct by Anderson that qualifies as "reflexive" (*Angwin*, 271 F.3d at 799) or "semi-automatic," or "a regular practice of meeting a particular kind of situation with a specific type of conduct" (Fed. R. Evid. 406, advisory committee's note to 1972 Proposed

Rules). To the contrary, such evidence will likely describe conduct that was entirely volitional on Anderson's part and that varied in its particulars from person to person.

*Second*, the proffered evidence fails to describe conduct with sufficient particularity or specificity to qualify under the Rule. Indeed, the government simply describes the relevant conduct as consisting of delivering steroids, tracking steroid cycles with calendars,[4] and monitoring steroid usage, "etc." (Opp., at 6) Such a description does not refer to behavior at a particular level but rather at a general one, much like saying that cab drivers collect fares and follow directions from their customers. Here there is no showing of specific, unvarying conduct under specific times and conditions as required under the Rule.

*Third*, on a closely related point, the fact is that the other athletes will *not*, as the government suggests, testify that Anderson informed them that the substances he provided, particularly the cream and the clear, in fact contained steroids. That much appears from the grand jury testimony of several of the proposed other athlete witnesses. (*See, e.g.*, Jason Giambi Grand Jury Transcript (GJT) at 26-27; Jeremy Giambi GJT, at 17; Larry Izzo GJT, at 13-14; Armando Rios GJT, at 15; Bobby Estallela GJT, at 17, 23; Gary Sheffield GJT, at 19.) Not only does such testimony indicate that the substance of Anderson's communications substantively varied from athlete to athlete, thereby precluding a finding of habit, it also undermines the entire predicate for the government's claim that Mr. Bonds "knew" the nature of the substances provided him by Anderson.

*Fourth*, under *Angwin*, the government must demonstrate that the relationship Anderson maintained with the other athletes was "parallel" with that he maintained with Mr. Bonds. 271 F.3d at 799. The government's only response to this aspect of *Angwin* is a conclusory statement that the relationships are parallel because the proffered witnesses were professional athletes and so was Mr. Bonds. Again, the government bears the burden of proof on this issue, and its failure

---

[4] The court's February 19, 2009, Order on defendant's motion in limine expressly excludes evidence of the other athletes calendars as irrelevant. See Order, at 13-14 ("The government contends that these calendars are relevant to prove that the calendars discussed above recorded Anderson's distribution of drugs to defendant. If those calendars are inadmissible, it follows that the calendars pertaining to other athletes are not relevant.")

to make a meaningful showing that Anderson dealt with Bonds just as he did with the other athletes should alone preclude a finding of habit. The government's remaining comment that the presence or absence of parallel conditions merely "goes to weight, not admissibility" (Opp., at 6) is unsupported and, indeed, flatly contravened by *Angwin*, which approved the exclusion of evidence where the proponent failed to make the "parallel" showing.

*Fifth*, the other athlete witnesses identified on the government's witness list do not constitute a sufficient sample size for purposes of admitting the evidence under the Rule. That is particularly true where each proposed witness cannot testify as to the nature of any purported habit itself, but only to the manner in which Anderson dealt with each of them on an individual basis. (*See* Mot., at 10-11, discussing *Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989).)[5]

Finally, the government's reliance (Opp., at 5-6) on *United States v. Ruiz-Lopez*, 234 F.3d 445 (9th Cir. 445) does not support its effort to qualify the evidence under Rule 406. (Opp., at 5-6.) In *Ruiz-Lopez*, a criminal immigration case, the Court discussed a trial court ruling that admitted evidence from an immigration official under Rule 406 concerning his practice of surveilling, approaching, and questioning immigrants who crossed the border. Significantly, the Court recognized the evidence as relevant but did not consider or describe the underlying showing made by the prosecution in securing admission of the evidence in the district court. There can be little doubt, moreover, that the actions the official described were far more reflexive, specific, and numerous than those the athlete witnesses would address here. And in *Ruiz-Lopez*, the official was able to testify concerning the substance of his own habit, while the athlete witnesses in this case will be wholly incompetent to do so. Under *Weil*, this alone disqualifies the proffered evidence as demonstrating "habit" under the Rule. 873 F.2d at 1460 ("None of the patients were able to testify concerning [the doctor's] method of treating others . . .

---

[5] The government's suggestion that the Court can rely on documentary evidence purportedly relating to defendant in assessing the government's proffer (Opp., at 7:14-17) is unsupportable. Since the evidence has not been authenticated, the Court can no more deem it reliable than could a jury.

For the former patient testimony to be at all probative it must show that [the doctor] responded the same way with each patient as he did with the testifying patient.")

The government has failed to carry its burden of demonstrating that the other-athlete evidence meets the demanding criteria of Fed. R. Evid. 406.

## III. THE COURT SHOULD EXCLUDE THE PROFFERED EVIDENCE UNDER RULE 403

As the Supreme Court stated in *Michelson v. United States*, 335 U.S. 469, 476 (1948), "The circumstantial use of character evidence is generally discouraged because it carries serious risks of prejudice, confusion, and delay." Fed. R. Evid. 403 permits the court to exclude relevant evidence in response to all these concerns, and/or where it is cumulative of other evidence admitted at trial.

However it is characterized, the other-athlete evidence implicates all the concerns identified in *Michelson* and Rule 403. Even if construed as escaping the prohibitions in Rules 404 and 406, the evidence is of marginal value in determining how Mr. Anderson actually and specifically dealt with Mr. Bonds or what Mr. Bonds knew or did not know. On the other hand, if evidence concerning Anderson is admitted pursuant to an exception to Rule 404(b) and not for the purpose of showing that he dealt with Bonds as he did with the other athletes, there is a high risk that the jurors will not be able to limit the evidence to its stated purpose but will rather consider it to show that if Anderson acted one way before he surely did so again.

Furthermore, to the extent that the government wishes to demonstrate that Anderson supplied Mr. Bonds with illicit steroids (and it says it does), the defense has agreed that the Anderson plea agreement may be admitted. That agreement supplies the government with the evidence it considers relevant on this point, rendering the other athlete testimony about it cumulative.

Finally, admission of the other athlete testimony for the purposes described by the government will clearly consume an inordinate amount of the court's time. For all these reasons, the Court should exclude the testimony under Rule 403.

//

## CONCLUSION

For the reasons set forth above, the Court should issue an order excluding any evidence from the other-athlete witnesses aimed at establishing the nature of Mr. Anderson's actions and/or statements with respect to defendant Bonds and/or Mr. Bonds's purported knowledge based on Anderson's dealings with the other athletes.

Dated: February 24, 2011

Respectfully submitted,

ALLEN RUBY (SKADDEN, ARPS, ET AL.)

ARGUEDAS, CASSMAN & HEADLEY, LLP

RIORDAN & HORGAN

By /s/ Dennis P. Riordan
Dennis P. Riordan

By /s/ Donald M. Horgan
Donald M. Horgan

Counsel for Defendant
Barry Lamar Bonds