IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07-0732 SI |
| Plaintiff, | **SECOND PRETRIAL SCHEDULING ORDER** |
| v. | |
| BARRY LAMAR BONDS, | |
| Defendant. / | |

On March 1, 2011, the Court held a final pretrial conference in the above captioned matter, which is set for jury trial beginning March 21, 2011. All parties were represented by counsel. The following matters were resolved:

**1.** **Trial schedule**: The parties expect that the case will take approximately 12 days to complete. The Court does not hear trials on Fridays (although deliberating juries may continue their deliberations on Friday). The trial day runs from 8:30 a.m. until 3:30 p.m., with a 15 minute break at 10:00 a.m., a 30 minute break at 12:00 p.m. and a 15 minute break at 2:00 p.m., all times approximate.

**2.** **Number of jurors and challenges**: There shall be a jury of twelve members, plus four alternate jurors. The government shall have six peremptory challenges, the defendant shall have ten peremptory challenges, and each side shall have one additional peremptory challenge for the alternates.

3. **Voir dire**:

   A. On Thursday, March 17, 2011, the Court will provide a questionnaire to be completed by the full panel of time-qualified jurors. Stipulated changes in the text of the questionnaire may be presented to the Court as late as March 16, 2011. Disputed changes must be presented no later than March 11, 2011. Copies of the completed questionnaires will be provided to counsel on March 17, 2011. The questionnaires will be numbered prior to distribution to counsel, and the potential jurors will be called in that same order during voir dire.

   B. **Issues concerning public availability of completed questionnaires will be discussed at a hearing on Tuesday, March 8, 2011 at 2:30 p.m.** Any further briefs on the question shall be filed no later than Friday, March 4, 2011.

   C. Oral voir dire in the courtroom will commence on Monday, March 21, 2009 at 8:30 a.m. The Court will conduct general voir dire, and counsel for each side shall have up to 60 minutes total to question the panel.

4. **Jury instructions**: The Court received proposed jury instructions from the parties, which will be finalized before closing argument.

5. **Trial exhibits**: No later than March 17, 2011, the parties shall submit their trial exhibits, in binders with numbered tabs separating and identifying each exhibit. The court shall be provided with two sets (for the court and the witness) and each side shall provide one set for the other side. The original exhibits shall be provided to the Clerk when deliberations begin.

6. **Grand jury transcripts**: The charges in this action arise from testimony before a grand jury. The parties will meet and confer on the process for presenting defendant's grand jury testimony to the jury.

7. **Motions in limine:**
With regard to the individually filed motions in limine, and one raised orally at the pretrial

2

conference, the Court rules as follows:

**Defendant's motions in limine:**

**1. Defendant's No. One (Dkt. ## 216, 228, 243):**

**A. Reference to likelihood of refusal to testify**: GRANTED. Defendant was ordered to testify before the grand jury, and in that connection was provided with use immunity from prosecution. The parties agree that the jury may be told that the defendant was granted immunity to testify before the grand jury, but disagree about informing the jury that the United States Attorney believed defendant was likely to refuse to testify based on the 5th Amendment privilege. The Court determines that (1) the jury will be told about the grant of immunity; (2) the Court will explain to the jury what that means; and (3) explaining immunity includes explaining that it is granted lest a person refuse to testify based on constitutional privilege, and that a person granted immunity may no longer refuse to testify. The Court will not tell the jury that the government believed that the defendant would refuse to testify if he were not granted immunity.

**B. To exclude specific Grand Jury testimony of defendant in which he discusses race and money:** GRANTED. Defendant's statement before the Grand Jury that is recorded at TR 145:3–9 is excluded under FRE 403; its probative value is significantly outweighed by the likelihood of prejudice and undue consumption of time.

**C. To prohibit "speculation" by Dr. Ting about whether defendant used steroids:** DENIED WITHOUT PREJUDICE. Defendant may object at trial if he believes that Dr. Ting is speculating or being asked to speculate. Speculation is prohibited. Dr. Ting may testify as to why he never asked defendant if defendant used steroids.

--**To prohibit Dr. Ting from testifying about a specific conversation between Anderson and defendant:** DENIED WITHOUT PREJUDICE. Dr. Ting may testify regarding the content of defendant's statements about defendant's father. Defendant may object at trial if he believes that Dr. Ting is speculating about the reason defendant made the statement, or being asked to speculate. Speculation is prohibited.

--**To prohibit Dr. Ting from testifying about defendant's treatment of others:** DENIED IN PART. Dr. Ting may testify as to how defendant treated him. And he may testify as to

3

1 how he saw defendant treat individuals, such as Greg Anderson, if the relationship between defendant 2 and those individuals is relevant to this case. He may not testify as to how defendant treated people 3 generally.

