IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, | No. C 07-00732 SI |
| Plaintiff, | **ORDER DENYING DEFENDANT'S THIRD MOTION IN LIMINE** |
| v. | |
| BARRY LAMAR BONDS, | |
| Defendant. | |

On March 1, 2011, the Court held a final pretrial conference in this case. The Court indicated at that time, and in a later order, that the Court would rule separately on defendant's third motion in limine. Doc. 221. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES defendant's third motion in limine.

Defendant has moved to "prohibit the admission of the other-athlete evidence to establish the specific nature of [Greg] Anderson's dealings with defendant Bonds." Def. Mot. In Lim. 3 ("Motion"), at 1. Defendant contends that the government's argument for the relevance of this "other athlete" testimony "necessarily rests on" the proposition "that Anderson had a propensity to provide performance enhancing drugs . . . to athletes, so he must have done so with Mr. Bonds." *Id.* Defendant argues that this is "flatly prohibited" by Federal Rule of Evidence 404, and that Rule 406 does not provide for an alternate path of admission. *Id.*[1]

The government agrees that it "could not offer the evidence that Anderson supplied steroids to

---

[1] Defendant also raises and refutes a straw man argument, claiming that the government may try to, but ultimately cannot, rely on the theory that "other athletes had a propensity to obtain [performance enhancing drugs] from Anderson, so Bonds, an athlete, must have done the same."

other athletes for the purpose of showing that Anderson also supplied steroids to the defendant." Gov. Response to Def. Mot. In Lim. 3 ("Response"), at 4. The government explains that it is intending to do something different:

> Athletes other than the defendant will testify that they received performance enhancing drugs from Anderson, along with instructions for, and monitoring over, the use of these drugs. . . . The government will offer this evidence to show that Anderson's practices made it likely that clients knew the nature of the substances Anderson provided them. In combination with evidence that the defendant was also a client of Anderson's, this evidence tends to show that the defendant knew that Anderson was providing him steroids. This is relevant and admissible evidence.

*Id.* After the pretrial conference, the government submitted an extended proffer, consisting of large excerpts of the testimony of Jason Giambi, Jeremy Giambi, Bobby Estallela, and Larry Izzo before the Grand Jury in investigation 2002R01596; the testimony of Marvin Benard, Bobby Estallela, and Benito Santiago before the Grand Jury in investigation 2004R00608; the testimony of Armando Rios before the Grand Jury in investigation 2003R01596; and interview notes from an I.R.S. interview with Randy Velardi. Defendant also submitted shorter excerpts from the testimony of Jason and Jeremy Giambi, Mr. Estallela, Mr. Benard, Mr. Santiago, and Mr. Rios.

Evidence is admissible if it is relevant, and if it is not otherwise excludable. Fed. R. Evid. ("Rule") 402. "Rule 404 . . . renders inadmissible evidence of a person's general character if used to show propensity or proclivity." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc).

Because Mr. Anderson is not a witness, victim, or defendant, the only prong of Rule 404 at issue here is prong (b). Rule 404(b) states, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Unlike Rule 404(a), Rule 404(b) applies "to any person," including a third party not appearing as a witness in a case. *United States v. McCourt*, 925 F.2d 1229 (9th Cir. 1991). Where evidence is not excludable under Rule 404(b) it may still be excludable under Rule 403, which allows exclusion of evidence where the "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

The Ninth Circuit has explained that Rule 404(b) is "a rule of inclusion," not a rule of exclusion.

2

*United States v. Ayers*, 924 F.2d 1468, 1472 (9th Cir. 1991). That is to say, "[e]vidence of other crimes or acts is admissible under Rule 404(b), 'except where it tends to prove *only* criminal disposition.'" *Id.* (quoting *United States v. Sangrey*, 586 F.2d 1312, 1314 (9th Cir. 1978)) (emphasis added). "The clear purpose of this Rule is to confront as a matter of law the proposition that a person's bad character as demonstrated by behavior is relevant and therefore admissible to prove that he acted in conformity therewith." *Id.*[2]

The government wishes to introduce evidence of Mr. Anderson's instructions for, and monitoring of, other athletes' use of certain performance enhancing drugs in order to prove, ultimately, that defendant knew that Anderson was providing him steroids. It is clear, then, that the evidence is relevant to the question of guilt or innocence in this case. The question for the Court on this motion in limine is whether the government is asking the jury to make impermissible conclusions about *Mr. Anderson's* conduct before it can make any conclusions about defendant's knowledge. *Cf. United States v. Sampson*, 980 F.2d 883, 887 (3rd Cir. 1992) ( "If the government offers prior offense evidence, it must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed . . . offenses before, he therefore is more likely to have committed this one.").

