```
                        UNITED STATES DISTRICT COURT

                      NORTHERN DISTRICT OF CALIFORNIA

                   BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

    ----------------------------)
                                )
    UNITED STATES OF AMERICA,    )
                                )
                 Plaintiff,      )
                                )
         v.                      )      No. Cr. 07-0732 (SI)
                                )
    BARRY LAMAR BONDS,           )
                                )
                 Defendant.      )      San Francisco, California
                                )       Thursday, March 17, 2011
    ----------------------------)          (11 pages)



                         TRANSCRIPT OF PROCEEDINGS



    APPEARANCES:

    For Plaintiff:          MELINDA L. HAAG
                            United States Attorney
                            450 Golden Gate Avenue
                            San Francisco, California  94102
                      BY:   MATTHEW A. PARRELLA
                            Assistant United States Attorney

    For Defendant:          Arguedas, Cassman & Headley, LLP
                            803 Hearst Avenue
                            Berkeley, California 94710
                      BY:   TED W. CASSMAN

    Also Present:           DAVID WEIR
                            Jury Commissioner
```

```
 1   Thursday, March 17, 2011
 2                                                         (9:35 a.m.)
 3             (In the jury assembly room; venire present)
 4             THE COURT:  Good morning.
 5             PROSPECTIVE JURORS:  Good morning.
 6             THE COURT:  My name is Susan Illston.  I'm one of the
 7   judges in this building, and I am the judge who will be
 8   presiding over the trial which will start next Monday, which is
 9   why you are all here today.  So first off, can you hear me?
10             PROSPECTIVE JURORS:  Yes.
11             THE COURT:  Thank you for being here.  Thank you.
12   Thank you.  Thank you.  I know you did not volunteer to come,
13   you probably have other things you'd just as soon be doing this
14   morning -- I know that -- and you are here and I'm very, very
15   grateful.  The parties to the case are grateful.  The system is
16   grateful.  We live in one of the most wonderful countries in
17   the world and we have the best judicial system anywhere, and it
18   couldn't function at all without the help of individuals like
19   yourselves.  So thank you for being here.
20             What I want to do this morning is tell you a little
21   bit about what's going on.  It's a slightly unusual situation,
22   so I wanted to fill you in before you get going on it.
23             Our case will begin on Monday.  We asked to you come
24   in today because we are going to ask you to fill out a
25   questionnaire.  And so what will happen is you'll fill out the
```

1   questionnaire and then the lawyers will have an opportunity to
2   read those things over before Monday.  We are hoping that that
3   will make the process more efficient, that by having that
4   information and having considered that information in advance,
5   then we won't have to go over and it over and it over it in
6   court, because that's what can take such a long time.  So I
7   apologize for making you come in today and then again on
8   Monday, but our intentions anyway are good, which is to save
9   time in the long run.  So that's the reason for it.
10             Another reason that I'm here is I want to tell you a
11  little something about what's going on.  This is the
12  questionnaire that we'll have you fill out (indicating).  And
13  so I'm going to do two things:  One is I'm going to tell you a
14  little bit about that; and then I'm going to give you an
15  instruction, and an instruction is one of the words we use when
16  we mean an order, which is to say I'm going to tell you
17  something you have to do, between now and Monday.  But I want
18  to give you a little bit of background to explain why.
19             The questionnaire that you will receive will tell you
20  that this is the case of United States versus Barry Bonds.
21  This is the -- this is a case in which Mr. Bonds is charged in
22  four counts with having given a false declaration to a grand
23  jury, four counts of that; and one count of obstruction of
24  justice.
25             So that's the trial that will begin next week.

| | |
|---|---|
| 1 | There's been a fair amount of publicity about |
| 2 | Mr. Bonds over the course of the years.  That's one of the |
| 3 | reasons we're trying so hard to make the process of jury |
| 4 | selection efficient here, and that's one of the reasons that |
| 5 | the questionnaire will be filled out. |
| 6 | I want to tell you one or two things about the |
| 7 | questionnaire.  One is that you will see that it has a place |
| 8 | for your name on the declaration page, and this is what jurors |
| 9 | always have to do is they have to swear that they will listen |
| 10 | to the evidence and decide the case based on the evidence.  And |
| 11 | they have to swear that the answers they are giving are true. |
| 12 | So that's what this first page will do is to say all of that. |
| 13 | And it will have your name on it. |
| 14 | And then the next page, which is the actual answers to |
| 15 | the questions, will not have your name on it.  One of the |
| 16 | things that we're doing in this case is we're not going to |
| 17 | release the names of the jurors during the trial.  Again, it's |
| 18 | an effort to make sure that the trial is tried on its merits, |
| 19 | in the courtroom, and no place else.  And one way we think will |
| 20 | make that happen in a fair way is to make -- to keep to |
| 21 | ourselves the names of the jurors.  So that's one thing. |
| 22 | So on the questionnaire, you'll see that you are told |
| 23 | on this questionnaire:  Don't put your name on the |
| 24 | questionnaire itself.  Only put your name on the face sheet. |
| 25 | We will keep the face sheets.  And then we will give the |

