1  ALLEN RUBY (SBN 47109)
   SKADDEN, ARPS, MEAGHER & FLOM, LLP
2  525 University Avenue, Ste. 1100
   Palo Alto, CA 94301
3  Telephone: (650) 470-4500
   Facsimile: (650) 470-4570
4
5  CRISTINA C. ARGUEDAS (SBN 87787)
   TED W. CASSMAN (SBN 98932)
   ARGUEDAS, CASSMAN & HEADLEY, LLP
6  803 Hearst Avenue
   Berkeley, CA 94710
7  Telephone: (510) 845-3000
   Facsimile: (510) 845-3003
8
9  DENNIS P. RIORDAN (SBN 69320)
   DONALD M. HORGAN (SBN 121547)
   TED SAMPSELL JONES (MINN BN 034302X )
10 RIORDAN & HORGAN
   523 Octavia Street
11 San Francisco, CA 94102
   Telephone: (415) 431-3472
12 Facsimile: (415) 552-2703
13 Attorneys for Defendant
   BARRY LAMAR BONDS
14

15                    **UNITED STATES DISTRICT COURT**

16                 **NORTHERN DISTRICT OF CALIFORNIA**

17                     **SAN FRANCISCO DIVISION**

18  UNITED STATES OF AMERICA,              ) Case No. CR 07 0732 SI
19                                         )
                                           ) **DEFENDANT'S MOTIONS FOR**
20                        Plaintiff,       ) **JUDGMENT OF ACQUITTAL AND/OR**
                                           ) **A NEW TRIAL ON COUNT FIVE**
21       vs.                               ) **(Fed. R. Crim. P. 29 and 33)**
                                           )
22  BARRY LAMAR BONDS,                     )
                                           ) Date:  TBA
23                        Defendant.       ) Time:  TBA
                                           ) Judge: The Honorable Susan Illston
24  ─────────────────────────────────────  )

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    The Basis of the Count Five Conviction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    The Immunity Agreement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    Mr. Bonds's Grand Jury Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      D.    The Government's Argument at Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     MR. BONDS IS ENTITLED UNDER RULE 29 TO ACQUITTAL ON
       THE COUNT FIVE OBSTRUCTION OF JUSTICE CHARGE BECAUSE
       TRUTHFUL STATEMENTS CANNOT CONSTITUTE OBSTRUCTION. . . . . . . . . 6

      A.    The Rule 29 Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    Mr. Bonds's Truthful Statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.    "Truthful But Evasive" Statements Under Section 1503. . . . . . . . . . . . . . . . . . . 7

      D.    The Fair Warning Requirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.    BECAUSE MR. BONDS REPEATEDLY ANSWERED THE SAME
       QUESTION, HIS ANCILLARY STATEMENTS CANNOT BE DEEMED
       CRIMINAL BECAUSE THEY WERE NOT EVASIVE, WERE IMMATERIAL,
       AND WERE NOT INTENTIONALLY OBSTRUCTIVE. . . . . . . . . . . . . . . . . . . . . . . . 12

      A.    The Defendant's Answers Must Be Viewed in Their Totality. . . . . . . . . . . . . . 12

      B.    The Constitutional Ban on Constructive Amendments. . . . . . . . . . . . . . . . . . . . 13

      C.    A Prosecutor's Obligation to Clarify Unresponsive Answers. . . . . . . . . . . . . . 13

      D.    Materiality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      E.    Mens Rea. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      F.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.   ALTERNATIVELY, MR. BONDS IS ENTITLED UNDER RULE 33 TO
       A NEW TRIAL ON COUNT FIVE BOTH BECAUSE THE WEIGHT
       OF THE EVIDENCE DOES NOT SUPPORT THE CHARGE AND
       BECAUSE HIS CONVICTION ON THAT COUNT IS MARRED BY
       LEGAL ERROR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

      A.    The Rule 33 Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

-i-

**Table of Contents continued**

B.   A New Trial in Conjunction with, or in Alternative to, Acquittal. . . . . . . . . . . . 18

C.   The Prosecution's Misleading Closing Argument. . . . . . . . . . . . . . . . . . . . . . . . 20

D.   Jury Instructions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

E.   Deficient Indictment and Notice of Charges. . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.   CONVICTION ON COUNT FIVE BASED ON THE TRUTHFUL
       "CELEBRITY CHILD" STATEMENT IS BARRED BY MR. BOND'S
       IMMUNITY GRANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A.   The Interaction Between Section 1503 and the
       Fifth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

B.   The Prosecution's Explanation of the Immunity Contract. . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES

*Brown v. United States*,
245 F.2d 549 (8th Cir. 1957) ........................................................... 13

*Fotie v. United States*,
137 F.2d 831 (8th Cir. 1943) ........................................................... 13

*Jackson v. Virginia*,
443 U.S. 307 (1979) ........................................................................... 7

*Meyers v. United States*,
84 U.S. App. D.C. 101 (1948) ......................................................... 14

*Rodgers v. Tennessee*,
532 U.S. 451 (2001) ......................................................................... 12

*Scharff v. Raytheon Co. Short Term Disability Plan*,
581 F.3d 899 (9th Cir. 2009) ........................................................... 25

*Skilling v. United States*,
130 S. Ct. 2896 (2009) ..................................................................... 24

*Stirone v. United States*,
361 U.S. 212 (1960) ........................................................... 13, 14, 22

*United States v. Aguilar*,
515 U.S. 593 (1995) ........................................................... 11, 12, 15

*United States v. Alston*,
974 F.2d 1206 (9th Cir. 1992) ................................................... 17, 18

*United States v. Banks*,
942 F.2d 1576 (11th Cir. 1991) ....................................................... 10

*United States v. Charles*,
313 F.3d 1278 (11th Cir. 2002) ......................................................... 7

*United States v. Cohn*,
452 F.2d 881 (2d Cir. 1972) ............................................................... 9

*United States v. DiPentino*,
242 F.3d 1090 (9th Cir. 2001) ......................................................... 23

*United States v. Geller*,
154 F. Supp. 727 (S.D.N.Y 1957) ................................................... 13

*United States v. Gonzalez-Mares*,
752 F.2d 1485 (9th Cir. 1985) ......................................................... 10

1    **Table of Authorities continued**

2    *United States v. Goyal*,
3    629 F.3d 912 (9th Cir. 2010)                                      2, 25

4    *United States v. Griffin*,
     589 F.2d 200 (5th Cir.1979)                                  10, 11, 15

5    *United States v. Irving*,
6    593 F. Supp. 2d 140 (D.D.C. 2009)                                    11

7    *United States v. Kellington*,
     217 F.3d 1084 (9th Cir. 2000)                                    17, 18

8    *United States v. Kosmel*,
9    272 F.3d 501 (7th Cir. 2001)                                         11

10   *United States v. Langella*,
     776 F.2d 1078 (2d Cir. 1985)                                        10

11   *United States v. Lanier*,
12   520 U.S. 259 (1997)                                                 11

13   *United States v. Mendoza*,
     78 F.3d 460 (9th Cir. 1996)                                         25

14   *United States v. Miller*,
15   527 F.3d 54 (3d Cir. 2008)                                          11

16   *United States v. Milwitt*,
     475 F.3d 1150 (9th Cir. 2007)                                        7

17   *United States v. Nevil*s,
18   598 F.3d 1158 (9th Cir. 2010)                                        7

19   *United States v. Ramos-Rascon*,
     8 F.3d 709 (9th Cir. 1993)                                          15

20   *United States v. Remini*,
21   967 F.2d 754 (2d Cir. 1992)                                         10

