ALLEN RUBY (SBN 47109)
SKADDEN, ARPS, MEAGHER & FLOM, LLP
525 University Avenue, Ste. 1100
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

CRISTINA C. ARGUEDAS (SBN 87787)
TED W. CASSMAN (SBN 98932)
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

DENNIS P. RIORDAN (SBN 69320)
DONALD M. HORGAN (SBN 121547)
TED SAMPSELL JONES (MINN BN 034302X )
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472
Facsimile: (415) 552-2703

Attorneys for Defendant
BARRY LAMAR BONDS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>        vs.<br><br>BARRY LAMAR BONDS,<br><br>                        Defendant. | Case No. CR 07 0732 SI<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTIONS FOR JUDGMENT OF ACQUITTAL AND/OR A NEW TRIAL ON COUNT FIVE**<br>**(Fed. R. Crim. P. 29 and 33)**<br><br>Date:   August 26, 2011<br>Time:   11:00 a.m.<br>Judge:  The Honorable Susan Illston |

**Defendant's Reply in Support of Motions
For Judgment of Acquittal Or New Trial**

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO
SUPPORT A CONVICTION FOR OBSTRUCTION OF JUSTICE,
REQUIRING ACQUITTAL UNDER RULE 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Government Fails To Confront the Relevant Evidence
on Count Five.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The Count Five Conviction Cannot Be Upheld on a "Delay"
or "Endeavor" Theory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    An Unresponsive or "Evasive" Statement Which Is Neither
Misleading Nor Untruthful Cannot Be the Basis for an
Obstruction Conviction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. THE GOVERNMENT'S NEWLY MINTED THEORIES OF LIABILITY
ARE BOTH CONSTITUTIONALLY BARRED AND UNSUPPORTED
BY THE EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    The Theory That Statement C Was False. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.    Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.    Falsity.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    The Theory that Mr. Bonds's Denials of Self-Injection Were False. . . . . . . . 10

III. MR. BONDS IS ENTITLED TO A NEW TRIAL UNDER RULE 33. . . . . . . . . . . . . . 11

    A.    Jury Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.    Conjunctive versus Disjunctive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.    Totality.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        3.    Deficient Indictment and Notice of Charges. . . . . . . . . . . . . . . . . . . 12

IV. THE OBSTRUCTION CONVICTION IS BARRED BY MR. BONDS'S
IMMUNITY AGREEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

*Chiarella v. United States*,
445 U.S. 222 (1980) ... 8

*McCormick v. United States*,
500 U.S. 257 (1991) ... 8

*Russell v. United States*,
369 U.S. 749 (1962) ... 13

*Stirone v. United States*,
361 U.S. 212 (1960) ... 12

*United States v. Bronston*,
409 U.S. 352 (1973) ... 4

*United States v. Browning*,
630 F.2d 694 (10th Cir. 1980) ... 5

*United States v. Griffin*,
589 F.2d 200 (5th Cir. 1979) ... 3

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000) ... 11

*United States v. Ladum*,
141 F.3d 1328 (9th Cir. 1998) ... 7

*United States v. Lench*,
806 F.2d 1443 (9th Cir. 1986) ... 7

*United States v. Miller*,
822 F.2d 828 (9th Cir. 1987) ... 9

*United States v. Safavian*,
528 F.3d 957 (D.C. Cir. 2008) ... 5, 9

*United States v. Sainz*,
772 F.2d 559 (9th Cir. 1985) ... 4

*United States v. Serafina*,
167 F.3d 812 (3d Cir. 1999) ... 3

*United States v. Thomas*,
612 F.3d 1107 (9th Cir. 2010) ... 14

*United States v. Washington Water Power Co.*,
793 F.2d 1079 (9th Cir. 1986) ... 4

