MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Acting Chief, Criminal Division

MATTHEW A. PARRELLA (NYBN 2040855)
JEFFREY D. NEDROW (CABN 161299)
Assistant United States Attorneys

    450 Golden Gate Avenue
    San Francisco, California  94102
    Telephone: (415) 436-7200
    Facsimile: (415) 436-7234
    Email:    matthew.parrella@usdoj.gov
              jeff.nedrow@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, </br> </br> Plaintiff, </br> </br> v. </br> </br> BARRY LAMAR BONDS, </br> </br> Defendant. | No. CR 07–00732-SI </br> </br> UNITED STATES' SENTENCING MEMORANDUM </br> </br> Date: December 16, 2011 </br> Time: 11:00 a.m. </br> </br> Court: Hon. Susan Illston |

The United States hereby submits its sentencing memorandum in the above-referenced case.

I.   INTRODUCTION

On April 13, 2011, following a jury trial, defendant Barry Lamar Bonds (Bonds) was found guilty of obstruction of justice, in violation of 18 U.S.C. § 1503. The United States Probation Office has prepared a Presentence Report (PSR) that calculates the defendant's offense level under the United States Sentencing Guidelines as a level 14, with an advisory sentencing range of 15-21 months imprisonment. PSR, ¶ 50. The PSR further recommends that the Court impose a sentence below the advisory guideline range of two years probation, a $4,000 fine, and

250 hours of community service as a result of a variety of factors pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(a).

The United States agrees with the PSR's factual summary and guideline calculations, but disagrees with its recommendation. In particular, the United States objects to a downward variance from the guidelines in this case. The evidence at trial demonstrated that Bonds went into the grand jury with the intention of providing false statements and obstructing the grand jury's efforts to get to the truth in the Balco matter. Bonds contacted another grand jury witness prior to his testimony and attempted to influence that witness. Bonds repeatedly provided false testimony in the grand jury. And when not testifying in an outright false manner, Bonds repeatedly provided evasive, misleading, and wandering answers for the clear purpose of avoiding a truthful and direct response. It is for this latter conduct that the jury found him guilty, and a sentence consistent with the guideline level assigned to an obstruction of justice conviction is appropriate in this case. The United States accordingly requests that the Court sentence Bonds to a term of 15 months imprisonment.

## II. THE DEFENDANT'S OFFENSE CONDUCT

Bonds testified before a federal grand jury in San Francisco on December 4, 2003, in connection with the Internal Revenue Service – Criminal Investigation Division's (IRS – CID) investigation into the distribution of performance-enhancing drugs and money laundering of the proceeds therefrom by Balco Laboratories (Balco) and individuals associated with Balco. At the time, Bonds was a professional baseball player with the San Francisco Giants. Two of the individuals associated with Balco were Victor Conte and Greg Anderson. Conte was the president of Balco, and Anderson was Bonds's childhood friend and personal trainer. Conte, Anderson, and two other defendants were ultimately charged and pleaded guilty in this Court to drug distribution charges.

Bonds was subpoenaed before the Balco grand jury to provide testimony about his knowledge and involvement with Balco, and its employees and associates, including Conte and Anderson. Bonds had previously appeared in a magazine article in which he credited Conte and

UNITED STATES' SENTENCING MEMORANDUM
CR 07–00732-SI

2

1  Anderson with assisting him in his athletic career.  In September 2003, as a part of the Balco
2  investigation, agents had executed search warrants at Balco and Anderson's residence.  Agents
3  found overwhelming evidence that Bonds had been obtaining anabolic steroids, human growth
4  hormone, and other illegal performance-enhancing drugs from Balco and Anderson.  The
5  evidence included handwritten notes found during the searches, calendars, drug ledgers, test
6  results, and financial notes indicating that Bonds had paid Anderson for the drugs.  PSR, ¶ 9.

7  Bonds requested and received an Order of Immunity for his Grand Jury testimony,
8  pursuant to 18 U.S.C. § 6003 and 28 C.F.R. § 0.175, and was informed that any information
9  directly or indirectly derived from his testimony could not be used against him in any criminal
10 case except a prosecution for perjury, false declaration, or otherwise failing to comply with the
11 Court's order.  Bonds was one of dozens of athletes who testified in the grand jury in connection
12 with the Balco investigation.  As with those other athletes, the United States believed that Bonds
13 could provide useful testimony in its investigation of the Balco defendants for drug distribution,
14 money laundering, and other crimes.