4 --**To prohibit Dr. Ting from testifying about Dr. Ting's son and issues having** 5 **to do with the medical board:** DENIED WITHOUT PREJUDICE. It is not clear what Dr. Ting's 6 testimony would be or what defendant's objection would be, although from what the parties have stated 7 it does not appear that FRE 403 is at issue.

### D. To exclude testimony by Steve Hoskins:

9 **-To prohibit testimony that Steve Hoskins received prescription medicines** 10 **from Dr. Ting:** DENIED WITHOUT PREJUDICE. Defendant appears to anticipate that either Dr. 11 Ting or Mr. Hoskins will testify that Mr. Hoskins received prescription drugs from Dr. Ting on 12 defendant's behalf. To the extent that such testimony would be offered to show that defendant is a 13 scofflaw, that would be prohibited. FRE 404. If offered for a proper purpose (e.g. whether defendant 14 suffered from conditions that could be connected to steroid use, or as to what defendant's relationship 15 was with Mr. Hoskins or Dr. Ting), such testimony may be relevant and admissible.

16 --**To prohibit Mr. Hoskins from testifying as to the content of any out of** 17 **court statement not previously ruled admissible:** DENIED WITHOUT PREJUDICE. This motion 18 is too vague to be ruled on. However, inadmissible hearsay will not be admitted.

### E. To exclude testimony by Kathy Hoskins:

20 -**To prohibit testimony about defendant's relationship with Pieret Aava**: 21 DENIED. This testimony would be probative of Ms. Hoskins's relationship with defendant, which is, 22 in turn, probative of the veracity of her statements about what she observed defendant doing. It does 23 not appear that the photographs themselves would be admissible, however.

24 –**To prohibit testimony about defendant's treatment of Greg Anderson**: 25 DENIED. Testimony regarding defendant's relationship with Greg Anderson is probative of the 26 veracity of defendant's statements before the Grant Jury about his relationship with Mr. Anderson.

27 –**To prohibit testimony about defendant's relationship with defendant's wife**: 28 DENIED WITHOUT PREJUDICE. Such evidence does not appear relevant, but it does not appear

unduly prejudicial either. The Court will rule on individual objections at trial.

**F. To exclude testimony by Kimberly Bell:**

–**To prohibit testimony about defendant's treatment of others:** GRANTED IN PART AND DENIED IN PART. With the exception of the one incident of domestic violence addressed in Motion No. 2, below, Ms. Bell may testify as to defendant's treatment of Ms. Bell, and she may testify as to her observations of his treatment of other individuals, such as Greg Anderson, if those individuals' relationship with defendant is relevant in the case. She may not testify as to his treatment of people generally, as such testimony would be irrelevant and prejudicial.

-**To prohibit testimony about defendant's explanation for marrying Liz Bonds:** GRANTED.

–**To prohibit testimony about defendant's instructions as to how to deposit money that he gave her**: DENIED. Such testimony may not be used to show that defendant is a scofflaw. However, it may be probative of defendant's relationship with Ms. Bell. If the defendant would like a limiting instruction, he may propose one to the Court.

–**To prohibit testimony about changes in defendant's temperament and threats of violence:** DENIED. With the exception of the one incident of domestic violence addressed in Motion No. 2, below, Ms. Bell may testify as to how defendant treated her, which includes testifying about any changes in behavior towards her and any threats made to her.

**2. Defendant's No. Two (Dkt. ## 222, 229, 235):** GRANTED IN PART AND DENIED IN PART. The defendant wishes to prohibit Kimberly Bell from testifying about changes in defendant's sexual performance; hair growth; anger; violence; and baldness; to prohibit the government's expert, Dr. Bowers, from testifying that any of these are side effects of steroid use; and to prohibit Dr. Bowers from testifying about any *other* potential side effect of steroids if there is no evidence that defendant suffered that specific side effect.

The Court has already ruled that Dr. Bowers may offer opinions as an expert. The Court now rules that Ms. Bell may testify as to her observations regarding decreased sexual performance; hair growth; anger; bloating; and baldness. In turn, Dr. Bowers may testify as to the relationship between

those symptoms and steroid use.[1] He may also testify as to side effects of steroid use generally, even if there is no evidence that defendant has exhibited certain of these side effects. Ms. Bell may also testify as to her observations, if any she has, regarding defendant's testicles, and Dr. Bowers may testify as to the relationship between testicle size and steroid use. Defendant, as always, is permitted to cross examine both Ms. Bell and Dr. Bowers.