Defendant argues that the jury will be asked to conclude "that Anderson had a propensity to provide performance enhancing drugs . . . to athletes, so he must have done so with Mr. Bonds." This is a red herring. The government has other evidence that Mr. Anderson provided defendant with performance enhancing drugs. For example, defendant admitted to the Grand Jury that he obtained a clear substance he thought was flax seed oil, and the cream, from Mr. Anderson. *See, e.g.,* TR 68:8–68:14, 88:11–88:13. The government is intending to call witnesses such as Kimberly Bell and Kathy Hoskins, whose expected testimony would support an inference that defendant used performance enhancing drugs that he obtained from Mr. Anderson. And the government has promised not to use the

---

[2] The Ninth Circuit has made clear that Rule 404(b) does not apply only to bad acts. *See Curtin*, 489 F.3d at 943 n. 3. Thus, it does not merely prohibit evidence of *bad* acts evidence intended to prove *bad* character or *evil* inclinations. Nonetheless, the thrust of the quotations from *Ayers* are still pertinent and helpful, as they make quite clear that Rule 404(b) only prohibits evidence intended to prove some type of character trait or some type of inclination.

*United States District Court*
*For the Northern District of California*

other athlete testimony to make the propensity argument that defendant is concerned with. To the extent that defendant remains concerned that the testimony will be used for this impermissible purpose, the Court will entertain requests for limiting instructions.

The proffered other athlete testimony is probative of other, unquestionably permissible topics. It tends to show that Mr. Anderson *had access* to certain specific performance enhancing drugs, including not merely the cream and the clear but also injectable testosterone, human growth hormone, and others; that he *knew how* and *was able to* distribute these drugs; *when* he had access to and was able to distribute these drugs; and that he *had knowledge* of how these drugs worked, how to take them, and whether they could be detected by others. *See United States v. Edwards*, 696 F.2d 1277, 1280–81 (11th Cir. 1983) (explaining that a conversation in which a criminal defendant admits being involved in drug smuggling, discusses what precautions must be observed, and uses code names for drugs, may be used to prove the defendant's knowledge of drug importation and distribution). Defendant does not appear to object to the government using the other athlete testimony to establish Mr. Anderson's access, timing, knowledge, and ability.

Finally, it is probative of the *manner in which* Mr. Anderson actually distributed performance enhancing drugs.[3] Contrary to defendant's assertions, this is not impermissible character testimony or habit testimony. The government is not implying that Mr. Anderson distributed drugs in a certain way because he was a fastidious person or because of a compulsion or because he was so used to distributing drugs that way that he *must* have used the same words with defendant. The government is not implying that Mr. Anderson gave defendant injectable testosterone because he somehow had a character trait that

---

[3] At the pretrial conference, defendant correctly pointed out that this is different from usual "modus operandi" evidence, which is typically introduced to prove the identity of the perpetrator of a crime. Thus, in the typical case, the government would introduce evidence of a unique, uncommon thing that the defendant once did in order to prove that the defendant is guilty of a crime where the perpetrator did that same unique, uncommon thing. In those cases, the uniqueness of the thing is vitally important.

Here, the other athlete testimony is not being used to prove identity—that it was Mr. Anderson rather than someone else who provided defendant with performance enhancing drugs. Rather the government is arguing that *if* Mr. Anderson provided defendant with performance enhancing drugs, then the jury may look to how Mr. Anderson provided drugs to other athletes to make inferences about how he provided them to defendant. Thus, similarity between how Mr. Anderson acted with different athletes is important—and the transcripts provided by both defendant and the government show that the similarity is there. But there is no reason to superimpose the question of uniqueness onto a case that has nothing to do with the question of identity.