1    questionnaires out.  But your names won't be on them.  So
2    that's one thing that's going on.
3              And there are -- none of these questions should
4    require that you answer by saying your name.  We don't want you
5    to do that.  So don't -- if you're confused at all, the idea is
6    that your name will be on the front page of it.  We'll give you
7    a number; it will be your juror number.  And that will be on
8    the questionnaire itself.  But don't feel that you should
9    respond by giving your name.  And there are a couple of places,
10   a couple of places will say:  Do you or your close friends or
11   relatives do this, that or the other thing.  Again, we're
12   not -- we are not asking for the names of your relatives, for
13   example.  We don't want any names in here that would link up
14   your name with the answers to these questions.  The questions
15   are at a much more general level than that.
16             So that's what the questionnaire is about.
17             What you will also see on the declaration page, where
18   you say that the answers are true and where you do put your
19   name down, it has some instructions.  And so first let me read
20   you the instruction that I have about your conduct.  And this
21   is really between now and Monday.  What we're trying to do is
22   keep you from now until Monday as isolated as possible from any
23   information out there that might be going on about the trial.
24   Again, the purpose of all of this is to pick jurors who will
25   listen to the evidence that's presented in the courtroom and

```
 1   decide the case based on the evidence in the courtroom.  That's
 2   our sole goal here.
 3           First, let me read you this instruction:
 4           To the extent -- it's fairly dramatic, I apologize in
 5   advance, but we're trying to make it as clear as we can:
 6           From this moment until the end of the trial, or until
 7   you are dismissed as a juror, you must not discuss this case
 8   during the trial with anyone, including any of the attorneys,
 9   parties, witnesses, your friends, or members of your family.
10   This includes but is not limited to discussing your experience
11   as a juror on this case, discussing the evidence, the lawyers,
12   the parties, the court, your deliberations, your reactions to
13   testimony, exhibits, or any aspect of the case, or your
14   courtroom experience.
15           In addition to not conversing face-to-face with anyone
16   about the case, you must not communicate with anyone about the
17   case by any other means, direct or indirect, such as:  A
18   writing, a telephone, e-mail, Facebook, Myspace, Twitter,
19   instant messaging, BlackBerry messaging, iPhones, iTouches,
20   Google, Yahoo, any Internet search engine, or any other form of
21   electronic communication for any purpose whatsoever.
22           We intend to cover the waterfront with this.  So if
23   you have other means of communications with people that I
24   haven't mentioned here, I'm intending to cover that as well.
25           You are also ordered not to do any Internet research
```

1   concerning the subject of Barry Bonds, any of the witnesses or
2   lawyers in this trial, or the subject of this trial.
3           Similarly, you are ordered not to read or watch any
4   television or otherwise receive media coverage of this trial.
5           Now, these instructions will apply to all the jurors
6   in the case. And up until Monday or Tuesday when those of you
7   who are not selected are released, they apply to you. Once you
8   are released from this courtroom and released as any kind of
9   potential juror in this case, these instructions will no longer
10  apply to you.
11          It is especially important that you obey this order,
12  because both sides are entitled to a trial in which the jury is
13  influenced only by facts that are properly presented to the
14  jurors in court, according to the rules of evidence. If a
15  juror receives information about the trial or the subject
16  matter of the trial from the media, or from any other source,
17  it could cause a mistrial. Meaning that all of the jurors
18  would have to be dismissed and the whole process would start
19  over from scratch.
20          That would be a tremendous burden on the Court, the
21  parties, and the principles of fairness under which jury trials
22  are conducted.
23          I will give you some form of these instructions
24  frequently during the proceedings. I do that not to be unduly
25  repetitive or because I don't think you're paying attention,