22   *United States v. Sainz*,
     772 F.2d 559 (9th Cir. 1985)                                        14

23   *United States v. Santos*,
24   553 U.S. 507 (2009)                                                 11

25   *United States v. Serafina*,
     167 F.3d 812 (3d Cir. 1999)                                         13

26

27

28                                      -iv-

**Table of Authorities continued**

*United States v. Shipsey*,
190 F.3d 1081 (9th Cir. 1999)                              14, 22, 23

*United States v. Thomas*,
612 F.3d 1107 (9th Cir. 2010)                                 23, 24

*United States v. Thoreen*,
653 F.2d 1332 (9th Cir. 1981)                                     10

*United States v. Van Liew*,
321 F.2d 674 (5th Cir. 1963)                              7, 13, 19

**STATUTES**

18 U.S.C. § 1503                                              2, 12

18 U.S.C. § 1623(a)                                              3

18 U.S.C. § 6002                                                24

Fed. R. Crim. P. 29                                              1

Fed. R. Crim. P. 29(d)(1)                                       18

Fed. R. Crim. P. 33                                              1

**INTRODUCTION**

Defendant Barry Bonds moves under Rule 29 of the Federal Rules of Criminal Procedure for a verdict of acquittal on the Count Five charge of obstructing the due administration of justice pursuant to 18 U.S.C. § 1503.  Alternatively, he moves under Rule 33 to vacate the jury's guilty verdict on Count Five and for an order granting a new trial on the obstruction charge.

Unable to prove Mr. Bonds guilty of lying under oath to the grand jury, the government has convicted him of felony prolixity.  The government concedes that "Statement C," the "celebrity child" comment which resulted in the Count Five conviction, was not false.  Rather, the government contends Statement C was unresponsive, and thus was evasive and illegal.  But unauthorized rambling is not a federal crime. There is no legal authority for the proposition that truthful but "evasive" statements, much less a single statement, can constitute obstruction of justice.  In the history of § 1503 prosecutions, no one has been convicted based on facts remotely resembling those upon which the obstruction verdict rests.  To allow Mr. Bonds's conviction to stand would impermissibly expand § 1503, and also violate the terms of his immunity agreement.

Moreover, even if some "truthful but evasive" statements could constitute obstruction, Mr. Bonds's "celebrity child" statement was not evasive.  The "celebrity child" statement was, at worst, a digression — a bit of meandering from the question that was *explicitly encouraged by the questioner*.  Elsewhere in his testimony, Mr. Bonds directly answered the same question repeatedly.  A grand jury witness cannot be convicted of obstruction based on his alleged evasion of a prosecutorial inquiry when, during the course of his testimony, that witness answered, *to the government's expressed satisfaction,* the questions put to him on the very subject of that inquiry.  The claim that a witness commits a federal crime when he temporarily gives a truthful but unresponsive answer, before directly and fully answering the same question moments later, is utterly without support in the case law.  Were that position correct, virtually any witness in a federal trial, including the government's key witnesses in this case, could be branded a felon.  Furthermore, because the obstruction offense here specifically charged Mr. Bonds with being evasive in the *"totality"* of his grand jury testimony, he cannot be convicted of evading a

question which the totality of that testimony establishes he answered multiple times.

In prosecuting on the Count Five "celebrity child" statement, "federal prosecutors overreached by trying to stretch criminal law beyond its proper bounds." *United States v. Goyal*, 629 F.3d 912, 922 (9th Cir. 2010) (Kozinski, C.J., concurring)  Mr. Bonds must therefore be acquitted of Count Five.  Alternatively, the Court must exercise its broad discretionary power under Rule 33 to vacate the verdict and order a new trial.

## STATEMENT OF FACTS

### A.    The Basis of the Count Five Conviction

Count Five of the Third Superseding Indictment alleged that the defendant obstructed justice by giving the grand jury material "testimony that was intentionally evasive, false, and misleading."  Count Five rested in part on Counts One to Four, which alleged false statements in violation of 18 U.S.C. § 1623(a).  But the indictment also asserted that Count Five was "not limited to the false statements" charged in Counts One to Four, and the government contended that Mr. Bonds also could be convicted on Count Five based on portions of his grand jury testimony not alleged with specificity in the indictment.  The statements charged in Counts One to Four were designated 1 to 4 in the government's proposed jury instruction on Count Five; seven other statements not specified in the indictment were designated by the letters A to G.

Mr. Bonds repeatedly objected to permitting any of the lettered statements to serve as a predicate for a conviction on Count Five.  In response to defense objections to the submission of the lettered statements, AUSA Nedrow requested that the Court submit these statements "to the jury for its consideration" because "if things proceed beyond there after the jury renders its verdict, post-trial motions would also provide an opportunity to look...at what's been in the record, and we'd be able to brief it more exhaustively in that regard." (RT 1889.)  In a subsequent pleading, the government assured that if it were "concerned about the evidence supporting the government's allegations, the government can make the requisite showing in post-trial pleadings, if necessary." (Dkt. No. 354 at 3.)  Thus, the prosecution itself implicitly conceded that if the jury were to convict on the basis of the lettered statements, post-trial scrutiny would be appropriate.

Ultimately, the Court sustained the defense objections to three of the seven lettered statements. The jurors were thus instructed that a Count Five conviction could rest on their unanimous agreement that one of the remaining four lettered statements constituted obstruction. In convicting Mr. Bonds on Count Five and that count alone, the jury marked Statement C — the "celebrity child" statement — as the sole basis for the conviction.

### B.   The Immunity Agreement

The first order of business for the government when Mr. Bonds entered the grand jury room on December 4, 2003, was to explain to the witness his Fifth Amendment rights, the court order under which he was being compelled to testify, and the immunity he would receive in return for his compelled testimony. That order provided that "Barry Bonds, as soon as he may be called, shall testify under oath and provide other information, including documents in this case, and in any further ancillary proceedings." (Trial Exh. 37 at 8.) The order further provided that "the testimony and other information compelled from Barry Bonds pursuant to this order...may not be used against him in any criminal case except a case for perjury, false declaration, or otherwise failing to comply with this order." (*Id*. at 8-9.)

AUSA Nedrow, wanting to "make sure that [the] exception [to the immunity grant] is clear," stated that "if it were to be the case that you were untruthful today or false — and I have no reason to think that you would be today, but I say this to every witness that comes in here — if there were a prosecution for perjury, false declaration, false statements or otherwise failing to comply with this cord [sic], that would be a circumstance where these statements could be used against you." (*Id*. at 10.) Mr. Bonds stated that he understood that explanation. (*Id*.)

### C.   Mr. Bonds's Grand Jury Testimony

Statement C, drawn from page 42 of Mr. Bonds's grand jury transcript reads as follows, with the underlined statement constituting the allegedly evasive statement that obstructed justice:

Q.   Did Greg ever give you anything that required a syringe to inject yourself with?

A.   I've only had one doctor touch me. And that's my only personal doctor. Greg, like I said, we don't get into each others' personal lives. We're friends, but I don't we don't sit around and talk baseball,

1

2

3

        because he knows I don't want -- don't come to my house talking baseball. If you want to come to my house and talk about fishing, some other stuff, we'll be good friends. You come around talking about baseball, you go on. I don't talk about his business. You know what I mean?

4

    Q.     Right.

5

6

7

    A.     <u>That's what keeps our friendship. You know, I am sorry, but that -- you know, that -- I was a celebrity child, not just in baseball by my own instincts. I became a celebrity child with a famous father. I just don't get into other people's business because of my father's situation, you see.</u>

8

(Trial Exh. 37 at 42:5-23.)