**Table of Authorities continued**

*United States v. Wright*,
625 F.3d 583 (9th Cir. 2010) ......... 9

*Van Liew v. United States*,
321 F.2d 674 (5th Cir. 1963) ......... 3

**INTRODUCTION**

The government's theory of the case, alleged in its four indictments and presented to the jury at trial, was that Mr. Bonds knowingly took PEDs and then lied about it to the grand jury. The bulk of the government's argument in its Opposition seems aimed at convincing this Court that Mr. Bonds *really did* take PEDs, and that he *really did* lie about it — and thus that he must be punished for something. But the government was unable to prove its theory as to any of the four counts charging Mr. Bonds with lying. Instead, it obtained a conviction on the obscure and tangential theory that Mr. Bonds obstructed justice when, in response to the question of whether Greg Anderson ever gave him something to inject himself with, he gave the fairly unintelligible and rambling answer contained in Statement C.

The government cannot seriously argue that speaking unintelligibly, or rambling, is a federal offense. And its Opposition essentially concedes as a legal matter, as it must, that there is no authority supporting the claim that truthful but evasive statements constitute obstruction of justice. A grand jury witness cannot be guilty of obstruction if, after a truthful albeit unresponsive answer to a question, that witness immediately thereafter directly answers the same question multiple times to the satisfaction of prosecutors, as was true of Mr. Bonds.

Faced with that reality, the government avoids the evidence. While the government's Opposition contains a lengthy recitation of the trial testimony (Opp. at 5-15), almost all of it irrelevant to the Count Five obstruction count, its brief fails to discuss the most important evidence bearing on the Count Five charge: the multiple direct answers given by Mr. Bonds to the question he is accused of evading, as well as the government's expressed satisfaction with those answers.

Unable to convincingly defend the theory of guilt it advanced at trial, the Opposition also invents two new ones. As to its first revisionist theory of liability, at trial the government conceded before this Court and the jury that Statement C was truthful, but argued that it was evasive and therefore illegal. Now, after trial, the government reverses course and contends that Statement C was actually false. The new theory is that Mr. Bonds lied when he said the following five words: "That's what keeps our friendship." (Opp. at 14.)

But a conviction can never be upheld on an uncharged theory neither presented to the district court at the instructional conference, nor so much as suggested to the jury in closing argument, especially when the government presented no evidence to support it. At the end of trial, no member of the jury had any idea what did or did not "keep the friendship" between Mr. Bonds and Greg Anderson. The government's attempt to rescue the conviction on Count Five by reverting to a previously disavowed theory of guilt utterly fails.

The government's second newly born theory claims that, although Mr. Bonds indisputably answered the question of whether Greg Anderson had given him anything to inject himself with, those direct answers themselves obstructed justice because they were false. (Opp. at 16.) Again, despite amending the initial indictment in this case three times, the government never alleged that Mr. Bonds spoke falsely in denying that he had ever been given anything with which to inject himself; the government presented no evidence on that issue; nor was the jury asked to decide that question. The government's newly announced reliance on such a spurious theory of guilt speaks loudly to the invalidity of the Count Five conviction.

Finally, the nature of the government's Opposition itself provides strong support for Mr. Bonds's Rule 33 claims that: (1) Mr. Bonds was entitled to the defense's proposed "totality" and "conjunctive" instructions; (2) Mr. Bonds was deprived of his Sixth Amendment right to be tried only on a theory of liability expressly charged in the indictment, which Statement C was not; and (3) Mr. Bonds's immunity agreement barred conviction based on a truthful statement. Whether under Rule 29 or 33, the Count Five conviction must be vacated.

**I. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION FOR OBSTRUCTION OF JUSTICE, REQUIRING ACQUITTAL UNDER RULE 29**

**A. The Government Fails To Confront the Relevant Evidence on Count Five**

The key issue raised by Mr. Bonds's Rule 29 motion is whether, under controlling legal principles, a reasonable jury could find beyond a reasonable doubt that Mr. Bonds obstructed justice by "evading" a question on page 42 of the grand jury transcript which he answered directly not only on page 43 of the same transcript, but on pages 44 and 48 as well, to the

expressed satisfaction of the government prosecutors. A reader of the government's Opposition would be unaware that the trial record poses that issue, however, because the brief fails to disclose, much less discuss, the direct answers given by Mr. Bonds to the question of whether Greg Anderson gave him anything with which to inject himself. That glaring omission is a virtual concession that the evidence relevant to Count Five, if considered in its totality, cannot sustain the Count Five conviction.