15 The evidence at trial in this case demonstrated that Bonds knowingly made numerous
16 material false statements throughout the course of his grand jury testimony on December 4, 2003.
17 Bonds denied knowingly using anabolic steroids and human growth hormone, and denied ever
18 being injected by any person other than a doctor.  These statements were baldly contradicted by
19 the testimony of several percipient witnesses.  The statements were also demonstrably false when
20 viewed in conjunction with the documentary evidence found at Balco and at Anderson's
21 residence, evidence which while inadmissible at trial, may be considered by this Court in
22 connection with sentencing.  Bonds further attempted through his grand jury testimony to
23 obstruct the grand jury's inquiry through numerous false, evasive, and misleading statements,
24 including responses to substantive questions in which he discussed his childhood, fishing,
25 friendship, and other matters.  The defendant purposefully designed these responses to distract
26 and confuse the grand jury as it pursued its inquiry.

27 Trial began on this matter on March 21, 2011, and concluded upon the jury's return of a
28

UNITED STATES' SENTENCING MEMORANDUM
CR 07–00732-SI

verdict of guilty as to Count Four, a charge of obstruction of justice, in violation of 18 U.S.C. § 1503. The jury did not reach a verdict on the perjury counts alleged in Counts One, Two, and Three.

Bonds filed a post-trial motion for acquittal or, in the alternative, for a new trial. The Court denied these motions by written order on August 26, 2011. CR 412. In its order denying the motion for acquittal, the Court upheld the jury's verdict that "Statement C" in the verdict form constituted an obstruction of justice. The Court found that "[v]iewed in the light most favorable to the government, the record supports a finding, beyond a reasonable doubt, that the question was material to the grand jury's investigation of BALCO and Greg Anderson for unlawfully distributing performance enhancing drugs, and that defendant endeavored to obstruct the grand jury by not answering it when it was first asked." August 26, 2011 Order Denying Motion To Acquit And For A New Trial, CR 412, p. 14. The Court further found that "while he [the defendant] provided several direct yes or no answers to questions regarding injectables when they were asked for the second or third time, the evidence supports a finding that at least one of those answers–to the question of whether Anderson had ever injected him with any substance–was false." Id. at 14.

### III. THE PROBATION DEPARTMENT'S GUIDELINE CALCULATION IN THIS CASE IS ACCURATE

A.   The Base Offense Level

The United States concurs with the base offense level contained within the PSR. Pursuant to U.S.S.G. § 2J1.2(a), the base offense level for the count of conviction, a violation of 18 U.S.C. § 1503, is a level 14. PSR, ¶ 18.

B.   The Defendant Has Not Taken Responsbility For His Conduct

The United States agrees with the PSR's recommendation that Bonds should not receive a two-level reduction in the guideline calculation for acceptance of responsibility. PSR, ¶ 23. The defendant has not clearly demonstrated acceptance of responsibility for his offense. In fact, far from accepting responsibility, it appears that the defendant continues to maintain his innocence, notwithstanding the jury's unanimous finding that he acted with the purpose of obstructing

justice in the grand jury as to Statement C in the verdict form, a finding that this Court upheld in denying Bonds's post-trial motions. The defendant makes no claim to the contrary.

The above calculation brings the defendant's total offense level to 14, where, with a Criminal History Category of I, his sentencing guideline range is 15-21 months. PSR, ¶¶ 26, 50.

IV.     THE GOVERNMENT REQUESTS A SENTENCE OF 15 MONTHS IMPRISONMENT

A guideline sentence is appropriate in this case, and the government requests a sentence of 15 months imprisonment at the low end of the applicable guideline range. While the United States appreciates the factual detail and thoroughness of the PSR, the United States respectfully, but firmly, disagrees with the PSR's recommendation that a downward variance is warranted. Bonds's conduct was not a spontaneous act of aberrant behavior, and his charitable works, while laudable, should not allow him to escape responsibility for his criminal conduct. The conduct in this case was neither aberrant nor insignificant. To the contrary, Bonds's actions were the product of a calculated plan to obfuscate and distract the grand jury from its role in getting to the truth in the Balco inquiry. Whether his purpose was to protect his drug suppliers or his own reputation, Bonds's pre-testimony efforts to sway the testimony of Giants trainer Stan Conte established that he approached his grand jury testimony with a plan. That plan was to evade telling the truth to the grand jury through any means possible, whether through lies, half-truths, non-sequiturs, or simply bluffing his way through the testimony. Bonds attempted to obstruct justice in this case through answers that fell into all of these categories. His answers that he did not know that he was taking steroids and human growth hormone were patently false, and the United States' allegation that he lied when he said he had not been injected by anyone other than a doctor was proven at trial through the testimony of Kathy Hoskins.