At the pretrial hearing, defendant also objected in particular to allowing Ms. Bell to testify as to one incident of violence where, Ms. Bell says, defendant choked her and threatened to kill her. This, defendant argues, is at most probative of the issue of "'roid rage," but it is extremely prejudicial evidence of a domestic violence encounter. Defendant argues that the probative value is minor for three reasons: (1) it is the only instance of violence associated with defendant, at all, whereas "'roid rage" is typically associated with ball players who get in frequent fights; (2) Ms. Bell would testify that the incident occurred at the very end of their long relationship, and it is better explained by the impending end of the relationship than by steroid use; and (3) if Ms. Bell testifies that defendant's treatment of her worsened, and testifies as to verbal harassment and threats, then the added probative value of testimony about one incident of physical violence is low. On the other hand, defendant argues, evidence of an uncharged incident of domestic violence has the potential to prejudice jurors against him and impair their ability to review the evidence fairly, in a case that really should have nothing to do with the question of domestic violence. The Court is persuaded that the probative value of this testimony would be substantially outweighed by the danger of unfair prejudice. *See* FRE 403. Unless and until defendant opens the door to such testimony, Ms. Bell is not permitted to testify regarding this incident.

**3. Defendant's No. Three (Dkt. ## 221, 230, 247):** The Court RESERVES ruling on this matter. An Order will follow in due course.

---

[1] Dr. Bowers's declarations referring to "physiological effects" that testosterone might have on "genitalia," and liver and organ damage, in combination with the remainder of Dr. Bowers's detailed disclosure as to the content of his testimony and the sources of his opinions, is sufficient to meet Rule 16(a) (1)(G) disclosure requirements. *See United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 2347406, * 1 (N.D. Cal. June 8, 2010).

6

**4. Defendant's No. Four (Dkt. ## 222, 233, 237):** GRANTED IN PART AND DENIED IN PART. Agent Novitzky may not opine on the truthfulness of defendant's Grand Jury testimony. He may not allude to or suggest the existence of the materials excluded from evidence in this case. He may, however, testify about the existence of inconsistencies between defendant's testimony and other evidence before the Grand Jury, and he may testify as to how that impacted the Grand Jury investigation. Such testimony is relevant to the question of materiality, and the government must be allowed to prove that element.

**5. Defendant's No. Five (Dkt. ## 220, 231, 236)**: DENIED WITHOUT PREJUDICE. Defendant objects to the introduction of what it calls undisclosed expert opinion. It is not clear what exactly defendant wishes excluded. Defendant may raise individual objections at trial.

**6. Defendant's Oral Motion in Limine**: DENIED WITHOUT PREJUDICE. At the pretrial conference, defendant moved to exclude certain anticipated testimony of James Valente that defendant says is inadmissible hearsay. Defendant anticipates that Mr. Valente will testify that he heard Mr. Anderson say that "Barry wants privacy." The Court notes that hearsay will only be admitted if it falls under a hearsay exception. However, the Court does not have enough information to rule on this motion at this time.

As the Court noted at the pretrial conference, however, the description of Mr. Valente's anticipated testimony on the government's witness list consists almost entirely of testimony that the Court has already barred. Because it is not clear to the Court or to defendant what the content of Mr. Valente's testimony will be, the Court has ordered the government not only to update its witness list, but also to give defendant clear specifics about the content of Mr. Valente's anticipated testimony.

**Government's motions in limine (Dkt. ## 219, 234, 244):**

**A.** **To exclude interview reports and grand jury transcripts**: DENIED WITHOUT PREJUDICE. The motion is too vague to decide on this record. The Court will address these

7

evidentiary issues at trial as they arise at trial.

**B.     To prohibit defendant from "interject[ing] irrelevant questions of law":** DENIED WITHOUT PREJUDICE.  Irrelevant questions of law are, by definition, irrelevant and excludable.  The Court will instruct the jury as to the law.  However, questions designed to elicit factual testimony about bias or slovenly work are permitted.

**C.     To exclude testimony of Michael Rains and evidence of "promises" to defendant:** DENIED WITHOUT PREJUDICE.  The government objects to permitting attorney Michael Rains—or anyone else—to present evidence of or testify about purported promises by the government that defendant could view certain documents before his Grand Jury testimony, which (the government believes) defendant would argue are promises that the government broke.  The parties have provided very little information about these purported promises, and it is not possible to rule on admissibility in the abstract.  If the proper foundation is laid, the Court will consider the testimony at the time of trial.  Whether testimony by Mr. Rains would require waiver of defendant's attorney-client privilege will be determined when the proposed questions are identified.