4

necessitated that he package injectable testosterone with "the cream" and "the clear." Rather, to quote Rule 404(b), it shows that Mr. Anderson had a general "plan"—and what that general plan was—for how to distribute performance enhancing drugs to athletes, how to communicate about these performance enhancing drugs with inquiring athletes, and how to allay concerns of athletes worried about testing positive for performance enhancing drugs or generally being accused of using steroids. Mr. Anderson may well have tailored that plan to individual athletes and individual circumstances. The government is not arguing otherwise (and defendant is permitted to argue to the jury that Mr. Anderson's relationship with defendant was so different than his relationship with these other athletes that their testimony is not particularly useful[4]). But that only serves to highlight the point that this is not character evidence.

The Court is faced with a unique question that has been brought about by a unique factual situation.[5] A key prosecution witness is refusing to testify, in violation of the law and a court order, and despite having been incarcerated and having been informed that he will be incarcerated again. What performance enhancing drugs that witness had access to when, what he knew about those drugs, and the ways in which he distributed those drugs, are all important questions in the case. Even more critical is

---

[4] Based on defendant's Grand Jury testimony, it appears that defendant may argue that he was not, in fact, an inquiring athlete. He may argue that he was not a worried athlete. Thus it does not matter what Mr. Anderson might have planned to tell inquiring, worried athletes. These arguments go to the question of weight to give the testimony of the other athletes, not the question of whether the testimony constitutes character evidence.

Similarly, defendant asserted at the pretrial conference that the Grand Jury transcripts show that the other athletes *did not* know what "the cream" and "the clear" were, and therefore their testimony is not relevant to whether defendant knew what the substances were. Again, this goes to the weight of the evidence, not to the question of whether the testimony constitutes character evidence. *See* Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable *or less probable* than it would be without the evidence." (Emphasis added)).

[5] For this reason, it is difficult to analogize this case with other cases. Typically, where a defendant challenges 404(b) evidence, the government is attempting to introduce evidence of prior conduct by the defendant. Where the question is about prior conduct by a third party almost always the government is challenging a criminal defendant's attempt to prove that a non-appearing third party is actually guilty of the crime with which the defendant has been charged. *See United States v. Wright*, 625 F.3d 583, 609 (9th Cir. 2010); *United States v. Williams*, 458 F.3d 312, 315 (3d Cir. 2006) (calling this "reverse Rule 404(b)" evidence); *McCourt*, 925 F.2d at 1230. And in fact many courts, such as the First, Second, Third, Fifth, and Eleventh Circuits, have determined that Federal Rule of Evidence 404(b) is not even applicable to evidence regarding acts of someone other than the defendant. *See Wynne v. Renico*, 606 F.3d 867, 873 n. 3 (6th Cir. 2010) (Martin, J., concurring).

5

the question of what that witness might have told defendant about the performance enhancing drugs that he gave defendant. This is highly probative of the question of what defendant knew, which is one of the most important questions in this perjury and obstruction of justice prosecution. But because the key witness is refusing to testify, and because defendant cannot be compelled to testify, there are no percipient witnesses available to tell the jury about these conversations.[6] Instead, the government is calling other athletes to provide testimony that is circumstantial evidence of what Mr. Anderson and defendant's actual dealings were with each other.

The testimony of these other athletes is highly probative of important questions in this case. The risk of unfair prejudice to defendant is low. To the extent that certain individual questions may be improper, defendant may object to those questions at trial. To the extent that there is a risk that the jury will use the other athlete testimony for improper purposes, the Court is prepared to offer a limiting instruction if defendant proposes one. However, it is proper for the government to argue that Mr. Anderson's practices made it likely that clients knew the nature of the substances Mr. Anderson provided them; and thus *if* defendant were a client and *if* Mr. Anderson provided defendant with substances, then it is more probable that defendant knew the nature of the substances Mr. Anderson provided him.

**IT IS SO ORDERED.**

Dated: March 7, 2011

SUSAN ILLSTON
United States District Judge

---

[6] This statement is not intended to punish defendant in any way for exercising his constitutional right not to testify, nor is it meant to blame or punish defendant for Mr. Anderson's unlawful refusal to testify. Rather, the Court is explaining how this unique scenario arose, and why the athletes' testimony is more probative in this case than it might otherwise be.