1   but because in my experience, obeying these instructions is the
2   hardest thing for jurors to do.  I know of no other situation
3   in our culture where we ask strangers to sit together, watching
4   and listening to something, to read or hear nothing else about
5   the subject, then go into a little room together and not talk
6   about the one thing they have in common that they just
7   experienced together.  That's a hard thing to do.  But there
8   are several reasons for these rules.
9           The first is to help you keep an open mind.  When you
10  talk about things, you start to make decisions about them.  And
11  it is extremely important that you not make any decisions about
12  this case until you have heard all of the evidence and all of
13  the rules for making your decisions, and you won't have that
14  until the very end of the trial.
15          The second reason is that by having conversations in
16  groups of two or three during the trial, you won't remember to
17  repeat all of your thoughts and observations for the rest of
18  your fellow jurors when you do deliberate at the end of the
19  trial.
20          The third and most important reason is that by
21  discussing the case outside of the jury room, you increase the
22  likelihood that you will be influenced by an outside third
23  party or that you may reveal private information that could
24  impact the outcome of the case.  If any person tries to talk
25  with you about the case, tell that person that you cannot

1   discuss the case.  If that person persists, simply walk away
2   and report the incident to my staff.
3              The fourth reason is that the evidence you will hear
4   in the courtroom has been presented to you after going through
5   a vetting process using principles of fairness contained in the
6   Federal Rules of Evidence.  Information from other sources has
7   not gone through that process.  If you were to receive
8   information outside of the courtroom, it would likely cause a
9   mistrial.  That would be a tremendous waste and burden on both
10  parties as well as on the Court.
11             These instructions must be followed by every juror and
12  every prospective juror in order to ensure a fair trial.  If,
13  as a juror in this matter, you were to violate any of these
14  rules, you could be found in contempt of court, which is
15  punishable by jail or a monetary fine, or both.
16             So that's the long version of this instruction.  But
17  you'll see that when you get the questionnaire and you sign the
18  declaration, it also says -- and I'll read this because it's a
19  shorthand of the same thing I just told you about -- you'll say
20  that you understand you have been ordered by the Court -- which
21  is me doing this to you right now -- you've been ordered by the
22  Court to refrain as of now from disseminating or obtaining
23  information about Barry Bonds, the Bonds trial, the Court, any
24  of the parties, attorneys or witnesses, to or from any source
25  outside the courtroom, from until now until you are dismissed

```
 1   as a juror.
 2              This means that you've been ordered not to research or
 3   read about the case, or about Barry Bonds.  You've been ordered
 4   not to communicate about the case or Barry Bonds.  This means
 5   you should not read, research or communicate with anyone,
 6   directly or indirectly, by any means, including -- and here we
 7   go through our best guess at everything you might have
 8   available to you -- writing, the telephone, e-mail, social
 9   networking sites like Facebook, Myspace, Twitter, instant
10   messaging, BlackBerry messaging, text messaging, Internet
11   search engines, such as Google or Yahoo, electronic or print
12   media, blogs or any other means of electronic or otherwise.
13              You just need to insulate yourself from any
14   information about this case until you're released by me.
15              This order is necessary in order to protect the right
16   of both sides to have a fair trial based on evidence introduced
17   in the court of law.
18              And we'll ask that you sign this declaration which
19   says you understand that if you were to violate this order, you
20   could be held in contempt of court, which is punishable by jail
21   and/or a monetary fine.
22              So, that's where we are.  At this point, David Weir
23   will give you the questionnaires.  We'll ask that you fill them
24   out, and then he'll direct you, he'll tell you some group of
25   you will be coming back on Monday and, if necessary, another
```

1  group will come back on Tuesday.  We are hoping that we will be
2  able to complete the jury selection process either Monday or
3  Tuesday.  That's our hope.
4         So we are going to select a jury of 12 persons with
5  four alternates.  That's 16 people.  So we're not going to take
6  all of you.  You can see that.  But for the next few days, we
7  need your -- all of your cooperation in order to get this done
8  in as fair a way as we can.
9         So that's the situation.
10         And David, I would ask that you now proceed.
11         MR. WEIR:  Thank you.
12         THE COURT:  Super.  Thank you.
13         (Adjourned)
14                            oOo

### CERTIFICATE OF REPORTER

I, Connie Kuhl, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into written form.

_____

Connie Kuhl, RMR, CRR
Thursday, March 17, 2011