9

10

        Mr. Bonds then continued his answer following Mr. Nedrow's "right" in a segment not included in Section C as read to the jury in the Count Five instruction:

11

12

13

14

15

        So, I don't know -- I don't know -- I've been married to a woman five years, known her 17 years, and I don't even know what's in her purse. I have never looked in it in my lifetime. You know, I just -- I don't do that, I just don't do it, and you know, learned from my father and throughout his career, you don't get in no one's business, you can't -- there's nothing they can say, you can't say nothing about them. Just leave it alone. You want to keep your friendship, keep your friendship.

16

(*Id*. at 42:24-43:8.)

17

18

        The very next question put by AUSA Nedrow dealt with precisely the same subject matter as his previous one, and Mr. Bonds answered it directly on page 43, lines 9 to 13:

19

20

    Q.     Did either Mr. Anderson or Mr. Conte ever give you a liquid that they told you to inject into yourself to help you with this recovery type stuff, did that ever happen?

21

    A.     No.

22

23

24

        Mr. Nadel then took over the questioning and changed the subject slightly to that of whether *Mr. Anderson* had ever injected Mr. Bonds with anything. Mr. Bonds answered that inquiry directly on page 44, lines 4 to 17:

25

26

    Q.     So no one else other than perhaps the team doctor and your personal physician has ever injected anything in to you or taken anything out?

27

28

    A.     Well, there's other doctors from surgeries. I can answer that question, if you're getting technical like that. Sure, there are other people that have stuck needles in me and have drawn out I've had a

1    bunch of surgeries, yes.

2    Q.    So --

3    A.    So sorry.

4    Q.    – the team physician, when you've had surgery, and your own
           personal physician. But no other individuals like Mr. Anderson or
5          any associates of his?

6    A.    No, no.

7    Nedrow then returned on page 44 to the subject begun on page 42, asking again whether

8    Mr. Bonds had ever received anything from Anderson that Mr. Bonds had *injected himself with*:

9    Q.    Just to follow-up before I go on to my other thing, have you ever
           yourself injected yourself with anything that Greg Anderson gave
10         you?

11   A.    I'm not that talented, no.

12   (*Id*. at 44:19-22.)  Mr. Nedrow stated "Okay," and moved on to another subject.

13   Of great importance, on page 48, while noting that the subject had already been

14   "covered," Mr. Nedrow returned to the very same question asked on page 42 as to whether

15   Anderson gave Mr. Bonds a substance to be injected:

16   Q.    And, again, I guess we've covered this, but – and did he ever give
           you anything that he told you had to be taken with a needle or
17         syringe?

18   A.    Greg wouldn't do that. He knows I'm against that stuff. So, he
           would never come up to me -- he would never jeopardize our
19         friendship like that.

20   Q.    Okay. So, just so I'm clear, the answer is no to that, he never gave
           you anything like that?
21

22   A.    Right.

23   (*Id*. at 48:17-49:5.)

24   Finally, a variant of the same question was asked by Mr. Nedrow on page 51:

25   Q.    Did Greg ever give you testosterone in injectable form for you to take?

26   A.    No.

27   (*Id*. at 51:7 to 9.)

28

**Defendant's Motion For Judgment of**
**Acquittal Or New Trial On Count Five**          5

### D.      The Government's Argument at Trial

The government did not argue that Mr. Bonds's "celebrity child" statement was false. Rather, it argued that the statement was evasive and misleading.  It made these arguments to both this Court and the jury.  In response to the objections raised during the instructional colloquy on April 6, the government conceded that the lettered statements, including that about being a "celebrity child," were not false, with AUSA Nedrow noting "we would have charged him with a 1623 count if we were saying these were all false." (RT 1888.)

In closing argument to the jury, the government argued that the lettered statements, including Statement C,  demonstrated that Mr. Bonds "sought again and again to avoid answering questions about injections ... *by providing not outright false testimony*, but basically misleading statements in connection to the questions he was asked." (RT 1933.)  The heart of the government's comments in closing argument specifically directed at Statement C was as follows:

> He goes on in this answer to talk about not knowing what's in wife's purse, what's it like to be a celebrity child, I don't know get into other people's because of my father's  situation.
>
> The defendant is refusing to answer the question because it's a question about being injected because the defendant cannot tell the truth of being injected because as you all know he's been injected by Anderson on a number of occasions, that's why this answer goes off into cosmos, *he cannot answer*.....

(RT 1980)

In short, the government argued that Mr. Bonds's answer, though literally truthful, was obstructive because it failed to answer the question asked by prosecutors.

### ARGUMENT

### I.      MR. BONDS IS ENTITLED UNDER RULE 29 TO ACQUITTAL ON THE COUNT FIVE OBSTRUCTION OF JUSTICE CHARGE BECAUSE TRUTHFUL STATEMENTS CANNOT CONSTITUTE OBSTRUCTION

### A.      The Rule 29 Standard

Rule 29 mandates acquittal where evidence is insufficient to sustain a conviction. Evidence is insufficient to sustain a conviction if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of

the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324 (1979); *see also United States v. Nevil*s, 598 F.3d 1158, 1164-1167 (9th Cir. 2010) (en banc); *United States v. Milwitt*, 475 F.3d 1150, 1152 (9th Cir. 2007). As *Jackson* held, a mere modicum of evidence cannot support conviction beyond a reasonable doubt. 443 U.S. at 320. Where the government relies on circumstantial evidence, the inferences drawn therefrom must be reasonable and not speculative. *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002). *See also Van Liew v. United States*, 321 F.2d 674, 678 (5th Cir. 1963) (In acquitting on perjury charge, Fifth Circuit holds that the "Government's proof must be by substantial evidence excluding to the satisfaction of the jury every other hypothesis than that the Defendant in testifying as he did purposefully misstated the fact knowing it to be false and untrue. [citations omitted]")

### B.    Mr. Bonds's Truthful Statements

Statement C, the "celebrity child" statement, was truthful. During the April 6 jury instruction conference, the government conceded that it was truthful (RT 1888), as it did during closing argument. (RT 1933.) The only question is whether such a truthful statement can constitute obstruction of justice under § 1503. The government's only possible argument to maintain the Count Five conviction is that the "celebrity child" statement was obstructive because it did not respond to the question asked. For reasons that will be described in Section II in more detail, Statement C cannot be considered "evasive," much less "material," because Mr. Bonds repeatedly answered the same question elsewhere. That aside, as a matter of law, truthful statements cannot constitute obstruction of justice under § 1503.

### C.    "Truthful But Evasive" Statements Under Section 1503

At the April 6th instructional conference, the Court queried the government as to whether the terms "evasive, false, and misleading" had to appear in the conjunctive in the Count Five instruction because those terms were pled in the conjunctive in the indictment. (RT 1868.) AUSA Nedrow argued that the terms should be stated in the disjunctive in the instruction. He relied on the rule in drug cases that different means of committing drug offenses, each sufficient to constitute the charged crime — e.g., possession and distribution of drugs — can be instructed

on in the disjunctive even though pled in the conjunctive. (*Id.*: *see also* Dkt. 354, Govt's Response to Def. Obj. to Count Five Jury Instruction: the phrase "evasive, false, *and* misleading" in indictment should be converted to "evasive, false, *or* misleading" in instructions)  In other words, the government's position was that truthful but evasive statements would support a conviction.