**B. The Count Five Conviction Cannot Be Upheld on a "Delay" or "Endeavor" Theory**

The government cites *United States v. Griffin*, 589 F.2d 200, 204 (5th Cir. 1979), for the proposition that "justice may be impeded by '*delaying* the punishment of the guilty' (emphasis added)." (Opp. at 17.) But in *Griffin*, the defendant did not "delay" directly answering a question for a minute or two at most, as is true here; rather, he "falsely den[ied] knowledge of events and individuals when questioned about them." *Id.* at 204. It is absurd to cite *Griffin* as support for the government's "delay" theory in this case.

The principle which does bear strongly on the question before the Court is that holding that "[a] charge of perjury may not be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows." *Van Liew v. United States*, 321 F.2d 674, 678 (5th Cir. 1963); *accord United States v. Serafina*, 167 F.3d 812, 820-21 (3d Cir. 1999). That case law makes apparent that a witness cannot be convicted for an unresponsive answer to a question that he soon thereafter answers directly. Although prominently cited in Mr. Bonds's post-trial motions at pages 12-13, the government ignores *Van Liew* and *Serafina* in its Opposition.

The government also argues that Mr. Bonds can be branded a felon because his "diversion tactic" required the prosecutors to repeat the question about self-injection.

> The diversion tactic succeeded to some degree, as the prosecutor responded, "Right." *Id.* AUSA Nedrow was ready to move on to other areas of questioning without having ever received an answer to the injection question. Exh. 37 at 43. The defendant only answered the injection question when AUSA Nadel interceded and refocused the discussion on injections. Exh. 37 at 43-44.

3

(Opp. at 14.)[1]

To begin, the government baldly misrepresents the record. Immediately after Mr. Bonds completed his "Statement C" answer, it was AUSA Nedrow, not Nadal, who repeated the self-injection question, which Mr. Bonds answered directly and unequivocally. (GJRT, at 43: "Q. Did either Mr. Anderson or Mr. Conte ever give you a liquid that they told you to inject into yourself to help you with this recovery type stuff, did that ever happen? A. No.") Only then did AUSA Nadal interject a question about whether anyone other than his doctor had injected Mr. Bonds. (*Id.*)

More importantly, the Opposition simply refuses to address the teaching of *United States v. Bronston* 409 U.S. 352 (1973), to the effect that "[t]he burden is on the questioner to pin the witness down to the specific object to the questioner's inquiry." "[T]he examiner's awareness of unresponsiveness should lead him to press another question or reframe his initial question with greater precision." *Id.* at 362; *accord United States v. Sainz*, 772 F.2d 559, 564 (9th Cir. 1985). When a witness gives a non-responsive answer to a question and a page later the prosecutor repeats the question and receives a direct answer, the law has been followed, not broken. That is what occurred here.

The government also cites *United States v. Washington Water Power Co.*, 793 F.2d 1079, 1085 (9th Cir. 1986) for the proposition that : "'[I]t is not necessary to show that a defendant actually obstructed justice . . . the statutory focus is on an endeavor.'" *Id.* (quoting *United States v. Murray*, 751 F.2d 1528, 1534 (9th Cir. 1985)). *Water Power* affirmed the obstruction conviction of a defendant who, when told that a prospective witness would offer damning trial testimony against the defendant, arranged for that witness to be transferred to Mexico where he was not subject to subpoena. The contention that *Water Power* in any way supports the proposition that a witness "endeavors" to commit obstruction of justice by answering a question on page 43 of a transcript rather than on page 42 is fatuous.

---

[1] *See also* Opp. at 16: "[E]ven if the defendant were ultimately cornered into giving a truthful answer, that would still not necessarily undermine his conviction for obstruction of justice."