Bonds argues that a probationary sentence is appropriate in light of the sentences received by the other defendants accused of perjury, false statements or obstruction of justice in connection with the Balco investigation. The defense observes that only one other similarly situated defendant, Marion Jones, was sentenced to a term of imprisonment. Bonds seeks to have his case analogized to a defendant such as Dana Stubblefield, who was sentenced to probation after a quick guilty plea. A far more apt comparison, however, may be drawn between Bonds

UNITED STATES' SENTENCING MEMORANDUM
CR 07–00732-SI

and a defendant like Jones.

The six-month sentence in the Jones case was imposed by the Hon. Kenneth M. Karas, a U.S. District Judge in the Southern District of New York. As the defense points out, Jones was sentenced in that case for both her false statements to Balco investigators and for separately providing false statements to New York agents in connection with a fraud investigation. A review of the transcript of that sentencing hearing, however, makes it clear that Judge Karas was deeply concerned about Jones's lies about her drug use to Balco investigators in fashioning his six-month sentence. At sentencing, Judge Karas said:

> With respect to the investigation in the Northern District of California, what the record reflects is that this investigation involved efforts to uncover the worldwide lies that was phrased, but I would have phrased it also to undercover massive distribution of illegal performance-enhancing substances to athletes of many different sports. And I think this investigation is important for a number of reasons, the primary of which is that the use of these substances infect the integrity of athletic competition, and that has an enormously adverse impact on society in a number of ways.

See Exhibit A, January 11, 2008 Transcript of Sentencing Hearing in U.S. v. Jones, CR 05-1067-KMK, p. 37. Based on this reasoning, Judge Karas sentenced Jones to six months imprisonment for her false statements in the Balco case. Jones had pleaded guilty and accepted responsibility in her case, and had an infant child at the time of her sentencing.

The district court in the Jones case was not the only time that prison time has arisen as an issue in these cases. The United States Probation Office recommended a sentence of 24 months imprisonment for Tammy Thomas following her trial conviction. While Bonds correctly notes that Thomas was convicted of perjury as well as obstruction of justice, it is also true that Thomas was a very different defendant than Bonds. Thomas had lost her ability to pursue her chosen career as a lawyer, lacked financial resources, and was grappling with a number of difficult personal and health issues. The record before the Court in this case does not reflect a defendant with similar personal challenges. In addition, the defense lawyer who provided false statements and obstructed justice in his dealings with this Court during the Balco case, Troy Ellerman, received a sentence of 30 months imprisonment. While that conduct was far more severe as a

UNITED STATES' SENTENCING MEMORANDUM
CR 07–00732-SI

result of Ellerman's position of trust with the Court, his conduct was different in kind, not degree. The defendant in this case shared with Ellerman a plan to thwart the ability of the court system to get to a just result. His conduct should be considered in the same light.

Bonds's pervasive efforts to testify falsely, to mislead the grand jury, to dodge questions, and to simply refuse to answer questions in the grand jury makes his conduct worthy of a significant jail sentence. The obstructive conduct was indisputably material to the Balco investigation–indeed, it went to the heart of the inquiry. Bonds's false, obstructive testimony raised questions about the proper charges under consideration by the grand jury and cast doubt on the testimony of other individuals. The ability of the judicial system, and particularly the grand jury, to firmly address conduct such as seen in this case is imperative to its fair and proper functioning. The jury found that Bonds acted with corrupt intent in attempting to obstruct justice. Intentional, corrupt efforts to obstruct the judicial system such as this require accountability and a severe sanction from the judicial system. Without truthful testimony, the judicial system simply cannot function properly in its mission–to get to justice. Because Bonds's efforts were a corrupt, intentional effort to interfere with that mission, a sentence of 15 months imprisonment is appropriate.

### V. CONCLUSION

For the foregoing reasons, the United States requests a sentence of 15 months of imprisonment.

DATED: December 8, 2011

                                            Respectfully submitted,

                                            MELINDA HAAG
                                            United States Attorney

                                                    /s/
                                            MATTHEW A. PARRELLA
                                            JEFFREY D. NEDROW
                                            Assistant United States Attorney

UNITED STATES' SENTENCING MEMORANDUM
CR 07–00732-SI