**D.     To prohibit encouragement of jury nullification**:  GRANTED IN PART AND DENIED IN PART, WITHOUT PREJUDICE.  Defendant may not argue to the jury that the jury should ignore or not follow the law.  Beyond that, the government's motion is denied, without prejudice to specific objections to specific questions at trial.

**E.     To prohibit defendant from using government agents to impeach the cross examination testimony of government agents**: DENIED WITHOUT PREJUDICE.  This motion is too vague to resolve on the current record.  The government may make specific objections at trial.

F.     **To admit photographs of defendant:** RESERVED.  It is likely that photographs will be permitted, and that the admission of photographs will not constitute unfair surprise.  However, the

8

1 Court still has not seen any photographs, and the Court has not heard authentication testimony, and so
2 it is unable to rule whether the photographs are admissible at this time. The Court has ordered that the
3 government provide more detail about the photographs by Monday, March 7, at 5:00 p.m.

**G.** **To prohibit certain impeachment of Kimberly Bell**: GRANTED IN PART AND DENIED IN PART, WITHOUT PREJUDICE. The government objects to what it views as improper impeachment, and the motion focuses in particular on Ms. Bell's photographs and interview in *Playboy* (none of which was provided to the Court). It does not appear from what has been presented to the Court that any actual *Playboy* photographs should be shown to the jury. It is likely that the jury will be permitted to hear about the content of the interview, which appears to be relevant to point of view, although the Court has not yet seen the interview and cannot rule definitively. It is not clear whether the government also objects to other cross examination and impeachment evidence. In any event, the Court notes that defendant is permitted to cross examine not only with regard to the exact substance of a witness's testimony, but also may question the true nature of the witness's relationship with the defendant, and may examine the witness's biases and motivations.

H. **To admit evidence of certain of defendant's communications with and conduct towards Ms. Bell:** GRANTED IN PART AND DENIED IN PART. This motion in effect parallels certain of defendant's motions in limine. As explained above, defendant's treatment of Ms. Bell is relevant to the issue of defendant's relationship with Ms. Bell and therefore to the veracity of her testimony. Additionally, it may be relevant to the question of when and whether defendant used steroids, and how obvious his use might have been to himself or others. That said, and as explained in more detail above, testimony and evidence relating to the single domestic violence incident is excluded unless and until defendant opens the door and specific permission is obtained from the Court.

I. **To have the Court ask Mr. Anderson if he is available to defense**: GRANTED. Defendant did not oppose this motion. At the pretrial conference, the Court informed Mr. Anderson that defendant wished for him to testify. Mr. Anderson indicated that he would continue to refuse to testify.

The Court has ordered Mr. Anderson to appear and testify at trial, and the Court will once again inquire of him if he is willing to testify at that time.

**J.** **To admit evidence of defendant's possible motives to lie to the Grand Jury**: DENIED WITHOUT PREJUDICE: The Government characterizes defendant's athletic achievements in baseball (e.g., "single season and career home run record") as "evidence of his motivation to provide false testimony to the grand jury regarding his use of steroids," and seeks an order in limine admitting such evidence. The Court has not been informed of any reason such evidence would be inadmissible. However, the Court does not know what evidence, presented by whom, is contemplated. Therefore the Court cannot rule the evidence admissible at this time.

K. **To admit Greg Anderson's plea agreement**: GRANTED.

**L.** **To admit James Valente's plea agreement**: GRANTED.

**M.** **To prohibit defendant from arguing that he was confused during his grand jury testimony**: DENIED. The defense may make arguments regarding confusion, though the defense should be cautious about opening the door to previously stricken or excluded Grand Jury testimony or evidence. To the extent that the government believes, at any point, that the defense has opened the door to the government presenting previously-excluded evidence or previously-stricken Grand Jury testimony, the government shall inform the Court of this outside of the presence of the jury, and before discussing any of the testimony or evidence before the jury.

**N.** **To admit the 2006 positive amphetamine test**: The Court RESERVES ruling on this matter.

**O.** **To prohibit cross-examination of Steve Hoskins about defendant reporting Mr. Hoskins to the FBI**: DENIED. This is a permitted cross-examination topic.

**8.** **Miscellaneous issues:** The government's request to exclude witnesses other than Agent Novitzky from the courtroom during trial is granted; this exclusion order does not apply to expert witnesses. The government's request for defendant to bear the costs of recalling government witnesses is denied. The Court has ordered Mr. Anderson to appear on March 22, 2011 at 8:30 a.m. and to testify in this case.

**IT IS SO ORDERED.**

Dated: March 2, 2011

_____
SUSAN ILLSTON
United States District Judge