In opposing the use of the disjunctive in the Count Five instruction, Bonds's counsel stated that his objection did not rest on the conjunctive pleading in the indictment. (RT 1889: "I don't quarrel with the general proposition that in an indictment, as a general rule, things which can be charged as -- stated in the conjunctive can be submitted to the jury in the disjunctive. Possession, or use or sale.")  Counsel focused on the *substance* of section 1503: "[W]hen you're dealing with this particular statute, false, evasive and misleading, my -- I think that all of that terminology is needed to support an obstruction count." (*Id.*)  Noting the government claimed that a truthful statement constituted obstruction if merely "off the mark," defense counsel warned "it would really endanger any conviction if the three terms were not given in conjunction." (RT 1990.) This Court now must again confront that issue of the proper scope of section 1503.

Neither the Ninth Circuit nor any other circuit has ever held that truthful but evasive statements constitute obstruction.  Indeed, as far as Mr. Bonds is aware, no defendant has ever been successfully prosecuted under § 1503 on the basis of truthful statements.  The prosecution's theory of this case rests on an entirely novel and unjustified expansion of § 1503.

First, the government's expansive theory of § 1503 cannot be justified as a matter of statutory interpretation.  The terms "evasive" and "misleading" are not in the text,[1] and Congress

---

[1] Section 1503(a) reads in relevant part:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official

has never given any indication it intended § 1503 to reach "truthful but evasive" statements.

Second, the government's expansive theory cannot be justified by case law.  No circuit court has held that "truthful but evasive" statements constitute obstruction.  Put differently, no circuit court has held that the phrase "evasive, false, *and* misleading" may be rendered in the disjunctive rather than the conjunctive.  The disjunctive phrase "evasive, false, *or* misleading" cannot be found in any published federal case discussing § 1503.

The government's theory of obstruction relied in part on the *Cohn-Griffin* doctrine, derived from two seminal cases, *United States v. Cohn*, 452 F.2d 881 (2d Cir. 1972), and *United States v. Griffin*, 589 F.2d 200 (5th Cir.1979).  But both cases involved *false* statements — neither supports the claim that "truthful but evasive" statements constitute obstruction.

In *Cohn*, the defendant denied in his grand jury testimony that he could recall anything about an envelope containing certain writing; he was then charged with obstruction of justice based on those denials.  At trial, a government witness testified that the envelope had been given to him by Cohn as part of a bribery scheme, and that the writing on the envelope came from Cohn's wife.  Cohn argued on appeal that, even if he had "concealed information relevant and germane to the Grand Jury's functions" by his false claim of a loss of memory, he could not be convicted of obstruction of justice under § 1503 because that statute applies only to "situations where the defendant interferes with other witnesses or documentary evidence." 452 F.2d at 884. In affirming, the Second Circuit noted that "The blatantly evasive witness achieves this [obstructive] effect as surely by erecting a screen of feigned forgetfulness as one who burns files or induces a potential witness to absent himself." *Id*. at 884.  But although characterized as "evasive," the statement in question in *Cohn* was also plainly false — a false denial of memory.

Likewise, in *Griffin*, the defendant argued that § 1503 applied only to efforts by one party to interfere with the function of another party—witness, juror, or court official—and thus his

duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

perjury before a grand jury could not constitute an obstruction of justice.  The Fifth Circuit ruled:

> By falsely denying knowledge of events and individuals when questioned about them, Griffin hindered the grand jury's attempts to gather evidence of loansharking activities as effectively as if he refused to answer the questions at all. *Whether Griffin's testimony is described in the indictment as "evasive" because he deliberately concealed knowledge or "false" because he blocked the flow of truthful information is immaterial.* In either event, the government must, and in this case did, charge in the indictment and prove at trial that the testimony had the effect of impeding justice.

589 F.2d at 204 (emphasis added).  Like *Cohn*, *Griffin* endorsed the idea that evasive testimony could be obstructive, but it did so only in circumstances where the testimony was also false.

The Ninth Circuit has occasionally cited *Cohn* and *Griffin* with approval.  The Ninth Circuit has held, for example, that "[a] witness's sham denial of knowledge . . . obstructs justice." *United States v. Thoreen*, 653 F.2d 1332, 1341 (9th Cir. 1981) (citing *Griffin*).  Other courts have held that concealing evidence by false denials of memory constitutes obstruction. *See, e.g.*, *United States v. Banks*, 942 F.2d 1576, 1578 (11th Cir. 1991); *United States v. Langella*, 776 F.2d 1078, 1081 (2d Cir. 1985); *cf. United States v. Gonzalez-Mares*, 752 F.2d 1485, 1491 (9th Cir. 1985).  But neither the Ninth Circuit nor any other court has ever expanded the *Cohn-Griffin* doctrine to a case like this involving (supposedly) evasive but truthful answers.

In arguing for its "truthful but evasive" theory, the government also relied on *United States v. Remini*, 967 F.2d 754, 755 (2d Cir. 1992).  It implied that *Remini* endorsed the idea that "literally true but evasive and misleading testimony would support prosecution . . . for obstruction of justice." (*See* Dkt. 354 at 2.)  But the government misrepresented the holding of *Remini*.  In *Remini*, the Second Circuit simply described that, in a related but ancillary proceeding, a district court had held that true but evasive testimony could constitute obstruction.  But the Second Circuit did not remotely endorse such a theory, and there is no suggestion that anyone was ever prosecuted based on it.  (The defendant in *Remini* refused to testify and was prosecuted for *contempt*, not obstruction.)  Moreover, no court — no circuit court, and no district court, either in the Second Circuit or elsewhere — has ever cited *Remini* for the proposition that "literally true but evasive" testimony constitutes obstruction.  The government's reliance on

1   *Remini* demonstrates the weakness of its legal position.

2        In the related vein of law regarding obstruction enhancements under USSG § 3C1.1,

3   courts have required clear evidence of falsehood and deception.  *See, e.g.*, *United States v.*

4   *Kosmel*, 272 F.3d 501, 510 (7th Cir. 2001); *United States v. Irving*, 593 F. Supp. 2d 140 (D.D.C.

5   2009).  In fact, courts have applied *Bronston* principles to § 3C1.1 and held that unresponsive

6   answers do not constitute obstruction.  *United States v. Miller*, 527 F.3d 54, 78-79 (3d Cir. 2008).

7        Ultimately, there is simply no legal authority for the proposition that "truthful but

8   evasive" statements constitute obstruction of justice under 18 U.S.C. § 1503.

9        **D.   The Fair Warning Requirement**

10        The fair warning requirement, which is derived from the Ex Post Facto Clause and the

11   Due Process Clause, forbids retroactive expansion of the criminal law.  Under the fair warning

12   requirement, the law upon which any criminal prosecution is based must be clear at the time of

13   the defendant's conduct.  "The touchstone is whether the statute, either standing alone or as

14   construed, made it reasonably clear at the relevant time that the defendant's conduct was

15   criminal."  *United States v. Lanier*, 520 U.S. 259, 267 (1997).  As the Court  elaborated:

16                Under a long line of our decisions, the tie must go to the defendant.
17                The rule of lenity requires ambiguous criminal laws to be
                 interpreted in favor of the defendants subjected to them.  This
18                venerable rule ...vindicates the fundamental principle that no
                 citizen should be held accountable for a violation of a statute
19                whose commands are uncertain, or subjected to punishment that is
                 not clearly prescribed.

20   *United States v. Santos*, 553 U.S. 507, 514 (2009) (citations omitted).  At a minimum, the text of

21   § 1503 is ambiguous as to whether truthful testimony can constitute obstruction.  The rule of

22   lenity thus commands a narrow construction.