### C. An Unresponsive or "Evasive" Statement Which Is Neither Misleading Nor Untruthful Cannot Be the Basis for an Obstruction Conviction

In his motion, Mr. Bonds noted that in the history of § 1503 prosecutions, no defendant has ever been convicted on the basis of a truthful answer, even if unresponsive. The government essentially concedes the point, given that it fails to cite a single case, from any court ever, in which a defendant was convicted of obstruction on the basis of a *truthful* answer. The only legal authority the government can muster are out-of-circuit cases which state, in dicta, that literal truth "may not be a complete defense" to an obstruction charge. (Opp. at 4 (citing *United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008) and *United States v. Browning*, 630 F.2d 694 (10th Cir. 1980)).) These authorities cannot save the government's conviction on Count Five.

The defendant in *Safavian* worked for the GSA. He was convicted of obstruction for lying about a golfing trip he took with infamous lobbyist Jack Abramoff. In response to an inquiry from the GSA Inspector General, Safavian claimed that at the time of the trip, Abramoff had no business before the GSA. 528 F.3d at 960-62. In reality, Abramoff had inquired about some GSA-owned properties and GSA contracts. Safavian was thus convicted *for lying* when he stated that Abramhoff had no pending business with the GSA.

Safavian, however, contended that he was being truthful, because when he stated that Abramoff had "no business" with the GSA, "he intended the meaning common to government contracts professionals — that is, someone who does not have a contract with GSA is not doing business or working with GSA." *Id*. at 966. He sought to present an expert who would testify what the common meaning of "doing business" was for government contractors, but the district court excluded the expert's testimony. The D.C. Circuit held that the district court's ruling constituted reversible error.

In rejecting the government's arguments regarding harmlessness, the D.C. Circuit discussed literal truth:

> Even a literally true statement may be misleading and so, unlike § 1001(a)(1), literal truth may not be a complete defense to obstruction. *See United States v. Browning*, 630 F.2d 694, 699

> (10th Cir. 1980). Even so, if Safavian's expert witness had convinced the jury of the truth of his statements, this would have gone at least part of the way to convincing the jury that he had not obstructed justice.

*Id*. at 968.

Thus, the *Safavian* dicta sensibly suggested that literally true statements could be obstructive when they are also misleading. Assume a witness were asked whether he was in a bank when it was robbed at 10 a.m., and he replied he was at home at 10 o'clock. That answer might be literally true if the witness was home at 10 p.m., but still obstructive if the witness intended to mislead the grand jury into concluding he was not in the bank at 10 a.m. But if the witness answered "you know, that question reminds me that my kid was born at 10 a.m.," that utterly irrelevant answer in itself could not possibly mislead the jury into concluding anything about the subject under investigation. If, as occurred here, the witness then answered directly the relevant inquiry, the comments about his offspring's birthday could not constitute obstruction by evasion. At most, *Safavian* holds that a literally true answer which by its misleading nature could lead a questioner to draw an erroneous conclusion about a subject under investigation might be obstructive. That was not the case here.

*Browning* is likewise no help to the government. The defendant there was the president of Browning Firearms. He imported guns from a French manufacturer, but in order to avoid import taxes, he made "side payments" to the manufacturer and lied about the price paid on customs forms. When the customs department investigated, Browning instructed the manufacturer not to reveal the side payments: "this should not be admitted because side payments would amount to fraud." *Id*. at 698. Browning argued that his various statements were literally true, because he was discussing cost rather than price, and because he simply failed to disclose side payments (rather than affirmatively lying about them). The Tenth Circuit rejected that argument, in part because it found that Browning had affirmatively lied: "Literal truth is not the test here, and, in any event, Browning did not . . . tell the literal truth." *Id*. at 699. Thus, Browning was not convicted based on a true statement.