23        Indeed, the Supreme Court has itself already specified that § 1503 should be interpreted

24   narrowly.  In *United States v. Aguilar*, 515 U.S. 593 (1995), the Court construed the "omnibus

25   clause" of § 1503 — the very same provision under which Mr. Bonds was prosecuted.  The Court

26   noted that the omnibus clause serves as a "catchall," and that it is "far more general in scope"

27   than the other provisions of the statute. *Id.* at 599.  The Court thus warned that in light of the

28

1  vague and general language of the omnibus clause, it must be interpreted narrowly in accordance

2  with the fair warning requirement. *See id*. at 600-01.

3       Given the lack of authority supporting the government's expansive reading, and in light

4  of *Aguilar*, a narrow construction is required.  Neither the text of § 1503 nor the cases

5  interpreting the statute made clear at the time of Mr. Bonds's testimony that "truthful but

6  evasive" answers constituted a crime.  Congress could amend § 1503 to cover such conduct, but

7  not retroactively.  Likewise, were a court to expand § 1503 to cover such conduct, it could only

8  do so prospectively.  Applying an expanded statute to Mr. Bonds's testimony would be

9  "unexpected and indefensible by reference to the law which had been expressed prior to the

10  conduct in issue." *Rodgers v. Tennessee*, 532 U.S. 451, 456 (2001).  Because "truthful but

11  evasive" answers did not constitute obstruction in 2003, this Court must acquit on Count Five.

12  **II.  BECAUSE MR. BONDS REPEATEDLY ANSWERED THE SAME QUESTION,**
13      **HIS ANCILLARY STATEMENTS CANNOT BE DEEMED CRIMINAL**
    **BECAUSE THEY WERE NOT EVASIVE, WERE IMMATERIAL, AND WERE**
14      **NOT INTENTIONALLY OBSTRUCTIVE**

15       Even if truthful answers by a grand jury witness could constitute obstruction of justice in

16  some cases, Mr. Bonds's truthful answers could not constitute obstruction in *this* case because

17  Mr. Bonds repeatedly answered the same question to which his "evasive" rambling comments

18  responded.  As described in detail above, Mr. Bonds was asked whether Greg Anderson gave him

19  anything that required a syringe to inject himself.  He initially responded that "I've only had one

20  doctor touch me. And that's my only personal doctor."  After that response, which implied a

21  negative answer, Mr. Bonds continued to talk about extraneous matters—including those

22  contained in Statement C.  Not only did the questioner not interrupt Mr. Bonds, but AUSA

23  Nedrow encouraged him to keep talking by saying "Right."  The government then followed up by

24  asking the same or related question four times, and Mr. Bonds answered directly each time.  As a

25  matter of law, given these facts, Mr. Bonds cannot be deemed criminally obstructive for five

26  reasons.

27      **A.  The Defendant's Answers Must Be Viewed in Their Totality**

28      In the context of a perjury charge, federal courts have held that a single answer to a

question, even if false, cannot be held to constitute perjury if the context of a witness's sworn

testimony makes evident that he was not attempting to be intentionally untruthful.

> [T]he seriousness of the crime of perjury and the fact that it turns finally on the subjective knowledge and purpose of the swearer require that *the Government not be allowed to predicate its case upon the answer to a single question which in and of itself may be false, but which is not shown to be false when read in conjunction with testimony immediately preceding and following the alleged perjured statement.* The oft-quoted rule is applicable here. 'A charge of perjury may not be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows.' *Fotie v. United States*, 8 Cir., 1943, 137 F.2d 831, 842; *Brown v. United States*, 8 Cir., 1957, 245 F.2d 549, 556; *United States v. Geller, S.D.N.Y., 1957, 154 F.Supp. 727, 730, n. 3*; cf. *Meyers v. United States, 1948, 84 U.S.App.D.C. 101, 171 F.2d 800, 806, 11 A.L.R.2d 1.*

*Van Liew*, 321 F.2d at 678 (emphasis added); *accord, United States v. Serafina*, 167 F.3d 812,

820-821 (3d Cir. 1999)

What is true of a charge of perjury based on a single allegedly false statement is even

more true of a claim that a single answer of a witness was evasive and thus obstructive. Placed

in the context of the totality of Mr. Bonds's grand jury testimony, a claim that he evaded

answering the question whether he had been given any substance to inject is preposterous.

AUSA Nedrow himself stated that the subject of whether Mr. Anderson had given Mr. Bonds

"anything that he told you had to be taken with a needle or syringe" had been "covered," but "just

[to be] clear," asked the question a final time: "he never gave you anything like that?" Mr. Bonds

answered: "Right." (Trial Exh. 37 at 48:17-49:5.) There was no crime of obstruction by evasion

in Statement C.

## B.      The Constitutional Ban on Constructive Amendments

Prior to trial, when the defendant challenged what was then Count Eleven in the Second

Superceding Indictment but was Count Five in the Third, the government responded to the

challenge with the statement "that the factual basis in support of Count Eleven consists of the

*totality* of Bond's intentionally evasive, false and misleading conduct during her [sic] testimony."

(Dkt. 203 [Opp., at 7]; emphasis added.) Given the manner in which Count Five was charged,

permitting the obstruction conviction to rest on anything other than the totality of Mr. Bonds testimony would constitute a constructive amendment of the indictment. *Stirone v. United States*, 361 U.S. 212 (1960) (Under Fifth Amendment's Grand Jury Clause, a defendant may not be convicted on a factual theory of liability different than one on which he was indicted, even if that uncharged theory is supported by the evidence. *See also United States v. Shipsey*, 190 F.3d 1081, 1086-87 (9th Cir. 1999) (applying *Stirone* in reversing defendant's theft convictions.)

### C.    A Prosecutor's Obligation to Clarify Unresponsive Answers

Given the nature of the questioning, Mr. Bonds's "celebrity child" statement was not evasive.  When Mr. Bonds began to stray off topic, the prosecutor could have very easily stopped him and asked a pointed question to return Mr. Bonds to the matters at hand.  Instead the prosecutor's "right" actually *encouraged* the witness to keep talking.

As the Supreme Court held in its seminal decision in *United States v. Bronston*, "[t]he burden is on the questioner to pin the witness down to the specific object to the questioner's inquiry."  409 U.S. 352 (1973).  "[T]he examiner's awareness of unresponsiveness should lead him to press another question or reframe his initial question with greater precision." *Id.* at 362; *accord United States v. Sainz*, 772 F.2d 559, 564 (9th Cir. 1985).  If AUSA Nedrow was of the opinion that the answer given by Mr. Bonds was insufficiently responsive, he could have, and indeed under *Bronston* should have, pressed the point or reframed his question more precisely.

For example, only a page later in the grand jury transcript, Mr. Nadel asked Mr. Bonds to return to an earlier question of Mr. Nedrow's, because Nadel wasn't "sure if I heard the answer to the question." (Trial Ex. 37, at 43:16 to 21.)  But instead of Mr. Nedrow similarly reframing his inquiry at the point he interrupted Mr. Bonds during Statement C,  he commented: "Right."  An interrogator's intoning "right" in the midst of an interrogatee's answer is an invitation to keep talking, and Mr. Bonds, sometimes a rambler, did just that with the extraneous "celebrity child" statement.  Rambling at prosecutorial invitation is not a federal crime.