The government also cites *United States v. Lench*, 806 F.2d 1443, 1444-46 (9th Cir. 1986), for the proposition that there "is sufficient evidence to uphold the jury's verdict on Count Five." (Opp. at 16.) But *Lench* had hidden documents to avoid a subpoena and then caused two blatantly false statements to be submitted to a grand jury.

*Safavian*, *Browning*, and *Lench* involved convictions based on *false* statements. None of the three supports the government's claim that a defendant can be convicted for "parrying and justifying." (Opp. at 14.) None supports the claim that a defendant can be convicted for giving truthful but temporarily unresponsive statements.[2] None remotely supports the claim that a defendant can be convicted for giving an initial rambling response to a question, when he subsequently answers the same question directly. Indeed, the fact that the government must rely on cases like *Safavian*, *Browning*, and *Lench* as its primary authority demonstrates the weakness of its legal position. Acquittal is in order.

**II. THE GOVERNMENT'S NEWLY MINTED THEORIES OF LIABILITY ARE BOTH CONSTITUTIONALLY BARRED AND UNSUPPORTED BY THE EVIDENCE**

    **A.    The Theory That Statement C Was False**

        **1.    Waiver**

The theory argued by the government now — that Statement C was actually, literally false — was never argued at trial. At the instructional conference, when imploring the Court to be permitted to go to the jury on the "lettered" statement A, which, like C, had not been expressly alleged in the indictment, the government characterized the statement as "sort of kind of ... evasive or misleading," which was "exactly why it's not charged as an outright falsehood under the perjury statute… he's not directly answering the question, but he's still sort of responding in a manner which is obstructing the grand jury's process." (RT 1873.)

---

[2] The same is true for *United States v. Ladum*, 141 F.3d 1328, 1338 (9th Cir. 1998), which the government cites for the proposition that § 1503 does not require a false statement. (Opp. at 4.) *Ladum* involved tampering with a witness to withhold evidence, and had nothing to do with true or false statements.

As to another lettered statement, the government argued "it's evasive -- this obviously isn't, again, a perjury count. But that he's being evasive and misleading…there's a couple of examples we would argue with that in this series of evasive statements." (RT 1878-79.) As to a third, the government stated: "[I]t's an effort to evade the topics. The government was very clear what the purpose of the inquiry was at the beginning. He's kind of trying to evade having to answer direct questions." (RT 1882-83.) As to a fourth lettered statement, the government asserted what it would "be arguing is that he's purposefully, in the grand jury, acting in a manner to evade the questioner." (RT 1887.) In summing up its argument for submitting all of the lettered statements to the jury, the government declared: " [W]e would have charged him as a 1623 count if we were saying these are all false. These are in the evasive and/or misleading category." (RT 1588.)

During the instructional conference, the Court stressed to the government that in order to let a lettered statement go to the jury, it "need[ed] the facts that you're relying on to argue." (RT 1879.) The government neither suggested to the Court that Statement C was false nor cited to the facts supporting the proposition the statement was false rather than merely evasive. Nor did it argue to the jury in closing that any portion of Statement C was false, much less that Mr. Bonds lied when he said "That's what keeps our friendship." Rather, to the direct contrary, AUSA Nedrow stated as to Count Five that Mr. Bonds "obstructed justice…by citing his friendship with Greg Anderson *and by providing not outright false testimony*…." (RT 1933, emphasis added.)

A court "cannot affirm a criminal conviction on the basis of a theory not presented to the jury." *Chiarella v. United States*, 445 U.S. 222, 236 (1980). To do so would deny a defendant his constitutional right to a jury trial. *See McCormick v. United States*, 500 U.S. 257, 270 n.8 (1991) ("Appellate courts are not permitted to affirm convictions on any theory they please simply because the facts necessary to support the theory were presented to the jury."). Affirming on a different factual theory also denies a defendant his right to present evidence to

rebut that theory. *United States v. Miller*, 822 F.2d 828, 833 (9th Cir. 1987).[3] Thus, when the government explicitly disclaims one theory to the jury, it cannot later attempt to revive that theory in order to save a conviction. *United States v. Wright*, 625 F.3d 583, 594 n.8 (9th Cir. 2010).