### D.    Materiality

A single unresponsive answer, *coupled with repeated responsive answers to the same*

*question*, cannot be material and cannot have any tendency to obstruct the grand jury. Obstructive statements must have some tendency to influence the grand jury. As the Supreme Court put it, obstructive statements must be "likely to obstruct justice." *Aguilar*, 515 U.S. at 601. In *Aguilar*, for example, the Supreme Court held that a false statement to a government investigator was not a crime under § 1503. While the defendant knew the grand jury proceedings were pending, he did not know the investigator would testify, so he could not have known his false statement was "likely to obstruct justice." 515 U.S. at 601. He was therefore acquitted.

When a witness fails to answer a question at one point in a proceeding, but repeatedly answers the same question immediately thereafter in the same proceeding, his initial failure cannot be "likely to obstruct justice." The single unresponsive answer cannot impede the grand jury, and it cannot "block[] the flow of truthful information." *Griffin*, 589 F.2d at 204. While the "celebrity child" statement on page 42 did not answer whether Mr. Bonds had received anything to inject from Anderson, his answers on page 43, 44, 48, and 51 certainly did so. No rational argument can be made that the grand jury was influenced, or reasonably could have been influenced, on the subject of injectable substances by Mr. Bonds's discussion of his pedigree. The "celebrity child" statement was not material. Mr. Bonds must be acquitted of obstruction.

### E. Mens Rea

A truthful but unresponsive answer, coupled with responsive answers to the same question, cannot prove that a defendant *intentionally* obstructed justice. This Court correctly instructed the jury that the Count Five obstruction charge contained a multifaceted specific intent element — viz., that Mr. Bonds had to *knowingly* give material testimony that he *intended* to be evasive, false, or misleading for the *purpose* of impeding the grand jury. (RT 1927.) To avoid acquittal on Count Five, the government must demonstrate that the only reasonable inference from the present record is that Mr. Bonds intended to deny the grand jury information as to whether he had been given an injectable substance by Greg Anderson. If it is far more reasonable to infer from the evidence that Mr. Bonds did not intend to impede and obstruct, the evidence is insufficient to support conviction. *See, e.g.*, *United States v. Ramos-Rascon*, 8 F.3d 709, 710 (9th

Cir. 1993) (reversing a conviction because charged conduct was also consistent with innocence).

The only reasonable inferences concerning Mr. Bonds's mental state that can be drawn from this record are consistent with innocence, not guilt.  Mr. Bonds could not have *known* that Statement C was material to the grand jury's decision making for the simple reason that it was not material.  Mr. Bonds could not have *intentionally* evaded questioning on the subject of injectable substances because he repeatedly answered such questions.  He could not have acted with the *purpose* of impeding the grand jury by denying it information on whether he had received injectable substances from Greg Anderson because he provided multiple answers to that question.  The government failed to prove beyond a reasonable doubt that, in making the "celebrity child" statement, Mr. Bonds acted with the requisite mens rea.

### F.   Conclusion

After being asked a question about whether Greg Anderson provided injectable substances, Mr. Bonds answered, then rambled, then answered the same question when it was asked again at least four separate times.  The government was unable to prove that any of the direct answers were false.  It convicted him instead of being temporarily unresponsive when he strayed off topic and discussed his life as a "celebrity child."

It did so on the theory that his unresponsive answer in Statement C, though truthful, was evasive and therefore obstructive.  But even to the extent that "evasive" can be equated with "obstructive" under § 1503, "evasive" has never been equated with "temporarily unresponsive." And a single unresponsive answer, coupled with responsive answers to the same question, cannot be criminally evasive, cannot be material, and cannot be intentionally obstructive.

The claim that a single non-responsive answer by Mr. Bonds could constitute obstruction of justice is rendered absurd by the performance of the prosecution's own witnesses.  During Agent Novitzky's cross-examination, he was asked what he had shown Steve Hoskins at a meeting.  Instead of answering that he had shown him a transcript, Novitzy went into a lengthy, obviously prejudicial description of the contents of the Anderson tape, an exhibit that the Court had yet to deem admissible.  The Court struck Novitzky's answer as nonresponsive and

instructed him to answer only the question that had been asked. (RT 301:24-303:6) On multiple occasions during the cross-examination of Ms. Bell, the Court struck Bell's answers as nonresponsive and/or directed her to answer the questions she had been asked. (RT 857:19-858:9; RT 948:3-19; RT 991:10-19.) Nonetheless, when asked whether she had spoken about Mr. Bonds in a vulgar way in her media interviews, most particularly with Howard Stern, Bell simply refused to answer the question, despite it being asked at least four times. (RT 967:7-25.)

Other examples of unresponsive, evasive answers by the government's witnesses could be easily multiplied. If Ms. Bell and Mr. Novitzky were not guilty of obstruction during their trial testimony, Mr. Bonds certainly was not when he spoke of being a "celebrity's child." Even drawing all reasonable inferences in the government's favor, and even assuming that truthful statements can be obstructive in some cases, Statement C cannot support a § 1503 conviction beyond a reasonable doubt. The Court must acquit on Count Five.

## III. ALTERNATIVELY, MR. BONDS IS ENTITLED UNDER RULE 33 TO A NEW TRIAL ON COUNT FIVE BOTH BECAUSE THE WEIGHT OF THE EVIDENCE DOES NOT SUPPORT THE CHARGE AND BECAUSE HIS CONVICTION ON THAT COUNT IS MARRED BY LEGAL ERROR

### A. The Rule 33 Standard

Under Rule 33, which governs motions for a new trial, a district court possesses a power to scrutinize and set aside a jury verdict much broader than the Rule 29 power to grant a motion for judgment of acquittal. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). Unlike under Rule 29, a trial court deciding a Rule 33 motion is not "obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *Kellington*, 217 F.3d at 1097. If the court determines after weighing the evidence that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, and submit the issues for determination by another jury." *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

A "court of appeals will only rarely reverse a district judge's grant of a defendant's motion for a new trial, and then only in egregious cases." *United States v. Alston*, 974 F.2d 1206,

1211-1211 (9th Cir. 1992). In *Kellington*, the court affirmed the district court's grant of a new trial, deferring to the trial judge's "evaluation of the testimony at trial (especially [the defendant's])" and its determination that "there was no direct evidence of [the defendant's] mental state." 217 F.3d at 1099-1101. Similarly, in *Alston*, the Ninth Circuit noted that "[a]lthough the jury apparently chose to believe the government's version of events, a reasonable trier of fact could have come out the other way" in light of the fact that "[t]he [defendants] offered alternative explanations for almost everything the government presented." 974 F.2d at 1212-13. The Court deferred to the district judge's "determin[ation] that the evidence weighed heavily against the verdict" with regard to the requisite mens rea for the charged conspiracy. *Id.* at 1213.

If a district court grants a judgment of acquittal, it *"must* also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29(d)(1) (emphasis added).

**B.      A New Trial in Conjunction with, or in Alternative to, Acquittal**

When a trial judge concludes that the evidence was insufficient to convict as a matter of law, that same judge must necessarily conclude that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." Mr. Bonds submits that the arguments above concerning the insufficiency of the evidence, by establishing that there was no substantial evidence to support the theory that Statement C obstructed justice, thereby also demonstrated that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." Thus the Court should enter a conditional order for a new trial under Rule 33 as well as a directed verdict under Rule 29.

But this Court need not find the evidence insufficient as a matter of law to order a new trial. A Rule 29 acquittal requires a finding that, even viewing the evidence most favorably to the government, no reasonable jury could find that the defendant committed the obstruction offense charged in Count Five. Under Rule 33, however, this Court is not "obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *Kellington*, 217 F.3d at 1097. Under Rule 29,

1   if there is a reasonable explanation of the evidence consistent with guilt, a directed verdict must

2   be denied, but under Rule 33, if there is a reasonable explanation of the evidence consistent with

3   innocence, a new trial may be judicially ordered, although "the jury apparently chose to believe

4   the government's version of events."  *Alston*, 974 F.2d at 1212-13.