The government tacitly admits that it never argued the falsity of Statement C to the jury, but claims that it simply "did not emphasize this evidence at trial" and "did not focus on falsity." (Opp. at 15 n.2.) But this is not a case where the government simply "failed to emphasize" one theory that was otherwise factually supported. Rather, this is a case where the government *explicitly disclaimed* that theory — both to this Court, and also to the jury. This Court should "reject the government's invitation to engage in revisionist history." *Wright*, 625 F.3d at 594 n.8.

### 2. Falsity

Waiver aside, the government simply never presented any evidence that Mr. Bonds lied when he said "That's what keeps our friendship." Even viewing the evidence in the light most favorable to the government, the conviction could not be affirmed on that ground because the government simply did not present any evidence about what factors did or did not maintain the friendship between Mr. Bonds and Mr. Anderson.

The government's attempt to marshal evidence to prove this "lie" is utterly unconvincing. First, the government spends pages attempting to win the other counts by

---

[3] In *Savafian*, discussed above, the dispute about the truth of Mr. Safavian's statements depended on ambiguity in the meaning of the word "business." The D.C. Circuit recognized that a conviction depended on a determination of what was "in the defendant's mind" when he used the word "business." 528 F.3d at 966. And it reversed the conviction because the district court refused to admit the defendant's evidence about what he meant by "business," and thus whether he was lying.

Likewise, in this case, if the government had contended that Mr. Bonds was lying when he said that he and Mr. Anderson did not get into each other's "business," and doing so was what "kept their friendship," both parties would have been entitled to present some evidence and argument about what Mr. Bonds meant by "business." But because the government never presented such a theory at trial, no such evidence and argument was presented.

9

recounting its evidence that Mr. Bonds knowingly took PEDs and lied about it. (Opp. at 5-12.) Then, when it finally comes to discussing the nature of the friendship between Mr. Bonds and Mr. Anderson, it relies solely on Mr. Bonds's own grand jury testimony. (Opp. at 12-13 (citing numerous portions of Exh. 37).) This is understandable, because the grand jury testimony was the only evidence in the record regarding the nature of the friendship, but it is also strange, since all of the cited portions actually *confirm* what Mr. Bonds said in Statement C.

**B.     The Theory that Mr. Bonds's Denials of Self-Injection Were False**

Although the Opposition steadfastly refuses to discuss the specific, direct answers given by Mr. Bonds to questions concerning self-injection, the government grudgingly concedes their existence in noting that "the defendant…was ultimately forced to give an answer to the injection question…" (Opp. at 16.) The government argues, however, that Statement C can still support an obstruction conviction, even though Mr. Bonds answered the self-injection question directly almost immediately thereafter, because "the evidence shows that the defendant lied when he stated that Anderson neither injected him nor provided him with any injectable substances." (Opp. at 16). Thus, the government now claims for the first time that Mr. Bonds's subsequent direct answers to the question of self-injection constituted obstruction because they were false.

For the reason stated above in Argument II A 1, the claim is plainly waived. The government elected not to allege in any of its four indictments the falsity of Mr. Bonds's multiple denials of receiving anything with which to inject himself. The reason it never advanced that theory is obvious: there is not a shred of evidence in the record that Greg Anderson ever gave the defendant anything with which Mr. Bonds was to inject himself, or that Mr. Bonds ever did so. The government' sole "injection" theory in the indictment and at trial was that Anderson injected Mr. Bonds with PEDs. The "Anderson injection" theory had nothing to do with Statement C or the question of self-injection, but was the subject of a separate false statement charge and a separate allegation within the obstruction charge. The jury refused to convict on either.

The government never argued to the jury that Mr. Bonds's answers to the questions concerning self-injection were false, and the Court's instructions never called on the jury to make such a determination. Again, as with the assertion that Statement C was false, the government's resort to a new theory of liability unsupported by the evidence on the self-injection denials is impermissible. The government's reliance on it impliedly concedes the invalidity of its trial theory on the Count Five conviction.