5        A full exercise of the Rule 33 independent power to "weigh the evidence" is particularly

6   called for in this case.  Despite the fact that twenty-five witnesses testified at trial, the jury rested

7   the Count Five conviction on none of their testimony.  Indeed, the Count Five charge did not

8   require any of the fact-finding and credibility determinations that are the unique province of the

9   jury.  There can be no dispute that Mr. Bonds said what he did on pages 42, 43, 44, 48, and 51 of

10  the grand jury transcript.  That cold transcript is as available to this Court as it was to the jury.

11  The pivotal question is whether the words on those pages prove beyond a reasonable doubt that a

12  federal felony was committed.  Mr. Bonds's guilt or innocence thus turns not on issues of

13  historical fact but on mixed questions of fact and law that the Court is well-positioned to decide.

14       In so deciding, the Court will rely on the relevant case law on obstruction of justice,

15  including the *Cohn* and *Griffin* precedents discussed above.  It will be aware that under *Van Liew*

16  and related precedents, a single statement taken out of context cannot be the basis for a perjury or

17  obstruction conviction.  The Court will factor into its consideration the prosecutorial obligations

18  spelled out in *Bronston*.  The jury had none of this case law before it when it considered the

19  obstruction charge.  For that reason, this case calls out for an independent and searching judicial

20  review of the strength of the evidence and of the fairness of the verdict, rather than deference to a

21  jury verdict that returned on less than a full understanding of the controlling case law.

22        Whatever the jury's reasoning, this Court is aware that Mr. Bonds answered several

23  times the question he is charged with evading, and that the grand jury received the information

24  concerning injectable substances that it was seeking.  The Court is aware that it was the duty of

25  the government to ask follow-up questions if it was unsatisfied with Mr. Bonds's answer on page

26  42 of his grand jury transcript, that the government eventually did so, and that the follow-up

27  questions were answered directly.  And the Court is aware that there is no support in the case law

28

for an obstruction conviction based on a single true, but purportedly evasive, answer to a question asked of a grand jury witness, particularly when that same question is later answered directly by the witness.  The evidence thus "preponderates ... heavily against the verdict."

There are additional, important reasons why this Court must conclude that, the jury's verdict on Statement C and Count Five notwithstanding, "a serious miscarriage of justice may have occurred," and the Court must act to prevent that injustice.

### C.      The Prosecution's Misleading Closing Argument

What the government said in its closing argument about Statement C was demonstrably untrue.  AUSA Nedrow stated as to Count Five in general that Mr. Bonds: "sought again and again to avoid answering questions about injections ... by providing not outright false testimony, but basically misleading statements in connection to the questions he was asked." (RT 1933.)  As to Statement C in particular, AUSA Nedrow continued:  "The defendant is refusing to answer the question because it's a question about being injected because the defendant cannot tell the truth of being injected because as you all know he's been injected by Anderson on a number of occasions, that's why this answer goes off into cosmos, *he cannot answer*. . . ." (RT 1980)

But Mr. Bonds did not seek "again and again to avoid answering questions about injections;'' rather, he answered such questions "again and again."  During his grand jury appearance, Mr. Bonds was not "refusing to answer the question because it's a question about being injected," rather, he answered the multiple questions about being injected.  If Statement C went "off into the cosmos" on page 42,  it was not because Mr. Bonds could not answer the questions posed to him about injections; he did so on pages 43, 44, 48, and 51.  The government may not have liked his answers, but Mr. Bonds *did* answer the questions put to him about injectable steroids, and the government conceded as much in its comments before the grand jury.

The Court need not reach the issue of whether the prosecution's closing argument in itself constituted error requiring a new trial.  At a minimum, the misleading nature of the argument must leave this Court without confidence that the Count Five conviction is just and reliable, requiring that it be set aside and a new trial ordered.

### D.    Jury Instructions

Based on the argument and case law contained in the Rule 29 section of this motion, Mr. Bonds submits that the jury should have been instructed, as he requested, that to convict of obstruction on the basis of Statement C, jurors had to find that statement to have been "evasive, false, *and* misleading." That instructional omission in itself would justify a new trial.

Furthermore, in convicting on Count Five, the jury must have considered the "celebrity's child" comment in isolation, rather than in conjunction with the answers on injectable substances provided immediately thereafter. That misstep would have been avoided by the defense instruction directing that a conviction for obstruction required a finding that the defendant had given the grand jury "material testimony that, *when considered in its totality*, was intentionally evasive, false, and misleading." (RT 1864-67.) The defense requested the "totality" language precisely to ensure that the jury did not convict based on an isolated answer if the totality of Mr. Bond's testimony demonstrated that he was not intending to be obstructive. (RT 1865.)

The "totality" phrase deleted from the defense instruction on Count Five, which the government had previously agreed correctly characterized the obstruction charge (Dkt. 203 [Opp., at 7]; emphasis added.) would have informed the jury that a single evasive statement was not sufficient to convict, thereby requiring jurors to consider the other responses given by Mr. Bonds on the subject of injectable substances. The failure to instruct on the "totality" concept likely led to a flawed verdict, yet another reason the Count Five conviction should be set aside.

### E.    Deficient Indictment and Notice of Charges

The unusual, if not bizarre, verdict returned by the jury again presents a question of first impression addressed by Mr. Bonds in his pretrial motions: Can a defendant be convicted on a charge of obstructing a grand jury based on a purportedly "evasive, false, and misleading statement" that is not specified in the indictment which contains the obstruction charge?

Mr. Bonds raised the following questions pretrial and does so again. How can an accused defend against the allegation that gave "intentionally evasive, false, and misleading" testimony when his indictment gives no notice of what "testimony" an obstruction charge puts in issue?

1   How can a defendant's right to be convicted based only on a factual theory approved by the grand

2   jury be honored when an indictment contains no indication of what testimony is referred to by the

3   "not limited" language of an obstruction charge?  *See Stirone, supra*.  (The government may not

4   rely on one factual theory to obtain an indictment and another to obtain a conviction).

5           As the Court is well aware the issue was raised, but not resolved, in the Tammy Thomas

6   prosecution.  *United States v. Thomas*, 612 F.3d 1107 (9th Cir. 2010).  The Ninth Circuit

7   correctly noted that, as demonstrated in the jury's special verdicts, Ms. Thomas was convicted on

8   the Count Six obstruction charge based on two statements — those contained in Counts One and

9   Three — that were clearly detailed in her indictment.  That being so, the "not limited' language

10  and the statements not specified in the indictment simply did not affect Thomas's conviction.

11  Given the jury's reliance on the statements delineated in Counts One and Three, there could be

12  no claim that Thomas was denied fair notice of the charge on which she was convicted on Count

13  Six, or that she was convicted on a theory not approved by the Grand Jury.  The Circuit noted:

14              the instructions on this count expressly stated that Thomas would
15              be guilty of obstruction of justice if "*one or more* of the following
                statements obstructed, influenced or impeded the due
16              administration of justice," and cautioned the jurors that "[a]ll of
                you must agree as to which *statement or statements* so qualify."
17              (Emphasis added.) The jury ultimately unanimously concluded that
                the statements contained in count one and count three both
18              "obstructed, influenced or impeded the due administration of
                justice, or were made for the purpose of obstructing, influencing or
19              impeding the due administration of justice," thus supporting a
                guilty verdict on the obstruction of justice count even if the district
20              court erred in allowing the jury to consider statement A and
                statement B. The jury's unanimous findings that statements one
21              and three independently supported its obstruction of justice verdict
                render any error on the instructions ultimately submitted to the jury
22              harmless.