### III. MR. BONDS IS ENTITLED TO A NEW TRIAL UNDER RULE 33

Even were the Count Five evidence not insufficient as a matter of law, the obstruction conviction would have to survive this Court's independent review under Rule 33, where the Court "is *not* obliged to view the evidence in the light most favorable to the verdict, and . . . is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (emphasis added). The government does not defend the adequacy of its evidence under this far more favorable standard to Mr. Bonds. How could it, when this Court is well aware that virtually every trial witness is temporarily unresponsive at some point in his or her testimony? As Mr. Bonds's motion pointed out, that was certainly true of the government's witnesses in this case (Motion at 16-17), another fact the Opposition ignores.

In exercising its discretionary power to decide whether "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred" *Kellington*, 217 F.3d at 1097, the Court can consider any factor that may have led the jury to return an unreliable verdict, whether or not that factor would in itself qualify as reversible error on appeal, including flaws in the jury instructions and the charging process.

### A. Jury Instructions

#### 1. Conjunctive versus Disjunctive

In his opening motion, Mr. Bonds argued that the Court should have instructed on the elements of an obstructive statement in the conjunctive — that is, to constitute obstruction, a statement had to be "intentionally false, evasive, *and* misleading." (*See* Motion at 7-11.) The defense argument clearly stated that the "conjunctive" requirement did not result from the

1  manner on which Count Five was pled, but rather was a matter of substantive law: a truthful
2  statement that is "evasive" does not violate § 1503. As noted above, the government's failure
3  to locate a single case in which a truthful statement was held to constitute obstruction
4  underscores the validity of Mr. Bonds's reading of the law. The disjunctive instruction given
5  the jury permitted a conviction on a legally insufficient ground, requiring a new trial.

### 2. Totality

Although the Opposition refuses to admit the fact, prior to trial, the government informed the Court "that the factual basis in support of [the obstruction count] consists of the *totality* of Bond's intentionally evasive, false and misleading conduct during her [sic] testimony." (Dkt. 203 [opposition to motion to strike, at 7]; emphasis added.) The government can ignore its prior definition of the factual theory on which Count Five rests, but their doing so cannot relieve the prosecution of proving that theory. *Stirone v. United States*, 361 U.S. 212 (1960) (holding that a defendant may not be convicted on a factual theory of liability different than one on which he was indicted, even if that uncharged theory is supported by the evidence.) Furthermore, in its Opposition, the government asserts that this Court must base its decision on the validity of the obstruction conviction on the "totality" of the evidence. (Opp. at 5.) Under that "totality" rubric, the Opposition later discusses at length portions of the grand jury transcript that do not involve Statement C or Mr. Bonds's other answers to questions involving self-injection. (Opp. at 12.)

Yet Mr. Bonds was denied his proposed instruction that a conviction for obstruction required a finding that the defendant had given the grand jury "material testimony that, *when considered in its totality*, was intentionally evasive, false, and misleading." (RT 1864-67.) There is a great likelihood that the jury convicted Mr. Bonds based on an isolated answer and would not have done so if it had been instructed to consider the "totality" of his testimony concerning self-injection. A new trial is in order for that reason as well.

### 3. Deficient Indictment and Notice of Charges

The Court thus has before it a question of first impression: given that a conviction can be returned only on a theory of liability relied on by the jury to indict (*Stirone, supra*), can a

12

defendant be convicted of obstruction based on a statement — Statement C — not included within the indictment? As noted above, Mr. Bonds was indicted on Count Five on the theory that his testimony in its totality obstructed justice. The indictment revealed that the grand jury relied on four statements — those charged in Counts One to Four — in indicting on Count Five. It is impossible to determine from the indictment that any other portion of Mr. Bonds's grand jury testimony undergirded Count Five. The government, which alone has access to the argument it presented to the grand jury in seeking an indictment on Count Five, has notably refused to provide it to this court, despite the defense's demand that the relevant portion of the grand jury transcript be unsealed. (Motion at 23.)