23  *Id*. at 1131.  Had Mr. Bonds been convicted on Count Five based on a statement charged in

24  Counts One, Two, or Three, "the jury's unanimous findings that statements one, [two, or] three

25  independently supported its obstruction of justice verdict [would] render any error on the

26  instructions ultimately submitted to the jury harmless."  But that is not what happened here.

27          At the instructional conference, defense counsel challenged the inclusion of Statement C

28  in the Count Five instruction on the ground that the government did not ask the grand jury to rely

**Defendant's Motion For Judgment of**
**Acquittal Or New Trial On Count Five**                    22

on that statement to indict Mr. Bonds. *See United States v. Shipsey*, 190 F.3d 1081, 1086-87 (9th Cir. 1999) (relying on the accused's constitutional right to a grand jury indictment, the Circuit reversed, recognizing that "there [was] a real likelihood that the jury actually convicted Shipsey for a crime for which the grand jury did not indict him"); *United States v. DiPentino*, 242 F.3d 1090 (9th Cir. 2001) (conviction reversed because the district court permitted the defendants to be convicted of violating a work practice standard different from the one the indictment charged). At that time, the Court pointed out that the defense could not say that with any certainty, because the government had not disclosed to the defense that portion of the grand jury transcript that contained its argument in support of the indictment. (RT 1910-11.)  The Court can grant Mr. Bonds a new trial without reaching the issues concerning the sufficiency of the Count Five charge.  If it reaches those issues, however, their consideration will require disclosure of the relevant portions of the grand jury transcript, which Mr. Bonds now expressly requests.

## IV.   MR.  BONDS'  IMMUNITY GRANT BARS HIS CONVICTION

For the reasons given above, Mr. Bonds's Count Five conviction cannot be reconciled with § 1503.  The government will ask this Court to stretch § 1503 so that it covers truthful but temporarily unresponsive statements.  Even if the government's argument could be justified as a matter of statutory interpretation—which it cannot—it would be inconsistent with the immunity given Mr. Bonds and with the Fifth Amendment's proscription of compelled self-incrimination.

### A.     The Interaction Between Section 1503 and the Fifth Amendment

The judicial immunity order compelled Mr. Bonds to testify.  It stated that his grand jury testimony "may not be used against him in any criminal case except a prosecution for perjury, false declaration, or otherwise failing to comply with this order." (Exh. 37, at 8-9).  That language is based on the language of the federal immunity statute, 18 U.S.C. § 6002.  In *United States v. Thomas*, 612 F.3d 1107 (9th Cir. 2010), the Ninth Circuit held that in general, obstructive conduct, as defined by under § 1503, can constitute "otherwise failing to comply" with a standard immunity order under § 6002.  It thus rejected Thomas's argument that § 1503 charges could *never* be brought based on immunized testimony.  *Id.*

But the Ninth Circuit in *Thomas* did not thereby hold that § 1503 charges *always* comport

with an immunity order.  The scope of immunity varies in different cases, and different cases of obstruction are based on different legal theories.  Critically, as the Ninth Circuit recognized in *Thomas*, the scope of § 6002 — and the permitted circumstances under which immunized testimony may be prosecuted — is governed in part by the Constitution.  It therefore cannot be the case that Congress has limitless power to expand § 1503 in order to restrict the scope of immunity.  Still less can it be the case that *courts* have the power to expand § 1503, thereby expanding the § 6002 and restricting the scope of the Self-Incrimination Clause.  To say that truthful but unresponsive answers come within the catchall "otherwise failing to comply" exception would substantially restrict the scope of a § 6002 immunity grant, and thus of the Self-Incrimination Clause itself.  The canon of constitutional avoidance thus counsels against such an interpretation of both the § 1503 omnibus clause and the § 6002 exceptions clause. *See Skilling v. United States*, 130 S. Ct. 2896, 2929-30 (2009) (applying a narrowing construction to the honest services statute in order to avoid constitutional difficulties).

The Ninth Circuit held that Thomas's § 1503 charge fit within the § 6002 exceptions clause.  But Thomas's § 1503 charge — like all previously approved § 1503 charges—was based on statements that were *false*.  Mr. Bonds's § 1503 charge was based on a statement that was factually *true*.  Such statements cannot constitutionally fit within the § 6002 exceptions clause, and they did not fit within the immunity order granted in this case.

### B.     The Prosecution's Explanation of the Immunity Contract

At the time he gave his testimony, Mr. Bonds could not possibly have known that true but unresponsive statements could have constituted "otherwise failing to comply with" his immunity order.  That is especially true in light of the prosecutors' explanation of the order to Mr. Bonds.  At the outset of the grand jury proceeding, AUSA Nedrow sought to clarify the scope of the exceptions to the immunity order.  In "mak[ing] sure that exception is clear," Nedrow explained that "*if it were to be the case that you were untruthful today or false*...that would be a circumstance where these statements could be used against you." (Exh. 37 at 10.)  Nowhere in the judicial order or Mr. Nedrow's explanation of it was there a hint that a prosecution could be based on a truthful, albeit unresponsive, answer to a question posed to Mr. Bonds.

The Count Five conviction violates two fundamental principles. First, immunity agreements are contractual in nature and are interpreted "using ordinary contract principles." *United States v. Mendoza*, 78 F.3d 460, 464 (9th Cir. 1996). Any ambiguities in a contract must be construed strictly against the drafter. *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 905 (9th Cir. 2009). Thus, if the government intended that it could prosecute Mr. Bonds based on true but unresponsive statements, it had to clarify that in the immunity agreement or its explanation thereof. Instead, its explanation *narrowed* the scope of exceptions.

Second, under the Constitution's fair warning requirement, the law upon which any criminal prosecution is based must be clear at the time of the defendant's conduct. Mr. Bonds was given fair warning that any *false* statement he made to the grand jury would not be protected by his grant of immunity. He certainly was *not* given fair warning — not by the text of section 1503, not by the case law interpreting the obstruction statute, not by the judicial immunity order, and not by AUSA Nedrow's explanation of the order — that he could be convicted of a felony for a single, truthful unresponsive answer to a question, or for directly answering on pages 43 of his testimony a query first put to him a page earlier. Instead the explanation and the *Bronston* decision put him on notice to the contrary: only a false statement would subject him to criminal liability. Given his immunity agreement, as that agreement was explained to him by prosecutors, Mr. Bonds cannot be prosecuted for giving temporarily unresponsive answers to posed questions.

## CONCLUSION

"In the end, the government couldn't prove that the defendant engaged in any criminal conduct." *Goyal*, 629 F.3d at 922 (Kozinski, C.J., concurring). For the reasons stated, Mr. Bonds should be acquitted on Count Five. Alternatively, the Court should order a new trial.

Dated: June 15, 2011                          Respectfully submitted,

                                              ALLEN RUBY (SKADDEN, ARPS, ET AL.)
                                              ARGUEDAS, CASSMAN & HEADLEY, LLP
                                              RIORDAN & HORGAN
                                              By     /s/ Dennis P. Riordan

                                              By     /s/   Donald M. Horgan

                                              By     /s/   Ted Sampsell Jones

                                              Counsel for Defendant Bonds