As demonstrated above, following trial, the government has advanced two new theories as to the nature of the obstruction charge insofar as it concerns Statement C. Those shifts in theory make crystal clear that the government is seeking to convict Mr. Bonds "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell v. United States*, 369 U.S. 749, 770 (1962). As with the defective indictment in *Russell*, the indictment here, "[f]ar from informing [the defendant] of the nature of the accusation against him, [left] the prosecution free to roam at large – to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Id.* at 768. *Russell* requires that the Count Five conviction be vacated.

### IV. THE OBSTRUCTION CONVICTION IS BARRED BY MR. BONDS'S IMMUNITY AGREEMENT

Bonds concedes that if the government had successfully prosecuted him on the theory that Statement C was factually false, and thus obstructive, he would not be protected by his immunity order. He likewise concedes that if he had refused to testify altogether, notwithstanding the immunity grant, he could have been prosecuted for contempt under the "otherwise failing to comply" prong of the order and § 6002. But the order, especially as explained by prosecutors at the outset of his testimony, did not allow him to be prosecuted for merely evasive and temporarily nonresponsive statements.

In response, the government first contends that Mr. Bonds waived this argument by failing to raise it prior to trial. But it was not until the instructional conference near the end of trial that the government revealed that it planned to pursue a Count Five conviction on the "truthful but evasive" theory.[4] Mr. Bonds could not possibly have anticipated prior to trial that the government would pursue such a novel theory. The indictment did not even mention Statement C, much less allege that Statement C was obstructive because nonresponsive.

Second, the government contends that in *United States v. Thomas*, 612 F.3d 1107 (9th Cir. 2010), the Ninth Circuit ruled that an immunity order does not protect against "prosecution for obstruction of justice based on evasive or misleading, but truthful statements." (Opp. at 23.) *Thomas* held nothing of the sort. The statements at issue in *Thomas* were false statements — which, again, are concededly not protected by immunity granted under § 6002. Neither the Ninth Circuit nor any other court has held that a witness commits obstruction and loses his immunity by giving temporarily nonresponsive answers. Even if § 1503 could be stretched to reach such statements, the Fifth Amendment does not allow the "otherwise failing to comply" prong of § 6002 to be so expanded.

The government might very well prefer to have the power to prosecute any grand jury witness who gives answers it does not like. But it does not have that power under either the obstruction statute or the immunity statute, and it *could not* have that power under the Self-Incrimination Clause. Mr. Bonds's answer in Statement C was not obstructive, it did not fail to comply with the immunity order, and it may not be punished under the Fifth Amendment.

## CONCLUSION

In its fevered effort to gain a celebrity's conviction, the government asks this Court to torture reason to embrace a profoundly skewed reading of § 1503. Under the government's

---

[4] Likewise, it was only in its recently filed opposition that the government revealed that it actually meant to pursue a theory that Mr. Bonds lied when he said "That's what keeps our friendship," or alternatively, that even if the answers in Statement C were truthful, Mr. Bonds lied in his other answers to the same question about whether he ever injected himself with any PEDs.

theory of obstruction, a witness who asked for a brief period to gather his thoughts, or to take a drink of water, or to consult his lawyer outside the jury room, thereby exposes himself to a felony obstruction conviction. Section 1503, which contains no mention of unresponsive or evasive statements, was never intended to achieve such a draconian result. Mr. Bonds should be acquitted on Count Five. Alternatively, the Court should order a new trial.

Dated: August 8, 2011

Respectfully submitted,

ALLEN RUBY (SKADDEN, ARPS, ET AL.)
ARGUEDAS, CASSMAN & HEADLEY, LLP
RIORDAN & HORGAN

By  /s/ Dennis P. Riordan
By  /s/  Donald M. Horgan
By  /s/  Ted Sampsell Jones
Counsel for Defendant Bonds